## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| MICHAEL SHANNON TAYLOR, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 4:09-cv-00251-KOB-TMP |
| | ) | |
| GRANTT CULLIVER, Superintendent, | ) | |
| Holman Correctional Facility, and; | ) | |
| TROY KING, Attorney General of | ) | |
| the State of Alabama, | ) | |
| | ) | |
| Respondents. | ) | |

## MEMORANDUM OPINION

This action seeks habeas corpus relief with respect to Petitioner Michael Shannon Taylor's ("Taylor" or "Petitioner") state court conviction and death sentence on three counts of capital murder. *See* 28 U.S.C. § 2254 (2006). All of the claims have been briefed to the court, and the petition is ready for adjudication.

## FACTUAL BACKGROUND

### A.   THE OFFENSE.

The following summary of the evidence relevant to the offense is taken from the Alabama Supreme Court's decision on direct appeal. *Ex parte Taylor*, 666 So. 2d 73, 75-76 (Ala. 1995).[1]

---

[1] The court will utilize the following method of citation to the record. References to specific pages of the court record on direct appeal are designated "**C.R.___**", and references to the transcript on direct appeal are designated "**R.___**." References to the court record of the Rule 32 proceedings are designated "**Rule 32 C.R.___**", and references to the transcript on collateral appeal are designated "**Rule 32 R.___**." The court will strive to list any page number associated with the court records by reference to the numbers at the bottom of each page of a particular document, if those numbers are the most readily discoverable for purposes of expedient examination of that part of the record. Otherwise, the page numbers that are referenced will correspond to those printed in the upper right hand corner of the record. Additionally, if an easily identifiable tab number is close to any cited material, the court has made reference to that for the reader's benefit.

On November 4, 1991, Taylor, then a 19-year-old high school graduate who had returned to his hometown of Gadsden while absent without leave from the Navy, solicited a ride to the home of the Moores, an elderly couple he knew. Taylor left a duffel bag outside the house and asked Mr. Moore, who was age 83, if he could use the telephone. Once inside, Taylor pretended to make a telephone call, and then Mr. Moore asked him if he would like something to drink. Taylor said he would, and Mr. Moore got him a glass of water and a doughnut. After Taylor had eaten, Mr. Moore asked him if he would like something else. Taylor said he would, and Mr. Moore went back into the kitchen.

Taylor then went outside and removed a metal bar from his duffel bag. Taylor followed Mr. Moore into the kitchen, and, as the man bent into the refrigerator, Taylor began to strike him about the head with the metal bar. Mr. Moore fell to the floor. Mrs. Moore, who was age 79, entered the kitchen and bent down to see what was wrong with her husband. Taylor then struck her repeatedly about the head with the metal bar. As Mr. Moore attempted to crawl away and get up, Taylor again struck him with the bar. Taylor then took Mr. Moore's wallet, Mrs. Moore's purse, their checkbook, and their 1986 Cadillac automobile. He drove to Birmingham, cashed several checks made out to his name for a total of about $ 1500, and made several clothing and jewelry purchases at the Galleria shopping mall.

The Moores were discovered in their home by a neighbor two days after their beating. Mr. Moore was dead at that time; Mrs. Moore was then unconscious, but later died. The cause of both their deaths was severe blunt force injuries to their heads, which had fractured their skulls. Mr. Moore had been struck with the bar approximately 17 times and had 11 wounds on his head; Mrs. Moore had been struck with the bar at least 10 times.

Taylor was arrested outside the Galleria shopping mall, after he had entered the Moores' vehicle and attempted to drive away. Upon being returned to Gadsden, Taylor confessed to beating the Moores during the course of a robbery. It is disputed whether he stated, while giving his confession, that he had intended to kill the Moores.

*Ex parte Taylor*, 666 So. 2d 73, 75-76 (Ala. 1995).

To the extent that the appellate court relied upon the trial court's findings of fact, they can be found in the trial court's sentencing order, which is entitled "Judgment of the Court." (C.R. Vol. 37, Tab. 78, pp. 195-96, 204-05, 213-14). These findings were also adopted by the Rule 32 circuit court in its final order. (*See* Rule 32 C.R. Vol. 38, Tab. 90, pp. 2-3). The sentencing order states:

Between 12:00 Noon and 1:10 p.m. on November 4, 1991, Michael Shannon Taylor got a ride to the home of Ivan Ernest Moore and his wife, Lucille Moore, in Gadsden, Etowah County, Alabama.  Mr. Taylor went to the home of the Moore's because he knew them.  He took with him a green duffel bag with a black barbell inside.  When Mr. Taylor knocked on the door, Mr. Ernest Moore answered and invited him in, where they talked for several minutes and Mr. Moore furnished Mr. Taylor with some water and a doughnut.  A few minutes after Mr. Taylor's arrival, Mrs. Moore came in.  Both Mr. and Mrs. Moore were elderly people, Mr. Moore being 83 years of age and Mrs. Moore being 79.  Mr. and Mrs. Moore then left the room, leaving Mr. Taylor alone.  While they were gone, Mr. Taylor went outside where he had left his duffel bag, got out the barbell, which he placed inside his shirt, and went back into the home.  Mr. Taylor finished the food and water and Mr. and Mrs. Moore came back into the room.  Mr. Moore then asked Mr. Taylor if he wanted anything else, Mr. Taylor said yes, and Mr. Moore left the room.  Mr. Taylor followed Mr. Moore into the kitchen, leaving Mrs. Moore in the den.  When Mr. Moore opened the refrigerator, the Defendant, Michael Taylor, pulled out the barbell and hit Mr. Moore in the back of the head several times.  Mr. Moore fell to the floor and Mrs. Moore came into the kitchen.  When she saw Mr. Moore lying on the floor, she went over to see if she could help her husband.  When she bent over to Mr. Moore, the Defendant, Michael Taylor, hit Mrs. Moore in the back of the head two or three times and she, too, fell down.  Mr. Moore acted like he was going to crawl off so the Defendant hit him several more times.  The Defendant stated he did not know how many times he hit Mr. Moore because "his adrenaline was pumping." Mrs. Moore tried to talk to the Defendant and he hit her again with the barbell.  The Defendant, Michael Taylor, took Mr. Moore's billfold out of his back pocket, went to the bathroom, and then came back to the kitchen, where he took Mr. Moore's keys off his belt loop and took Mrs. Moore's purse.  He took three blank checks from Mr. Moore's billfold and $5.00 from Mrs. Moore's purse.  Michael Taylor then took the Moore's car and drove to Central Bank where he took one of the checks he had stolen from the Moore's, made it payable to himself in the amount of $500.00, forged a signature on it, and the Bank cashed the check.  The Defendant then drove the car to Birmingham where he stayed for five days, spending the Moore's money and driving their car, before he was apprehended.  Mr. and Mrs. Moore were discovered in their home by a neighbor on November 6, 1991, which was two (2) days after the attack had taken place.  At that time, Mr. Moore was deceased but Mrs. Moore was still alive, having lain in the floor for two days.  Mrs. Moore later died on November 10, 1991.

(C.R. Vol. 37, Tab. 78, pp. 195-96).[2]

---

[2] In both the clerks' record, (*see* C.R. Vols. 1-2, pp. 195-97, 204-06, 213-15), and the collection of opinions submitted to this court, (*see* C.R. Vol. 37, Tab. 78, pp. 195-97, 204-06, 213-15 ), three versions of the trial court's sentencing order are included—one relating to each count of capital murder.  In other words, the three separate

## B.    THE SENTENCE.

After a formal sentencing hearing, the trial court found the existence of two statutory aggravating circumstances, two statutory mitigating circumstances, and six non-statutory mitigating circumstances.[3]  *See Taylor v. State*, 666 So. 2d 36, 72 (Ala. Crim. App. 1994).  As to the statutory aggravating factors, the trial court found:

---

sentencing orders relate to Taylor's: (1) intentional killing of Ivan Ernest Moore during a Robbery in the First Degree, Ala. Code § 13A-5-40(a)(2), (*see* C.R. Vol. 1, pp. 195-97; *see also* C.R. Vol. 37, Tab. 78, pp. 195-97 (same)); (2) intentional killing of Lucille Moore during a Robbery in the First Degree, Ala. Code § 13A-5-40(a)(2), (*see* C.R. Vol. 2, pp. 204-06; *see also* C.R. Vol. 37, Tab. 78, pp. 204-06 (same)); and (3) intentional killing of Ivan Ernest Moore and Lucille Moore "by one act or pursuant to one scheme or course of conduct," Ala. Code § 13A-5-40(a)(10), (*see* C.R. Vol. 2, pp. 213-15; *see also* C.R. Vol. 37, Tab. 78, pp. 213-15 (same)).

Other than listing the separate counts upon which Taylor was found guilty, the text of the three disparate versions of the trial court's sentencing order is nearly identical.  The only difference is that in the third sentencing order the trial court found only one statutory aggravating circumstance to exist, *i.e.*, "the capital offense was especially heinous, atrocious and cruel, compared to other capital offenses." (C.R. Vol. 2, p. 214; *see also* C.R. Vol. 37, Tab. 78, p. 214 (same)).  In the other two sentencing orders, the trial court found two statutory aggravating circumstances to exist: "the intentional murder was committed while the Defendant was engaged in the commission of a Robbery in the First Degree and that the capital offense was especially heinous, atrocious and cruel, compared to other capital offenses." (C.R. Vols. 1-2, pp. 196, 205; *see also* C.R. Vol. 37, Tab. 78, pp. 196, 205 (same)).

Despite this difference, all three sentencing orders state "that the aggravating circumstances listed in Section 13A-5-49(1) and Section 13A-5-49(2) exist in this case and are sufficient to support the sentence of death." (C.R. Vol. 37, Tab. 78, pp. 196, 205, 214).  From this statement, the trial court appears to be stating that both statutory aggravating circumstances existed as to each of the three counts of capital murder, including the third count which did not separately list robbery as an aggravating factor. *See id.*  Further, all three sentencing orders provide incorrect citations for the two statutory aggravating circumstances, which can be found at § 13A-5-49(4), (8).  This error was later corrected in the Court of Criminal Appeals' opinion on return to remand. *See Taylor*, 666 So. 2d 71, 72 (Ala. Crim. App. 1994) (citing the two correct subsections of § 13A-5-49, *i.e.*, subsections (4) and (8), for the two aggravating circumstances found by the trial court).

[3] On July 8, 1994, the Alabama Court of Criminal Appeals remanded Taylor's case to the trial court

with instructions that the trial court rewrite its specific written findings so that they comply with the requirements of § 13A-5-47(d).  Specifically, the trial court shall enter specific written findings concerning the existence or nonexistence of each aggravating circumstance enumerated in section 13A-5-49 and each mitigating circumstance enumerated in section 13A-5-51.

*Taylor v. State*, 666 So. 2d 36, 71 (Ala. Crim. App. 1994).  In the record provided to this court, however, all three versions of the trial court's sentencing order are dated May 5, 1993, which is before the Court of Criminal Appeals remanded the case to the trial court to make specific written findings.  (*See* C.R. Vol. 37, Tab. 78).  Regardless of this discrepancy, the Court of Criminal Appeals' recitation of the aggravating and mitigating circumstances on return to remand coincide with those found in the trial court's three initial sentencing orders. *Compare id.*, *with Taylor*, 666 So. 2d 71, 72 (Ala. Crim. App. 1994).  Further, and to better aid cross-referencing, the citations above are to the Court of Criminal Appeals' opinion on return to remand. *See Taylor*, 666 So. 2d at 72.  For the trial court's findings, see C.R. Vol. 37, Tab. 78, pp. 196, 205, 214.

> [T]he existence of two aggravating circumstances: that the capital offense was committed during the commission of robbery in the first degree, § 13A-5-49(4); and that the capital offense was especially heinous, atrocious, or cruel compared to other capital offenses, § 13A-5-49(8).

*Taylor*, 666 So. 2d at 72. Concerning the statutory mitigating factors, the trial court found:

> [T]he existence of two statutory mitigating circumstances: that the appellant has no significant history of prior criminal activity, § 13A-5-51(1) and the age (19 years) of the appellant at the time of the offense, § 13A-5-51(7). . . .

*Id.* Finally, regarding the non-statutory mitigating factors, the trial court found:

> 1. Love of his family for the Defendant.
> 2. Love of his friends for the Defendant.
> 3. The Defendant's admitted guilt.
> 4. The Defendant's life and behavior for almost twenty (20) years prior to the commission of the crime.
> 5. The Defendant's good school behavior.
> 6. Evidence of the Defendant's prior good works.[4]

*Id.*

"[F]rom a consideration of the evidence taken at the trial of this cause and at the sentencing hearing," the trial court found "that the aggravating circumstances listed in Section 13A-5-49[(4)] and Section 13A-5-49[(8)] exist in this case and are sufficient to support the sentence of death." (C.R. Vol. 37, Tab. 78, pp. 196, 205, 214). The trial court further found "that the mitigating circumstances heretofore enumerated are insufficient to outweigh the aggravating circumstances." *Id.* Finally, the trial court concluded by finding "that the punishment of [Taylor] should be fixed by

---

[4] Subsequently, on return to remand, the Alabama Court of Criminal Appeals specifically noted:

> This Court does not address whether circumstances numbered 1 and 2 above, love of family and friends for the appellant, could be properly considered as mitigating circumstances. Any error in that regard was beneficial to the appellant.

*Taylor*, 666 So. 2d at 73 n. 1.

the Court at DEATH." (C.R. Vol. 37, Tab. 78, pp. 196-97, 205-06, 214-15).

## PROCEDURAL HISTORY

Michael Shannon Taylor was indicted by a grand jury in Etowah County, Alabama, on December 6, 1991. (C.R. Vol. 1, pp. 16-20). He was charged with three counts of capital murder, pursuant to Ala. Code. §§ 13A-5-40(a)(2), (a)(10), for the murders of Ivan Ernest Moore and Lucille Moore. *Id.* at 16-18. On February 5, 1992, Taylor was denied youthful offender status, was arraigned, and entered a plea of not guilty to each of the three counts set forth in the indictment.[5] (C.R. Vol. 1, p. 33; R. Vol. 3, pp. 10-23). Afterwards, the trial court conducted a suppression hearing on March 12 and 19, 1993. (R. Vols. 3-4, Tabs. 5-6, pp. 67-186). On April 7, 1993, voir dire began, (*see* R. Vol. 4, Tab. 7, p. 186), and the jury was empaneled on April 12, 1993 (*see* R. Vol. 7, Tab. 8, pp. 779-81).

At 1:48 p.m. on April 14, 1993, Taylor was found guilty of the three capital offenses charged in the indictment. (R. Vol. 9, Tab. 17, pp. 1163-64). A penalty hearing immediately followed, and, at 8:26 p.m. that same day, the jury unanimously recommended that Taylor be sentenced to death. (R. Vol. 10, Tab. 26, pp. 1409-10). A formal sentencing hearing, as is required by Ala. Code § 13A-5-47, was conducted on May 5, 1993, and the trial court judge followed the recommendation of the jury and sentenced Taylor to death. (R. Vol. 10, Tab. 28, p. 1424; C.R. Vol. 37, Tab. 78). An automatic appeal followed.

Taylor appealed his conviction and sentence to the Alabama Court of Criminal Appeals. On July 8, 1994, the court entered a published opinion remanding his case to the trial court

---

[5] In addition to entering pleas of not guilty to each of the three counts set forth in the indictment, Taylor also entered pleas of not guilty by reason of mental disease or defect for each count as well. (*See* C.R. Vol. 1, p. 5; R. Vol. 3, pp, 19-20).

> with instructions that the trial court rewrite its specific written findings so that they comply with the requirements of § 13A-5-47(d).  Specifically, the trial court shall enter specific written findings concerning the existence or nonexistence of *each* aggravating circumstance enumerated in section 13A-5-49 and *each* mitigating circumstance enumerated in section 13A-5-51.

*Taylor v. State*, 666 So. 2d 36, 71 (Ala. Crim. App. 1994) (emphasis in original).  After the trial court "complied with those directions and . . . submitted a sentencing order satisfying the statutory requirements," the Alabama Court of Criminal Appeals affirmed Taylor's sentence of death on September 9, 1994.  *Taylor v. State*, 666 So. 2d 71, 72 (Ala. Crim. App. 1994).  It denied Taylor's application for rehearing on October 21, 1994.  *See id.*  The Alabama Supreme Court denied Taylor's petition for writ of certiorari in a written opinion on May 5, 1995, and it later denied Taylor's application for rehearing on July 21, 1995.  *Ex parte Taylor*, 666 So. 2d 73 (Ala. 1995).  The United States Supreme Court denied Taylor's petition for writ of certiorari on February 20, 1996.  *See Taylor v. Alabama*, 516 U.S. 1120 (1996).

Taylor thereafter filed a petition for relief from judgment pursuant to Rule 32 of the Alabama Rules of Criminal Procedure on March 3, 1997.  (Rule 32 C.R. Vol. 18, Tab. 40).  Taylor subsequently filed two amended petitions on November 20, 1998, and July 13, 1999, respectively. (Rule 32 C.R. Vols. 18-19, Tabs. 44, 49).[6]  On June 12, 2000, the circuit court dismissed a number of Taylor's claims as procedurally barred.  (Rule 32 C.R. Vol. 37, Tab. 83).  Following an evidentiary hearing as to the remaining issues, (*see* Rule 32 R. Vols. 22-24, Tab. 58, pp. 71-562), the circuit court denied Taylor's Rule 32 petition on December 5, 2002. (Rule 32 C.R. Vol. 37, Tab. 84).  The Alabama Court of Criminal Appeals affirmed the circuit court's dismissal of Taylor's Rule

---

[6] In Taylor's state collateral proceedings, as well as for purposes of his present habeas petition, Taylor's Second Amended Rule 32 Petition was, and remains, the operative document.  (*See* Rule 32 C.R. Vol. 19, Tab. 49).  As such, any subsequent references to Taylor's "Rule 32 petition" refer to his Second Amended Rule 32 petition.  *See id.*

32 petition on August 27, 2004.  *Taylor v. State*, 10 So. 3d 1036 (Ala. Crim. App. 2004).

Taylor then petitioned the Alabama Supreme Court for certiorari review.  (Rule 32 C.R. Vol. 30, Tabs. 67, 68).  On September 30, 2005, the Alabama Supreme Court

> reverse[d] the judgment of the Court of Criminal Appeals insofar as it held that a petitioner in a Rule 32, Ala. R. Crim. P., proceeding cannot, as a matter of law, establish prejudice under *Strickland*, when on direct appeal the Court of Criminal Appeals has found no plain error with respect to the substantive claim, and [it] remand[ed] the cause for further proceedings . . . .

*Ex parte Taylor*, 10 So. 3d 1075, 1078 (Ala. 2005).  But the Court also "affirm[ed] the judgment of the Court of Criminal Appeals insofar as it affirmed the trial court's denial of the other claims presented in Taylor's Rule 32 petition."  *Id.*  On August 25, 2006, the Alabama Court of Criminal Appeals identified twenty ineffective assistance of counsel claims "erroneously" rejected by the circuit court.  *Taylor v. State*, 10 So. 3d 1079, 1081-82 (Ala. Crim. App. 2006).  It then "remand[ed] the] case to the circuit court for that court to make specific, written findings of fact regarding [these claims] in light of the Alabama Supreme Court's decision in *Ex parte Taylor*."  *Id.* at 1082 (footnote omitted).[7]

Upon return to the circuit court, Taylor moved for the appointment of new local counsel due to the intervening death of his prior local counsel, (Rule 32 Remand C.R. Vol. 34, pp. 103-05), which the circuit court denied on November 8, 2006, (*see* Rule 32 Remand C.R. Vol. 34, p. 10).  On

---

[7] The Court of Criminal Appeals further explained its instructions for the circuit court on remand as follows:

> By remanding this case, we do not in any way mean to imply that the appellant has satisfied his burden of pleading pursuant to Rules 32.3 and 32.6(b), Ala. R. Crim. P.  Rather, we simply intend for the circuit court to apply the proper standard in reviewing the allegations.  On remand, if the circuit court determines that the appellant has sufficiently pled any of the allegations, it may conduct further proceedings in accordance with Rule 32.9, Ala. R. Crim. P.

*Taylor v. State*, 10 So. 3d 1079, 1082-83 n. 2 (Ala. Crim. App. 2006).

October 26, 2006, the circuit court entered an order denying the twenty claims identified by the Court of Criminal Appeals. (Rule 32 C.R. Vol. 38, Tab. 88). On December 19, 2006, the Alabama Court of Criminal Appeals, in an unpublished order, found that the circuit court erred when it "did not appoint local counsel to represent [Taylor]." (Rule 32 C.R. Vol. 38, Tab. 89, p. 2). As a result, it found "the proceedings on remand to the circuit court [were] void" and remanded the case to the circuit court once again, "with instructions that it appoint local counsel to represent [Taylor], in compliance with Rule VII [of the Rules Governing Admission to the Alabama State Bar], and that it then proceed with this court's instructions as set forth in our opinion that was released on August 25, 2006." *Id.*

Upon the Court of Criminal Appeals' second remand to the circuit court, Taylor requested additional discovery and the setting of a date for a second evidentiary hearing. (Rule 32 Supp. C.R. Vol. 35, pp. 23-33). On May 15, 2007, the circuit court denied these requests and again entered an order denying Taylor's Rule 32 petition.[8] (Rule 32 C.R. Vol. 38, Tab. 90). The Alabama Court of Criminal Appeals affirmed the circuit court's decision in an unpublished opinion on February 22, 2008,[9] (Rule 32 C.R. Vol. 38, Tab. 91), and overruled Taylor's application for rehearing on April 11, 2008. The Alabama Supreme Court denied certiorari review on December 31, 2008. (Rule 32

---

[8] Purportedly because it summarily dismissed all of the twenty claims identified by the Court of Criminal Appeals in its August 25, 2006 opinion, the circuit court did not conduct a second evidentiary hearing as Taylor requested. (*See* Rule 32 C.R. Vol. 38, Tab. 90, p. 1 (summarily dismissing all twenty claims)); *Cf. Taylor v. State*, 10 So. 3d 1079, 1082-83 n. 2 (Ala. Crim. App. 2006) ("By remanding this case, we do not in any way mean to imply that the appellant has satisfied his burden of pleading pursuant to Rules 32.3 and 32.6(b), Ala. R. Crim. P."); Ala. R. Crim. P. 32.6(b) (stating that claims dismissed for lack of specificity "shall not be sufficient to warrant any further proceedings"); *cf.* Ala. R. Crim. P. 32.9(a) ("Unless the court dismisses the petition, the petitioner shall be entitled to an evidentiary hearing . . . .").

[9] In the record submitted to this court, the Alabama Court of Criminal Appeal's denial of Taylor's application for rehearing is not designated by a separate tab. That order is on the page immediately preceding the Alabama Supreme Court's denial of Taylor's petition for a writ of certiorari on December 31, 2008. (*See* Rule 32 C.R. Vol. 38, Tab. 92).

C.R. Vol. 38, Tab. 92).  On January 5, 2009, the Alabama Court of Criminal Appeals issued a Certificate of Judgment denying Taylor's Rule 32 petition.[10]  Taylor did not seek review in the United States Supreme Court.

Shortly after the Alabama Supreme Court's denial of certiorari review, on February 9, 2009, Taylor filed his present Petition for a Writ of Habeas Corpus (the "Petition" or "Habeas Petition") in this court.  (*See* Doc. 1).

## THE SCOPE OF FEDERAL HABEAS REVIEW

Pursuant to 28 U.S.C. § 2254(a) (2006), a federal district court is prohibited from entertaining a petition for writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court" unless the petitioner alleges "he is in custody in violation of the Constitution or laws or treaties of the United States."   In other words, this court's review of habeas claims is limited to federal constitutional questions.  Claims pertaining solely to "an alleged defect in a [state] collateral proceeding" or to a "state's interpretation of its own laws or rules" does not provide a basis for federal habeas corpus relief under § 2254.  *Alston v. Dep't of Corr., Fla.*, 610 F.3d 1318, 1325-26 (11th Cir. 2010) (citations omitted).  Accordingly, unless otherwise expressly stated, use of the word "claim" in this opinion presupposes a claim of federal constitutional proportion.

## A.   EXHAUSTION AND PROCEDURAL DEFAULT.

Prior to seeking relief in federal court from a state court conviction and sentence, a habeas petitioner is first required to present his federal claims to the state court by exhausting all of the state's available procedures.  *See* 28 U.S.C. § 2254(b)(1) (2006).  The purpose of this requirement

---

[10] A copy of the Court of Criminal Appeals' Certificate of Judgment is not included within the record submitted to this court.

is to ensure that state courts are afforded the first opportunity to correct federal questions affecting

the validity of state court convictions.

As the Eleventh Circuit has explained:

> In general, a federal court may not grant habeas corpus relief to a state prisoner who has not exhausted his available state remedies.   28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . .").   "When the process of direct review . . . comes to an end, a presumption of finality and legality attaches to the conviction. . . . The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited.   Federal courts are not forums in which to relitigate state trials." *Smith v. Newsome*, 876 F.2d 1461, 1463 (11th Cir. 1989) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 887 [1983]).

> Exhaustion of state remedies requires that the state prisoner "fairly present federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard v. Connor*, 404 U.S. 270, 275-76 [1971]) (internal quotation marks omitted).   The Supreme Court has written these words:

>> [T]hat the federal claim must be fairly presented to the state courts . . . . it is not sufficient merely that the federal habeas applicant has been through the state courts. . . .   Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies.

> *Picard*, 404 U.S. at 275.  *See also Duncan*, 513 U.S. at 365 ("Respondent did not apprise the state court of his claim that the evidentiary ruling of which he complained was not only a violation of state law, but denied him the due process of law guaranteed by the Fourteenth Amendment.").

Thus, to exhaust state remedies fully the petitioner must make the state court aware that the claims asserted present federal constitutional issues.  "It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 5-6 (1982) (citations omitted).

11

*Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) (alterations in original) (parallel citations omitted); *see also Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2009).

Moreover, if a petitioner fails to raise his federal claim to the state court at the time and in the manner dictated by the state's procedural rules, the state court can decide the claim is not entitled to a review on the merits, *i.e.*, "the petitioner will have *procedurally defaulted* on that claim." *Mason*, 605 F.3d at 1119 (emphasis added). Usually, if the last state court to examine a claim explicitly finds that the claim is defaulted because the petitioner failed to follow state procedural rules, then federal review of the claim is also precluded pursuant to federal procedural default principles. *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001).

As the Eleventh Circuit recently stated:

> "The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). The doctrine of procedural default dictates that "[a] state court's rejection of a petitioner's constitutional claim on state procedural grounds will generally preclude any subsequent federal habeas review of that claim." *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001). However, a state court's rejection of a federal constitutional claim on procedural grounds may only preclude federal review if the state procedural ruling rests upon "adequate and independent" state grounds. *Marek v. Singletary*, 62 F.3d 1295, 1301 (11th Cir. 1995) (citation omitted).

*Ward v. Hall*, 592 F.3d 1144, 1156-57 (11th Cir. 2010).[11]

---

[11] "When the last state court rendering judgment affirms without explanation, [a federal habeas court will] presume that it rests on the reasons given in the last reasoned decision." *Mason*, 605 F.3d at 1118 n. 2. As the Supreme Court has observed:

> The problem we face arises, of course, because many formulary orders are not meant to convey *anything* as to the reason for the decision. Attributing a reason is therefore both difficult and artificial. We think that the attribution necessary for federal habeas purposes can be facilitated, and sound results more often assured, by applying the following presumption: Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground. If an earlier opinion "fairly appear[s] to rest primarily upon federal law," we will presume that no procedural default has been invoked by a subsequent unexplained order that leaves the judgment or its consequences in place. Similarly where, as here, the last reasoned opinion on the claim explicitly imposes a procedural default, we will

The Supreme Court defines an "adequate and independent" state court decision as one which "rests on a state law ground that is *independent* of the federal question and *adequate* to support the judgment." *Lee v. Kemna,* 534 U.S. 362, 375 (2002) (quoting *Coleman v. Thompson,* 501 U.S. 722, 729 (1991)). Whether a state procedural rule is "adequate and independent" as to have a preclusive effect on federal review of a claim "is itself a federal question." *Id.* (quoting *Douglas v. Alabama*, 380 U.S. 415, 422 (1965)).

The Eleventh Circuit has adopted a three-part test to determine if a state court ruling was based on adequate and independent grounds. *See Judd*, 250 F.3d at 1313. First, "the last state court rendering a judgment in the case must clearly and expressly state that it is relying on state procedural rules to resolve the federal claim without reaching the merits of that claim." *Judd*, 250 F.3d at 1313. Second, "the state court's decision must rest entirely on state law grounds and not be intertwined with an interpretation of federal law." *Ward*, 592 F.3d at 1156-57 (citing *Judd*, 250 F.3d at 1313). Third, the state procedural rule must be adequate; that is, "firmly established and regularly followed" and not applied "in an arbitrary or unprecedented fashion." *Judd*, 250 F.3d at 1313 (quoting *James v. Kentucky*, 466 U.S. 341, 348 (1984)).

Furthermore, federal deference to a state court's clear finding of procedural default under its own rules is so strong that:

> "[A] state court need not fear reaching the merits of a federal claim in an *alternative* holding. Through its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law."

---

presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits. . . .

*Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) (internal citations omitted).

13

> *Harris*, 489 U.S. at 264 n. 10, 109 S. Ct. 1038 (emphasis in original). *See also Alderman v. Zant*, 22 F.3d 1541, 1549-51 (11th Cir. 1994) (where a Georgia habeas corpus court found that the petitioner's claims were procedurally barred as successive, but also noted that the claims lack merit based on the evidence, "this ruling in the alternative did not have an effect . . . of blurring the clear determination by the [Georgia habeas corpus] court that the allegations w[ere] procedurally barred"), *cert. denied*, 513 U.S. 1061, 115 S. Ct. 673, 130 L. Ed. 2d 606 (1994).

*Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999) (alterations in original).

Of course, in some instances the doctrines of procedural default and exhaustion intertwine. For instance, if a petitioner's federal claim is unexhausted, a district court will traditionally dismiss it without prejudice or stay the cause of action to allow the petitioner to first avail himself of his state remedies. *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982). But "if it is clear from state law that any future attempts at exhaustion [in state court] would be futile" under the state's own procedural rules, a court can simply find that the claim is "procedurally defaulted, even absent a state court determination to that effect." *Bailey*, 172 F.3d at 1305 (citation omitted).

## B.   EXCEPTIONS TO THE PROCEDURAL DEFAULT DOCTRINE.

In three situations an otherwise valid state ground will not bar a federal habeas court from considering a constitutional claim that is procedurally defaulted:

> (1) where failure to consider a prisoner's claims will result in a "fundamental miscarriage of justice"; (2) where the state procedural rule was not "'firmly established and regularly followed'"; and (3) where the prisoner had good "cause" for not following the state procedural rule and was "prejudice[d]" by not having done so.

*Edwards v. Carpenter*, 529 U.S. 446, 455 (2000) (Breyer, J., concurring) (internal citations omitted); *see also Coleman*, 501 U.S. at 749-50 ("[A]n adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim

will result in a fundamental miscarriage of justice.") (citations and internal quotation marks omitted); *Murray v. Carrier*, 477 U.S. 478, 496 (1986) ("[W]here a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.").[12]

### 1.     The "Fundamental Miscarriage of Justice" Standard.

In a "rare," "extraordinary,"[13] and "narrow class of cases,"[14] a federal court may consider a procedurally defaulted claim in the absence of a showing of "cause" for the procedural default if either:  (1) a fundamental miscarriage of justice "has probably resulted in the conviction of one who is actually innocent," *Smith v. Murray*, 477 U.S. 527, 537-38 (1986) (quoting *Carrier*, 477 U.S. at 496);[15] or (2) the petitioner shows "by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty." *Schlup*, 513 U.S. at 323-27 & n. 44 (quoting *Sawyer v. Whitley*, 505 U.S. 333, 336 (1992)); *see also, e.g., Smith v. Murray*, 477 U.S. at 537-38.

---

[12] *See also Herrera v. Collins*, 506 U.S. 390, 417 (1993) (assuming, without deciding, "that in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of the defendant unconstitutional," but stating that "the threshold showing for such an assumed right would be extraordinarily high"); *Davis v. Terry*, 465 F.3d 1249, 1252 n. 4 (11th Cir. 2006) ("It would be considered a fundamental miscarriage of justice if 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995))).

[13] *Schlup*, 513 U.S. at 321 ("To ensure that the fundamental miscarriage of justice exception would remain 'rare' and would only be applied in the '*extraordinary case*,' while at the same time ensuring that the exception would extend relief to those who were truly deserving, th[e Supreme] Court explicitly tied the miscarriage of justice exception to the petitioner's innocence." (emphasis added)).

[14] *McCleskey*, 499 U.S. at  494 ("Federal courts retain the authority to issue the writ of habeas corpus in a further, *narrow class of cases* despite a petitioner's failure to show cause for a procedural default.   These are *extraordinary* instances when a constitutional violation probably has caused the conviction of one innocent of the crime. We have described this class of cases as implicating a fundamental miscarriage of justice." (emphasis added) (citing *Carrier*, 477 U.S. at 485)).

[15] Specifically, in *Murray v. Carrier,* the Supreme Court observed that, "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."  477 U.S. at 496.

2.      The "Firmly Established and Regularly Followed" Standard.

The Supreme Court has held that a ruling on procedural grounds will be inadequate to bar federal habeas review if the procedural rule relied upon has not been firmly established and regularly followed. *See Edwards*, 529 U.S. at 450 (citing *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) ("state procedural default is not an 'independent and adequate state ground' barring subsequent federal review unless the state rule was 'firmly established and regularly followed' at the time it was applied"). A federal court must consider whether the procedural rule has been consistently applied in the courts of that state. In *Ford*, the Court held that the petitioner's habeas claims were not barred from federal review because the state court had applied a procedural rule retroactively. *See Ford*, 498 U.S. at 424-25 ("To apply *Sparks* retroactively to bar consideration of a claim not raised between the jurors' selection and oath would therefore apply a rule unannounced at the time of petitioner's trial and consequently inadequate to serve as an independent state ground within the meaning of *James*."). For a procedural ruling to satisfy the firmly established and regularly followed standard, a defendant must "have been apprised of" the existence of the procedural rule and the manner in which it was applied. *Id*. at 423.

3.      The "Cause and Prejudice" Standard.

"A federal court may still address the merits of a procedurally defaulted claim if the petitioner can show cause for the default and actual prejudice resulting from the alleged constitutional violation." *Ward*, 592 F.3d at 1157 (citing *Wainwright v. Sykes*, 433 U.S. 72, 84-85 (1977)). This so-called "cause *and* prejudice" standard is clearly framed in the conjunctive; therefore, a petitioner must affirmatively prove both cause and prejudice. *See id.* (emphasis added). To show "cause," a petitioner must prove that "some objective factor external to the defense impeded counsel's efforts"

16

to raise the claim previously. *Carrier*, 477 U.S. at 488; *see also Amadeo v. Zant*, 486 U.S. 214, 221-22 (1988).

> Objective factors that constitute cause include "'interference by officials'" that makes compliance with the State's procedural rule impracticable, and "a showing that the factual or legal basis for a claim was not reasonably available to counsel." In addition, constitutionally "[i]neffective assistance of counsel . . . is cause." Attorney error short of ineffective assistance of counsel, however, does not constitute cause and will not excuse a procedural default.

*McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991) (citations omitted); *see also Martinez*, 2012 WL 912950 at *5 ("Inadequate assistance of counsel at initial-review collateral proceeding may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."); *Coleman*, 501 U.S. at 754 ("Attorney error that constitutes ineffective assistance of counsel is cause . . . ."). Further, "where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim in accordance with applicable state procedures." *Reed v. Ross*, 468 U.S. 1, 16 (1984).

Once he has proved cause, a habeas petitioner must also prove prejudice. Such a showing must go beyond proof "that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *see also McCoy v. Newsome*, 953 F.2d 1252, 1261 (11th Cir. 1992) (per curiam). But even when exhaustion and procedural default are not at issue, federal review of a claim is fairly restricted if the state court decided the issue on the merits.

C.     **RULES GOVERNING HABEAS CORPUS CASES UNDER § 2254.**

    1.     **28 U.S.C. § 2254(d) and (e).**

By enacting the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),[16]

Congress significantly limited the circumstances under which a habeas petitioner may obtain relief.

Indeed, under the AEDPA, a petitioner is only entitled to relief on a federal claim if he shows that

"the state court decision was (1) 'contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States'; or was (2) 'based

on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding.'" *Boyd v. Allen*, 592 F.3d 1274, 1292 (11th Cir. 2010) (quoting 28 U.S.C. § 2254(d));

*see also Miller-El v. Dretke*, 545 U.S. 231 (2005); *Williams v. Taylor*, 529 U.S. 362, 404 (2000).

Moreover, "[a] state court's factual findings are presumed correct unless rebutted by the petitioner

with clear and convincing evidence." *Boyd*, 592 F.3d at 1293 (citing § 2254(e)(1)).

    A state court's adjudication of a claim will be sustained under § 2254(d)(1) unless it is

"contrary to" clearly established Supreme Court precedent or it is an "unreasonable application" of

that law. These considerations present two different inquiries, not to be confused or conflated, as the

Supreme Court explained in *Williams v. Taylor*:

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may
> obtain federal habeas relief with respect to a claim adjudicated on the merits in state
> court.  Under the statute, a federal court may grant a writ of habeas corpus if the
> relevant state-court decision was either (1) "*contrary to* . . . clearly established
> Federal law, as determined by the Supreme Court of the United States," or (2)
> "*involved an unreasonable application of* . . . clearly established Federal law, as
> determined by the Supreme Court of the United States."

---

[16] *See* Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996) (codified as amended in scattered sections of 28 U.S.C.).

18

529 U.S. at 404-05; *see also Alderman v. Terry*, 468 F.3d 775, 790-91 (11th Cir. 2006) ("[T]he 'contrary to' and 'unreasonable application' clauses are interpreted as independent statutory modes of analysis." (citation omitted)).   Further, the AEDPA limits the source of "clearly established Federal law . . . to the holdings, as opposed to the dicta, of the [Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412 (internal quotation marks omitted).[17]

A state-court determination can be "*contrary to*" clearly established Supreme Court precedent in either of two ways:

> First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.

*Williams*, 529 U.S. at 405 (citation omitted).

Likewise, a state-court determination can be an "*unreasonable application*"[18] of clearly established Supreme Court precedent in either of two ways:

> First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case.  Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

---

[17] *See also Bowles v. Sec'y, Dep't of Corr.*, 608 F.3d 1313, 1316 (11th Cir. 2010) ("[F]ederal law is 'clearly established' only when it is 'embodied in a holding' of the Supreme Court.  Dicta in Supreme Court opinions is not enough.  Nor can anything in a federal court of appeals decision, even a holding directly on point, clearly establish federal law for § 2254(d)(1) purposes." (citations omitted)).

[18] "[W]hen the federal court is faced with a 'run-of-the-mill state-court decision applying the correct legal rule,' the companion 'unreasonable application' provision of § 2254(d)(1) is the proper statutory lens." *Alderman v. Terry*, 468 F.3d 775, 791 (11th Cir. 2006) (citation omitted).

*Id*. at 407 (citation omitted).

Whether a particular application of Supreme Court precedent is "unreasonable" turns not on subjective factors, but on whether the application of Supreme Court precedent at issue was "objectively unreasonable." *See Putman v. Head*, 268 F.3d 1223, 1241-49 (11th Cir. 2001). However, the Supreme "Court has held on numerous occasions that it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1419 (2009) (citations and internal quotation marks omitted). Therefore, the proper inquiry under the AEDPA "is not whether a federal court believes the state court's determination was incorrect but whether that determination was *unreasonable*—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (emphasis added) (citation omitted).

Finally, "§ 2254(d)(2) regulates federal court review of state court findings of fact; the section limits the availability of relief to 'decisions that were based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Alderman v. Terry*, 468 F.3d 775, 791 (11th Cir. 2006) (brackets omitted) (quoting § 2254(d)(2)). And commensurate with the deference accorded to a state court's factual findings, "the petitioner must rebut 'the presumption of correctness [of a state court's factual findings] by clear and convincing evidence.'" *Ward*, 592 F.3d at 1155-56 (alterations in original) (quoting § 2254(e)(1)).[19] "This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." *Bui*

---

[19] *See also Schriro v. Landrigan*, 550 U.S. at 473-74 ("AEDPA also *requires* federal habeas courts to presume the correctness of state courts' factual findings *unless* applicants rebut this presumption with 'clear and convincing evidence.'" (emphasis added) (quoting § 2254(e)(1))).

*v. Haley*, 321 F.3d 1304, 1312 (11th Cir. 2003) (citing *Sumner v. Mata*, 449 U.S. 539, 547 (1981)).[20]

Having explained the scope of this court's authority to review state court decisions, the court now examines the federal procedural rules applicable to the controversy presently before it.

### 2.    Procedural Rules Governing Habeas Corpus Cases Under § 2254.

Because "habeas corpus review exists only to review errors of constitutional dimension," a habeas corpus petition must meet the "heightened pleading requirements [of] 28 U.S.C. § 2254 Rule 2(c)." *McFarland v. Scott*, 512 U.S. 849, 856 (1994) (citation omitted). "[T]he petition must 'specify all the grounds for relief available to the petitioner' and 'state the facts supporting each ground.'" *Mayle v. Felix*, 545 U.S. 644, 655 (2005) (quoting Rule 2(c) of the Rules Governing Section 2254 Cases in the U.S. District Courts, 28 U.S.C. foll. § 2254). Accordingly, a "general reference to the transcripts, case records and briefs on appeal patently fails to comply with Rule 2(c)." *Phillips v. Dormire*, No. 4:04CV1483, 2006 WL 744387, at *1 (E.D. Mo. Mar. 20, 2006) (citing *Adams v. Armontrout*, 897 F.2d 332, 333 (8th Cir. 1990)); *see also Grant v. Georgia*, 358

---

[20] In the unusual instances where the state trial and appellate courts rely on different legal theories in denying a petitioner's claim on the merits, both holdings are entitled to AEDPA deference. *See Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 752 (11th Cir. 2010). As the Eleventh Circuit explained in the context of an ineffective assistance of counsel claim,

> The state collateral trial court denied this claim based on *Strickland*'s performance element and did not mention the prejudice element. *See Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069 ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one."). The court determined that: "[Allen] did not give counsel any theory of innocence to investigate prior to the sentencing phase. Thereafter, the theory was put forward as a possibility, not as fact. Under those circumstances, Counsel cannot be deemed ineffective for failure to investigate the Defendant's subsequently disclosed theory of innocence." *Florida v. Allen*, No. 92-30056-CF, slip op. at 44. The Florida Supreme Court denied this claim based on *Strickland*'s prejudice element. *See Allen II*, 854 So.2d at 1258 n. 5 (holding that this claim "lacks merit because Allen was not prejudiced by counsel's performance in the guilt phase"). *Under AEDPA we owe deference to both of those decisions. See Hammond*, 586 F.3d at 1331; *see also Cone*, 129 S.Ct. at 1784.

*Id.* (emphasis added); *see also Hammond v. Hall*, 586 F.3d 1289, 1330-32 (11th Cir. 2009) ("The Georgia courts, considered collectively, gave two consistent reasons for deciding against this claim. Each reason is due deference.").

F.2d 742 (5th Cir. 1966) (per curiam) ("The application fails to allege any facts upon which the trial court could find a deprivation of a constitutional right, or any other basis for collateral attack. Mere conclusionary allegations will not suffice." (citation omitted)).[21]

The burden of proof is on the habeas petitioner "to establish his right to habeas relief and he must prove all facts necessary to show a constitutional violation." *Blankenship v. Hall*, 542 F.3d 1253, 1270 (11th Cir. 2008).[22] That is, to carry this burden, "a petitioner must state specific, particularized facts which entitle him or her to habeas corpus relief for each ground specified. These facts must consist of sufficient detail to enable the court to determine, from the face of the petition alone, whether the petition merits further habeas corpus review." *Adams*, 897 F.2d at 334; *see also Beard v. Clarke*, 18 F. App'x 530, 531 (9th Cir. 2001) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief. . . . Notice pleading is insufficient; the petitioner must state sufficient facts." (citations omitted)).[23] Therefore, the mere assertion of a ground for relief, without more factual detail, does not satisfy a petitioner's burden of proof or the requirements of 28 U.S.C. § 2254(e)(2) and Rule 2(c) of the Rules Governing Section 2254 Cases in the U.S. District Courts, 28 U.S.C. foll. § 2254. *See Smith v. Wainwright*, 777 F.2d 609, 616 (11th Cir. 1985) (holding that a general allegation of ineffective assistance of counsel is

---

[21] The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), adopted as binding precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

[22] *See also Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) ("If there has been no evidentiary hearing in state court on an issue raised on habeas corpus, one is required if the petitioner alleges facts which, if true, would entitle him to relief."); *Hill v. Linahan*, 697 F.2d 1032, 1036 (11th Cir. 1983) ("The burden of proof in a habeas proceeding is always on the petitioner.").

[23] *See also* Advisory Committee Note to Rule 4 of the Rules Governing Cases 2254 Cases in the U.S. District Courts, 28 U.S.C. foll. § 2254 ("[N]otice pleading is not sufficient [in habeas proceedings], for the petition is expected to state facts that point to a real possibility of constitutional error." (internal quotation marks omitted) (quoting *Aubut v. Maine*, 431 F.2d 688, 689 (1st Cir. 1970)).

insufficient; a petition must allege specific errors in counsel's performance and facts showing prejudice). The Supreme Court has stated that "[a] prime purpose of Rule 2(c)'s demand that petitioners plead with particularity is to assist the district court in determining whether the State should be ordered to 'show cause why the writ should not be granted,' [or whether] . . . the court must summarily dismiss the petition without ordering a responsive pleading." Mayle, 545 U.S. at 656 (citing 28 U.S.C. § 2243 (2006), Habeas Corpus R. 4, 5(b)) (internal citations omitted). This court has reviewed Taylor's habeas petition, and finds that the petitioner has satisfied Rule 2(c)'s threshold requirement. The court will now address each of the petitioner's claims in turn.

### PETITIONER'S CLAIMS

Taylor's Habeas Petition (Doc. 1) raises twenty potential grounds for relief, many of which contain multiple sub-claims. The court will address each separately and in turn.

I.   **MR. TAYLOR WAS DENIED DUE PROCESS AND EFFECTIVE ASSISTANCE OF COUNSEL BY THE SYSTEM OF ATTORNEY COMPENSATION IN EFFECT AT THE TIME OF HIS TRIAL, IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS. (DOC. 1, PP. 10-11; DOC. 36-1, PP. 42-45).**

A.   **The Parties' Respective Arguments.**

Taylor's Petition supports this claim, "Ground I," with only one factual statement:

The testimony and billing records of Charles Hart show that [the] rate of compensation at the time of Mr. Taylor's trial was $40 an hour for in-court time and $20 an hour for out-of-court preparation, with a cap of 150 hours.

(Doc. 1, p. 11 (citing Rule 32 R. Vol. 21, pp. 712-41; Rule 32 C.R. Vol. 24, Tab. 58, p. 427)).[24]

---

[24] At the time of Taylor's trial, Alabama did not have "a cap of 150 hours" for out-of-court work by counsel representing indigent defendants. *See* Ala. Code § 15-12-21 (1975) (amended in 1999 and 2002). Actually, at the time a statutory fee limitation applied of $1,000 for out-of-court work, which was paid at a rate of $20 per hour. *See, e.g., Arthur v. State*, 711 So. 2d 1031, 1072 (Ala. Crim. App. 1996). As such, attorneys could only be reimbursed for fifty (50) hours of out-of-court work. But this point is not the only logical step missing from Taylor's argument. As he stated within his Second Amended Rule 32 Petition, "the maximum number of out-of-court hours for which [his counsel] could be paid was calculated according to the number of capital murder counts on [sic] the indictment," which in Taylor's case

In contrast, Taylor's Reply Brief does not address this claim as a separate "Ground" warranting habeas relief.  Rather, he discusses this claim only in conjunction with his ineffective assistance of counsel claim.  (*See* Doc. 36-1, pp. 42-45).  In particular, he raised it as part of his mitigation defense sub-claim.  *See id.*  Taylor contends that the statutory caps imposed by the Alabama Legislature[25] "undoubtedly hampered [his trial] counsel's performance."  *Id.* at 43 (citation omitted).  And he further claims that his counsel's subsequent statements at the Rule 32 hearing "that the statutory cap did not cause them to be 'less zealous' are belied by their billing records and statements at trial."  *Id.* (citing Rule 32 C.R. Vol. 20, pp. 592-93).[26]  As support, Taylor cites his counsel's statements made in conjunction with their funding request for an investigator, wherein Downs argued to the trial court: "Judge, there's just so many hours in a day.  It's not fair to expect Mr. Hart and I (sic) to just quit our practice and devote eight hours a day to this case for the next three weeks."  *Id.* at 44 (quoting R. Vol. 4, Tab. 6, p. 182).  In addition, he states that his counsel's billing records show they only spent "a few hours a month, at most, . . . until three weeks before

---

was three.  (Rule 32 C.R. Vol. 19, Tab. 49, p. 5).  And thus, it now becomes clear as to how Taylor arrives at his present claim that there was "a cap of 150 hours" for work out-of-court at the time of his trial, *i.e.*, three counts of capital murder multiplied by the fifty  hour maximum for out-of-court work for each count yields Taylor's "cap of 150 hours." (*See, e.g.*, Doc. 1, p. 11).

[25] *See* Ala. Code § 15-12-21 (1975) (amended in 1999 and 2002).

[26] This reference to the clerk's record of Taylor's Rule 32 proceedings is actually to the Rule 32 circuit court's opinion after remand.  (*See* Doc. 36-1, p. 43 (citing Rule 32 C.R. Vol. 20, pp. 592-93)).  As such, it can also be found later in the record supplied to this court.  (*See* Rule 32 C.R. Vol. 37, Tab. 84, pp. 14-15).  Either way it is not the last reasoned opinion by a state court to address this issue.  *See Taylor v. State*, 10 So. 3d 1037, 1051-52 (Ala. Crim. App. 2004).  Nevertheless, the Court of Criminal Appeals held: "To the extent he raises an ineffective-assistance-of-counsel claim, his argument is without merit.  Specifically, Hart testified during the evidentiary hearing that the statutory cap did not affect his work on the case.  Therefore, the appellant has not satisfied his burden under *Strickland* on this ground." *Id.* at 1052.  And this ruling was in addition to that court's prior ruling, which stated: "To the extent he challenges the statutory limit on attorney fees in capital cases, his argument is procedurally barred because he could have raised it at trial and on appeal, but did not."  *Id.* at 1051-52 (citing Ala. R. Crim. P. 32.2(a)(3), (5)).

24

trial." *Id.*[27]  Taylor argues that by this time, however, "it was far too late to conduct an adequate

investigation and to make reasonably informed strategy decisions."  (Doc. 36-1, p. 44).

Finally, Taylor claims:

> The limits on appointed-attorney compensation imposed by the [Alabama]
> Legislature at the time of Mr. Taylor's trial deprived him of the effective assistance
> of counsel, Due Process, and Equal Protection.[[28]]  Given the factual complexity of
> a capital case and the labor intensive-character of a reasonable mitigation
> investigation, a legislative cap of [150] hours per case infringes on the guarantees of
> Gideon v. Wainwright, 372 U.S. 335 (1963).  This cap and withholding of necessary
> resources no doubt contributed to the ineffectiveness of petitioner's already ill-
> equipped counsel. . . .

(Doc. 36-1, p. 45).[29]

Respondents answer by stating that this claim is procedurally defaulted for two separate

reasons and, alternatively, that it is due to be denied on the merits.  (*See* Doc. 13, pp. 7-11; Doc. 14,

pp. 15-17, 21-25).  Respondents argue that, "to the extent Taylor challenges the statutory limit on

---

[27] For Hart and Downs's billing records, see Rule 32 C.R. Vol. 21, pp. 712-60 (Petitioner's Exhibit No. 2-3: "Attorney Fee Declaration" of Hart and Downs, respectively).

[28] Taylor's Petition, even liberally construed, does not list "Equal Protection" as a basis for habeas relief.  (*See* Doc. 1, pp. 10-11).  While his Petition does cite the "Fourteenth Amendment," that Amendment contains a number of provisions, including, *inter alia*, both a due process and equal protection clauses.  Because Taylor claims being "denied due process" but not equal protection in his Petition, (*see* Doc. 1, p. 10), his equal protection claim must be viewed as novel to his Reply Brief, (*see* Doc. 36-1, p. 45).  As such, it will not be addressed further.  *See, e.g.*, *Broughton v. HPA Subway, Inc.*, No. 11-0036-WS-N, 2011 WL 1321728, at *1 (S.D. Ala. April 5, 2011) ("District courts, including this one, ordinarily do not consider arguments raised for the first time in a reply." (footnote omitted)); *Cooper v. Sec'y, DOC*, No. 08CV-5T-27MAP, 2011 WL 795812, at *7-8 (M.D. Fla. Mar. 1, 2011); *Park City Water Auth. v. N. Fork Apartments, L.P.*, No. 09-0240-WS-M, 2009 WL 4898354, at *1 & n. 2 (S.D. Ala. Dec. 14, 2009) (listing cases from over forty districts in 2009 alone adhering to the rule that district courts "ordinarily do not consider arguments raised for the first time in a reply").

Nevertheless, the court assumes that Taylor's equal protection claim asserts that the compensation caps deprive him and other indigent defendants of equal protection because the caps result in a denial of effective assistance of counsel.  But this argument amounts to nothing more than claiming he was deprived of effective assistance of counsel because he received ineffective assistance of counsel—a tautology at best.  In short, the foregoing adds nothing to the analysis of the claim that Taylor received ineffective assistance of counsel, which necessarily turns on counsel's actual performance at trial, not on what he might have done if he had unlimited resources.

[29] In this portion of Taylor's Reply Brief, he incorrectly states "50 hours" rather than "150 hours" as he stated earlier in both his Petition and Reply Brief.  (*See, e.g.*, Doc. 36-1, pp. 43).  The error is corrected in the quotation above.

attorney fees in capital cases," his claim is procedurally defaulted in two respects: (1) "Taylor did

not raise this issue at trial or on direct appeal, under Alabama Rules of Criminal Procedure 32.2(a)(3)

and (a)(5)"; and (2) "he failed to fairly present this claim to the state courts."  (Doc. 14, pp. 28-29).

Regarding the first aspect of procedural default, Respondents claim that "Taylor did not raise

this claim *at trial*."  (Doc. 13, p. 7 (emphasis added)).  Respondents contend:

> Taylor's failure to raise this claim at trial was a procedural default under state law,
> which bars consideration of this claim on federal habeas corpus review.  *See, e.g.*,
> *Engle v. Issac*, 456 U.S. 107 (1982); *Wainwright v. Sykes*, 433 U.S. 72 (1977);
> *Baldwin v. Johnson*, 152 F.3d 1304, 1318-1320 (11th Cir. 1998); *Magwood v. Smith*,
> 791 F.2d 1438, 1444 (11th Cir. 1986).  Alabama law precludes collateral review of
> issues that could have been but were not raised at trial.  Ala. R. Crim. P. 32.2(a)(3).
> *See, e.g.*, *Bui v. State*, 616 So. 2d 6, 28 (Ala. Crim. App. 1997); *Daniels v. State*, 650
> So. 2d 544, 551 (Ala. Crim. App. 1994).

*Id.* at 7-8 (parallel citations omitted).

Moreover, Respondents claim that "Taylor did not raise this claim *on direct appeal*."  *Id.* at

8 (emphasis added).  Respondents support this contention by stating that:

> [Taylor's] failure to raise this claim on direct appeal was a procedural default under
> state law, which bars federal habeas corpus review of this claim.  *See, e.g.*, *Caniff v.
> Moore*, 269 F.3d 1245, 1246-47 (11th Cir. 2001); *Baldwin*, 152 F.3d at 1318-1320;
> *Magwood*, 791 F.2d at 1444; *King v. Strickland*, 714 F.2d 1481, 1491-1492 (11th
> Cir. 1983) ("The failure to bring up an issue on appeal, no less than at trial, may
> preclude federal habeas corpus review.").  Alabama law precludes collateral review
> of issues that could have been but were not raised on direct appeal.  Ala. R. Crim. P.
> 32.2(a)(5).  *See McGahee v. State*, 885 So. 2d 191, 228 (Ala. Crim. App. 2003);
> *Tarver v. State*, 761 So. 2d 266, 268 (Ala. Crim. App. 2000).

*Id.* at 8.  And finally, Respondents conclude:

> Taylor raised this claim in his second amended Rule 32 petition.  The Rule 32 circuit
> court found that this claim was procedurally barred from review because Taylor
> could have but did not raise it at trial or on direct appeal, under Rules 32.2(a)(3) and
> (5) of the Alabama Rules of Criminal Procedure.  [(Rule 32 C.R. Vol. 37, Tab. 84,
> pp. 14-15).]  Taylor's failure to raise that claim at trial or on direct appeal was a
> procedural default under state law, which bars consideration of this claim on federal
> habeas corpus review.  *See Richardson v. Johnson*, 864 F.2d 1536, 1539 (11th Cir.

1989) ("Claims that are procedurally barred from state coram nobis review are procedurally barred from federal habeas review."); *Lindsey v. Smith*, 820 F.2d 1137, 1143 (11th Cir. 1989).

*Id.* at 8-9.

As to the second aspect of procedural default, Respondents claim that "Taylor failed to fairly present this claim to the state courts." (Doc. 13, p. 9; *see also* Doc. 14, p. 22 (same)). Respondents support this claim by contending that:

> Habeas petitioners generally cannot raise claims in federal court if those claims were not first exhausted in state court. 28 U.S.C. § 2254(b)(1). In his brief in support of his Rule 32 petition, Taylor vaguely mentions a total of three federal cases but fails to provide any analysis to show how any of these cases support his claim regarding Alabama's attorney compensation system. Moreover, Taylor simply repeated the same argument in his petition for writ of certiorari and his brief in support thereof. (Habeas Checklist: Vol. 14, Tab #R-32, #R-33) Therefore, Taylor did not give the state courts a fair opportunity to decide the claim. Dismissal of his habeas petition to allow Taylor to present that claim fairly as a federal claim in state court now would be futile because he would be barred from raising it in state court under Rule 32.2(c) of the Alabama Rules of Criminal Procedure (statute of limitations bar) and Rule 32.2(b) (successive petition bar). Because any remedy with respect to his claim is procedurally barred by the state procedural rules noted above, Taylor's claim is procedurally defaulted from review. This court should, therefore, dismiss this claim.

(Doc. 13, p. 9; *see also* Doc. 14, p. 22 (same)).

Alternatively, Respondents answer that "to the extent Taylor raises an ineffective assistance of counsel claim, the issue was denied on the merits by the Alabama Court of Criminal Appeals." (Doc. 13, p. 10 (citing *Taylor v. State*, 10 So. 3d 1037, 1050-51 (Ala. Crim. App. 2004)); *see also* Doc. 14, pp. 22-23 (same)). Specifically, Respondents argue that "the Court denied the same, noting that even Taylor's attorney, Charles Hart, testified during the evidentiary hearing that the statutory cap did not affect his work on the case." (Doc. 14, pp. 22-23 (citing *Taylor v. State*, 10 So. 3d 1037, 1050-51 (Ala. Crim. App. 2004))).

Further, Respondents argue:

It should be noted that the fee cap for court-appointed attorneys in capital cases at the time of Taylor's trial has repeatedly been upheld against constitutional challenge. For example, in *Ex parte Grayson*, 479 So. 2d 76, 79 (Ala. 1985), the Alabama Supreme Court rejected the argument that extremely low funding provided by the State of Alabama for the compensation of a capital defense attorney offers a basis for ineffective assistance of counsel. In *Bui v. State*, 717 So. 2d 6, 15 (Ala. Crim. App. 1997), the Alabama Court of Criminal Appeals "reject[ed] the notion that Alabama's statutory scheme for compensating attorneys in capital cases, in and of itself, denies a defendant effective representation." Furthermore, in *Ex parte Smith*, 698 So. 2d 219, 224 (Ala. 1997), the Alabama Supreme Court held that the petitioner had failed to prove that his counsel's performance was hindered, or that his constitutional rights were violated, by Alabama's statutory system for attorney compensating attorneys appointed to indigent defendants.

Similarly, in Taylor's case, the Rule 32 circuit court found, as follows:

At the evidentiary hearing, counsel for Taylor elicited no evidence from Downs that the cap on his personal compensation caused him to be any less zealous in his defense of Taylor. Hart specifically indicated that the cap on compensation did not slow down his investigation and defense for Taylor. Taylor also failed to present any evidence at the evidentiary hearing that would have allowed this Court to order personal compensation of his trial counsel to excess of the statutory limits in effect at the time of Taylor's trial. Taylor has failed to carry his burden of affirmatively proving that the monetary cap on Hart and Down's personal compensation caused their performance to be deficient or caused him to be prejudiced as required by *Strickland*. [*See also*, Rule 32.3, ARCrP. This claim is without merit and is, therefore, denied by the Court.][30]

[(Rule 32 C.R. Vol. 37, Tab. 84, pp. 14-15)].

In other words, the circuit court found that Taylor could not establish deficient performance and prejudice with regard to his claim that his trial counsel were ineffective due to lack of compensation.

In reviewing the circuit court's ruling, the Alabama Court of Criminal

---

[30] The Respondents' Brief on the Merits, in quoting the Rule 32 circuit court's opinion before remand, omits the following from the end of its quotation: "*See also*, Rule 32.3, ARCrP. This claim is without merit and is, therefore, denied by the Court." (*Compare* Doc. 14, p. 24, *with* Rule 32 C.R. Vol. 37, Tab. 84, p. 15). The court, however, thought it best to reproduce that court's ruling in its entirety and, therefore, added the omitted portion above in brackets.

Appeals affirmed this ruling and simply stated, "Therefore, the appellant has not satisfied his burden under *Strickland* on this ground." [*Taylor v. State*, 10 So. 3d 1037, 1050-51 (Ala. Crim. App. 2004)]. Moreover, in remanding the circuit court's initial final order to address twenty ineffective assistance claims, the Alabama Court of Criminal Appeals did not require further inquiry into this claim. [*Taylor v. State*, 10 So. 3d 1079 (Ala. Crim. App. 2006)].

(Doc. 14, pp. 23-24).

## B.    The Question of Procedural Default.

When this claim was raised for the first time during post-conviction proceedings, the Rule 32 circuit court found that it was procedurally barred pursuant to Rules 32.2(a)(3) and (5) of the Alabama Rules of Criminal Procedure, which bars relief based upon any ground that could have been raised either at trial or on appeal, but was not raised. (*See* Rule 32 C.R. Vol. 37, Tab. 84, pp. 14-15). Because this particular claim of Taylor's was not presented to the state court at the time and manner dictated by the state's procedural rules, the procedural default doctrine prevents Taylor from raising it in federal court so long as the state court's ruling was based on "adequate and independent state grounds." *Ward*, 592 F.3d at 1156-67.

The last state court to issue a reasoned opinion on this issue was the Court of Criminal Appeals after remand. It held:

> Second, [Taylor] contends that his attorneys rendered ineffective assistance, in part, due to allegedly inadequate compensation. To the extent he challenges the statutory limit on attorney fees in capital cases, his argument is procedurally barred because he could have raised it at trial and on appeal, but did not. *See* Rule 32.2(a)(3) and (a)(5), Ala. R. Crim. P. To the extent he raises an ineffective-assistance-of-counsel claim, his argument is without merit. Specifically, Hart testified during the evidentiary hearing that the statutory cap did not affect his work on the case. Therefore, the appellant has not satisfied his burden under *Strickland* on this ground.

*Taylor v. State*, 10 So. 3d 1037, 1051-52 (Ala. Crim. App. 2004).

Here lies the difficulty with applying the *Judd* test: the Court of Appeals purported to base

its decision *both* on a state procedural rule *and* the merits of Taylor's claim. Though the court qualified its analysis with the phrase "*to the extent that* [Taylor] raises an ineffective-assistance-of-counsel claim," the court then proceeded to describe his claim as being "without merit." *Taylor v. State*, 10 So. 3d at 1051-52 (emphasis added). Then, two sentences later, the court states that Taylor "has not satisfied his burden under *Strickland*," indicating a clear interpretation of federal law. *Id*.

However, as was stated above, "a state court need not fear reaching the merits of a federal claim in an alternative holding. Through its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law." *Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999) (quoting *Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989)). Although the Eleventh Circuit recently held that a ruling by an Alabama Court under Alabama Rule of Criminal Procedure 32.6(b) — which requires that the petition for postconviction relief must state with specificity the grounds for postconviction relief — is a ruling on the merits for purposes of procedural default, the Eleventh Circuit's concerns in *Borden* do not extend to rulings under Rule 32.2. *See Borden v. Allen*, 646 F. 3d 785, 816 (11th Cir. 2011).

The Eleventh Circuit emphasized in *Borden* that Rule 32.6 requires "fact pleading," much as the federal courts use in §§ 2254 and 2255 proceedings, requiring that the petition "contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings." *Id*. at 811 (quoting Ala. R. Crim. P. 32.6(b)). To determine whether the rule has been satisfied, the court must consider the merits of the petitioner's claim based on the sufficiency of the facts he pleads. Rule

32.2, however, which bars relief for any ground that could have been raised on trial or appeal, but was not raised, does not require such heightened fact pleading. *See* Ala. R. Crim. P. 32.2. Thus, the *Borden* rule is inapplicable in this instance. Therefore, this court finds that the ruling of the Alabama Court of Criminal Appeals was based on adequate and independent state grounds, and is thus procedurally barred from federal habeas review.

### C.     Merits.

Though this claim is procedurally defaulted, this court will endeavor to address the merits as did the state courts. Aside from the vague assertion that the compensation limits hindered his defense and from referencing his trial counsel's billing records, Taylor's Petition provides no factual basis for his claim. Taylor's Petition invokes "the Fifth, Sixth, Eighth, and Fourteenth Amendments." (Doc. 1, p. 11). Petitioner never clearly articulates exactly how and in what manner the Fifth, Eighth, and Fourteenth Amendments relate to his claim.[31] Taylor's Sixth Amendment claim appears to be based on the assertion that inadequate funding deprived him of effective assistance of counsel, as the Sixth Amendment requires, because his attorneys lacked the resources to properly defend him. *See* U.S. Const. amend. XI.

The Supreme Court established a two-part test in *Strickland v. Washington*, 466 U.S. 668, 690 (1984), to determine whether an individual has been deprived of his right to effective counsel because of attorney performance. The defendant must show first that the counsel's performance was

---

[31] As stated above, Taylor's Petition does not elaborate further upon his claim that Alabama's system of attorney compensation violated his Fifth, Eighth, and Fourteenth Amendments rights, (*see* Doc. 1, pp. 10-11), and his Reply Brief only discusses this claim in relation to his mitigation defense, ineffective assistance of counsel sub-claim, (*see* Doc. 36-1, pp. 42-45), which concerns Taylor's rights under the Sixth Amendment.  On the other hand, the court views the passing reference in Taylor's Petition to being "denied due process" as the basis for his claims under the Fifth and Fourteenth Amendments, (Doc. 1, p. 10), yet Taylor fails to cite any legal authority or even discuss this claim further in his Reply Brief other than making a bald assertion that he was "deprived . . . of . . . Due Process," (Doc. 36-1, p. 45).  Without more, the court is unable to assess the validity of these additional bases.  And regarding Taylor's assertion of "Equal Protection" within his Reply Brief, the court previously addressed this passing reference in note 28 *supra*.

deficient, and second, that those deficiencies caused the defendant real prejudice. *Strickland*, 466 U.S. at 687. That test will be discussed in greater detail in Part XIX of this opinion, which addresses Taylor's express ineffective assistance of counsel claims. Taylor's claim that the state statutory cap on attorney compensation deprived him of effective counsel can be dealt with without delving too deeply into the requirements of *Strickland*.

In *Strickland*, the Supreme Court wrote:

> A convicted defendant making a claim of ineffective assistance must identify *the acts or omissions* of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, *the identified acts or omissions* were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. . . .

*Strickland*, 466 U.S. at 690 (emphasis added). The *Strickland* standard requires analyzing specific errors or shortcomings by counsel.[32] Inadequate funding of counsel appointed to represent capital defendants, as unfair as it might be to both attorneys and their clients, does not itself amount to ineffective assistance of counsel unless it contributes to actual errors or shortcomings in the performance of counsel. *Id*.

Taylor fails to point to any specific errors committed by his counsel that *derive from inadequate funding*. Although Taylor states that the statutory cap caused his counsel to be "less zealous" and baldly asserts that it affected his counsel's investigation and presentation of his mitigation defense, his claim is devoid of any meaningful analysis linking the statutory cap with this

---

[32]Taylor does not contend that *United States v. Cronic*, 466 U.S. 648 (1984), requires a different result. The compensation caps are not the type of circumstances that make it unlikely that any lawyer could render effective assistance. Moreover, Taylor makes no contention that his case fits either of the two other *Cronic* circumstances - complete denial of counsel at a critical stage and the complete failure of counsel to subject the prosecution's case to meaningful adversarial testing. *See Bell v. Cone*, 535 U.S. 685 (2002).

claim.  (Doc. 1, p. 43 (citing Rule 32 C.R. Vol. 20, pp. 592-93)).[33]  Taylor does point to several alleged errors committed by his attorneys, which comprise his ineffective assistance of counsel claim, discussed by this court at length in Part XIX of this opinion, but does not, in his brief factual averment under this first ground for relief, explain how the statutory cap has deprived him of effective counsel.

Consequently, as a claim of ineffectiveness divorced from analysis of particular errors or omissions, the assertion that the State of Alabama provides inadequate compensation for capital defense counsel fails to state a basis for *habeas* relief, and it is due to be denied.  Alternatively, the habeas claim fails to show that the state court's rejection of it is contrary to or an unreasonable application of clearly established federal law, or an unreasonable determination of the facts in light of the evidence before it.  *See* 28 U.S.C. § 2254(d).  This claim is due to be dismissed, or in the alternative, due to be denied.

## II.   THE TRIAL COURT DENIED MR. TAYLOR'S MOTION FOR INVESTIGATIVE EXPENSES IN VIOLATION OF HIS RIGHTS TO DUE PROCESS, A FAIR TRIAL, AND A RELIABLE SENTENCING DETERMINATION, AS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS.  (DOC. 1, P. 11; DOC. 36-1, PP. 253-66).[34]

---

[33] The court notes that Taylor's claim regarding Alabama's allegedly inadequate system of attorney compensation is not to be conflated with his separate claim concerning the trial court's denial of investigatory expenses. (*See* Doc. 36-1, pp. 42-46). While Taylor argues both, in tandem, with his mitigation defense, ineffective assistance sub-claim, *see id.*, it is also listed as a separate ground for relief in both his Petition and Reply Brief, (*see* Doc. 1, p. 11; Doc. 36-1, pp. 253-66).  Further, the court addresses Taylor's denial of investigatory expenses claim in Part II *infra*.

[34] Taylor also raises this claim within his ineffective assistance, mitigation defense sub-claim.  (*See* Doc. 36-1, p. 42-43, 45-46).  In that context, Taylor claims his "[c]ounsel's deficient performance was also exacerbated by a combination of Alabama's system of inadequate compensation of counsel and the trial court's refusal to appoint an investigator."  *Id.* at 42-43.  Even though he makes this argument as part of his ineffective assistance claim, he also recognizes the duality this claim as a separate ground for relief because he proceeds to state: "[W]hile some of counsel's investigative shortcomings might have been remedied with the services of an investigator, the court declined to appoint one, further hampering the defense."  *Id.* at 45-46 (citing Doc. 36-1, pp. 253-66 ("Point III")).

Although Taylor makes this contention in two contexts, the court will address the merits of his underlying substantive claim as a separate ground for relief, which corresponds with the format of Taylor's Petition.  (*See* Doc. 1, p. 11).  Further, the court will discuss it briefly within the context of his ineffective assistance, mitigation defense sub-claim.  *See* Part XIX(B)(1)(a)(i) *infra*.

A. **Summary of the Parties' Respective Arguments.**

Taylor's Petition supports this ground for relief with the following factual averments:

> The trial court denied Mr. Taylor's application for funds to hire an investigator. Counsel's application established the necessity for an investigator to assist in locating and interviewing witnesses. Denial of the application undermined counsel's ability to prepare for trial and to present mitigating evidence regarding Mr. Taylor's background and character at the penalty phase [(C.R. Vol. 1, p. 152; R. Vol. 4, pp. 181-83, 207-08)].

(Doc. 1, p. 11).

Respondents answer by claiming "[t]his issue was raised on direct appeal and denied on the merits by the Alabama Court of Criminal Appeals." (Doc. 13, p. 11 (citing *Taylor v. State*, 666 So. 2d 36, 59-60 (Ala. Crim. App. 1994)); *see also* Doc. 14, p. 25 (same)). Respondents contend:

> Specifically, the Court found no violation of *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). In *Ake*, the United States Supreme Court stated, "This Court has long recognized that when a State brings its judicial power to bear on an indigent defendant in a criminal proceeding, it must take steps to assure that the defendant has a fair opportunity to present his defense." *Id.* at 76. . . .

(Doc. 14, p. 25). Respondents proceed to quote a large portion of the Alabama Court of Criminal Appeals's opinion on direct appeal, *id.* at 25-26 (quoting *Taylor v. State*, 666 So. 2d 36, 59-60 (Ala. Crim. App. 1994)), which is reproduced in its entirety below. In conclusion, Respondents argue:

> It is clear that Taylor was not entitled to employ a private investigator at State expense for the purpose of calling and interviewing witnesses. Taylor made no showing of a particularized need nor did he show that the assistance at issue was required for his defense. At best, the motions and arguments made in support of defense counsel's request for investigative expenses amounted to an assertion by defense counsel that an investigator would be helpful to do his leg work, i.e., call and interview witnesses. *Nelson v. State*, 511 So.2d 225, 237 (Ala. Crim. App. 1986). Defense counsel's request for the appointment of the same was, therefore, properly denied by the trial court. *McLeod v. State*, 581 So.2d 1144, 1151 (Ala. Crim. App. 1990). *See also Caldwell v. Mississippi*, 472 U.S. 320, 323 n. 1, 105 S.Ct. 2633, 2637 n. 1, 86 L.Ed.2d 231 (1985).

*Id.* at 27.

On direct appeal, the Alabama Court of Criminal Appeals made the following findings of fact and conclusions of law, much of which the Respondents' quoted in their Brief on the Merits:

The trial court properly denied the appellant's request for "an order authorizing the expenditure of up to $3,000 for investigative services and expenses, subject to application for additional funds if needed." C.R. [Vol. 1, p.] 152.

The appellant's motion was filed on March 18, 1993. A hearing was held on March 19, 1993, and the trial court took the matter under advisement. R. [Vol. 4, p.] 183. The trial court denied the motion on April 7, 1993, at the beginning of trial before qualifying the jury. R. [Vol. 4, p.] 208.

At the pretrial hearing on March 19, defense counsel requested that the trial court grant the motion but also stated: "I guess, as a practical matter, Charlie and I have done most of that work as far as trying to run down witnesses. . . . I think as a practical matter Charlie and I have done most of it." R. [Vol. 4, pp.] 207-08. In denying the motion, the trial court stated:

"That motion is denied at this time. But let me add a caveat to that. I'm not saying that at some point I may not allow some type of expenditures, but we may take another look at that. But at this point, it's denied." R. [Vol. 4, p.] 208.

We find no violation of *Ake v. Oklahoma*, 470 U.S. 68, 105 S. Ct. 1087, 84 L. Ed. 2d 53 (1985).

"[B]efore the court is obliged to appoint an expert for an indigent defendant the defendant must satisfy the following:

""'The threshold question requires the showing of a need for the requested services. *Ex parte Argo*, 42 Ala.App. 546, 547, 171 So.2d 259 (1965). We recognized in *Gwin v. State*, 425 So.2d 500, 508 (Ala. Cr. App. 1982), cert. quashed, 425 So.2d 510 (Ala. 1983), that before determining whether fundamental fairness requires that an accused be afforded the opportunity to have an expert of his choosing examine a piece of 'critical evidence whose nature is subject to varying expert opinion,' it should first be determined that the evidence is 'critical.' Evidence is 'critical' for purposes of the due process clause if it could induce a reasonable doubt in the minds of enough jurors to avoid a conviction when

35

that evidence was developed by skilled counsel and experts.  *White v. Maggio*, 556 F.2d 1352, 1357–58 (5th Cir. 1977); *Gwin*, supra."'

"*Ex parte Sanders*, 612 So.2d 1199, 1201 (Ala. 1993), quoting *Grayson v. State*, 479 So.2d 69, 72 (Ala. Cr. App. 1984), affirmed, 479 So.2d 76 (Ala.), cert. denied, 474 U.S. 865, 106 S.Ct. 189, 88 L.Ed.2d 157 (1985).  See also *DuBose* [*Dubose*] [*v. State*, [Ms. CR–89–359, September 30, 1993] 662 So.2d 1156 (Ala. Cr. App. 1993)]."

*Dobyne v. State*, [672 So.2d 1319, 1346] (Ala. Crim. App. 1994).  The appellant in this case "'made no showing of a particularized need or that such assistance was necessary for an adequate defense' as required under *Ake*.  *Nelson v. State*, 511 So.2d 225, 237 (Ala. Crim. App. 1986), aff'd, 511 So.2d 248 (Ala. 1987), cert. denied, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988)."  *Dill v. State*, 600 So.2d 343, 371 (Ala. Cr. App. 1991), affirmed, 600 So.2d 372 (Ala. 1992), cert. denied, 507 U.S. 924, 113 S.Ct. 1293, 122 L.Ed.2d 684 (1993).  "[A] defendant must show the trial court that there exists a reasonable probability both that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial."  *Moore v. Kemp*, 809 F.2d 702, 712 (11th Cir. 1987), cert. denied, 481 U.S. 1054, 107 S.Ct. 2192, 95 L.Ed.2d 847 (1987) (footnote omitted).  See also *Dubose v. State*, 662 So.2d 1156 (Ala. Cr. App. 1993); *Duren v. State*, 507 So.2d 111, 120 (Ala. Cr. App. 1986), affirmed, 507 So.2d 121 (Ala. 1987), cert. denied, 484 U.S. 905, 108 S.Ct. 249, 98 L.Ed.2d 206 (1987).

*Taylor v. State*, 666 So. 2d 36, 59-60 (Ala. Crim. App. 1994) (alterations in original) (updated citations to the record supplied).[35]

## B.    Introductory Matter.

At the outset, the court notes that Taylor cites the Alabama Court of Criminal Appeals's opinion on collateral appeal for "why it determined that [he] had not shown that denial of services

---

[35] The Respondents' Brief on the Merits omits portions of the Alabama Court of Criminal Appeals's opinion on direct appeal.  (*Compare* Doc. 14, pp. 25-26, *with Taylor v. State*, 666 So. 2d 36, 59-60 (Ala. Crim. App. 1994)).  In particular, Respondents omit that court's recitation of the facts, a number of citations to precedent, and the prefatory to the court's quotation of *Dobyne*.  This court, however, thought it best to reproduce the entirety of that court's opinion for purposes of accuracy.  Further, all alterations in the quotation above appear in the Court of Criminal Appeals's opinion on direct appeal except for the updated citations to the record and the addition of the reporter to the citation of *Dobyne v. State*, 672 So. 2d 1319, 1346 (Ala. Crim. App. 1994), which was not published until after the Court of Criminal Appeals's opinion in Taylor's case.

of an investigator resulted in a fundamentally unfair trial."[36]  (Doc. 36-1, p. 261).  He states:

> [B]ased on the State Court's holding as to another claim in Taylor v. State, 10 So.3d
> 1037 (Ala. Crim. App. 2004), it is *reasonable to assume* that the State Court
> *unreasonably assumed* that jurors would not give substantial weight to the mitigating
> circumstances that would have been discovered if Taylor had been awarded
> investigatory funds.

*Id.* at 261-62 (emphasis in italics added) (footnote omitted).  And in the footnote following this

statement, Taylor further asserts:

> Without providing any analysis, the State Court [*i.e.*, the Court of Criminal
> Appeals's first decision on collateral appeal,] found that there was "no reasonable
> probability" that the mitigating psychological evidence presented at Mr. Taylor's
> [Rule 32] evidentiary hearing would have changed the jury's recommendation of the
> death penalty or the trial court's finding that the aggravating circumstances
> outweighed the mitigating circumstances.  Taylor, 10 So.[3d] at 1052-53.

*Id.* at 262 n. 90.

Apart from the fact that Taylor's Petition neither cites nor references the Alabama Court of

Criminal Appeals's ruling during his collateral proceedings in support of this ground for relief, (*see*

Doc. 1, p. 11), citing an opinion that was issued over ten years after the court's earlier decision as

the basis for that court's earlier decision is dubious at best.

Regardless, Taylor's Reply Brief expressly recognizes that "the Alabama Court of Criminal

Appeals [on direct appeal] held that the trial court had properly denied Taylor's application for

payment of investigatory expenses."  (Doc. 36-1, p. 253 (footnote omitted) (citing *Taylor v. State*,

---

[36] That is, Taylor cites the Alabama Court of Criminal Appeals's opinion on collateral appeal, *see Taylor v. State*, 10 So. 3d 1037 (Ala. Crim. App. 2004), before being reversed in part by the Alabama Supreme Court, *see Ex parte Taylor*, 10 So. 3d 1075 (Ala. 2005).  On remand, the Court of Criminal Appeals identified twenty specific issues for the Rule 32 circuit "court to make specific, written findings of fact . . . in light of the Alabama Supreme Court's decision in *Ex parte Taylor*."  *Taylor v. State*, So. 3d 1079, 1082 (Ala. Crim. App. 2006) (footnote omitted).  After the Rule 32 circuit court complied with these instructions, (*see* Rule 32 C.R. Vol. 38, Tab. 90), the Court of Criminal Appeals—on return to remand—issued its final opinion in this matter, (*see* Rule 32 C.R. Vol. 38, Tab. 91).  Nevertheless, the portion of the Alabama Court of Criminal Appeals's opinion presently cited by Taylor was not part of the twenty issues addressed after the Alabama Supreme Court's partial reversal.  (*Compare* Doc. 36-1, pp. 261-63, *and Taylor v. State*, 10 So. 3d 1037 (Ala. Crim. App. 2004), *with Taylor v. State*, 10 So. 3d 1079, 1081-82 (Ala. Crim. App. 2006)).

666 So.2d 36 (Ala. Crim. App. 1994))).  Because this court's present determination consists of whether that decision, *i.e.*, the Alabama Court of Criminal Appeals's decision on direct appeal, "resulted in a decision that . . . involved an unreasonable application of[] clearly established Federal law," 28 U.S.C. § 2254(d)(1),[37] the Court of Criminal Appeals's findings during Taylor's subsequent collateral proceedings are, presently, of no consequence.  Further, the only instance in which that court's subsequent opinion is actually of any consequence is in the context of Taylor's ineffective assistance claim, which is discussed in Part XIX(B)(1)(a)(i) *infra*, because that was the context in which Taylor raised the claim and the Court of Criminal Appeals made the findings of fact and conclusions of law Taylor now cites.[38]

Taylor attempts to interject facts and argument that were only discovered and made later during the course of his Rule 32 proceedings to support his present claim that the Court of Criminal Appeals's determination *on direct appeal* "involved an unreasonable application of[] clearly established federal law."  28 U.S.C. § 2254(d)(1).  Not only are these facts disputed, as the Court of Criminal Appeals's opinion on collateral appeal recognized,[39] but they were not before the trial court

---

[37] Taylor does not argue that the "contrary to" prong of § 2254(d)(1) applies to this claim.  (*See* Doc. 36-1, pp. 253, 256-64).

[38] (*See* Doc. 36-1, pp. 262-63).  Taylor begins this colloquy by stating that "it is necessary to discuss why the State Court's determination was unreasonable."  *Id.* at 262.  And he proceeds to discuss why "[t]he only case law cited by the State Court [*i.e.*, the Court of Criminal Appeals's first decision on collateral appeal] in support of its finding that the evidence presented at Taylor's [Rule 32] evidentiary hearing could not reasonably have altered the jury's determination to impose the death penalty is Grayson v. Thompson, 257 F.3d 1194, 1225 (11th Cir. 2001)."  *Id.* at 262-63 (citing *Taylor v. State*, 10 So. 3d 1037, 1052-53 (Ala. Crim. App. 2004)).  But, as discussed above, any ruling by the state collateral courts is not at presently at issue because the only issue for this court to determine in this context is whether the Court of Criminal Appeals's conclusion *on direct appeal* "resulted in a decision that . . . involved an unreasonable application of[] clearly established Federal law."  28 U.S.C. § 2254(d)(1).

[39] *See Taylor v. State*, 10 So. 3d 1037, 1063 (Ala. Crim. App. 2004) ("Also, because the evidence concerning [Taylor's] mental condition was conflicting . . . .").

or the Alabama appellate courts during Taylor's direct appeal.[40]   Because this claim is limited to whether the Court of Criminal Appeals's decision *on direct appeal* unreasonably applied clearly established federal law, those arguments will not be addressed further in this context.

### C.   Merits Analysis.

Because Taylor has not shown that the Court of Appeals' ruling that he did not meet the requirements of *Ake* constituted an unreasonable application of federal law, his claim is due to be denied. Before proceeding to the merits of Taylor's *Ake* claim, it should be noted that his claim was recently foreclosed by the Eleventh Circuit's opinion in *Gary v. Hall*, 558 F.3d 1229 (11th Cir. 2009) (Tjoflat, J.).  In *Gary*, the Eleventh Circuit held:

> Gary [*i.e.*, the state habeas petitioner,] asks that we vacate the district court's judgment and remand the case for further consideration on the ground that the district court abused its discretion in denying him funds to have his semen tested.  The question of whether the court should have provided such funds arose because the district court, after agreeing with the Georgia Supreme Court that Gary had waived his claim for funds, decided to take the case one step further and consider, as an alternative issue, whether *Ake v. Oklahoma* required the trial court to grant Gary's request for funds to hire a forensic serologist.
>
> *Ake* held that an indigent defendant is entitled to expert psychiatric assistance. The district court assumed that *Ake* informed the trial court's decision whether or not to grant Gary's request for serologist funding, drawing on our decision in *Conklin v.*

---

[40] *See Doorbal v. McNeil*, No. 08–21566–CIV, 2008 WL 4194838, at *18 (S.D. Fla. Sept. 10, 2008) (Gold, J.), *aff'd on other grounds sub nom. Doorbal v. Dep't of Corr.*, 572 F.3d 1222 (11th Cir. 2009), *cert. denied sub nom. Doorbal v. McNeil*, 130 S. Ct. 637 (2009).  As Judge Gold accurately summarized:

> The Eleventh Circuit utilizes a two-step analysis to review *Ake* claims. Id. at 930.  **First, the court examines the information before the trial court when it is alleged to have deprived the defendant of due process.** *Id.* (citing *Thomas v. Jones*, 891 F.2d 1500, 1506 (11th Cir. 1989), *cert. denied*, 495 U.S. 953 (1990); *Messer v. Kemp*, 831 F.2d 946, 960 (11th Cir. 1987) (en banc), *cert. denied sub nom. Messer v. Zant*, 485 U.S. 1029 (1988); *Moore v. Kemp*, 809 F.2d 702, 710-13 (11th Cir. 1987) (en banc), *cert. denied*, 481 U.S. 1054 (1987)).  Second, the court determines wether that information should have led the trial court to conclude that the defendant would probably not receive a fair trial.  *Id.* (citing *Thomas*, 891 F.2d at 1506; *Messer*, 831 F.2d at 960; *Moore*, 809 F.2d at 710).

*Doorbal*, 2008 WL 4194838, at *18 (emphasis in bold added) (parallel citations omitted).

*Schofield*, 366 F.3d 1191, 1206 (11th Cir. 2004), in which we suggested, but did not specifically hold, that the "due process clause could require the government to provide non-psychiatric expert assistance to an indigent defendant upon a sufficient showing of need." The district court then held that the trial court was unreasonable in denying the request because it was apparent that defense counsel needed a serologist to question the State's expert about his serological fluid findings. *Gary*, 336 F. Supp. 2d at 1361. Nonetheless, the district court held that, since the State's expert's serological testimony was inconclusive, the presence of a competing defense expert would not likely have altered alter [sic] the outcome of the trial, and the denial of funds did not render Gary's trial fundamentally unfair. *Id.* at 1362. Gary argues that the district court should not have ruled until it provided funds for the testing of his semen and, if necessary, received the results of the test.

The flaw in Gary's argument is that *Ake* had no bearing on the state trial court's decision of whether to grant defense counsel's request for funds. That is, the court's decision to deny the funds could not have been "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The Supreme Court has instructed that a state court decision is "contrary to" established federal law if it "applies a rule that contradicts the governing law set forth in our cases." *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (O'Connor, J., for the majority). "[C]learly established Federal law" consists of the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* at 412. The relevant law is the federal law that exists on the date the petitioner's convictions become final. *See Schwab v. Crosby*, 451 F.3d 1308, 1324 (11th Cir. 2006). A conviction becomes final "when the availability of direct appeal to the state courts has been exhausted and . . . a timely filed petition [for a writ of certiorari] has been finally denied." *Caspari v. Bohlen*, 510 U.S. 383, 390 (1994). A Supreme Court decision, which is not dictated by precedent or is not made retroactive to cases on collateral review, handed down after the petitioner's conviction becomes final does not control the disposition of the petitioner's habeas proceeding. *Newland v. Hall*, 527 F.3d 1162, 1196-1201 (11th Cir. 2008).

As the district court correctly acknowledged, at the time Gary's conviction became final on August 4, 1997, the Supreme Court had not extended *Ake*'s holding beyond the provision of psychiatric assistance. Accordingly, the state trial court was not bound as a matter of federal constitutional law to apply *Ake* in ruling on defense counsel's request for funds to hire a forensic serologist. Rather, the request was governed by state law and committed to the trial court's discretion. In sum, Gary's denial-of-funds claim did not present a federal constitutional question, and the district court should not have entertained it.

*Id.* at 1253-54 (all alterations, except the first, in original) (footnotes and parallel citations omitted).

Similarly, at the time Taylor's conviction became final on May 5, 1993, (*see* C.R. Vol. 37, Tab. 78, pp. 195-215), "the Supreme Court had not extended *Ake*'s holding beyond the provision of psychiatric assistance," *Gary*, 558 F.3d at 1254.  As such, "the state trial court was not bound as a matter of federal constitutional law to apply *Ake* in ruling on defense counsel's request for funds to hire [an investigator].  Rather, the request was governed by state law and committed to the trial court's discretion."  *See Gary*, 558 F.3d at 1254.  Consequently, Taylor's "denial-of-funds claim [does] not present a federal constitutional question, and [this] court should not . . . entertain[] it." *Id.*

Regardless of this shortcoming, the court will endeavor to address the merits of Taylor's claim.  In his Reply Brief, Taylor contends that "[i]n upholding the [trial court's] denial" of his application for payment of investigatory funding, "the Alabama Court of Criminal Appeals unreasonably applied the standards prescribed in Ake v. Oklahoma, 470 U.S. 68 (1985)."  (Doc. 36-1, p. 253 (citing 28 U.S.C. § 2254(d)(1))).  According to Taylor, "Ake and its progeny" recognize his "right to be granted funds to hire an investigator to assist in his defense and to investigate mitigating facts."  *Id.* at 254.  He argues:

> [T]he assistance of an investigator was a "basic tool" required to prepare his defense at trial and to identify and present mitigating circumstances at the sentencing hearing. The denial of funds to hire an investigator effectively denied [him] of [sic] meaningful access to justice because the jury was not able to consider material facts at trial and sentencing an investigator would have helped him develop.

*Id.* at 255.

The Eleventh Circuit succinctly summarized the analytical framework used to address *Ake* claims in *Conklin v. Schofield*:

> Assuming, *arguendo*, that *Ake* extends to non-psychiatric experts, then we must determine (1) whether [the petitioner] made a timely request to the trial court

41

for the provision of expert assistance; (2) whether it was "reasonable" for the trial court to deny [the petitioner's] request;[41] and (3) whether the denial rendered [the petitioner's] trial fundamentally unfair. *See Moore*[ *v. Kemp*], 809 F.2d [702,] 710 [(11th Cir. 1987) (en banc)] (noting that the Supreme Court in *Ake* followed this three-part analytical approach). With respect to the third *Moore* requirement, we ask whether the *Ake* error "had substantial and injurious effect or influence in determining the jury's verdict." *Hicks v. Head*, 333 F.3d 1280, 1286 (11th Cir. 2003).

366 F.3d 1191, 1206-07 (11th Cir. 2004).

Regarding the first *Moore* requirement of a timely request, no one—neither the Respondents nor the state courts on direct appeal—contends that Taylor does not satisfy this requirement. As the Court of Criminal Appeals noted, Taylor requested:

> "[A]n order authorizing the expenditure of up to $3,000 for investigative services and expenses, subject to application for additional funds if needed." C.R. [Vol. 1, p.] 152.

> The appellant's motion was filed on March 18, 1993. A hearing was held on March 19, 1993, and the trial court took the matter under advisement. R. [Vol. 4, p.] 183. The trial court denied the motion on April 7, 1993, at the beginning of trial before qualifying the jury. R. [Vol. 4, p.] 208.

*Taylor v. State*, 666 So. 2d 36, 59 (Ala. Crim. App. 1994) (updated citations to the record supplied).

Turning to the other *Moore* requirements, Taylor claims "the State Court unreasonably applied the [second and third] <u>Moore</u> standards to the facts of [his] case." (Doc. 36-1, p. 256). As for the second "*Moore* requirement," *i.e.*, "whether it was 'reasonable' for the trial court to deny [the petitioner's] request," *Conklin*, 366 F.3d at 1206, Taylor states:

---

[41] Implicit in the second "*Moore* requirement," *i.e.*, "whether it was 'reasonable' for the trial court to deny [the petitioner's] request," *Conklin*, 366 F.3d at 1206, is the understanding that when a reviewing court makes this determination, it "examines the information before the trial court when it is alleged to have deprived the defendant of due process," *Doorbal*, 2008 WL 4194838, at *18 (citations omitted). Thus, this court should not consider Taylor's discussion of the facts elicited during his Rule 32 evidentiary hearing and the Court of Criminal Appeals's subsequent discussion of those facts in relation to his ineffective assistance claims because that information was not "before the trial court when it is alleged to have deprived the defendant of due process." *See Doorbal*, 2008 WL 4194838, at *18 (citations omitted). This as well as other reasons supporting this conclusion are discussed in Part II(B) *supra*.

Taylor's application for payment of investigatory expenses met this standard because he clearly delineated that the investigator would assist him in preparing for trial and sentencing by gathering evidence and information and locating and interviewing witnesses. Taylor's counsel admitted that they would not be able to perform the investigation themselves. The trial judge should have known that, since Taylor was indigent and incarcerated, and his counsel admitted they were unable to adequately investigate, Taylor could only obtain the information he needed to confront the prosecution. The trial judge was already aware that Taylor requested assistance of a psychiatrist, and that psychological evidence would be an integral aspect of his defense and mitigating circumstances if he were to have a fair trial.

At the State Court could not have reasonably concluded that the trial court properly denied Taylor's well-founded request for investigatory expenses. Taylor pled his reasons for needing an investigator with sufficient particularity to meet the requirements under Caldwell. Taylor filed a pre-trial application for up to $3000 for an investigator to locate and interview witnesses and to locate and review certain records related to Taylor's medical, scholastic, familial, employment and social history and any religious or cultural influences. The application specified that evidence produced from the investigation would be used to prepare Taylor's defense and to establish mitigating circumstances for consideration by the jury and judge in the sentencing phase of the trial.

*Id.* at 257-58 (internal citations omitted) (citing C.R. Vol. 1, pp. 152-78, ¶¶ 11, 13-14).

As the Eleventh Circuit reiterated in *Conklin*,

In determining the reasonableness of the trial court's refusal to provide independent expert assistance, we consider only the facts available to the trial judge when he made a ruling on the particular motion. *Moore*, 809 F.2d at 710-13. The reasonableness of a judge's denial "necessarily turns on the sufficiency of the petitioner's explanation as to why he needed an expert." *Id.* at 710. Thus, we ask whether the trial judge should "have concluded that unless he granted his request petitioner would likely be denied an adequate opportunity fairly to confront the State's case and to present his defense." *Id.*

*Conklin*, 366 F.3d at 1208. In light of this standard, the court, therefore, must consider Taylor's

arguments to the trial court.

In his Application for Investigative Expenses, Taylor argued, in pertinent part:

1. The Defendant is before the Court awaiting trial on a capital case involving the charge of murder.

43

2.  Since this is a capital case, exacting standards must be met to assure that it is fair.  "The fundamental respect for humanity underlying the eighth amendment's prohibition against cruel and unusual punishment gives rise to a special '"need for reliability in the determination that death is the appropriate punishment"'" in any capital case."  Johnson v. Mississippi, 486 U.S. 578, 584 (1988) (quoting Gardner v. Florida, 430 U.S. 349 (1977) (quoting Woodson v. North Carolina, 428 U.S. 280, 305 (1976) (White, J., concurring))).

3.  The prosecution has had access to numerous investigators and employees of the Alabama Department of Forensics.

4.  The Defendant is indigent.  He has been incarcerated since his arrest for the instant capital murder.  The Defendant has been and continues to be unable to earn any money or in any way contribute financially to his defense.  He has been declared indigent and granted permission to proceed in forma pauperis.

5.  In order for him to receive a full and fair trial of all relevant issues in his case, he requires the services of an investigator, as well as expenses for such investigation as may be conducted by counsel.

6.  Defense counsel has an ethical, legal and constitutional duty to conduct a thorough inquiry into all aspects of this case.  In order to do this, a comprehensive investigation must be undertaken and records and other documentary evidence must be obtained.  Because he is indigent, the investigation required by law can be undertaken and completed only upon allocation of adequate resources by this Court.

7.  In order to conduct such an investigation, he seeks authorization to retain the services of an investigator to be paid a reasonable fee.  Counsel estimates that approximately two hundred (200) hours of investigative time will be required.  He, of course, reserves the right to supplement his motion should the need for additional investigation become obvious.

8.  For various reasons, the Defendant cannot rely upon counsel to do all of the investigation.  One reason is the advocate-witness rule.  Should a witness state one fact to counsel during the investigation, and something else when testifying, counsel would have to become a witness in order to impeach that witness's testimony.  Under such circumstances, counsel would be ethically precluded from continuing to represent the Defendant.

9.  Additionally, the services of an investigator are the most effective way to conduct the investigation.  The investigation [sic] can locate and interview witnesses and obtain records and documents at a lower hourly rate than would be paid to an attorney.  Upon the completion of the initial stages of the investigation, counsel's

time can then be utilized interviewing those witnesses whose potential testimony would be desired at trial and making a professional determination as to their usefulness.

10.   Accordingly, the Defendant is in need of funds to investigate, <u>inter alia</u>, the following areas:

<u>The Crime</u>

11.   Preparation for the trial of this case requires investigation into not only the circumstances of the crime and the role, if any, played by the defendant, but also the facts and circumstances surrounding the defendant's arrest, the various interrogations that took place over a considerable period of time, and other various matters.

<u>Mitigating Circumstances</u>

12.   The jury and judge who might decide whether Michael Taylor will live or die will be constitutionally required to consider "<u>as [a] mitigating factor</u>, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." <u>Lockett v. Ohio</u>, 438 U.S. 586, 604 (1978) (emphasis in original).  This includes any of the diverse frailties of humankind.  <u>Woodson v. North Carolina</u>, 428 U.S. 280 (1976). <u>See also Skipper v. South Carolina</u>, 428 U.S. 280 (1986); <u>Eddings v. Oklahoma</u>, 455 U.S. 104 (1982).

13.   In order to prepare properly for all trial phases, counsel is required to obtain information relevant to Mr. Taylor's medical history, educational history, employment and training history, family and social history, and any religious or cultural influences.  American Bar Association, <u>Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases</u> 11.4.1 (A)(2)(c) (adopted by the ABA House of Delegates Feb. 7, 1989).  Therefore, counsel must direct an investigator to obtain records from all doctors, hospitals, schools, employers, and interview people with knowledge of these aspects of Mr. Taylor's background.

14.   Visits to schools, hospitals, churches, and other institutions that have come into contact with Mr. Taylor are essential to obtaining documentary evidence and discovering mitigating information.

(C.R. Vol. 1, Tab. 1, pp. 152-55; *see also* C.R. Vol. 1, Tab. 1, pp. 161-64, 170-73 (same)).[42]

---

[42] After stating the preceding argument, Taylor's Application for Investigatory Expenses proceeds to discuss his "Points and Authorities."  (*See* C.R. Vol. 1, Tab. 1, pp. 155-59, 164-68, 1773-77).  For present purposes, the only

Further, at the pre-trial motions hearing on March 19, 1994, the following exchange occurred

between Taylor's trial counsel and Judge William H. Rhea, III, the trial judge:

>   MR. DOWNS:  We had another motion for expenditures for people to assist
>   us with some of the stuff.  *I guess, as a practical matter, Charlie and I have done*
>   *most of that work as far as trying to run down witnesses.*

>   THE COURT:  Well, have you filed any kind of itemization of that?  I think
>   you'd better do that.

>   MR. HEDGSEPETH:  We've got the questionnaire out of the way.

>   MR. DOWNS:  What we asked for was assistance in running down these
>   witnesses that we might want to use during the sentencing phase.

>   THE COURT:  What are you asking, specifically; money or – I can't give you
>   people.  I mean, are you asking –

>   MR. DOWNS:  What we were asking for was funds with which to retain
>   somebody.  Like, an investigative type person to go out and take statements and call
>   these witnesses.  *I think as a practical matter Charlie and I have done most of it.*

>   THE COURT:  Let me just state for the record – You've got that motion
>   before the Court?

>   MR. DOWNS: Yes, sir.  It's filed, yes, sir.

>   THE COURT:  That motion is denied at this time.  But let me add a caveat
>   to that.  I'm not saying that at some point I may not allow some type of expenditures,
>   but we may take another look at that.  But at this point it's denied.

(R. Vol. 4, Tab. 6, pp. 207-08 (emphasis added)).

In light of the foregoing facts that were "available to the trial judge when he made a ruling

on the particular motion," *Conklin*, 366 F.3d at 1208 (citing *Moore v. Kemp*, 809 F.2d 702, 710-13

(11th Cir. 1987) (en banc)), the trial judge should *not* "have concluded that unless he granted his

---

relevant point made in this discussion is Taylor's invocation of *Ake v. Oklahoma* as the basis for his claim.  (*See* C.R.
Vol. 1, Tab. 1, pp. 159, 168, 177).

request petitioner would likely be denied an adequate opportunity fairly to confront the State's case and to present his defense," *id.* (quoting *Moore*, 809 F.2d at 710). First, Taylor's request amounted to nothing more than a bare request for an investigator to aid his counsel in conducting a general investigation. (*See* C.R. Vol. 1, Tab. 1, pp. 152-78). In other words, Taylor's motion failed to show any *particularized* need as to why investigative assistance was necessary in his case. Contrary to the habeas petitioner in *Conklin* who requested "funds to hire an independent pathologist for help in preparing his [sole] defense of lack of intent" and to combat the state medical examiner's testimony that "tended to suggest an intentional killing," *Conklin*, 366 F.3d at 1206-08 & n. 12, Taylor merely requested an investigator to aid counsel in performing duties traditionally reserved for attorneys in the first instance. That is, counsel's request was little more than a plea to the trial court for funding to save them from leg work.

Second, and more importantly, Taylor's counsel informed the trial judge at the pre-trial motions hearing on March 19, 1994, that they had already done most of the work for which they had sought funding for an investigator. (*See* R. Vol. 4, Tab. 6, p. 208 ("What we were asking for was funds with which to retain somebody. Like, an investigative type person to go out and take statements and call these witnesses. *I think as a practical matter Charlie and I have done most of it.*" (emphasis added))).

Finally, as a practical matter, if state trial courts were obliged to allocate state funding every time an indigent defendant requested it, the right to counsel recognized by the Supreme Court in *Gideon v. Wainwright*, 372 U.S. 335, 344 (1963), would be transformed into the right to counsel *and* an investigator. While counsel for indigent defendants clearly would welcome the assistance, the state's treasury and taxpayers would not. Viewed this way, the reason is apparent why the Supreme

Court has not created such an unfettered right and, likewise, why lower courts have required indigent defendants to make certain showings before the doors of the state's treasury are opened further.  *See, e.g.*, *Moore*, 809 F.2d at 712.[43]

In sum, Taylor failed to satisfy the second *Moore* requirement.  *See Conklin*, 366 F.3d at 1207-09.[44]  And the Alabama Court of Criminal Appeals's ruling that Taylor "made no showing of a particularized need or that such assistance was necessary for an adequate defense as required under *Ake*," *Taylor v. State*, 666 So. 2d 36, 60 (Ala. Crim. App. 1994) (internal quotation marks and citations omitted), did not "result[] in a decision that . . . involved an unreasonable application of[] clearly established Federal law," 28 U.S.C. § 2254(d)(1).

---

[43] In *Moore*, the Eleventh Circuit stated:

> *Ake* and *Caldwell*, taken together, hold that a defendant must demonstrate something more than a mere possibility of assistance from a requested expert; due process does not require the government automatically to provide indigent defendants with expert assistance upon demand.  Rather, a fair reading of these precedents is that a defendant must show the trial court that there exists a reasonable probability both that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial.  Thus, if a defendant wants an expert to assist his attorney in confronting the prosecution's proof—by preparing counsel to cross-examine the prosecution's experts or by providing rebuttal testimony—he must inform the court of the nature of the prosecution's case and how the requested expert would be useful.  At the very least, he must inform the trial court about the nature of the crime and the evidence linking him to the crime.  By the same token, if the defendant desires the appointment of an expert so that he can present an affirmative defense, such as insanity, he must demonstrate a substantial basis for the defense, as the defendant did in *Ake*.  In each instance, the defendant's showing must also include a specific description of the expert or experts desired; without this basic information, the court would be unable to grant the defendant's motion, because the court would not know what type of expert was needed.  In addition, the defendant should inform the court why the particular expert is necessary.  We recognize that defense counsel may be unfamiliar with the specific scientific theories implicated in a case and therefore cannot be expected to provide the court with a detailed analysis of the assistance an appointed expert might provide.  We do believe, however, that defense counsel is obligated to inform himself about the specific scientific area in question and to provide the court with as much information as possible concerning the usefulness of the requested expert to the defense's case.

809 F.2d 702, 712 (11th Cir. 1987) (en banc) (footnotes omitted).

[44] This conclusion does not displace this court's earlier ruling that Taylor's claim cannot survive the Eleventh Circuit's recent decision in *Gray v. Hall*, 558 F.3d 1229, 1253-54 (11th Cir. 2009) (Tjoflat, J.).

While Taylor's failure to satisfy the second *Moore* requirement alone is fatal to his claim, the court will nevertheless discuss the third "*Moore* requirement," *i.e.*, "whether the denial rendered [the petitioner's] trial fundamentally unfair." *Conklin*, 366 F.3d at 1206.  In this regard, Taylor argues:

> The State Court's application of the third prong of the <u>Moore</u> test was also unreasonable because Taylor showed that the denial of funds resulted in a fundamentally unfair [trial].  An investigator would also have been able to adequately interview the mitigating witnesses, and would have discovered that Mr. Taylor's immediate and extended family had a history of substance, emotional and physical abuse and mental illness that had a profound effect on the development of Taylor's personality and his inability to cope with the stress of adult life.  Based on the information discovered about Taylor's family, social history and psychological state at the time of the trial, Mr. Taylor was undergoing a "severe personality disturbance" at the time of the crime, with symptoms including loss of contact with reality, defective inhibition, mania and paranoia.  He showed extremely elevated levels of paranoia and impulse control and an inability to grasp from [sic] reality.  Many of these mitigating factors would have been discovered by an investigator properly conducting interviews and researching Taylor's family history.  All of these factors would have been weighed by the jury and judge against the aggravating factors in determining whether to sentence Taylor to death.
>
> Taylor's counsel presented none of this evidence at trial or at his sentencing and likely was not aware of its existence. . . .

(Doc. 36-1, pp. 259-60 (internal citation omitted) (citing Rule 32 C.R. Vol. 21, pp. 707, 708)).

To examine the third *Moore* requirement, the court must inquire "whether the *Ake* error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Conklin*, 366 F.3d at 1206-07 (quoting *Hicks*, 333 F.3d at 1286).  After considering the information that Taylor claims an investigator would have uncovered, the court finds that he has not shown that "the *Ake* error," which did not in fact exist, "had substantial and injurious effect or influence in determining the jury's verdict." *Id.* (citation omitted).  Even Taylor concedes—in the context of his mitigation defense, ineffective assistance sub-claim—that the information he claims an investigator would have discovered was already contained in the two psychological reports prepared before trial by Dr. Kathy

Rogers and Dr. David Wilson.[45]   Further, much of this evidence was, in fact, presented during the penalty phase of Taylor's trial.[46]   Taylor, therefore, cannot show that the denial of funding for an investigator "rendered [his] trial fundamentally unfair."   *Conklin*, 366 F.3d at 1206 (citing *Moore*, 809 F.2d at 710).

Taylor has not shown that the Alabama Court of Criminal Appeals's ruling that he "'made no showing of a particularized need or that such assistance was necessary for an adequate defense' as required under *Ake*," *Taylor v. State*, 666 So. 2d 36, 60 (Ala. Crim. App. 1994) (citations omitted), "resulted in a decision that . . . involved an unreasonable application of[] clearly established Federal law," 28 U.S.C. § 2254(d)(1).   Therefore, this claim is due to be denied.

III.   **THE PROSECUTOR ENGAGED IN RACIAL DISCRIMINATION IN JURY SELECTION IN VIOLATION OF *BATSON V. KENTUCKY*, 476 U.S. 79 (1986).   (DOC. 1, PP. 11-13; DOC. 36-1, PP. 119-37).**

A.   **Summary of the Parties' Respective Arguments.**

Taylor's Petition supports this ground for relief with the following factual averments:

The prosecutor used his peremptory challenges to strike three of the five available African-American jurors [(R. Vol. 7, Tab, 7, p. 765)].   In defense of his

---

[45] (*See* Doc. 36-1, p. 30 ("Nevertheless, there was critical and readily present information in both reports pointing to the existence of psychological mitigation, specifically that Mr. Taylor 'was either suffering form a serious psychological disorder and/or was overwhelmed with psychological and emotional stress' [(Rule 32 C.R. Vol. 21, p. 706; Rule 32 R. Vol. 22, Tab. 58, p. 116)].")).

[46] For example, as to whether "Taylor was undergoing a 'severe personality disturbance' at the time of the crime," (Doc. 36-1, p. 260 (citation omitted)), John Wood testified:

Q     When you saw Michael, what was he like on October 31st[, 1991]?

A     Michael was, like, confused.   He didn't – He was – He was just – He didn't seem like he was Michael.   You know, I couldn't explain it.   I mentioned it to my mom several times and – that he just – he didn't seem like Michael of the past.

(R. Vol. 9, Tab. 21, p. 1283).   To provide context, Taylor's savage beating and robbery of Mr. and Mrs. Moore occurred only four days later on November 4, 1991.   *See Ex parte Taylor*, 666 So. 2d 73, 75 (Ala. 1995).

disproportionate pattern of strikes, the prosecutor offered pretextual reasons.  As to Jeremiah Turner, the prosecutor claimed that the venire member stated that he would not go along with the death penalty [(R. Vol. 7, Tab. 7, p. 768)].  As to Beverly Brewster, the prosecutor claimed that she stated that she was not for the death penalty and stared out the window, appearing "flat out bored" [(R. Vol. 7, Tab. 7, p. 769)].  These reasons are contradicted by the record [(Turner: R. Vol. 6, Tab. 7, pp. 658, 679-80; Brewster: R. Vol. 4, Tab. 7, pp. 240, 250, 259, 280)].  Moreover, the prosecutor disparately applied his stated concern regarding hesitancy to impose the death penalty to white and African-American venire members [(R. Vols. 5-7, Tab. 7, pp. 393-94, 398, 413, 465, 562-63, 566-67, 573-74, 580-81, 659-60, 680-83, 769-71)].  For example, the prosecutor declined to strike a white veniremember, whose response actually indicated greater reluctance to impose the death penalty, and other white venire members whose responses were similar to the challenged African-American' [(R. Vols. 5-6, Tab. 7, pp. 398, 413, 562, 566-67, 573-74, 580-81, 680-81)].

(Doc. 1, pp. 12-13 (updated citations to the record supplied)).

Respondents answer by arguing that "[t]his issue was raised on direct appeal and denied on the merits by the Alabama Court of Criminal Appeals."  (Doc. 13, p. 13 (citing *Taylor v. State*, 666 So. 2d 36, 40-44 (Ala. Crim. App. 1994)); *see also* Doc. 14, p. 28 (same)).  Respondents state:

Specifically, [the Court of Criminal Appeals] found no *Batson* violation occurred.  In *Batson*, the United States Supreme Court held that prosecutors could not strike jurors based on race.  That Court held that once a defendant established a prima facie case of racial discrimination, the burden shifted to the State to articulate race-neutral reasons for its strikes.  In the present case, however, Taylor did not offer any evidence of a prima facie case except to raise a bare objection at trial.  Without ruling that Taylor had established a prima facie case of racial discrimination, the trial court ordered the prosecution to state the reasons for its strikes of Beverly Brewster (#7), Eugene Alford (#2), and Jeremiah Turner (#55).  [(R. Vol. 7, Tab. 7, pp. 764-65.]

In stating his reasons for the strikes, the prosecutor stated that Mr. Alford was removed because he indicated on voir dire that based upon his religious beliefs he did not believe in capital punishment.  [(R. Vol. 7, Tab. 7, p. 768).]  When asked questions by the State regarding capital punishment, Mr. Alford responded that he did not think he could live with himself if he recommended a sentence of death.  [(R. Vol. 4, Tab. 7, p. 272).]  Mr. Alford further stated that he would prefer not to sit on this jury.  [(R. Vol. 4, Tab. 7, p. 273).]  Mr. Alford stated that he was morally opposed to the death penalty.  [(R. Vol. 4, Tab. 7, pp. 280-81).]  He stated that spending the rest of your life in prison would be a greater punishment than death.

[(R. Vol. 4, Tab. 7, p. 284).] Finally, Mr. Alford stated that he could not follow the judge's instructions and consider the death penalty an option. [(R. Vol. 4, Tab. 7, p. 284).] Therefore, the Alabama Court of Criminal Appeals correctly held, "We find that the prosecutor's reason for striking veniremember Alford is amply supported by the record." *Taylor*, 666 So.2d at 41.

The prosecution struck Mr. Turner because he stated that he could not go along with the death penalty. [(R. Vol. 7, Tab. 7, p. 768).] The Alabama Court of Criminal Appeals stated, "Considering the circumstances presented, including the fact that this prosecutor does not have a history of *Batson* violations, we find that the trial court did not error in denying the appellant's *Batson* motion as to Veniremember Turner." *Taylor*, 666 So. 2d at 42.

Lastly, the prosecution struck Beverly Brewster because she was not for the death penalty and because out of all the veniremembers, she was the only one all during voir dire that sat in the back row corner, stared out the window, did not pay much attention, if any, did not indicate interest, and at times appeared "flat out bored at being present." [(R. Vol. 7, Tab. 7, pp. 768-70).] In citing *Avery v. State*, 545 So. 2d 123, 127 (Ala. Crim. App. 1988), the Alabama Court of Criminal Appeals noted that striking a veniremember on the basis of his or her "demeanor" is generally not favored due to subjectivity. *Taylor*, 666 So. 2d at 43. However, the Court went on to state, "In connection with Brewster, the district attorney stated his 'notes' contained the statement 'looks out the window,' which he had 'underlined in red.' We find that the prosecutor's reasons for striking venireperson Brewster—her reluctance to impose the death penalty and her inattentiveness—constituted valid race-neutral reasons." *Taylor*, 666 So. 2d at 43.

(Doc. 14, pp. 28-30 (updated citations to the record supplied)).

While the Respondents succinctly summarize the relevant portions of the Alabama Court of Criminal Appeals's opinion, the entirety of that court's ruling still provides worthwhile analysis.

There, the Court of Criminal Appeals entered the following findings of fact and conclusions of law:

The appellant claims that the prosecutor struck black veniremembers in a racially discriminatory manner in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986), and *Ex parte Branch*, 526 So.2d 609 (Ala. 1987).

The prosecutor used three of his strikes to remove three of the five black veniremembers. Two blacks served on the appellant's jury. [(R. Vol. 7, Tab. 7, p. 767)].

52

The three black veniremembers struck by the prosecution were Alford (no. 2), Brewster (no. 7), and Turner (no. 55).  After defense counsel made his *Batson* objection,[FN1] the prosecutor argued that the appellant had failed to show a "pattern of discrimination," but he nevertheless stated his reasons for striking the three veniremembers.  [(R. Vol. 7, Tab. 7, p. 766)].  Consequently, we review the validity of those stated reasons.

> [FN1] Defense counsel's objection was as follows: "Judge, just for the record, at this time, according to the chart that I've got, Mr. Hedgspeth struck three jurors who, I believe, are of the black race." [(R. Vol. 7, Tab. 7, p. 764)].

If the challenged party offers explanations for its strikes, the question whether a prima facie case of discrimination has been established becomes moot.  *Hernandez v. New York*, 500 U.S. 352, 358-60 (1991) ("[o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot").  Where the challenged party's explanations for his strikes are a part of the record, those explanations will be reviewed by the appellate courts regardless of the manner in which they came to be in the record.  See, e.g., *Huntley v. State*, 627 So.2d 1013, 1016 (Ala. 1992); *Jackson v. State*, 594 So.2d 1289, 1293 (Ala. Cr. App. 1991).  "[W]hen the trial court calls upon the prosecutor for an explanation, without expressly finding a prima facie case, we will proceed directly to evaluate the sufficiency of the ensuing explanation."  *Williams v. State*, 548 So.2d 501, 504 (Ala. Cr. App. 1988), cert. denied, 489 U.S. 1028 (1989).  If any of the explanations advanced by a prosecutor are deemed to be insufficient, the defendant's conviction will be reversed, even if the defendant did not establish a prima facie case.  See *Jackson v. State*, 594 So.2d at 1292-94.

Here, the prosecutor volunteered the following reasons for his peremptory strikes:

> *J. Turner:*  "[I]ndicated that he would not go along with the death penalty."  [(R. Vol. 7, Tab. 7, p. 768)].

> *E. Alford:*  "He indicated that—on religious grounds that he did not believe in capital punishment."  [(R. Vol. 7, Tab. 7, p. 768)].

> *B. Brewster:*  "[S]aid that she was not for the death penalty and . . . out of the—I think, total of what, 80 that we had all total, was the only one that I noticed that all during voir dire sat up on the back row in the corner and stared out the window and did not pay much

attention, if any, to much of anything anybody said.  She did not indicate any interest.  She gave appearances at times of being just flat out bored at being present."  [(R. Vol. 7, Tab. 7, pp. 768-69)].

After hearing the reasons offered by the prosecutor, the trial judge denied the *Batson* challenge without comment.  [(R. Vol. 7, Tab. 7, p. 774)].  The appellant argues on appeal that the reasons given by the prosecutor were mere pretexts for racial discrimination.

Veniremember Alford

On appeal, the appellant does not challenge the reason given for striking E. Alford.  We find that the prosecutor's reason for striking veniremember Alford is amply supported by the record.  [(See R. Vol. 4, Tab. 7, pp. 272, 273, 280-81, 284)].

Veniremember Turner

Veniremember Turner responded as following on voir dire:

"MR. HEDSGPETH [district attorney]:  If Mr. Taylor, then, is convicted on any one, two or all three of these capital offenses, and if after we go through the punishment phase, we present aggravating circumstances and the defense presents any mitigating circumstances and you go and consider all of them and assign whatever weight that you think is the most important, after doing so, if you find that the aggravating circumstances in this case outweighed the mitigating, would you have a problem in recommending to this judge that this defendant be put to death by electrocution?

"MR. HEDSGPETH:  Mr. Turner?

"MR. TURNER:  No.

"MR. HEDGSPETH:  No, you wouldn't have a problem or no, you couldn't do it?

"MR. TURNER:  It would be—I don't know.  I would just have to hear the circumstances.

"MR. HEDGSPETH:  I'm just asking you to assume that whatever you heard, if the aggravating circumstances outweighed the mitigating, would you have a problem in recommending the death penalty to this judge?

54

"MR. TURNER:  No.

". . .  [other veniremembers shake head in the negative]

"MR. HART [defense counsel]:  Now, even assuming what you [veniremember Thacker] said earlier, like, it's gory or gruesome or no mercy is shown; even with that on the one hand as aggravating, do you still think that there could be some cases that those other mitigating factors are there that you could vote for life without parole?

"MR. THACKER [veniremember]:  They possibly could be, but I don't—You know, I sort of—I guess that—The mercy, you know, the type situation or whatever would weigh a lot more than probably him being a good guy or whatever or being good since that happened or confessing.  Probably wouldn't outweigh it.

"MR. HART:  If the facts are as I've outlined at this point in time—Well, I won't ask you that.

"MR. TURNER:  I guess I'll go that way. . . .

"MR HART:  Let me ask if the two aggravating circumstances in this case are as I've outlined, that it's an intentional killing during a robbery, there's a robbery involved, and that it's heinous, atrocious or cruel compared to other intentional killings, compared to other murders, if those are the aggravating on the one hand and if you have some mitigating circumstances such as he was almost 20 at the time, that he didn't have a significant history of criminal actions before that happened, that he gave a confession, that in the past 16 months since he's been arrested he's been quiet in jail, that he comes from a family that does love him, in considering that, could you consider both the aggravating circumstances and give weight to them and mitigating circumstances and give some weight to them in making up your mind or at this point in time do you have an opinion?

"MR. TURNER:  From what I heard you say that, you know, he had done, which I think it was premeditated.

"MR. HART:  The interpretation most people would put is I guess he had to think about it.  Nobody knows.  But he had to think about it, because I guess he brought the bar with him.

55

"MR. TURNER:  I would say by him premeditated, he had time to think about it, but I wouldn't say that I would—I wouldn't—for right now I wouldn't say definite life in prison.

"MR. HART:  Right now you wouldn't say one way or the other?

"MR. TURNER:  No, I couldn't say.

"MR. HART:  You wouldn't have an opinion?

"MR. TURNER:  No.  But, like, everything that I heard you say, you know, it was premeditated.  But giving a sentence right now, I couldn't say life or death."  [(R. Vol. 6, Tab. 7, pp. 657-58, 677-80)].

Defense counsel argued that the prosecutor's reason for removing veniremember Turner was not race-neutral because "[i]f they were opposed to the death penalty at the time that we did the voir dire of the panel, he should have made a motion for cause at that time."  [(R. Vol. 7, Tab. 7, p. 771)].  We reject that argument.  "Although a juror's reservations about the death penalty may not be sufficient for a challenge for cause, his view may constitute a reasonable explanation for the exercise of a peremptory strike.  See *Fisher v. State*, 587 So.2d 1027 (Ala. Crim. App.), *cert. denied*, 587 So.2d 1039 (Ala. 1991)[, cert. denied, 503 U.S. 941 (1992)]."  *Johnson v. State*, 620 So.2d 679, 696 (Ala. Cr. App. 1992), reversed on other grounds, 620 So.2d 709 (Ala. 1993), on remand, 620 So.2d 714 (Ala. Cr. App.), cert. denied, [510] U.S. [905] (1993).

However, having only a printed record of the voir dire to review leaves much to be desired.  Viewing Turner's responses in the light most favorable to the State, we cannot state that those responses affirmatively support the prosecutor's reason, i.e., that this veniremember "indicated that he would not go along with the death penalty."  [(R. Vol. 7, Tab. 7, p. 768)].  However, it does appear that at least at one point the prosecutor expressed some concern about Turner's willingness to impose the death penalty.

In explaining his reasons for his peremptory strikes under oath, the prosecutor stated, "Since I've been the district attorney there has never been any pattern of showing any attempt by the State of Alabama to discriminate [against] anyone on the basis of race."  [(R. Vol. 7, Tab. 7, p. 771)].  The prosecutor listed nine white veniremembers he had struck because they "indicated a reluctance toward the imposition of the death penalty."  [(R. Vol. 7, Tab. 7, pp. 769-71)].

Even if we assume that the prosecutor was wrong in his assessment of veniremember Turner's attitude toward the death penalty, we would not be convinced

that his reason for striking Turner was a sham or a pretext. "'A prosecutor may strike from mistake, as long as the assumptions involved are based on an honest belief and are racially neutral.'" *Reese v. City of Dothan*, 642 So.2d 511 (Ala. Cr. App. 1993).

> "The relevant inquiry in a case of discrimination is whether the prosecutor intended to so discriminate. 'We appreciate that it is impossible to know what is in the mind of another person, and that it is possible that, in stating his reasons for striking a black member of the venire, a prosecutor may give a reason that is not the true reason, but we are convinced that the trial judges in our system are in a much better position than appellate judges to decide whether the truth has been stated.' *Scales v. State*, 539 So.2d 1074, 1075 (Ala. 1988). In the present case, the prosecutor said that based on his notes, he struck the juror based on his age. The discovery thereafter that he was wrong about the juror's age would not make that reason a fabrication or a sham. The trial court was in a better position to determine whether the prosecutor's statement was true. We do not find that the trial court's decision to overrule the defendant's objection on the stated ground is clearly erroneous."

*Joyce v. State*, 605 So.2d 1243, 1245-46 (Ala. Cr. App. 1992).

Considering the circumstances presented, including the fact that this prosecutor does not have a history of *Batson* violations, we find that the trial court did not err in denying the appellant's *Batson* motion as to Veniremember Turner.

Veniremember Brewster

The prosecutor struck veniremember Brewster because, according to the prosecutor, she

> "said that she was not for the death penalty and . . . out of the—I think, total of what, 80, that we had all total, was the only one that I noticed that all during voir dire sat up on the back row in the corner and stared out the window and did not pay much attention, if any, to much of anything anybody said. She did not indicate any interest. She gave appearances at times of being just flat out bored at being present."

[(R. Vol. 7, Tab. 7, pp. 768-69)].

On voir dire, veniremember Brewster stated:

"I feel the same way [and would not automatically vote for the death penalty]. I can't necessarily say that I'm all for the death penalty, but being on the jury and that's what the circumstances called for and the evidence and, yes, I could come back with a verdict for the death penalty. But I wouldn't necessarily say that, you know, I'm just all out for the death penalty."

[(R. Vol. 4, Tab. 7, p. 280)].

The prosecutor had also made the following notation: "Not for the death penalty but says she would follow the law." (R. Vol. 7, Tab. 7, p. 773)

Brewster's response can be interpreted as indicating some reluctance to impose the death penalty. To that extent, this response does validate the prosecutor's reason for striking Brewster.

Striking a veniremember on the basis of his or her "demeanor" is not favored. See *Avery v. State*, 545 So.2d 123, 127 (Ala. Cr. App. 1988). Such an explanation "presents considerable difficulty to the trial courts as well as to the reviewing authorities in determining its truthfulness" and "should be closely scrutinized by both the trial and appellate courts." *Id.* Similarly disfavored is the "body language" explanation, which is also "especially subject to abuse because of [its] insusceptibility to an objective evaluation by the trial judge." *Ex parte Bird*, 594 So.2d at 685.

"Determining who is and is not attentive requires subjective judgments that are particularly susceptible to the kind of abuse prohibited by *Batson*. There is the additional problem that judging attentiveness requires observations of demeanor that will often not be reflected by the written record. This difficulty is compounded by the need to compare the attentiveness of the challenged venire members with those who were not challenged."

*United States v. Sherrills*, 929 F.2d 393, 395 (8th Cir. 1991).

In contrast, more specific concerns regarding a veniremember's appearance may be deemed sufficient. For example, the fact that a veniremember "appear[ed] to be asleep or inattentive" during voir dire has been held to be an acceptable reason for a strike. *Kelley v. State*, 602 So.2d 473, 476 (Ala. Cr. App. 1992); *Smith v. State*, 531 So.2d 1245, 1248 (Ala. Cr. App. 1987).

In connection with Brewster, the district attorney stated that his "notes" contained the statement "looks out the window," which he had "underlined in red."

58

[(R. Vol. 7, Tab. 7, p. 773)].  We find that the prosecutor's reasons for striking venireperson Brewster—her reluctance to impose the death penalty and her inattentiveness—constituted valid race-neutral reasons.

> "Although [the defendant] argues that the reasons the district attorney gave for his peremptory strikes of three venirepersons are suspect, we note that 'the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause.'  *Batson*, supra, 476 U.S. at 97.  It is within the sound discretion of the trial court to determine if the State's peremptory challenges of black jurors are motivated by intentional racial discrimination.  *Ex parte Jackson*, 516 So.2d 768 (Ala. 1986).  Moreover, the trial court's findings as to whether the defendant has established purposeful racial discrimination are to be accorded great deference on appeal, *Batson*, supra, 476 U.S. at 98, and should be reversed on appeal only if they are clearly erroneous.  *Ex parte Branch*, 526 So.2d 609 (Ala. 1987)."

*Ex parte Lynn*, 543 So.2d 709, 712 (Ala. 1988), cert. denied, 493 U.S. 945 (1989).

Considering the totality of the circumstances presented here, we find no violation of *Batson* and *Branch*.[FN2]  Apparently there were 62 members on the strike list, five (8%) of whom were black.  [(R. Vol. 7, Tab. 7, p. 761)].  The state used three peremptory strikes against blacks.  Two blacks (16%) served on the jury.

> [FN2]  "[I]n reviewing allegations that the prosecutor exercised the state's peremptory strikes in a racially discriminatory manner, 'the reviewing court's inquiry . . . shall not be restricted by the mutable and often overlapping boundaries inherent within a *Batson*-analysis framework, but, rather, shall focus solely upon the "propriety of the ultimate finding of discrimination *vel non*."'"  *Bui v. State*, 627 So.2d 855, 859 (Ala. 1992), cert. denied, [508] U.S. [975] (1993) (quoting *Huntley v. State*, 627 So.2d 1013, 1015 (Ala. 1992)).

In *Ex parte Thomas*, 659 So.2d 3 (Ala. 1994), the Alabama Supreme Court "disapproved the statement in *Harrell II* [*Harrell v. State*, 571 So.2d 1270, 1271 (Ala. 1990)] indicating that '[w]hen the evidence shows only that blacks were struck and that a greater percentage of blacks sat on the jury than sat on the lawfully established venire, an inference of discrimination has not been created.'"  In this case, there is no indication that the circuit court relied upon the disapproved dicta in *Harrell II* in denying the appellant's *Batson* motion.  "A circuit court's ruling on a *Batson* objection is entitled to great deference, and we will reverse a circuit court's *Batson* findings only if they are clearly erroneous.  *Branch*, 526 So.2d at 625-26."  *Ex parte Thomas*.

Applying the 'clearly erroneous' standard to the reasons given by the State in this case, we hold that the trial court did not clearly err in denying the appellant's *Batson* motion.

"So long as there is a legitimate nonracial reason for the challenged strike, the *Batson* principles are not violated." *Zanders v. Alfa Mutual Insurance Co.*, 628 So.2d 360, 361 (Ala. 1993).

"'"'Failure by a prosecutor to explain every peremptory strike of black jurors is not necessarily fatal to the prosecutor's ability to rebut a prima facie case; likewise, explanation of most of the strikes on nonracial grounds does not necessarily rebut the inference created by *Batson* that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.'" *United States v. David*, 803 F.2d 1567, 1571 (11th Cir. 1986).' *Currin* [*v. State*], 535 So.2d [221] at 223 [(Ala. Cr. App. 1988)]."

*Warner v. State*, 594 So.2d 664, 672 (Ala. Cr. App. 1990), reversed on other grounds, *Ex parte Bird*, 594 So.2d 676 (Ala. 1991).  See also *Bui v. State*, 627 So.2d 855, 859 (Ala. 1992), cert. denied, [508] U.S. [975] (1993).

*Taylor v. State*, 666 So.2d 36, 40-44 (Ala. Crim. App. 1994) (alterations in original) (updated citations to the record and subsequently published cases supplied) (parallel citations omitted).

## B.    Merits Analysis.

The Supreme Court recently emphasized—as to *Batson* issues in particular—the deference federal district courts must afford state-court decisions on federal habeas review:

The *Batson* issue before us turns largely on an "evaluation of credibility." 476 U.S.[ 79, 98, n. 21 (1986)].  The trial court's determination is entitled to "great deference," *ibid.*, and "must be sustained unless it is clearly erroneous," *Snyder v. Louisiana*, 552 U.S. 472, 477 (2008).

That is the standard on direct review.  On federal habeas review, AEDPA "imposes a highly deferential standard for evaluating state-court rulings" and "*demands that state-court decisions be given the benefit of the doubt*." *Renico v. Lett*, 559 U.S. ___, ___, 130 S.Ct. 1855, [1858] (2010) (internal quotation marks omitted). . . .

60

*Felkner v. Jackson*, 131 S. Ct. 1305, 1307 (2011) (per curiam) (emphasis added) (parallel citations

omitted).

> Moreover, the Eleventh Circuit recently held, in the context of a § 2254 petition, that
>
>> the determination "on the ultimate question of discriminatory intent [itself] represents a finding of fact of the sort accorded great deference on appeal," *Hernandez v. New York*, 500 U.S. 352, 364 (1991). *Batson* does not require elaborate factual findings. *See Miller-El v. Cockrell*, 537 U.S. 322, 328-29 (2003); *see also Hightower v. Terry*, 459 F.3d 1067, 1072 n. 9 (11th Cir. 2006) ("We may therefore make 'the common sense judgment'—in light of defense counsel's failure to rebut the prosecutor's explanations and the trial court's ultimate ruling—that the trial court implicitly found the prosecutor's race-neutral explanations to be credible, thereby completing step three of the *Batson* inquiry."). . . .

*Greene v. Upton*, 644 F.3d 1145, 1155 (11th Cir. 2011) (second alteration in original) (parallel

citations omitted). Taking into consideration not only that "[t]he [state] trial court's determination

is entitled to 'great deference,' and 'must be sustained unless it is clearly erroneous,'" but also that

the AEDPA "demands that state-court decisions be given the benefit of the doubt," *Felkner*, 131 S.

Ct. at 1307 (citations omitted), the court now turns to the merits of Taylor's *Batson* claim.

> In his Reply Brief, Taylor contends the Alabama Court of Criminal Appeals's decision both

"unreasonably applied the standards prescribed in Batson, 28 U.S.C. § 2254(d)(1), and . . . was based

upon an 'unreasonable determination of the facts,' 28 U.S.C. § 2254(d)(2)." (Doc. 36-1, p. 120

(footnote omitted)). Taylor's most cogent summary of his *Batson* claim states:

> The prosecutor's claims that [Mr. Turner and Ms. Brewster] were reluctant to apply the death penalty were not support [sic] by the record. His claim that Ms. Brewster was inattentive was not supported by the record, and using inattentiveness as a basis for using a peremptory strike is frowned upon. Finally, the prosecutor did not strike non-black venire members who illustrated equal or greater reservations about recommending the death penalty. In rejected [sic] Taylor's Batson claim, the Alabama appellate courts unreasonably applied clearly established federal law.

*Id.* at 122.

As the Alabama Court of Criminal Appeals divided its discussion among the separate veniremembers, *see Taylor v. State*, 666 So. 2d 36, 40-44 (Ala. Crim. App. 1994), this court will likewise discuss the prosecutor's stated reasons for striking veniremembers Alford, Brewster, and Turner individually and in turn. And then, in conclusion, the court will address Taylor's related claim that "the prosecutor did not strike non-black venire members who illustrated equal or greater reservations about recommending the death penalty." (Doc. 36-1, p. 122).

Further, the Court of Criminal Appeals's analysis "proceed[ed] directly to evaluate the sufficiency of the [prosecutor's] explanation[s]" because the trial court made the prosecutor state his proffered reasons without expressly finding whether Taylor established a prima facie showing of racial discrimination. *Taylor v. State*, 666 So. 2d 36, 40 (Ala. Crim. App. 1994) (citation omitted). As a result, the state court bypassed the initial step of the traditional three-step process for *Batson* challenges to peremptory strikes.[47] This court will skip over that step as well. And because the prosecutor proffered "comprehensible reason[s]" that were "not inherently discriminatory,"[48] this

---

[47] In *Rice v. Collins*, 546 U.S. 333 (2006), the Supreme Court summarized the traditional three-step framework for reviewing *Batson* challenges in the first instance:

> A defendant's *Batson* challenge to a peremptory strike requires a three-step inquiry. First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. 476 U.S., at 96-97. Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question. *Id.*, at 97-98. Although the prosecutor must present a comprehensible reason, "[t]he second step of this process does not demand an explanation that is persuasive, or even plausible"; so long as the reason is not inherently discriminatory, it suffices. *Purkett v. Elem*, 514 U.S. 765, 767-768 (1995) (*per curiam*). Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination. *Batson*, *supra*, at 98. This final step involves evaluating "the persuasiveness of the justification" proffered by the prosecutor, but "*the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.*" *Purkett*, *supra*, at 768.

*Rice*, 546 U.S. at 338 (alteration in original) (emphasis added) (parallel citations omitted).

[48] To be sure, Taylor does not dispute that the prosecutor "present[ed] a race-neutral explanation for striking the juror[s] in question," *i.e.*, the second step of the three-step inquiry for *Batson* claims. *Rice*, 546 U.S. at 338 (citing

court will only inquire into "whether the defendant has carried his burden of proving purposeful discrimination," *i.e.*, the third step, which "involves evaluating 'the persuasiveness of the justification' proffered by the prosecutor." *Rice v. Collins*, 546 U.S. 333, 420 (2006) (citations omitted). The court will part ways, however, with one aspect of the state court's opinion because its findings of fact and conclusions of law must be afforded the deference mandated by the AEDPA, which is over and above the "great deference" already owed to trial court determinations regarding *Batson* issues on direct appeal. *Felkner*, 131 S. Ct. at 1307; *see also Greene*, 644 F.3d at 1155.

### 1. *Veniremember Eugene Alford.*

In his Reply Brief, Taylor concedes that he "did not appeal the trial court's decision that there was no <u>Batson</u> violation in the striking of Mr. Alford" and accordingly does not discuss this aspect of the Court of Criminal Appeals's decision. (Doc. 36-1, p. 121, n. 30). Therefore, Taylor presents no argument that the Court of Criminal Appeals's ruling as to veniremember Alford either "involved an unreasonable application of[] clearly established Federal law" or "was based on an unreasonable determination of the facts in light of the evidence" before it. *See Taylor v. State*, 666 So. 2d 36, 40-41 (Ala. Crim. App. 1994); 28 U.S.C. § 2254(d)(1), (2). As such, this aspect of his claim is due to be denied.

### 2. *Veniremember Beverly Brewster.*

As to veniremember Brewster, the prosecutor proffered two reasons in support of his peremptory strike: (1) her reluctance to impose the death penalty; and (2) her inattentiveness during voir dire. The district attorney specifically stated:

---

*Batson*, 476 U.S. at 97-98). After discussing the first and second steps, Taylor states: "The instant case turns on the State Court's unreasonable application of step three of the <u>Batson</u> analysis to the facts." (Doc. 36-1, p. 123).

> Ms. Brewster also said that she was not for the death penalty and that was a reason, but the other reason, Ms. Brewster, out of the – I think, total of what, eighty, that we had all total, was the only one that I noticed that all during voir dire sat up on the back row in the corner and stared out the window and did not pay much attention, if any, to much of anything anybody said.  She did not indicate any interest.  She gave appearances at times of being just flat out bored at being present.
>
> But she did also as well, in addition to that, indicate that she was not for the death penalty was the note that I made. . . .

(R. Vol. 7, Tab. 7, pp. 768-69).  Taylor, on the other hand, claims that both of the prosecutor's stated reasons for striking Ms. Brewster were merely a pretext for racial discrimination.  (*See, e.g.*, Doc. 36-1, pp. 121-22).

As to the prosecutor's first reason, the following exchange occurred between Ms. Brewster, another veniremember, and defense counsel Mac Downs during voir dire:

> MR. DOWNS [defense counsel]:  Is there any sort of particular facts or circumstances that you could say that, well, if I see these particular facts, then I just know I'm going to vote for the death penalty?
>
> MS. BROWN [veniremember]:  No.  It would all depend on the evidence.
>
> MR. DOWNS:  Would the fact that two people are killed in a crime, would that be enough to just say, well, that's two people killed, I'm just automatically going to vote for the death penalty?
>
> MS. BROWN:  No.
>
> MR. DOWNS:  Y'all help me out here, now.  I'm looking for some reasons –
>
> MS. BREWSTER:  I feel the same way.  *I can't necessarily say that I'm all for the death penalty*, but being on the jury and that's what the circumstances called for and the evidence and, yes, I could come back with a verdict for the death penalty.  *But I wouldn't necessarily say that, you know, I'm just all out for the death penalty*.

(R. Vol. 4, Tab. 7, pp. 279-80 (emphasis added)).  In this light, the prosecutor's concern that Ms. Brewster's answers during voir dire expressed a reluctance to impose the death penalty is confirmed

by the record, which the Court of Criminal Appeals rightfully noted in its opinion.  *See Taylor v. State*, 666 So. 2d 36, 43 (Ala. Crim. App. 1994) (quoting R. Vol. 4, Tab. 7, p. 280).

As for the prosecutor's second reason for striking Ms. Brewster, *i.e.*, her inattentiveness during voir dire, Taylor is correct that peremptory strikes based on a prospective juror's demeanor are generally discouraged. (*See* Doc. 36-1, p. 129 (citing *United States v. Diaz*, 26 F.3d 1533, 1543 (11th Cir. 1994); *United States v. Sherills*, 929 F.2d 393, 395 (8th Cir. 1991))). But discouraged does not mean such reasons *must* be rejected.  *See Thaler v. Haynes*, 130 S.Ct. 1171, 1174 (2010) (per curiam) ("But *Batson* did not go further and hold that a demeanor-based explanation must be rejected if the judge did not observe or cannot recall the juror's demeanor.").  On this point, Taylor relies on *Snyder v. Louisiana*, 552 U.S. 472 (2008), to contend that this court's analysis is limited to "consideration of only the prosecutor's proffered reason of striking Ms. Brewster because she was 'not for' the death penalty."  (Doc. 36-1, p. 133).[49]

Two fatal flaws underlie Taylor's invocation of *Snyder*.  First, *Snyder* was decided as part of that defendant's direct appeal, and thus the relevant state-court decisions were not "given the benefit of the doubt" as the AEDPA demands this court give to the trial court's decision.  *Felkner*, 131 S. Ct. at 1307 (citation omitted).  Second, and more importantly, however, is the fact that *Snyder* was decided in 2008, nearly fifteen years after Taylor was sentenced to death.  Therefore, it does not

---

[49] In support of this contention, Taylor asserts:

> Since it is impossible to determine whether the trial judge considered Ms. Brewster's alleged demeanor in denying the <u>Batson</u> claim, <u>*Snyder*</u> *requires the court's analysis* of whether the totality of circumstances surrounding the peremptory strikes reflect an intent by the prosecutor to discriminate *to ignore the prosecutor's reason of striking Ms. Brewster based on her demeanor*.  <u>Snyder</u>, 128 S. Ct. at 1209.  This analysis requires consideration of only the prosecutor's proffered reason of striking Ms. Brewster because she was "not for" the death penalty. . . .

(Doc. 36-1, pp. 132-33 (emphasis in italics added)).

represent "clearly established Federal law" for purposes of § 2254. *See, e.g.*, *Gary v. Hall*, 558 F.3d

1229, 1254 (11th Cir. 2009) ("'[C]learly established Federal law' consists of the 'holdings, as

opposed to the dicta, of [the Supreme Court's] decisions *as of the time of the relevant state-court*

*decision*.'" (alterations in original) (emphasis added) (quoting *Williams v. Taylor*, 529 U.S. 362, 412

(2000))). The Alabama Court of Criminal Appeals's reliance upon the prosecutor's additional

demeanor-based concern, even when the trial court did not "mak[e] a specific finding on the record

concerning [Ms. Brewster's] demeanor," *Snyder*, 552 U.S. at 479,[50] did not "involve[] an

unreasonable application of[] clearly established Federal law," 28 U.S.C. § 2254(d)(1).

Further, the prosecutor's stated concern regarding Ms. Brewster's alleged inattentiveness

during voir dire has ample basis within the record. As the Court of Criminal Appeals noted on direct

appeal: "In connection with Brewster, the district attorney stated that his 'notes' contained the

statement 'looks out the window,' which he had 'underlined in red.'" *Taylor v. State*, 666 So. 2d

36, 43 (Ala. Crim. App. 1994) (quoting R. Vol. 7, Tab. 7, p. 773)).[51]

---

[50] Immediately after the district attorney argued how his notes reflected his concern regarding Ms. Brewster's inattentiveness, the trial judge simply ruled: "The Batson challenge is denied." (R. Vol. 7, Tab. 7, p. 774). Other than the preceding ruling, the trial court did not enter any findings concerning Taylor's *Batson* motion. *See id.*

[51] The district attorney stated:

Judge, that's not a challenge for cause. I do have my notes here and I'll be glad to make them a record or part of the record here as far as the things that Ms. – that she did occasionally respond to. She indicated that she might know one of the witnesses because of from school. She was a student. That she did have a cousin who was a Marietta police officer that she had failed to mention on her questionnaire.

She was one of the people who indicated that she had not heard anything about the case. *My next note, "Looks out the window" and I have it underlined in red. And then also a notation under there, "Not for the death penalty but says she would follow the law". But she did indicate that, and the thing on – If the Court will look and let the record reflect, I have things written underneath her looking out the window and appearing to have no interest whatsoever.*

(R. Vol. 7, Tab. 7, pp. 773-74 (emphasis added)).

In sum, this court cannot say the Alabama Court of Criminal Appeals's decision "that the prosecutor's [two] reasons for striking venireperson Brewster . . . constituted valid race-neutral reasons," *Taylor v. State*, 666 So. 2d 36, 43 (Ala. Crim. App. 1994), was either an unreasonable application of clearly established federal law or an unreasonable determination of the facts in light of the evidence before it.  *See* 28 U.S.C. § 2254(d)(1), (2).  Accordingly, this aspect of Taylor's claim is due to be denied.

### 3.       *Veniremember Jeremiah Turner.*

As to Mr. Turner, the district attorney proffered one reason in support of his peremptory strike: "During the course of voir dire on Friday Mr. Turner, in response to questions posed by both the State and by the defense, indicated that he would not go along with the death penalty.  The basis for that – Or that was the basis upon which the State struck Mr. Turner."  (R. Vol. 7, Tab. 7, p. 768).  Taylor, in turn, claims this reason is not supported by the record.  (*See* Doc. 36-1, pp. 125-27).

On this point, the Alabama Court of Criminal Appeals agreed, at least in part, with Taylor's argument.  After quoting the exchange in question, the court said it "cannot state that those responses affirmatively support the prosecutor's reason, i.e., that this veniremember 'indicated that he would not go along with the death penalty.'"  *Taylor v. State*, 666 So. 2d 36, 42 (Ala. Crim. App. 1994) (quoting R. Vol. 7, Tab. 7, p. 768)).  Recognizing that "it does appear that at least at one point the prosecutor expressed some concern about Turner's willingness to impose the death penalty," the court noted that "[e]ven if [it were to] assume that the prosecutor was wrong in his assessment of veniremember Turner's attitude toward the death penalty, [it] would not be convinced that his reason for striking Turner was a sham or a pretext."  *Id.* (quoting *Reese v. City of Dothan*, 642 So. 2d 511, 513 (Ala. Crim. App. 1993); *Joyce v. State*, 605 So. 2d 1243, 1245-46 (Ala. Crim. App. 1992)).

Finally, the court held: "[c]onsidering the circumstances presented, including the fact that this prosecutor does not have a history of *Batson* violations, we find that the trial court did not error [sic] in denying [Taylor's] *Batson* motion as to Veniremember Turner." *Id.*

First and foremost, Taylor has not shown that the Court of Criminal Appeals's ruling that "[a] prosecutor may strike from mistake, as long as the assumptions involved are based on an honest belief and are racially neutral," *Taylor v. State*, 666 So. 2d 36, 42 (Ala. Crim. App. 1994) (quoting *Reese*, 642 So. 2d at 513), "resulted in a decision that . . . involved an unreasonable application of[] clearly established Federal law," 28 U.S.C. § 2254(d)(1).  As the Supreme Court has clearly instructed on numerous occasions, the ultimate inquiry in resolving a *Batson* motion is "whether the defendant has shown purposeful discrimination." *See, e.g.*, *Snyder*, 552 U.S. at 484-85 (quoting *Miller-El v. Dretke*, 545 U.S. 231, 277 (2005)).  Thus, a prosecutor's unwarranted concern about a veniremember does not provide a basis to sustain a defendant's *Batson* objection so long as it is sincere and not pretextual.  And "in the absence of exceptional circumstances," which Taylor has not and cannot show, a reviewing court must "defer to [the trial court]." *Id.* at 477 (alteration in original) (quoting *Hernandez v. New York*, 500 U.S. 352, 366 (1991)).

Second, Taylor attacks the Court of Criminal Appeals's reliance on the prosecutor not having a history of *Batson* violations.  (*See* Doc. 36-1, pp. 135-37).  He contends: "[f]ederal law establishes that a prosecutor's history of <u>Batson</u> violations, or lack thereof, is not dispositive of whether a violation has occurred." *Id.* at 136 (citing *McNair v. Campbell*, 416 F.3d 1291, 1312 (11th Cir. 2005)).  In this regard, Taylor is correct.  Such a reason "is not dispositive."  But no reason is dispositive, and the state court's opinion shows that it only viewed the prosecutor's lack of prior *Batson* violations as one factor.  *See Taylor v. State*, 666 So. 2d 36, 42 (Ala. Crim. App. 1994)

68

("Considering the circumstances presented, *including* the fact that this prosecutor does not have a history of *Batson* violations, we find . . . ." (emphasis added)).  In addition to the district attorney's lack of prior *Batson* violations, other *factors* likewise weigh in favor of finding that the prosecution's peremptory strikes were not motivated by purposeful racial discrimination.  For example, "[t]wo blacks (16%) served on the jury."  *Id.* at 44.  "Although the presence of African-American jurors does not dispose of an allegation of race-based peremptory challenges, it is a *significant factor* tending to prove the paucity of the claim."  *Gamory*, 635 F.3d at 496 (emphasis added) (quoting *United States v. Puentes*, 50 F.3d 1567, 1578 (11th Cir. 1995)).

In sum, this court cannot say the Alabama Court of Criminal Appeals's decision, *see Taylor v. State*, 666 So. 2d 36, 42 (Ala. Crim. App. 1994), was either an unreasonable application of clearly established federal law or an unreasonable determination of the facts in light of the evidence before it. *See* 28 U.S.C. § 254(d)(1), (2).  As such, this aspect of Taylor's claim is likewise due to be denied.

### 4.    *Whether the Prosecutor Disparately Applied His Stated Concern Regarding a Potential Juror's Unwillingness to Impose the Death Penalty.*

Finally, Taylor argues that "[t]he prosecutor's disparate application of its concern about hesitancy to impose the death penalty is evidence of racial discrimination."  (Doc. 36-1, p. 133 (emphasis redacted)).  Taylor's full argument on this point reads as follows:

> There is further evidence that the prosecutor's reasons for striking Ms. Brewster and Mr. Turner were pretextual: non-black venire members who expressed equal or greater hesitancy to impose the death penalty were not struck [(R. Vols. 5-6, Tab. 7, pp. 398, 413, 555, 567, 580-81, 659)].  The prosecutor's racially disparate application of its concern regarding hesitancy to impose the death penalty is evidence of purposeful discrimination under Batson.  Snyder, 128 S.Ct. at 1212; Miller-El, 545 U.S. at 232 ("[I]f a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise similar non-black who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at Batson's third step").

69

Although the prosecutor struck Mr. Turner – who stated that he would not have any problem recommending the death penalty but had to, as required by law, hear the facts – and Ms. Brewster – who stated that, although she was not "all for the death penalty," she would follow the law and recommend death if the evidence required – it did not strike non-black venire persons who responded similarly. Each of venire persons Hodge, Johnson, Jackie Phillips, Vinson, Wagnon and Wallace, all of whom were non-black, gave answers similar to those given by Mr. Turner and Ms. Brewster.[FN]33   For example, when questioned by Taylor's counsel, Mr. Johnson stated that he "hadn't made up [his] mind" about whether to recommend the death penalty and, like Ms. Brewster and Mr. Turner, that his decision would be based on "what [he] thought" about the evidence [(R. Vol. 5, Tab. 7, p. 414)].  Mr. Vinson stated that he "didn't <u>think</u>"[52] he would have a problem recommending the death penalty; he never stated outright, as Mr. Turner or Ms. Brewster did, that he would follow the law and recommend the death penalty if necessary [(R. Vol. 6, Tab. 7, p. 659)] (emphasis added).  Yet, only Ms. Brewster and Mr. Turner were struck by the prosecutor.

> [FN]33   Hollis, Hodge, Jackie Phillips, Ms. Phillips, Wagnon and Wallace each stated that they would not have any problems recommending the death penalty if the aggravating circumstances outweighed the mitigating circumstances [(R. Vols. 5-6, Tab. 7, pp. 398, 556, 659)].  Hodge, Hollis, Johnson and Wagnon each stated that they had not yet decided whether they would recommend the death penalty [(R. Vols. 5-6, Tab. 7, pp. 413-14, 580-81)].  Mr. Jackie Phillips, Ms. Phillips, Vinson and Wallace each stated that they would need to consider the facts before determining whether to recommend life without parole or the death penalty [(R. Vol. 6, Tab. 7, pp. 567, 580-81)].

*Id.* at 134-35 (alterations and emphasis in original) (updated citations to the record supplied).[53]

After reviewing the portions of the voir dire transcript cited within Taylor's Reply Brief, the

---

[52] This quotation is incorrect.  Mr. Vinson actually stated: "I don't think so."  (R. Vol. 6, Tab. 7, p. 658).  And as explained below, Mr. Vinson's answer was in response to the prosecutor's question: "I'm just asking you to assume that whatever you heard, if the aggravating circumstances outweighed the mitigating, would you have a problem in recommending the death penalty to this Judge?"  *Id.*

[53] Before beginning, the court notes that Taylor confuses the various Phillipses on Panel Number 5, which included: Mr. Jackie Phillips, Mr. Jeff Phillips, and Ms. Brenda Phillips.  (*See* R. Vol. 6, Tab. 7, p. 511).  As such, the court is unable to decipher Taylor's references to the various Phillipses.  (*See* Doc. 36-1, pp. 134-35 & n. 33).  Suffice it to say that—on the particular pages of the voir dire transcript cited by Taylor—Mr. Jackie Phillips and Ms. Brenda Phillips's answers are on page 556.  (R. Vol. 6, Tab. 7, p. 556).  And Mr. Jeff Phillips's answers are on pages 567 and 580-81 of the voir dire transcript.  (R. Vol. 6, Tab. 7, pp. 567, 580-81).

court finds his contention that "non-black venire members who expressed equal or greater hesitancy to impose the death penalty were not struck" is simply not true and belied by the record.  (*Compare id.*, *with* R. Vol. 4, Tab. 7, p. 280 (Brewster), *and* R. Vol. 6, Tab. 7, pp. 657-58, 677-80 (Turner)). First, all but one of the prospective jurors Taylor cites in support explicitly responded in the negative when asked whether they had any reservations about recommending the death penalty.  (*See* R. Vol. 5, Tab. 7, p. 398 (Hodge); *id.* at 399 (Johnson); R. Vol. 6, Tab. 7, p. 556 (Jackie Phillips); *id.* at 658 (Wagnon); *id.* at 658-59 (Wallace)).  Second, Mr. Vinson did respond "I don't think so" to the prosecutor's question: "[W]ould you have a problem in recommending the death penalty to this Judge?" (R. Vol. 6, Tab. 7, p. 658).  But that response is qualitatively different from Ms. Brewster's, who stated: "I wouldn't necessarily say that, you know, I'm just all out for the death penalty."  (R. Vol. 4, Tab. 7, p. 280).  And to the extent Mr. Vinson "never stated outright . . . that he would follow the law and recommend the death penalty if necessary," (Doc. 36-1, p. 135 (citation omitted)), that is because he was never posed that question, (*see* R. Vol. 6, Tab. 7, pp. 613-95).

Moreover, Taylor's argument confuses—either purposefully or mistakenly—two completely distinct questions.  That is, he confuses the prosecutor's oft-stated question of "[W]ould you have a problem in recommending the death penalty to this Judge?", (*see, e.g.*, R. Vol. 6, Tab. 7, p. 658), with the defense counsel's related questions:

> I'll ask you for a moment to assume that all I've told you is true.  If you are chosen to sit on this case and you hear that evidence and you find Michael Taylor guilty of Capital Murder, then on what I've told you already, when it comes time to recommend either death or Life Without Parole; how many of you can say at this time that the only sentence – that the only sentence you can consider will be death in the electric chair?
>
> . . . .

. . . . If all the facts that I've just told you turn out to be true facts. Like you said, you just don't know or you'd just absolutely vote for death?

(*See, e.g.*, R. Vol. 5, Tab. 7, pp. 410, 413). This distinction is significant because in the context of the defense counsel's questions—not the prosecutor's—many prospective jurors replied: "It just depends on how everything went," such as in Mr. Johnson's case. *Id.* at 413.

Finally, as previously noted, in explaining his reasons for striking Mr. Turner and Ms. Brewster, "[t]he prosecutor listed nine white veniremembers he had struck because they 'indicated a reluctance toward the imposition of the death penalty.'" *Taylor v. State*, 666 So. 2d 36, 42 (Ala. Crim. App. 1994) (quoting R. Vol. 7, Tab. 7, pp. 769-71).[54] Taylor, however, does not rebut—much

---

[54] In particular, the district attorney listed the following nine white veniremembers in which he exercised peremptory strikes due to their hesitancy to impose the death penalty in this case:

MR. HEDGSPETH: . . . .

. . . . I would point out also with regard to the State's other strikes, being people of the Caucasian race  –  Let me see.  [(1)] *Ms. Jeannie Baker*, who although saying that she could follow the law later called the Court or the Court's office and indicated that she could not go along with the death penalty.

THE COURT:  That's correct.

MR. HEDGSPETH:  Ms. Baker was number four and was the State's second strike.

THE COURT:  That's correct.

MR. HEDGSPETH:  [(2)] *Mr. Jack Kelley*, also indicated a reluctance toward the imposition of the death penalty.  He is number thirty and he was the State's eleventh strike.

[(3)] *Mr. Jimmie Harris*, number twenty-five, also indicated that he has a problem with Capital punishment.  He was the State's fifth strike.

[(4)] *Mrs. Peggy Lambert*, who is number thirty-one on the list, was the State's thirteenth strike.  She also indicated that she had a problem with Capital punishment.

[(5)] *Ms. Nellie Roberts*, number forty-five, was the State's eighteenth strike.  She indicated that she would have a problem with Capital punishment in this case.

[(6)] *Mr. John Smith*, number forty-nine on the list, was the State's twenty-first strike, and he said that he would have a problem with the death penalty in this case.

less mention—this fact, likely because it substantially diminishes his claim that the prosecutor disparately applied his concern regarding a potential juror's reluctance to impose the death penalty.

For the foregoing reasons, Taylor has failed to establish that the state court's adjudication of his *Batson* claim "was based on an unreasonable determination of the facts in light of the evidence" before it, and he also has not shown that the decision "involved an unreasonable application of[] clearly established" Supreme Court precedent.  28 U.S.C. § 2254(d)(1), (2); *see also Taylor v. State*, 666 So. 2d 36, 44 (Ala. Crim. App. 1994) ("Applying the 'clearly erroneous' standard to the reasons given by the State in this case, we hold that the trial court did not clearly err in denying the appellant's *Batson* motion.").  Taylor's claim is accordingly due to be denied.

## IV.   THE TRIAL COURT'S RESTRICTIONS ON VOIR DIRE EXAMINATION OF PROSPECTIVE JURORS DENIED MR. TAYLOR A FAIR TRIAL BY AN IMPARTIAL JURY AND A RELIABLE SENTENCING DETERMINATION IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS.  (DOC. 1, P. 13).

### A.   Summary of the Parties' Respective Arguments.

In support of this ground for relief, Taylor's petition asserts the following factual averments:

---

[7)] *Ms. Nell Southern*, number fifty on the list, also indicated that she could not recommend death.  She was the State's twelfth strike.

[8)] *Ms. Nancy Spivak*, who was number fifty-one, called the Court or some of the Court's officers in your office after voir dire and indicated to the Court and the Court then provided the information to counsel that she also could not go along with the death penalty.  She was the State's sixth strike.

[9)] *Ms. Gaynell Stanley*, number fifth-two on the list, was the State's tenth strike.  She also indicated that she would have a problem with Capital punishment.

I think that's all of them.  With regard to all of those that I have just read into the record, starting with, I believe, Mrs. Baker, I think the record will reflect all of those prospective jurors were white.

THE COURT:  That is correct.  The Court will so note.

(R. Vol. 7, Tab. 7, pp. 769-71 (emphasis added)).

> The trial court failed to conduct individual questioning of prospective jurors. Such questioning was essential to this case, where sixty-three of the seventy-nine potential jurors, eighty percent of the venire members, had heard about the case through the media or discussed it with others in the community [(R. Vols. 4-7, Tab. 7, pp. 233-759)].

(Doc. 1, p. 13). Within his Reply Brief, however, Taylor does not elaborate or expound upon this claim any further. This omission is especially illuminating because of Taylor's subsequent argument that his *trial counsel* was ineffective for failing to conduct individualized, sequestered voir dire on the issue of pre-trial publicity. (*See* Doc. 1, pp. 37-38; Doc. 36-1, pp. 64-68).[55]

Respondents answer by arguing that "[t]his issue was raised on direct appeal and denied on the merits by the Alabama Court of Criminal Appeals." (Doc. 13, p. 15 (citing *Taylor v. State*, 666 So. 2d 36, 66 (Ala. Crim. App. 1994)); see also Doc. 14, p. 30 (same)). The Court of Criminal Appeals held:

> The appellant claims a violation of his right to a fair trial was violated because the trial court failed to conduct individual voir dire. Although the trial judge denied the appellant's motion for individual voir dire of the members of the jury venire, the judge stated:
>
> > "There will be allowed individual questioning of jurors like we have done in other capital cases in regard to the pre-trial publicity and I will—I don't know it you want to call it halfway grant your motion or whatever, but we'll do like we normally do, bring them in in groups of twelve. We'll put them in the box and—You're [sic] been through it.
> >
> > For the record, I'll state that we'll bring them in in groups of twelve, you know, to have the extensive voir dire questioning and then bring them in individually in regard to pre-trial publicity." [(R. Vol. 3, Tab. 4, p. 50)].
>
> The appellant did not pursue the "partial granting" of his motion.

_____

[55] This aspect of his ineffective assistance claim, *i.e.*, his counsel's failure to conduct individualized, sequestered voir dire on the issue of pre-trial publicity, is discussed in Part XIX(B)(3)(b) *infra*.

*Taylor v. State*, 666 So. 2d at 66.

The Respondents assert:

"In Alabama, there is no requirement that a defendant be allowed to question each prospective juror individually during voir dire examination. This rule applies to capital cases, and the granting of a request for individual voir dire is discretionary with the trial court." *Coral v. State*, 628 So.2d 954, 968 (Ala. Cr. App. 1992). "The fact that the appellant's case involved capital murder is not alone reason to require individual voir dire. . . .A trial court's decision in denying individual voir dire examination of a jury panel will not be disturbed on appeal absent an abuse of that discretion." *Smith v. State*, 588 So.2d 561, 579 (Ala. Cr. App. 1991). See also *Henderson v. State*, 583 So.2d 276, 283 (Ala. Cr. App. 1990), affirmed, 583 So.2d 305 (Ala. 1991), cert. denied, 503 U.S. 908, 112 S.Ct. 1268, 117 L.Ed.2d 496 (1992). The extensive pretrial publicity and other circumstances that required individual voir dire in *Brown v. State*, 571 So.2d 345, 350–52 (Ala. Cr. App. 1990), cert. quashed, 571 So.2d 353 (Ala. 1990), vacated, 501 U.S. 1201, 111 S.Ct. 2791, 115 L.Ed.2d 966 (1991), are not present here.

(Doc. 14, p. 31 (quoting *Taylor v. State*, 666 So. 2d at 66)).

## B.    Merits Analysis.

Except for bare citations to the Fifth, Sixth, Eighth, and Fourteenth Amendments, Taylor fails to cite any legal authority in support of this claim.[56] (*See* Doc. 1, p. 13).  Nor does his Petition direct the court to the particular portions of the trial transcript supporting his claim that the trial judge allegedly failed to conduct individual questioning of prospective jurors.  *See id.*  Instead, Taylor's Petition only contains one citation to the record that directs the court to over five-hundred pages of the transcript from his voir dire proceedings.  *Id.* (citing R. Vols. 4-7, Tab. 7, pp. 233-759).  Because

---

[56] On the other hand, Taylor's briefs before the Alabama Court of Criminal Appeals and the Alabama Supreme Court on direct appeal raised this issue and cited both Supreme Court precedent and cases from the courts of appeal addressing the federal constitutional dimension of this claim. (*See* C.R. Vol. 11, Tab. 29, pp. 89-90 (citing *Irvin v. Dodd*, 366 U.S. 717, 722 (1961); *United States v. Starks*, 515 F.2d 112, 125 (3d Cir. 1975); *United States v. Bear Runner*, 502 F.2d 908, 911, 913 (8th Cir. 1974); *Patriarca v. United States*, 402 F.2d 314 (1st Cir. 1968)); *see also* C.R. Vol. 14, Tab. 33, pp. 99-100 (same)).  Regardless of the foregoing, Taylor's Petition and Reply Brief neither cites nor discusses Supreme Court precedent before this court.  Further, this court does not bear responsibility to sort through the record and decipher a petitioner's legal basis for his or her arguments, and, therefore, this claim is still due to be denied.

Taylor neither cites specific portions of the trial transcript nor provides any Supreme Court precedent showing that the state court's denial of his claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," this claim is due to be denied.  28 U.S.C. § 2254(d)(1) (2006).

**V.**     **THE TRIAL COURT FAILED TO QUESTION PROSPECTIVE JURORS REGARDING THEIR BIAS IN FAVOR OF THE DEATH PENALTY IN VIOLATION OF MR. TAYLOR'S FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENT RIGHTS.  (DOC. 1, P. 13).**

   **A.     Summary of the Parties' Respective Arguments.**

Taylor's Petition supports this ground for relief with the following factual averment:

> Although the trial court inquired about the prospective juror's bias against the death penalty, it failed to conduct any inquiry whatsoever about their potential bias in favor of the death penalty [(R. Vols. 4-7, Tab. 7, pp. 233-759)].

(Doc. 1, p. 13 (updated citations to the record supplied)).  Taylor does not explain this claim further within his Reply Brief.  This omission is especially enlightening due to Taylor's subsequent argument that his trial counsel was ineffective for failing to remove potential jurors from the venire due to their alleged bias in favor of the death penalty.[57]

Respondents answer by arguing that "[t]his issue was raised on direct appeal and denied on the merits by the Alabama Court of Criminal Appeals."  (Doc. 13, p. 17 (citing *Taylor v. State*, 666 So. 2d 36, 66-67 (Ala. Crim. App. 1994)); *see also* Doc. 14, p. 32 (same)).  In particular, Respondents argue:

> The United States Supreme Court, in *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770 (U.S. 1968), held that a sentence of death could not be carried out where the

---

[57] Taylor only refers to this passingly within his ineffective assistance claim in his Reply Brief.  (*See* Doc. 36-1, pp. 64, 74-75).  Nevertheless, this aspect of his ineffective assistance claim, *i.e.*, his counsel's failure to remove potential jurors from the venire due to their alleged bias in favor of the death penalty, is discussed in that context subsequently in Parts XIX(B)(3)(b) and XIX(B)(3)(d) *infra*.

jury that recommended it was chosen by excluding veniremembers for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against it.

Taylor incorrectly suggests, however, the trial court was obligated to propound questions to prospective jurors to determine if they are excludable as jurors because they are opposed to the death penalty or because they are unequivocally in favor of it. Taylor did not object at trial on this ground and therefore, the Alabama Court of Criminal Appeals correctly reviewed the same for plain error and held:

> The failure of the trial court to propound *sua sponte* "reverse-*Witherspoon*"[FN]6 questions to the jury venire and the failure of the court to "life-qualify" the jury does not constitute plain error. *Henderson v. State*, 583 So.2d 276, 283-84 (Ala. Cr. App. 1990), affirmed, 583 So.2d 305 (Ala. 1991), cert. denied, 503 U.S. 908, 112 S.Ct. 1268, 117 L.Ed.2d 496 (1992). "The burden of either asking or having the trial judge ask a 'reverse-*Witherspoon*' question lies with the appellant." *Smith v. State*, 581 So.2d 497, 506 (Ala. Cr. App. 1990), reversed on other grounds, 581 So.2d 531 (Ala. 1991). Here, as in *Smith*, 581 So.2d at 506, "[w]e have reviewed the appellant's claim, and we find no 'plain error' by the trial judge's failure to ask *sua sponte* a 'reverse-*Witherspoon*' question."

> [[FN]6 *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).]

(Doc. 14, pp. 32-33 (alterations in original) (quoting *Taylor v. State*, 666 So. 2d 36, 66-67 (Ala. Crim. App. 1994))).[58]

Before preceding to the merits of Taylor's claim, the court notes that the Court of Criminal Appeals's opinion on direct appeal is not the last reasoned judgment by the state courts on this issue and thus not the operative opinion for present purposes. In particular, the Alabama Supreme Court's subsequent opinion on direct appeal specifically addressed Taylor's concerns regarding alleged juror bias in favor of the death penalty—a point the Respondents' submissions fail to denote. *See Ex parte*

---

[58] The Respondents' Brief of the Merits omits footnote 6 from the Court of Criminal Appeals's opinion, which is added above in brackets. (*Compare* Doc. 14, p. 33, *with Taylor v. State*, 666 So. 2d 36, 66-67 (Ala. Crim. App. 1994)).

*Taylor*, 666 So. 2d 73, 76-82 (Ala. 1995).

**B.      Merits Analysis.**

Except for bare citations to the Fifth, Sixth, Eighth, and Fourteenth Amendments, Taylor fails to cite any legal authority to support this claim.[59]  (*See* Doc. 1, p. 13).  Nor does his Petition direct the court to the particular portions of the trial transcript supporting his claim that the trial judge allegedly failed to question veniremembers regarding their potential bias in favor of the death penalty.  *See id.*  Instead, Taylor's Petition only contains one citation to the record that directs the court to over five-hundred pages of the transcript from his voir dire proceedings.  *Id.* (citing R. Vols. 4-7, Tab. 7, pp. 233-759).  Because Taylor neither cites specific portions of the trial transcript nor provides any Supreme Court precedent showing that the state court's denial of his claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," this claim is due to be denied.  28 U.S.C. § 2254(d)(1) (2006).[60]

---

[59] On the other hand, Taylor's briefs before the Alabama Court of Criminal Appeals and the Alabama Supreme Court on direct appeal raised this issue and cited both Supreme Court precedent.  (*See* C.R. Vol. 11, Tab. 29, pp. 91-92 (citing, *inter alia*, *Wainwright v. Witt*, 469 U.S. 412 (1985); *Adams v. Texas*, 448 U.S. 38, 45 (1980); *Witherspoon v. Illinois*, 391 U.S. 510 (1968)); *see also* C.R. Vol. 14, Tab. 33, pp. 100-01 (same)).  Regardless of the foregoing, Taylor's Petition and Reply Brief neither cites nor discusses Supreme Court precedent before this court.  Again, this court does not bear the responsibility to sort through the record and decipher a petitioner's legal basis for his or her arguments, and, therefore, this claim is still due to be denied.

[60] In any event, the court agrees with the opinion of the Alabama Supreme Court.  *See Ex parte Taylor*, 666 So. 2d 73, 76-82 (Ala. 1995).  And thus, this court is also of the opinion that the Alabama Supreme Court's decision on direct appeal did not offend either paragraph of 28 U.S.C. § 2254(d) (2006).

**VI.    THE COURT'S REFUSAL TO INSTRUCT THE JURY ON THE LESSER INCLUDED OFFENSE OF FELONY MURDER, WHICH WAS SUPPORTED BY A REASONABLE VIEW OF THE EVIDENCE, DENIED MR. TAYLOR DUE PROCESS UNDER THE RULE STATED IN *BECK V. ALABAMA*, 447 U.S. 615 (1980).  (DOC. 1, PP. 13-14; ; DOC. 36-1, PP. 137-52).[61]**

**A.    Summary of the Parties' Respective Arguments.**

Taylor's Petition supports this claim with the following factual averments:

> The court denied counsel's request that the court instruct the jury on the lesser included offense of felony murder [(R. Vol. 8, pp. 1073-84)].  The evidence presented at trial by the State could have supported a reasonable finding that Mr. Taylor did not possess the intent to kill required of him for a capital offense.  In Mr. Taylor's statement to the police, although he admitted to beating and robbing the victims, he never stated that he actually intended to kill them.  Although Officer Grant claimed to remember, on the eve of trial, that Mr. Taylor had, in fact, said he knew he would have to kill the Moores, this testimony could have easily have been rejected by the jury for having been omitted from the written summary of the statement.  The jury could have concluded that Mr. Taylor simply lost control as he tried to subdue the Moores but that his intent did not rise to the level capital murder requires.

(Doc. 1, p. 14 (updated citation to the record supplied)).

Respondents answer by arguing that "Taylor raised this issue on direct appeal and the same was denied on the merits by the Alabama Court of Criminal Appeals."  (Doc. 13, p. 19 (citing *Taylor v. State*, 666 So. 2d 36, 54-55 (Ala. Crim. App. 1994)); *see also* Doc. 14, p. 34 (same)).

Specifically, Respondents state:

> In *Beck v. State*, 396 So.2d 645 (Ala. 1980), the Alabama Supreme Court held, the standard to be applied in this state is that in a capital case, the jury must "be instructed on each lesser included offense which has ***any basis in the evidence***." *Id.* at 658 (emphasis added).  Moreover, "a lesser-included offense instruction should be given if 'there is any reasonable theory from the evidence which would support the position.'"  *Hopper v. Evans*, 456 U.S. 605, [611] (1982); *Chavers v. State*, 361

---

[61] Taylor raises a similar contention in the context of his ineffective assistance claim when  he states that "[c]ounsel . . . did not provide a factual basis or applicable legal authorities to support their argument for a lesser included offense instruction."  (Doc. 1, pp. 42-43 (citing R. Vols. 8-9, pp. 1073-78, 1160); *see also* Doc. 36-1, pp. 88-90).  While this related assertion will be briefly discussed in that context, *see* Part XIX(B)(4)(d) *infra*, the merits of Taylor's underlying substantive claim will be addressed here, in Part VI.

So.2d 1106 (1978); *Fulghum v. State*, 277 So.2d 886, 890 (1973).

> In this case, the trial court refused Taylor's request for an instruction on the lesser included offense of felony murder, and the Alabama Court of Criminal Appeals affirmed by rejecting Taylor's argument that "he hit the Moores a number of times, but that he did not even recall how many because of the adrenaline pumping . . . suggests that at the moment of the crime Mr. Taylor was not clearly analyzing the consequences of his actions, but instead was simply blindly acting out." [*Taylor*, 666 So.2d] at 54-55.

> The evidence at trial clearly shows that Taylor went to his victims' residence because he knew them.  He took with him a duffel bag containing a barbell. After Taylor had talked with Mr. Moore and had been given some water and a doughnut, Taylor used the barbell to brutally beat and kill both Mr. and Mrs. Moore. Taylor then removed the billfold from Mr. Moore's back pocket, took the keys off Mr. Moore's belt, took $5.00 from Mrs. Moore's purse, stole the Moores' car, and forged a check on their account in the amount of $500.  ([C.R. Vol. 3, p. 463].) Therefore, the Alabama Court of Criminal Appeals correctly held there is no rational basis from the evidence supporting a charge of felony murder.  *Taylor*, 666 So. 2d at 54-55; *See also* Ala. Code 1975 § 13A-1-9(b).

(Doc. 14, pp. 34-35 (first alteration in second paragraph and emphasis in original) (updated citation to the record supplied) (parallel citations omitted).[62]

On direct appeal, the Alabama Court of Criminal Appeals made the following findings of fact and conclusions of law:

> The trial court properly refused the appellant's request for an instruction on the offense of felony murder as a lesser included offense of the charged capital offense.  We reject the appellant's argument that the appellant's admission that "he hit the Moores a number of times, but that he did not even recall how many because of the adrenaline pumping . . . suggests that at the moment of the crime Mr. Taylor was not clearly analyzing the consequences of his actions, but instead was simply blindly acting out."  [(C.R. Vol. 11, Tab. 29, p. 40)].

> There is no rational basis for a verdict convicting the defendant of

---

[62] The first paragraph quoted above from the Respondents' Brief on the Merits contains a number of typographical errors that mostly concern the Respondents' placement of quotation marks.  (*See* Doc. 14, p. 34).  All errors are corrected in the quotation above; however, the court does not denote each correction within brackets because of the sheer number of errors.  Further, the only alteration to actually appear in the Respondents' Brief on the Merits is the ellipses in the second paragraph.  *See id.* at 35 (citation omitted).

felony murder.  See Ala. Code 1975, § 13A-1-9(b).  The victims' deaths were not
"unintended deaths caused by [the defendant's] dangerous conduct." *White v. State*,
587 So.2d 1218, 1231 (Ala. Cr. App. 1990), affirmed, 587 So. 2d 1236 (Ala. 1991),
cert. denied, 502 U.S. 1076, 112 S.Ct. 979, 117 L.Ed.2d 142 (1992), quoted in
*Williams v. State*, 601 So.2d 1062, 1075 (Ala. Cr. App. 1991).

> The evidence shows that the appellant went to the Moore's residence
> because he knew them.  He took with him a duffel bag containing a barbell.  After
> the appellant had talked with Mr. Moore and had been given some water and a
> doughnut, the appellant used the barbell to brutally beat and kill both Mr. and Mrs.
> Moore.  The appellant then removed the billfold from Mr. Moore's back pocket, took
> the keys off Mr. Moore's belt, took $5.00 from Mrs. Moore's purse, stole the
> Moores' car, and forged a check on their account in the amount of $500.  The trial
> court properly refused to instruct the jury on felony murder as a lesser included
> offense.

*Taylor v. State*, 666 So. 2d 36, 54-55 (Ala. Crim. App. 1994) (alterations in original)

(updated citation to the record supplied).

## B.    Merits Analysis.

In his Reply Brief, Taylor claims "[t]he Alabama courts unreasonably applied clearly

established federal law in rejecting [his] claim that his constitutional rights were violated by the trial

court's refusal to provide a lesser included offense instruction on felony murder." (Doc. 36-1, p. 138

(citing 28 U.S.C. § 2254(d)(1))).  Taylor provides the following summary for his claim:

> It is well-settled Alabama and federal law that a lesser included
> offense instruction *must* be given in a capital case if there is a rational view of the
> evidence to support it.  See, e.g., Spaziano v. Florida, 468 U.S. 447, 455 (1984);
> Beck v. Alabama, 447 U.S. 625 (1980); [E]x parte McCall, 594 So.2d 628, 629 (Ala.
> 1991) (citing Ala. Code 1975, § 13A-1-9(b)). . . .

> . . . .  In rejecting the possibility that a rational jury could have
> concluded that there was sufficient evidence to support a felony murder conviction,
> the Alabama Court ignored defects in the prosecution's case on intent to kill and
> applied a more stringent standard than that required by federal law.

> The trial court's refusal to give a felony murder instruction seriously
> prejudiced Mr. Taylor.  By refusing to give a lesser included offense instruction, the

81

judge removed Mr. Taylor's only genuine path to any result other than a capital murder conviction. At trial, Mr. Taylor conceded every element of the prosecution's case, except for intent to kill, the single element that distinguishes capital murder from felony murder. There was no reasonable probability that the jury would acquit Mr. Taylor, who had admitted to two violent homicides. By not providing a lesser included offense instruction on felony murder, the judge deprived the jury of any real choice and Mr. Taylor of any outcome other than a conviction for capital murder. The court's decision resulted in a fundamentally unfair trial.

*Id.* at 138-39 (emphasis in original) (footnote omitted).[63]

Earlier this year, the Supreme Court summarized *Beck v. Alabama* in the following manner:

In *Beck*, we held that the death penalty may not be imposed "when the jury was not permitted to consider a verdict of guilt of a lesser included non-capital offense, and when the evidence would have supported such a verdict." 447 U.S., at 627. We explained that such a scheme intolerably enhances the "risk of an unwarranted conviction" because it "interjects irrelevant considerations into the factfinding process, diverting the jury's attention from the central issue of whether the State has satisfied its burden of proving beyond a reasonable doubt that the defendant is guilty of a capital crime." *Id.* at 638, 642. "[F]orcing the jury to choose between conviction on the capital offense and acquittal," we observed, "may encourage the jury to convict for an impermissible reason—its belief that the defendant is guilty of some serious crime and should be punished," even when there is "some doubt with respect to an element" of the capital offense. *Id.* at 632, 642, 637. Because the scheme in *Beck* created a danger that the jury would resolve any doubts in favor of conviction, we concluded that it violated due process. *See id.*, at 638, 643.

---

[63] In the footnote omitted above, which immediately follows Taylor's citation of *Ex parte McCall*, 594 So. 2d 628, 629 (Ala. 1991) (citing Ala. Code § 13A-1-9(b) (1975)), he asserts: "Indeed, under Alabama law, a defendant is entitled to a lesser included charge as long as there is any evidence to support it, 'however weak, insufficient, or doubtful in credibility.'" (Doc. 36-1, p. 138 n. 35 (emphasis in original) (quoting *Connolly v. State*, 500 So. 2d 57, 66 (Ala. Crim. App. 1985))). When this footnote is considered alongside its corresponding statement in the body of Taylor's Reply Brief, it suggests that Alabama's standard concerning when a lesser included offense instruction should be given is actually lower than that imposed by the Due Process Clause of the Fourteenth Amendment.

Regardless of this contention's veracity, it falls outside the scope of federal habeas review because it is purely an issue of state law. *See* 28 U.S.C. § 2254(a) ("[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."). Accordingly, the court will not address it or any related claim further in this context because this court's only concern is whether the trial court and Alabama Court of Criminal Appeals violated the minimum standards imposed by the United States Constitution.

. . . .

. . . . The concern addressed in *Beck* was "the risk of an unwarranted *conviction*" created when the jury is forced to choose between finding the defendant guilty of a capital offense and declaring him innocent of any wrongdoing.  447 U.S., at 637 (emphasis added); *see also Spaziano v. Florida*, 468 U.S. 447, 455 (1984) (explaining that the "goal of the *Beck* rule" is "to eliminate the distortion of the factfinding process that is created when the jury is forced into an all-or-nothing choice between capital murder and innocence"); *Schad v. Arizona*, 501 U.S. 624, 646 (1991) ("Our fundamental concern in *Beck* was that a jury convinced that the defendant had committed some violent crime but not convinced that he was guilty of a capital crime might nonetheless vote for a capital conviction if the only alternative was to set the defendant free with no punishment at all").

*Bobby v. Mitts*, 131 S. Ct. 1762, 1763-64 (2011) (per curiam) (first alteration and emphasis in original) (parallel citations omitted).

On that note, the Eleventh Circuit recently summarized *Beck* as well, though it provided greater detail concerning the facts of the case.  *See Maples v. Allen*, 586 F.3d 879 (11th Cir. 2009) (per curiam), reversed on other grounds*, Maples v. Thomas*, 132 S. Ct. 912 (2012).  The court held that "the Alabama state courts' decision that federal law did not require the trial court to *sua sponte* give a jury instruction on the non-capital offense of manslaughter due to involuntary intoxication" did not offend the AEDPA.  *Maples*, 586 F.3d at 895.  In doing so, the Eleventh Circuit provided the following analysis:

The Alabama appellate court's decision about the charge on manslaughter due to voluntary intoxication is neither contrary to, nor an unreasonable application of, established federal law.  [Petitioner] Maples relies primarily on *Beck v. Alabama*, 447 U.S. 625 (1980), but *Beck* is completely inapposite because it involved an all-or-nothing statute no longer extant.  In the 1970s, Beck was convicted of capital murder.  In *Beck*, the Supreme Court invalidated an Alabama statute that absolutely prohibited in capital cases the charging of all non-capital lesser included offenses.  Although the evidence warranted such an instruction in Beck's case, the Alabama jury was given the choice only of (1) convicting Beck of the capital offense, for which the jury must impose the death penalty, or (2) setting him free.  *Beck*, 447 U.S. at 628-30.  *The Supreme Court held Alabama's all-or-nothing statute was*

83

*unconstitutional because the absolute preclusion in a capital case of a lesser included offense,* **when the evidence supported it**, *violated procedural due process. See Beck*, 447 U.S. at 627 (overturning death penalty where jury "was not permitted to consider a verdict of guilt of a lesser included non-capital offense, and when the evidence would have supported such a verdict"); *cf. Hopper v. Evans*, 456 U.S. 605, 610-14 (1982) (upholding death sentence even though jury was instructed on only capital offense under Alabama's preclusion statute, because the evidence did not support a lesser included offense charge and defendant was thus not prejudiced by preclusion statute).[FN]20

> [FN]20 In *Beck*, "[t]he State conceded that, on the evidence in that case, Beck would have been entitled to an instruction on the lesser included, noncapital offense of felony murder except for the preclusion clause." *Hopper*, 456 U.S. at 609 (discussing *Beck*).

> . . . .

> Lastly, *a lesser included non-capital offense instruction is warranted* **only when the evidence supports such an instruction**. As Maples's own attorney told the jury[FN]22 and as the Alabama Court of Criminal Appeals found, the evidence did not support an intoxication theory.

> [FN]22 Indeed, Maples himself stated in his confession that he was not drunk before he killed Terry and Robinson, and he called witnesses who gave testimony indicating he was not intoxicated the night of the killings.

*Id.* at 893-94, 895 (emphasis added) (parallel citations and footnote omitted).

Finally, the standard with which *Beck* and its progeny directs this court to judge Taylor's claim is whether "the evidence would permit a jury rationally to find [him] guilty of the lesser offense and acquit him of the greater." *Hopper v. Evans*, 456 U.S. 605, 612 (1982) (citation omitted).[64] This test, however, must be tempered with the Supreme Court's corresponding

---

[64] The Fourth Circuit recently phrased this inquiry in a somewhat different manner by stating: "*Beck* requires a lesser-included offense instruction when the evidence at trial merely casts 'some doubt' on a *necessary element* of the capital charge." *Hyatt v. Branker*, 569 F.3d 162, 174 (4th Cir. 2009) (citations omitted) (emphasis in original). In the underlying state court conviction at issue in *Hyatt*, the defendant was convicted of, *inter alia*, first-degree murder, and the trial court had denied his "request for a jury instruction on the lesser-included offense of second-degree murder." *Id.* at 165, 173. After contrasting the state statutes in question and finding that the two were the same except for first-degree murder's additional requirements of premeditation and deliberation, the Fourth Circuit framed the petitioner's

instruction that "due process requires that a lesser included offense instruction be given *only* when the evidence warrants such an instruction." *Id.* at 611 (emphasis in original); *see also Maples*, 586 F.3d at 895.  And in *Schad v. Arizona*, 501 U.S. 624 (1991), the Supreme "Court clarified that it is not per se constitutional error for a defendant to be denied a lesser-included-offense instruction in a capital case." *Johnson v. Alabama*, 256 F.3d 1156, 1182 (11th Cir. 2001).[65]  But even this clarification does not fully express the totality of Taylor's present burden.

Because Taylor seeks relief pursuant to 28 U.S.C. § 2254—to be precise, § 2254(d)(1)'s "unreasonable application" clause, (*see* Doc. 36-1, pp. 138, 145-49)—he must also surmount the additional burdens imposed by the AEDPA's deferential standards.  As such, Taylor must show the Alabama Court of Criminal Appeals's determination was not only incorrect but also unreasonable. *See Harrington v. Richter*, 131 S. Ct. 770, 785 (2011) ("For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" (quoting *Williams v. Taylor*, 529 U.S. 362, 410 (2000))).  Or, stated negatively, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded

---

burden in this way: "Thus, to have a constitutional entitlement to a jury instruction for second-degree murder under *Beck*, [the petitioner] must show that evidence presented to the jury creates some doubt with respect to either premeditation or deliberation." *Id.* at 174.

Utilizing this rubric, Taylor "must show that [the] evidence presented to the jury creates some doubt with respect to" his intent to kill Mr. and Mrs. Moore because felony murder and capital murder share the same elements under Alabama law, with the exception that felony murder does not require the intent to kill. *See Fletcher v. State*, 621 So. 2d 1010, 1021 (Ala. Crim. App. 1993).  *Compare* Ala. Code §§ 13A-5-40(b), 13A-6-(a)(1) (defining capital murder), *with* Ala. Code § 13A-6-2(a)(3) (defining felony murder).

[65] In *Johnson*, the Eleventh Circuit entered a further observation concerning the Supreme Court's opinion in *Schad* that is particularly relevant to Taylor's case.  The court noted:

> [In *Schad*, t]he Court reached this conclusion despite the defendant's argument that his theory of defense (he robbed the victim but did not murder him) supported a robbery instruction, and that, in the absence of the instruction, the jury may have convicted him of capital murder simply because they thought him guilty only of robbery and robbery was not available as an alternative.

256 F.3d at 1182.  Taylor's argument, more or less, expresses the same view.  (*See* Doc. 36-1, pp. 137-52).

jurists could disagree' on the correctness of the state court's decision." *Id.* at 786 (citation omitted). Because of the combination of the *Beck* standard and the AEDPA in the present case, this court must focus on the reasonableness of the Court of Criminal Appeals's decision regarding whether the evidence supported a lesser-included instruction of felony murder.[66]

        The petitioner has not demonstrated that the Court of Criminal Appeals' decision that the evidence presented in Taylor's trial did not support a finding of felony murder was unreasonable. Under Alabama law, a person is guilty of felony murder when:

> (3) He or she commits or attempts to commit arson in the first degree, burglary in the first or second degree, escape in the first degree, kidnapping in the first degree, rape in the first degree, robbery in any degree, sodomy in the first degree, any other felony clearly dangerous to human life and, in the course of an in furtherance of the crime that he or she is committing or attempting to commit, or in immediate flight therefrom, he or she, or another participant if there by any, causes the death of any person.

Ala. Code (1975) § 13A-6-2(a)(3). As both the state trial and appellate courts recognized, what the evidence showed was that Taylor admittedly beat both of the Moores many times after spending some time with them in their home; such actions demonstrate malicious and purposeful action by Taylor, rather than violence merely incidental to another crime. *See* C.R. Vol. 11, Tab 29, p. 40 ("We reject the appellant's argument that the appellant's admission that 'he hit the Moores a number of times, but that he did not even recall how many because of the adrenaline pumping . . . suggests that at the moment of the crime Mr. Taylor was not clearly analyzing the consequences of his actions, but instead was simply blindly acting out.").

---

[66] *See, e.g., Phillips v. Workman*, 604 F.3d 1202, 1213 (10th Cir. 2010) ("As we have noted, [t]o succeed in his claim that the trial court's failure to instruct the jury on [felony murder] violated *Beck*, [Taylor] must demonstrate that the evidence presented at trial would permit a rational jury to find him guilty of [felony murder] and acquit him of [capital] murder." (first alteration in original) (internal quotation marks and citation omitted)); *Charm v. Mullin*, 37 Fed. Appx. 475, 483-84 & n. 4 (10th Cir. 2002) (unpublished opinion) (substantially similar analysis).

Taylor relies on two non-capital cases where the Eleventh Circuit found the district court erred by refusing to give instructions on lesser included offenses.  (*See* Doc. 36-1, pp. 147-49 (citing *United States v. Williams*, 197 F.3d 1091 (11th Cir. 1999) (concerning a sexual assault of a minor at an Army base); *United States v. Gonzalez*, 122 F.3d 1383 (11th Cir. 1997) (concerning the assault of three federal marshals)).  Both of these cases are easily distinguishable, however, because they concern an entirely different body of case law, whereas *Beck* is peculiarly novel to cases in which a defendant is charged with a capital offense.  *See, e.g.*, *Sabillo v. Sec'y, Dep't of Corr.*, 355 Fed. Appx. 346, 349 (11th Cir. 2009) (per curiam) ("[T]he Supreme Court has never addressed 'whether the Due Process Clause would require the giving of such instructions in a noncapital case.' The Court has since suggested that it would not extend its reasoning in *Beck*." (citations omitted)).  Neither of these cases cited by Taylor embodies "clearly established Federal law" as defined by the AEDPA.  *See* 28 U.S.C. § 2254(d)(1).

Despite Taylor's attempts to argue otherwise, the facts before the jury did not cast any doubt concerning his intent to kill Mr. and Mrs. Moore.  On this point, the Sixth Circuit has made an observation that is equally applicable to Taylor's *Beck* claim.  It stated:

> It is well established that a lesser-included-offense instruction is not required where the facts of a murder so strongly indicate intent to kill that the jury could not rationally have a reasonable doubt as to the defendant's intent.  *See, e.g.*, *Hopper v. Evans*, 456 U.S. 605, 613 (1982) (denying a *Beck* claim where the defendant's testimony and evidence that he shot the victim in the back during an armed robbery "affirmatively negated any claim that he did not intend to kill the victim"); *Campbell v. Coyle*, 260 F.3d 531, 543-44 (6th Cir. 2001) (holding that the defendant's *Beck* claim failed because the number and location of the victim's five stab wounds "compelled a  reasonable jury to find that the [defendant] possessed the intent to kill," despite evidence of a struggle); *see also Slaughter v. Parker*, 450 F.3d 224, 236-38 (6th Cir. 2006) (rejecting a *Beck* claim in the alternative because the "facts [that the victim was bludgeoned in the head and stabbed five times] foreclose the conclusion that [the defendant] acted with any mental state other than intent");

*Abdus-Samad v. Bell*, 420 F.3d 614, 629 (6th Cir. 2005) (rejecting a *Beck* claim in the alternative because "[t]he fact that [the defendant] shot the victim with a pistol five to six times makes it virtually impossible to find that the killing was accidental").

*Smith v. Bradshaw*, 591 F.3d 517, 524 (6th Cir. 2010) (alterations in original) (parallel citation omitted).   Similarly here, the Alabama Court of Criminal Appeals found the facts surrounding the brutal murders of Mr. and Mrs. Moore indicated doubt as to Taylor's intent.   *See Taylor v. State*, 666 So. 2d 36, 54-55 (Ala. Crim. App. 1994).   This court agrees with that assessment.

In sum, the Court of Criminal Appeals's opinion on direct appeal that "[t]he trial court properly refused to instruct the jury on felony murder as a lesser included offense," *id.* at 55, did not "involve[] an unreasonable application of[] clearly established Federal law," 28 U.S.C. § 2254(d)(1).   Because the state court did not unreasonably apply clearly established federal law by denying Taylor's request for a lesser-included instruction on felony murder, this court need not apply the harmless error analysis set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), as Taylor suggests.  (*See* Doc. 36-1, pp. 149-52).  This claim lacks merit and must be denied.

**VII.   THE TRIAL COURT ALLOWED VICTIM-IMPACT EVIDENCE IN THE GUILT PHASE OF THE TRIAL IN VIOLATION OF MR. TAYLOR'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL UNDER THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS. (DOC. 1, PP. 14-15; DOC. 36-1, PP. 266-71).[67]**

**A.   Summary of the Parties' Respective Arguments.**

In support of this claim, Taylor cites three examples of victim-impact evidence improperly admitted by the trial court:

---

[67] Taylor also raises a variant of this claim within his ineffective assistance of counsel claim,  (*See* Doc. 1, pp. 40-41; Doc. 36-1, pp. 81-84), and the court addresses it in this context in Part XIX(B)(4)(b) *supra*.

> [T]he trial court permitted the prosecutor to introduce irrelevant and inflammatory victim-impact evidence, including evidence demonstrating the Moores' close relationship with their son and long, happy marriage.  [(1)] The Moores' son testified that he had gone into the same business as his father [(R. Vol. 8, Tab. 11, p. 1036)], and  [(2)] that the Moores were killed two months before their fiftieth wedding anniversary [(R. Vol. 8, Tab. 11, p. 1045)].  [(3)] The court allowed the prosecutor to introduce a photograph of the Moores in their home, by their Christmas tree [(C.R. Vol. 2, Tab. 1, pp. 354-55 (State's Ex. No. 68))].

(Doc. 1, p. 15); (*see also* Doc. 36-1, pp. 269-70 (similar)).

Respondents' answer is two-fold.  First, Respondents contend that "Taylor failed to fairly present this claim to the state courts."  (Doc. 13, p. 20; *see also* Doc. 14, p. 36 (same)).  Respondents support this claim by arguing:

> Habeas petitioners generally cannot raise claims in federal court if those claims were not first exhausted in state court.  28 U.S.C. § 2254(b)(1).  In his brief on direct appeal, Taylor did not cite a single federal case, statute, or rule in support of his claim regarding victim-impact testimony.  Moreover, Taylor simply repeated the same argument in his petition for writ of certiorari and his brief in support thereof.  (Habeas Checklist: Vol. 14, Tab #R-32, #R-33)  Therefore, Taylor did not give the state courts a fair opportunity to decide the claim.  Dismissal of his habeas petition to allow Taylor to present that claim fairly as a federal claim in state court now would be futile because he would be barred from raising it in state court under Rule 32.2(c) of the Alabama Rules of Criminal Procedure (statute of limitations bar) and Rule 32.2(b) (successive petition bar).  Because any remedy with respect to his claim is procedurally barred by the state procedural rules noted above, Taylor's claim is procedurally defaulted from review.  This court should, therefore, dismiss this claim.

(Doc. 13, pp. 20-21; *see also* Doc. 14, pp. 36-37 (same)).

Second, and in the alternative, Respondents claim that "this issue was raised on direct appeal and denied on the merits by the Alabama Court of Criminal Appeals."  (Doc. 13, p. 21 (citing *Taylor v. State*, 666 So. 2d 36, 66 (Ala. Crim. App. 1994)); *see also* Doc. 14, p. 37 (same)).  Specifically, Respondents quote the following from the Court of Criminal Appeals opinion:

> The appellant complains of the admission of the following victim impact evidence during the guilt phase of his trial: testimony that the victim's son had gone

89

into the same business as his father [(R. Vol. 8, Tab. 11, p. 1036)]; testimony that the victims were murdered only two months before their 50th wedding anniversary [(R. Vol. 8, Tab. 11, p. 1045)]; and the admission of a photograph of the victims in front of a Christmas tree.  This issue is raised for the first time on appeal; no objection was presented at trial.  We find no plain error.  See *Ex parte Crymes*, 630 So.2d 125, 127 (Ala. 1993).

(Doc. 14, p. 37 (quoting *Taylor v. State*, 666 So. 2d 36, 66 (Ala. Crim. App. 1994))).

### B.      The Question of Procedural Default.

As a prerequisite to federal habeas review, a petitioner "must exhaust state court remedies, either on direct appeal or in a state post-conviction motion."  *Reedman v. Thomas*, 305 Fed. Appx. 544, 545 (11th Cir. 2008) (per curiam) (citing § 2254(b), (c)).

To exhaust state remedies, the petitioner must present fairly every issued raised in his federal petition to the state's highest court, either on direct appeal or on collateral review.  For purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief.  Indeed, we require that a petitioner present his claims to the state court such that a reasonable reader would understand each claim's particular legal basis.

*Id.* at 545-46 (alterations, citations, and internal quotation marks omitted).  Stated differently, a federal habeas court must "ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies . . . ."  *Woodford v. Ngo*, 548 U.S. 81, 92 (2006) (emphasis in original) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)).

As to the Respondents' contention that he "failed to fairly present this claim to the state courts," (Doc. 13, p. 20; *see also* Doc. 14, p. 36 (same)), Taylor responds with two alternative arguments.  First, he states that he "fairly presented this claim to the state courts in his briefs on direct appeal."  (Doc. 36-1, p. 267)  Taylor asserts that he "presented the substance of his federal claim when he argued in his brief in support of a writ of certiorari [to the Alabama Supreme Court]

90

that the admission of the victim-impact evidence 'violated Mr. Taylor's rights to due process and a fair trial.'"  *Id.* at 280 (quoting C.R. Vol. 14, Tab. 33, p. 97).  Thus, as evidence for his "reference to a specific federal constitutional guarantee," *Reedman*, Fed. Appx. at 545-46, Taylor points to only one phrase within his briefs on direct appeal.  (Doc. 36-1, p. 268).[68]  In the last sentence of this claim, he simply states, in full: "[i]ts admission violated Mr. Taylor's rights to *due process* and a fair trial and requires reversal of his convictions."  (C.R. Vol. 11, Tab. 29, p. 88 (emphasis added); *see also* C.R. Vol. 14, Tab. 33, p. 97 (same)).  Other than the preceding, the only reference to legal authority within his claim was a citation to *Ex parte Crymes*, 630 So. 2d 125 (Ala. 1993).

Taylor failed to "present his claim[] to the state court such that a *reasonable reader* would understand each claim's particular legal basis."  *Reedman*, Fed. Appx. at 545-46 (emphasis added).  Taylor's state court briefs only referenced "due process," not *federal* due process nor his due process rights *under the Fourteenth Amendment*.  To be sure, Alabama's Constitution guarantees due process as well, so the phrase "due process"is, by itself, at best ambiguous.  *See* Ala. Const. art. 1, §§ 6, 13 (1901).  Further, Taylor's passing reference to due process appeared in the last sentence of his claim, which is in contrast to his citation to the Alabama Supreme Court's opinion in *Ex parte Crymes* in the first sentence of his claim.  (*See* C.R. Vol. 11, Tab. 29, pp. 87-88; C.R. Vol. 14, Tab. 33, p. 97).[69]

---

[68] While Taylor's Reply Brief only cites "his brief in support of a writ of certiorari" to the Alabama Supreme Court on direct appeal, (*see* Doc. 36-1, p. 268 (quoting C.R. Vol. 14, Tab. 33, p. 97)), the court takes notice that the same phrase he quotes from that brief also appeared within his earlier brief to the Court of Criminal Appeals, (*see* C.R. Vol. 11, Tab. 29, p. 88).  This reference is important because the Supreme Court has held that a habeas petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process" before he or she will "be deemed to have exhausted the remedies available in the courts of the State."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999) (quoting 28 U.S.C. § 2254(c)); *cf. Rose v. Lundy*, 455 U.S. 509, 520 (1982) ("[O]ur interpretation of § 2254(b), (c) provides a simple and clear instruction to potential litigants: before you bring any claims to federal court, be sure that you first have taken each one to state court.").

[69] *See McNair v. Campbell*, 416 F.3d 1291, 1302-04 (11th Cir. 2005) (addressing fair presentation and noting similar factors such as the appearance of citations to federal law in the closing paragraph and string citations).

At no point in *Crymes* does the Alabama Supreme Court discuss a criminal defendant's federal constitutional rights, so citing *Crymes* does not vindicate Taylor's failure to fairly present this claim as a federal claim.  Finally, Taylor did not cite a federal case, a provision of the United States Constitution, or even a state case that discussed federal law.

While defendant need not cite "book and verse on the federal constitution," *Picard v. Connor*, 404 U.S. 270, 278 (1971) (citation omitted), he must, at the very least, *cite* the federal constitution or a case interpreting federal constitutional rights.  Therefore, Respondents are correct to assert that "Taylor did not cite a single federal case, statute, or rule in support of his claim regarding victim-impact testimony" in his briefs on direct appeal.  (Doc. 13, pp. 20-21; *see also* Doc. 14, p. 37 (same)).  As such, Taylor's claim is procedurally barred unless he can prove an exception to the procedural default doctrine applies.

Second, and in the alternative, Taylor claims that even if his claim is procedurally defaulted, he "may obtain federal habeas review because he can show both cause for the default and actual prejudice resulting therefrom."  (Doc. 36-1, p. 268).  Taylor asserts that he "has demonstrated cause by showing constitutionally ineffective assistance of counsel."  *Id.* (citing Doc. 36-1, pp. 11-118; Doc. 36-1, pp. 220-23).  And he asserts that he "also can demonstrate prejudice resulting from the cause," the discussion of which is intermingled with the merits of this claim.  *Id.*

As discussed fully below while analyzing the merits of Taylor's claim, the trial court did not err by allowing the three pieces of victim-impact evidence to be admitted into evidence.  Accordingly, Taylor's attorneys could not have rendered ineffective assistance for failing to object thereto, and Taylor is, therefore, unable to establish cause.  Further, neither can Taylor demonstrate prejudice because, as discussed fully below, the innocuous and fleeting nature of these three

comments *at most* establish "a possibility of prejudice." *United States v. Frady*, 456 U.S. 152, 170 (1982). For Taylor to sufficiently establish prejudice, however, his showing must go beyond proof "that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.*; *see also McCoy v. Newsome*, 953 F.2d 1252, 1261 (11th Cir. 1992) (per curiam). Because he failed to make the requisite demonstration of prejudice, therefore, his claim is procedurally defaulted from federal habeas review.

### C. Merits Analysis.

Regardless of Taylor's procedural default, this court will endeavor to address the merits of his claim.[70] In this regard, Taylor's specific claim is that the Alabama Court of Criminal Appeals's conclusion on direct appeal "that there was no error in the admission of the irrelevant victim-impact evidence was an unreasonable application of clearly established federal law." (Doc. 36-1, p. 267 (citing 28 U.S.C. § 2254(d)(1); *see also id.* at 270-71 ("Because the erroneous admission of the victim-impact evidence 'so infected the trial with unfairness as to make the resulting conviction a denial of due process,' the State Court's conclusion is unreasonable and Mr. Taylor is entitled to relief." (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)))). As stated above, the Alabama Court of Criminal Appeals's only discussion of this claim merely recited the factual basis of Taylor's claim and then held: "This issue is raised for the first time on appeal; no objection was presented at trial. We find no plain error." *Taylor v. State*, 666 So. 2d 36, 66 (Ala. Crim. App. 1994) (citing *Ex parte Crymes*, 630 So. 2d 125, 127 (Ala. 1993)).

---

[70] The subsequent discussion does not detract from this court's previous ruling that this claim is procedurally defaulted. *See* Part VII(B) *supra*.

In his Reply Brief, Taylor states: "[a]s this evidence was irrelevant to any disputed issue and highly prejudicial, the admission was erroneous and rendered the trial fundamentally unfair, compelling the conclusion that Mr. Taylor's conviction cannot stand." (Doc. 36-1, pp. 266-67). He further argues:

> This evidence was wholly irrelevant to the sole issue before the court at the guilt phase of the trial – whether the State proved beyond a reasonable doubt every element of the crime, including Mr. Taylor's intent to kill. The admission of the irrelevant victim-impact evidence was prejudicial because it diverted the jury from considering the facts (or lack of) that were material to this issue. It evoked sympathy for the victims and their family, which has no place in the important guilt/innocence determination. Given the paucity of evidence regarding Mr. Taylor's intent to kill, see Points IIB, II(I), ante, [(Doc. 36-1, pp. 137-52, 219-28),] the victim-impact evidence and the sympathy it evoked likely was a critical factor in the jury's decision to convict Mr. Taylor for capital murder.

Id. at 270. And for the legal basis supporting this claim, Taylor contends:

> According to the Supreme Court, "[i]n the event that evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief." Payne v. Tennessee, 501 U.S. 808, 825 (1991) (discussing victim-impact evidence). A defendant is entitled to relief whenever the error "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986); see also Snowden v. Singletary, 135 F.3d 732, 737 (11th Cir. 1998) ("[W]hen a state trial court's evidence ruling deny a habeas petitioner fundamental constitutional protections, this [c]ourt's duty requires it to enforce the constitution's guarantees by granting the petition for a writ of habeas corpus." (quotation omitted)).

Id. at 269 (alterations in original).

Recently, the Eleventh Circuit remanded a federal habeas petition to the district court because of the petitioner's argument "that the admission of victim impact evidence violated his right to due process." *Colon v. Burnett*, 317 Fed. Appx. 922, 924 (11th Cir. 2009) (per curiam).[71] The court then

---

[71] Admittedly, the Eleventh Circuit's opinion in *Colon* addressed a situation where "[t]he record [was] unclear whether the district court possessed a copy of the record of the state court." *Colon*, 317 Fed. Appx. at 924. But the

gave the district court the following instructions on remand:

> To resolve this issue, the district court must determine whether an evidentiary error occurred and, if so, whether admission of the evidence "'so infused the trial with unfairness as to deny due process of law.'" *Felker v. Turpin*, 83 F.3d 1303, 1311-12 (11th Cir.1996) (quoting *Lisenba v. California*, 314 U.S. 219, 228 (1941)); *see Ferguson*, 527 F.3d at 1148-49 (discussing *Stewart v. Erwin*, 503 F.3d 488 (6th Cir.2007)).

*Id.* (parallel citation omitted). Therefore, this court must "review the state trial record" and "determine whether an evidentiary error occurred." *Id.* (citation omitted). Then, only if an evidentiary error occurred, should the court proceed to determine "whether admission of the evidence so infused the trial with unfairness as to deny due process of law." *Id.* (internal quotation marks and citations omitted); *see also Payne*, 501 U.S. at 825 ("In the event that evidence is introduced that is *so unduly prejudicial that it renders the trial fundamentally unfair*, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief." (emphasis added) (citing *Darden v. Wainwright*, 477 U.S. 168, 178-83 (1986))).

Here, Taylor complains of three specific pieces of victim-impact evidence: (1) John Moore's testimony that he went into the same business as his father (R. Vol. 8, Tab. 11, p. 1036); (2) John Moores' testimony that his parents were killed two months before their fiftieth wedding anniversary (R. Vol. 8, Tab. 11, p. 1045); and (3) the State's introduction of a photograph of the Moores in their home, by their Christmas tree (C.R. Vol. 2, Tab. 1, pp. 354-55 (State's Ex. No. 68)). (*See* Doc. 1, p. 15; Doc. 36-1, pp. 269-70). As the Supreme Court noted in *Darden*, "[i]t is helpful as an initial matter to place these remarks in context." 477 U.S. at 179.

---

opinion still recited the proper standard to review this claim, which is evidenced by a comparison of *Colon*'s instruction with the Supreme Court's earlier opinion in *Payne v. Tennessee*, 501 U.S. 808, 825 (1991). As an unpublished opinion, *Colon* constitutes persuasive, and not binding, authority. *See* 11 th Cir. R. 36-2.

First, Taylor cites John Moore's testimony that he went into the same business as his father. Looking at the context of this statement is very enlightening and completely belies Taylor's claim of undue prejudice.  In particular, this comment was made at the outset of John Moore's testimony, while the State was introducing and relating his background to the jury.  In this context, John Moore testified:

Q       Johnny, would you state your name, please?

A       John Ernest Moore.

Q       And where do you live?

A       1531 Broke Ridge Drive, Jackson, Mississippi.

Q       And how are you employed?

A       I work for Magnolia, Incorporated in Birmingham, Alabama.

Q       What type of business is that?

A       It's a diamond company.

Q       Okay.  *Same business, I think, your father was in?*

A       *Yes sir.*

(R. Vol. 8, Tab. 11, pp. 1035-36 (emphasis added)).  Viewed this way, the court easily finds no evidentiary error occurred because this testimony was relevant as it provided John Moore's background to the jury. The statement was not "so unduly prejudicial that it render[ed] the trial fundamentally unfair."  *Payne*, 501 U.S. at 825 (citation omitted).

Second, regarding John Moore's testimony that his parents were killed two months before their fiftieth wedding anniversary, Taylor cites the following discourse between John Moore and the district attorney during direct examination:

96

Q        Okay.  How long had you folks been married, Johnny?

A        Almost fifty years.

Q        Now, this incident occurred – alleged to have occurred on November the 4th of 1991; when would your parents have celebrated their Fiftieth Anniversary?

A        January 18th.

Q        Of '92, then?

A        Yes, sir.  Of the next – of '92.

Q        So, they were murdered two months short of their Fiftieth Wedding Anniversary?

A        Yes, sir.

(R. Vol. 8, Tab. 11, p. 1045).  Contrary to the preceding piece of evidence cited by Taylor, this exchange presents a closer question, yet it still fails to rise to the level of having "so infused the trial with unfairness as to deny due process of law."  *Colon*, 317 Fed. Appx. at 924 (citation omitted).

In *Payne*, the Supreme Court pointed to its previous analysis in *Darden* for a discussion of the requisite standard.  *Payne*, 501 U.S. at 825 (citing *Darden*, 477 U.S. at 179-83).  There, the Court confronted a case where the prosecutors had, *inter alia*, repeatedly referred to the defendant as an "animal" and stated that he "wish[ed one victim] had had a shot gun in his hand when he walked in the back door and blown [the defendant's] face off."  *Darden*, 477 U.S. at 180-81 & nn. 11-12.  Even considering the outrageous nature of the prosecutor's comments, however, the Supreme Court still found that "that they did not deprive petitioner of a fair trial."  *Id.* at 181.  After comparing the preceding statements to those in this case, the court finds that John Moore's statements "did not deprive [Taylor] of a fair trial."  *Id.*

Third, Taylor faults the State for introducing a photograph of the Moores in their home, by

97

their Christmas tree.  (C.R. Vol. 2, Tab. 1, pp. 354-55 (State's Ex. No. 68)).  This photograph was

admitted after the following exchange between the State and John Moore:

> Q    Now, I believe Mr. and Mrs. Moore were your mother and father; is that
>       correct?
>
> A    That's correct.
>
> Q    John, let me show you what's been previously marked for identification as
>       State's Exhibit Number 68, and I'll ask you, first of all, if you recognize that
>       exhibit?
>
> A    I sure do.
>
> Q    Tell us what that exhibit is?
>
> A    That's my mother and father.
>
> Q    When was that photograph taken?
>
> A    The Christmas before they died.
>
> Q    Okay.  So, that would have been in December, then, of 1990?
>
> A    Yes, sir.
>
> Q    That shows your mother and dad in the condition of what they normally
>       looked like; is that correct?
>
> A    Yes, sir.
>
>                    MR. HEDGSPETH:   We'd offer State's 68.
>
>                    THE COURT:          Admitted.

(R. Vol. 8, Tab. 11, pp. 1035-36 ).  As the preceding makes clear, contrary to Taylor's assertion, this

evidence was not "wholly irrelevant."  (Doc. 36-1, p. 270).  Specifically, it was relevant to the

Moores' physical condition at the time of the crime.  And even if it were not, the photo did not

render Taylor's trial "fundamentally unfair."  *See Darden*, 477 U.S. at 183. Moreover, implicit

98

within Taylor's claim is that *but for* the presence of the Christmas tree, the admission of this photograph would have been unobjectionable. (Doc. 36-1, pp. 269-70). The court rejects any contention that the mere inclusion of a Christmas tree transforms an otherwise unobjectionable photograph into the type of evidence that "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181 (citation omitted).

Taylor has not shown that the opinion of the state collateral courts "involved an unreasonable application of[] clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), and thus his claim is due to be denied.

## VIII. THE TRIAL COURT ALLOWED PHOTOGRAPHS OF THE MOORES AND TESTIMONY AND COMMENT EMPHASIZING THE PHOTOGRAPHS' GRUESOME NATURE IN VIOLATION OF MR. TAYLOR'S RIGHTS TO A FAIR TRIAL AND A RELIABLE SENTENCING DETERMINATION UNDER THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS. (DOC. 1, PP. 15-16; DOC. 36-1, PP. 220-28).[72]

### A.    Summary of the Parties' Respective Arguments.

In support of this claim, Taylor's Petition states:

During the guilt phase, the trial court allowed the prosecutor to introduce sixty-seven photographs of the Moores, eleven taken at the murder scene and fifty-six during their autopsies [(C.R. Vols. 2-3, pp. 244-53, 314-21, 336-49, pp. 363-460 (State's Ex's Nos. 6-10, 48-51, 59-65, 73-121))]. This evidence was wholly irrelevant: There was no dispute as to the cause of death or nature of the injuries and, before the penalty phase hearing, the defense stipulated to the aggravating circumstance that the crime was especially heinous, atrocious, or cruel.

During the medical examiner's trial testimony, he remarked on the photographs' gruesome nature and described each one in discussing the autopsy procedure, including the external examination, weighing, cleaning, evisceration of the abdomen and chest, cutting and peeling back of the scalp, sawing and removing the skull cap and brain. The jurors examined each photograph [(R. Vol. 8, Tab. 11,

---

[72] Taylor also raises a variant of this claim within his ineffective assistance of counsel claim, (*See* Doc. 1, pp. 40-41; Doc. 36-1, pp. 81-83), and the court addresses it in that context in Part XIX(B)(4)(b) *infra*. Nevertheless, the merits of Taylor's substantive claim is addressed here, in accordance with his Petition. (*See* Doc. 1, pp. 15-16).

pp. 985-1005)]. The prosecutor referred to the photographs as "horrible" [(R. Vol. 7, Tab 9, p. 798)], "gruesome" [(R. Vols. 5-6, Tab. 7, pp. 341, 404, 672)], "bloody" [(R. Vols. 5-6, Tab. 7, pp. 404, 672)], and "as gory or gross as anything you'll ever see in any horror movie" [(R. Vol. 4, Tab. 7, p. 277)], and encouraged the jury to examine them again during its deliberations [(R. Vol. 9, Tab. 13, pp. 1112-13, 1123; Tab. 15, pp. 1135-36)].

During the penalty phase, the prosecutor told the jury that he would not exhibit the photographs again: "I've got a hunch that you will probably carry them with you throughout the rest of your life. There's nothing in the world that can ever wipe off or wipe out of your minds the faces and violent deaths of Ernie and Lucille Moore" [(R. Vol. 10, Tab. 22, pp. 1350-51)].

(Doc. 1, pp. 15-16).

Respondents present a two-fold answer. First, Respondents contend that "Taylor failed to fairly present this claim to the state courts." (Doc. 13, p. 23; *see also* Doc. 14, p. 38 (same)). Respondents support this claim by contending:

Habeas petitioners generally cannot raise claims in federal court if those claims were not first exhausted in state court. 28 U.S.C. § 2254(b)(1). In his brief on direct appeal, Taylor partially quotes one sentence from one federal case and string cites a handful of other federal cases, but fails to provide any analysis to show how any of these cases support his claim regarding the admission of alleged prejudicial photographs. Moreover, Taylor simply repeated the same argument in his petition for writ of certiorari and his brief in support thereof. (Habeas Checklist: Vol. 14, Tab #R-32, #R-33) Therefore, Taylor did not give the state courts a fair opportunity to decide the claim. Dismissal of his habeas petition to allow Taylor to present that claim fairly as a federal claim in state court now would be futile because he would be barred from raising it in state court under Rule 32.2(c) of the Alabama Rules of Criminal Procedure (statute of limitations bar) and Rule 32.2(b) (successive petition bar). Because any remedy with respect to his claim is procedurally barred by the state procedural rules noted above, Taylor's claim is procedurally defaulted from review. This court should, therefore, dismiss this claim.

(Doc. 13, pp. 23-24; *see also* Doc. 14, pp. 38-39 (same)).

Second, and in the alternative, Respondents claim that "this issue was raised on direct appeal and denied on the merits by the Alabama Court of Criminal Appeals." (Doc. 13, p. 21 (citing *Taylor*

*v. State*, 666 So. 2d 36, 67 (Ala. Crim. App. 1994)); *see also* Doc. 14, p. 39 (same)).   In support,

Respondents argue:

> At trial, Taylor only objected to the admission of photographs #59-65.  The objection came after their introduction, but before they were published to the jury.  The trial court overruled the objection, but stated that it would be considered timely for State's exhibits #59-65.  At no point did Taylor object to the State's offer of admission of any of the other photographs into evidence.   Therefore, the claim was correctly reviewed by the Alabama Court of Criminal Appeals solely for plain error.  *Kuenzel v. State*, 577 So. 2d 474 (Ala. Crim. App. 1990); Rule 45A, Alabama Rules of Appellate Procedure.  The trial court's admission of photographs certainly does not constitute plain error.
>
> In *Magwood v. State*, 494 So. 2d 124, 141 (Ala. Crim. App.), *aff'd*, *Ex parte Magwood*, 494 So. 2d 154 (Ala. 1986), cert. denied, 479 U.S. 995 (1986), the court summarized the admissibility of such photographs as follows:
>
>> As a general rule, photographs are admissible in evidence if they tend to prove or disprove some disputed or material issue, to illustrate or elucidate some other relevant fact or evidence, or to corroborate or disprove some other evidence offered or to be offered, and their admission is within the sound discretion of the trial judge.  Photographs which depict the character and location of external wounds on the body of a deceased are admissible even though they are cumulative and based upon undisputed matters.  The fact that a photograph is gruesome and ghastly is no reason to exclude its admission into evidence, if it has some relevancy to the proceedings, even if the photographs may tend to inflame the jury.
>
> (citations omitted).
>
> The photographs complained of accurately portrayed the crime scene, the victims' bodies, and the injuries they sustained.  Certainly, any evidence that could effectively illustrate the brutality and intensity of the attack on Mr. and Mrs. Moore was relevant to the issue of Taylor's intent to kill.  Photographs showing the severity of the wounds would belie any defense claim that Taylor did not actually intend to kill the victims.  Therefore, each and every photograph offered by the State was relevant to the proceedings and no error, plain or otherwise, resulted in their introduction into evidence.  That the subjects they depicted were gruesome was the direct result of Taylor's brutal and murderous actions, and he cannot now complain of the explanatory nature of the scene he alone created.  There is a grim irony in a murderer's contention that pictures of his victim's corpse inflamed the jury; that risk

"comes with the territory."  *Grice v. State*, 527 So. 2d 784, 787 (Ala. Crim. App. 1988).

(Doc. 14, pp. 39-40).

> ### B.      The Question of Procedural Default.

Section 2254 requires habeas petitioners to "exhaust[] the remedies available in the courts of the State" before filing a habeas petition in federal court.  28 U.S.C. § 2254(b)(1)(A) (2006).  That is, "[t]he federal claim must be fairly presented to the state courts," so they "have had the first opportunity to hear the claim sought to be vindicated in the federal habeas proceeding."  *Ogle v. Johnson*, 488 F.3d 1364, 1370 (11th Cir. 2007) (citation omitted).

This statement does not describe the entirety of Taylor's burden, however.  For a habeas petitioner to claim that he or she fairly presented a federal claim to state courts, the Eleventh Circuit explained:

> "It is not sufficient merely that the federal habeas petitioner has been through the state courts . . . nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made."  Rather, in order to ensure that state courts have the first opportunity to hear all claims,  federal courts "have required a state prisoner to present the state courts with the same claim he urges upon the federal courts."  *While we do not require a verbatim restatement of the claims brought in state court, we do require that a petitioner presented his claims to the state court "such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation."*

> While these broad principles are relatively clear, the district court correctly noted that many courts have struggled to pinpoint the minimum requirements that a habeas petitioner must meet in order to exhaust his remedies.  For instance, the Supreme Court recently wrote that a petitioner wishing to raise a federal issue in state court can do so "by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  *Baldwin v. Reese*, 541 U.S. 27, 32, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004).  If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However,

> we agree with the district court that this language must be "applied with common
> sense and in light of the purpose underlying the exhaustion requirement[:] to afford
> the state courts a meaningful opportunity to consider allegations of legal error
> without interference from the federal judiciary." This is consistent with settled law
> established by the Supreme Court. *We therefore hold that " '[t]he exhaustion
> doctrine requires a habeas applicant to do more than scatter some makeshift needles
> in the haystack of the state court record.' "*

*McNair v. Campbell*, 416 F.3d 1291, 1302-03 (11th Cir. 2005) (alterations in original) (emphasis

added) (internal citations omitted).

Concerning the Respondents' contention that he "failed to fairly present this claim to the state

courts," (Doc. 13, p. 23; *see also* Doc. 14, p. 38 (same)), Taylor responds with two alternative

arguments. First, he states that he "fairly presented this claim to the State Courts both during trial

and on appeal.'" (Doc. 36-1, p. 221). Regarding his counsel's objection at trial, Taylor avers:

> Mr. Taylor's defense counsel not only objected to the admission of certain
> photographs on these exact grounds, but specifically referenced the United States
> Constitution. He stated: "[T]hese photographs would only serve to be inflammatory
> and would prejudice this defendant's rights under the Federal and State Constitution
> . . . [and] would prevent him from receiving a fair trial."

*Id.* at 221-22 (alterations in original) (quoting R. Vol. 8, Tab. 11, p. 1047). Further, Taylor argues

that he "presented the substance of his federal claim when he argued in his brief in support of a writ

of certiorari [to the Alabama Supreme Court] that the photographs were irrelevant and introduced

solely to inflame the jury." *Id.* at 222 (citing C.R. Vol. 14, Tab. 33, pp. 101-04).[73] "Between the

objection at trial and Mr. Taylor's presentation of the substance of a federal claim in his petition to

---

[73] While Taylor's Reply Brief only cites "his brief in support of a writ of certiorari" to the Alabama Supreme
Court on direct appeal, (*see* Doc. 36-1, p. 222 (quoting C.R. Vol. 14, Tab. 33, pp. 101-04)), the court takes notice that
the same claim he cites from that brief also appeared within his earlier brief to the Court of Criminal Appeals, (*see* C.R.
Vol. 11, Tab. 29, p. 92-95). This reference is significant because the Supreme Court has held that a habeas petitioner
"must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of
the State's established appellate review process" before he or she will "be deemed to have exhausted the remedies
available in the courts of the State." *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999) (quoting 28 U.S.C. § 2254(c)).

the Supreme Court of Alabama," Taylor claims he "fairly presented this claim to the State Courts."

*Id.*

First, Taylor's briefs on direct appeal did not discuss his trial counsel's objections to the

photographs at trial.  (*See* C.R. Vol. 11, Tab. 29, pp. 92-95; C.R. Vol. 14, Tab. 33, pp. 101-04).

Moreover, Taylor's only invocation of federal law on direct appeal was the following statement and

its corresponding string citation that appeared in the last paragraph of his claim:

> "Because of the qualitative difference [between death and any other form of
> punishment], there is a corresponding difference in the need for reliability in the
> determination that death is the appropriate punishment in a specific case." Woodson
> v. North Carolina, 428 U.S. 280, 305, 96 S.Ct. 2878 (1976); accord, Gardner v.
> Florida, 430 [U.S.] 349, 357-58 (1977);[74] Lockett v. Ohio, 438 U.S. 586, 604
> (1978); Beck v. Alabama, 447 U.S. 625, 637-638 (1980).  Mr. Taylor's convictions
> and death sentence must be reversed.

(C.R. Vol. 11, Tab. 29, pp. 94-95 (first alteration in original); *see also* C.R. Vol. 14, Tab. 33, p. 104

(same)).  None of these cases, however, has anything to do with Taylor's claim that the introduction

of the photographs of the victims' bodies, the State medical examiner's testimony, and the

prosecutor's corresponding arguments rendered his trial fundamentally unfair in violation of the

United States Constitution.  *See McNair*, 416 F.3d at 1304 (Petitioner "never cited any United States

Supreme Court or federal appellate court case dealing with" the issue he presently urges in his

habeas petition.).

In *Woodson*, which is quoted above, the Supreme Court concluded that North Carolina's

mandatory death sentence statute violated the Eighth and Fourteenth Amendments because, *inter*

*alia*, "the penalty of death is qualitatively different from a sentence of imprisonment" and "requires

---

[74] While Taylor's briefs on direct appeal cited "Gardner v. Florida, 430 *So.2d* 349, 357-58 (1976)," (C.R. Vol. 11, Tab. 29, p. 95 (emphasis added); C.R. Vol. 14, Tab. 33, p. 104 (same)), this citation was clearly an inadvertent typographic error.  *Gardner* is actually a Supreme Court opinion, which can be found at 430 *U.S.* 349 (1977) (plurality opinion) (Stevens, J.).  The quotation above has been altered to cure this deficiency.

consideration of the character and record of the individual offender and the circumstances of the particular offense." *See* 428 U.S. at 305. Likewise, neither *Gardner*, *Lockett*, nor *Beck* addressed the introduction of photographs of the victims' bodies. Rather, each discussed how the differences between capital cases and other forms of punishment warranted different treatment in the penalty phase of a capital case. *See Gardner v. Florida*, 430 U.S. 349, 357-58 (plurality opinion) (Stevens, J.) ("[D]eath is a different kind of punishment from any other which may be imposed in this country." (citations omitted)); *Beck*, 447 U.S. at 637-38 (quoting *Gardner*, 430 U.S. at 357-58); *Lockett*, 438 U.S. at 604 (discussing the need to consider "the character and record of the individual offender and the circumstances of the particular offense" in capital cases).

Contrary to the Supreme Court's dicta in *Baldwin*, which was discussed by the Eleventh Circuit in *McNair* above, Taylor's citations to federal law in his briefs on direct appeal have nothing to do with the nature of his present claim about the photographic evidence. *See McNair*, 416 F.3d at 1302-03 (discussing *Baldwin*, 541 U.S. at 32). Instead, the Supreme Court opinions he cited simply underscored what is now the totally unremarkable proposition that the gravity of the potential punishment in capital cases sometimes warrants special treatment. Further, all of the cases specifically concern the presentation of non-statutory mitigating evidence during the penalty phase—not the admissibility of photographs during trial.

Viewed this way, the court finds that Taylor failed to fairly present his claim to state courts on direct appeal. While he may have presented Alabama courts with a "somewhat similar state-law claim," this presentation is insufficient for purposes of federal habeas review. *McNair*, 417 F.3d at 1302. As such, Taylor's claim is procedurally defaulted from federal habeas review unless he can show that an exception to this doctrine applies.

105

Second, and in the alternative, Taylor argues that even if this "claim is procedurally defaulted, Mr. Taylor may obtain federal habeas review because he can show both cause for the default and actual prejudice resulting therefrom." (Doc. 36-1, p. 222 (citing *Hollis v. Davis*, 941 F.2d 1471, 1476 (11th Cir. 1991)). Taylor asserts that he has demonstrated cause by showing constitutionally ineffective assistance of counsel. *Id.* at 223 (citing Doc. 36-1, pp. 11-118). And he asserts that he can establish prejudice because "[t]he admission of the irrelevant and highly prejudicial photographs at Mr. Taylor's trial most certainly affected the outcome, particularly given the paucity of evidence relating to Mr. Taylor's intent to kill." *Id.* Taylor further explains that "it was most likely that the photographs inflamed the jury and led it to conclude, despite the lack of concrete evidence, that Mr. Taylor had the necessary intent for a capital murder conviction." *Id.*

As discussed fully below while analyzing the merits of this claim, the trial court clearly did not err by allowing the photographs and Dr. Embry's corresponding testimony to be admitted into evidence. Nor were the prosecutor's comments while discussing this evidence objectionable. Accordingly, Taylor's counsel could not have been ineffective for failing to object thereto, and, therefore, Taylor is unable to establish cause. Thus, his claim is procedurally defaulted from federal habeas review. *See Ward*, 592 F.3d at 1157 ("It is well established that if the petitioner fails to show cause, we need not proceed to the issue of prejudice.") (citation omitted).

## C.      Merits Analysis.

Regardless of Taylor's procedural default, this court will endeavor to address the merits of his claim.[75] In this regard, Taylor's specific claim is that "the Alabama Court of Criminal Appeals'

---

[75] The subsequent discussion does not detract from this court's previous ruling that this claim is procedurally defaulted. *See* Part VIII(B) *supra*.

conclusion that the photographs were properly admitted, which was based on the court's incorrect application of a *universal rule* of admissibility for gruesome photographs depicting the location and character of wounds, was an unreasonable application of clearly established federal law." (Doc. 36-1, p. 220 (emphasis added) (citing 28 U.S.C. § 2254(d)(1)); *see also id.* at 228 (similar)).[76]

Before proceeding further, however, breaking down the factual basis of Taylor's claim into its constituent parts my be helpful.  In particular, Taylor complains of three distinct types of evidence or argument: (1) the photographs, which include eleven from the crime scene and fifty-six from the Moores' autopsy;[77] (2) the testimony of the State medical examiner, Dr. Embry, explaining the photographs and autopsy procedure to the jury;[78] and (3) the prosecutor's remarks concerning the photographs at all phases of Taylor's trial.[79]

To support his claim, Taylor asserts that this evidence rendered his trial fundamentally unfair for three reasons.  First, he claims "the photographs were not relevant to any disputed issue."  (Doc.

---

[76] The specific ruling Taylor complains of is the Alabama Court of Criminal Appeals's ruling on direct appeal, in which it held:

> Even had the proper objection been interposed, the photographs of the victims' bodies as they appeared at both the crime scene and during the autopsies were properly admitted into evidence over the claim now made by the appellant that they were "irrelevant to any disputed issue and were introduced solely to inflame the jury."  [(C.R. Vol. 11, Tab. 29, p. 92)].

*Taylor v. State*, 666 So. 2d 36, 67 (Ala. Crim. App. 1994).  After making the preceding statement, the court proceeded to quote binding precedent from the Alabama Supreme Court concerning the admissibility of such photographs.  *Id.* (quoting *Ex parte Bankhead*, 585 So. 2d 112, 118 (Ala. 1991)).  Further, while the Court of Criminal Appeals's opinion does not specifically address either Dr. Embry's testimony or the prosecutor's corresponding arguments, *see id.*, both aspects were raised within Taylor's briefs on direct appeal (*see* C.R. Vol. 11, Tab. 29, pp. 92-95; C.R. Vol. 14, Tab. 33, pp. 101-04).

[77] C.R. Vols. 2-3, pp. 244-53, 314-21, 336-49, pp. 363-460 (State's Ex's Nos. 6-10, 48-51, 59-65, 73-121).

[78] *See* R. Vol. 8, Tab. 11, pp. 985-1005.

[79] *See* Doc. 1, pp. 14-15 (citing R. Vols. 4-6, Tab. 7, pp. 277, 341, 404, 672; R. Vol. 7, Tab. 9, p. 798; R. Vol. 9, Tab. 13, pp. 1112-13, 1123; Vol. 9, Tab. 15, pp. 1350-51; R. Vol. 10, Tab. 22, pp. 1350-51).  Taylor's Reply Brief, however, does not reference or discuss the prosecutor's comments concerning the photographs.  (*See* Doc. 36-1, pp. 220-28).

36-1, p. 224).  Taylor further states: "Neither the victims' cause of death nor the extent of their injuries was in dispute.  Nor was the aggravating circumstance that the crime was heinous, atrocious or cruel in dispute . . . .  Moreover, the photographs were not relevant to show intent to kill."  *Id.* at 224-25.

> Respondents, on the other hand, argue:
>
> > The photographs complained of accurately portrayed the crime scene, the victims' bodies, and the injuries they sustained.  Certainly, any evidence that could effectively illustrate the brutality and intensity of the attack on Mr. and Mrs. Moore was relevant to the issue of Taylor's intent to kill.  Photographs showing the severity of the wounds would belie any defense claim that Taylor did not actually intend to kill the victims. . . .

(Doc. 14, p. 40).

In this regard, Respondents are correct.  Photographs of a crime victim taken after the alleged homicide or assault, such as autopsy photographs, *can be* extremely prejudicial.  Nevertheless, they are admissible if they tend to illustrate or elucidate some relevant issue, such as "the identity of the victim, the manner of death, the murder weapon", or if they corroborate (or dispute) other evidence in the case.  *United States v. DeParias*, 805 F.2d 1447, 1453 (11th Cir. 1986)  (approving admission of photographs of badly decomposed body of murder victim for the reason, among others, that they corroborated the testimony of a witness "whose credibility was central to the government's case").

Further, the two cases cited by Taylor are inapposite.  (*See* Doc. 36-1, p. 224).  In *United States v. Hands*, 184 F.3d 1322, 1329 (11th Cir. 1999), the Eleventh Circuit concluded that the photographs demonstrating the defendant's spousal abuse were irrelevant, but that determination largely turned on the fact that the defendant was being tried for distributing and possessing narcotics. *United States v. Eyster*, 948 F.2d 1196, 1212 (11th Cir. 1991), is distinguishable for similar reasons. Even though the court concluded the photographs were irrelevant because "the manner of death of

the body was not an issue for the jury to resolve," that was because the defendants were charged with drug trafficking and other narcotics offenses, not murder. *Id.*

While Taylor attempts to argue otherwise, the photographs showed the extent of the Moores' injuries, which was relevant to the issue of Taylor's intent to kill, and they showed the victims' bodies at the crime scene. In sum, Taylor is simply wrong to suggest that the photographs were not relevant to any disputed issue. The admission of the photographs, therefore, was proper, and this aspect of Taylor's claim is due to be denied.

Second, Taylor argues that "the photographs were highly prejudicial," and he specifically points to the alleged "gruesomeness of the photographs" as evidence of such. (Doc. 36-1, p. 225). The "gruesomeness" of a photograph becomes objectionable only when there is distortion of two kinds: (1) *distortion of the subject matter*, as where necrotic or other surgery causes exposure of nonprobative views (*e.g.*, massive mutilation); or (2) *focal or prismatic distortion*, where the position of the camera *vis-á-vis* the scene or object to be shown gives an incongruous result (*e.g.*, a magnification of wound to eight times its true size). *See, e.g.*, *Acklin v. State*, 790 So. 2d 975, 997-98 (Ala. Crim. App. 2000); *Wesley v. State*, 26 So. 2d 413 (Ala. Ct. App. 1946); *see also* Charles W. Gamble, MCELROY'S ALABAMA EVIDENCE § 207.01(2), at 1023 (5th ed. 1996) (collecting cases).

Taylor points to the second kind distortion, arguing that "many of [the photographs] were enlarged to show wounds larger than actual life size." (Doc. 36-1, p. 225 (citing R. Vol. 8, Tab. 12, p. 1047)). But he does not discuss nor show how the photographs were enlarged. After reviewing the photographs in question, none of the photographs appear to be enlarged; some of the photographs were taken up close, but in each of these photographs a ruler was included for reference.[80] So to the

---

[80] *See* C.R. Vols. 2-3, pp. 244-53, 314-21, 336-49, pp. 363-460 (State's Ex's Nos. 6-10, 48-51, 59-65, 73-121).

extent the photographs "show wounds larger than actual life size," (*see* Doc. 36-1, p. 225 (citation omitted)), this enlargement was only because the photographs were taken up close, as opposed to the photographer standing far away. As a practical matter, if such photographs were never allowed, then it would be impossible to show a victim's wounds unless the entire body was included within the photographs. Accordingly, this aspect of Taylor's claim is due to be denied as well.

Third, Taylor states that "the jury in [his] case must have been influenced by the admission of the photographs." (Doc. 36-1, p. 225). For this proposition, he cites the "nauseating commentary by the medical examiner," *id.* (citing R. Vol. 8, Tab. 11, pp. 985-1005), and, earlier within his Petition, quotes a number of statements by the prosecutor in relation to the photographs, (Doc. 1, p. 16), though he does not cite or reference the prosecutor's statements at all within his Reply Brief, (*see* Doc. 36-1, pp. 220-28).

As for the prosecutor's statements, "[i]t has long been held that a prosecutor may argue both facts in evidence and reasonable inferences from those facts." *Tucker v. Kemp*, 762 F.2d 1496, 1506 (11th Cir. 1985) (citing *Alvarez v. Estelle*, 531 F.2d 1319, 1323 (5th Cir. 1976), *cert denied*, 429 U.S. 1044 (1977));[81] *see also* ABA Standards for Criminal Justice 3.5-8(a) (1980) ("The prosecutor may argue all reasonable inferences from evidence in the record."). While the prosecutor did refer to the photographs as "horrible," "gruesome," "bloody," and "as gory or gross as anything you'll ever see in any horror movie," each of these statements are nothing more than reasonable inferences taken from the photographs and, therefore, proper and unobjectionable.[82] *See Alvarez*, 531 F.2d at 1323.

---

[81] *See Bonner v. Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (holding that "the decisions of the United States Court of Appeals for the Fifth Circuit . . . as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit").

[82] *See* Doc. 1, pp. 14-15 (citing R. Vols. 4-6, Tab. 7, pp. 277, 341, 404, 672; R. Vol. 7, Tab. 9, p. 798; R. Vol. 9, Tab. 13, pp. 1112-13, 1123; Vol. 9, Tab. 15, pp. 1350-51; R. Vol. 10, Tab. 22, pp. 1350-51).

Regarding the State medical examiner's statements, Taylor argues that "[e]ach of the fifty-six autopsy photographs was intimately described and passed to the jury, accompanied by nauseating commentary by the medical examiner who twice walked the jury through the autopsy procedure." (Doc. 36-1, p. 225 (citing R. Vol. 8, Tab. 11, pp. 985-1005)).   After reviewing Dr. Embry's testimony, the court notes that his testimony merely provided context to the photographs, discussed the relevant aspects of the autopsy procedure, and explained the extent of the Moores' injuries, *i.e.*, the number and severity of the victims' lacerations.  (*See* R. Vol. 8, Tab. 11, pp. 985-1005).  Simply put, his testimony largely related to the extent of the Moores' wounds, which was relevant to the issue of Taylor's intent to kill.  *Cf. DeParias*, 805 F.2d at 1453.  Despite Taylor's arguments to the contrary, Dr. Embry's testimony did not render his trial fundamentally unfair, and, therefore, his claim is due to be denied.  *See Payne*, 501 U.S. at 825; *Darden*, 477 U.S. at 181.

Plainly, while some of the photographs may have been lurid, they had real evidentiary value and were not offered merely to arouse the passion and prejudice of the jury.  In sum, the photographs, Dr. Embry's testimony, and the prosecutor's arguments were not improper and did not deprive Taylor of due process or a fair trail.  Such photographs and arguments are common evidence in murder prosecutions.  *Cf. Brooks v. State*, 973 So. 2d 380, 393 (Ala. Crim. App. 2007) (holding that photographic evidence is relevant and admissible into evidence even if cumulative and, further, that autopsy photographs specifically "are admissible to show the extent of a victim's injuries" (citation omitted)).  The court could find simply no indication that the photographs were offered for anything other than legitimate evidentiary purposes.  Because the photographs and the accompanying statements did not cause Taylor's trial to be fundamentally unfair, this claim is due to be denied.  *See Payne*, 501 U.S. at 825.

111

**IX.    THE TRIAL COURT'S IMPROPER INSTRUCTIONS AND THE PROSECUTOR'S UNCORRECTED, MISLEADING REMARKS REGARDING THE REASONABLE DOUBT STANDARD ALLOWED A FINDING OF GUILT BASED UPON A LESSER DEGREE OF PROOF THAN DUE PROCESS REQUIRES IN VIOLATION OF THE RULE SET FORTH IN *CAGE V. LOUISIANA*, 498 U.S. 39 (1990). (DOC. 1, PP. 16-18; DOC. 36-1, PP. 165-78).[83]**

### A.    Summary of the Parties' Respective Arguments.

Taylor's Petition supports this ground for relief with the following factual averments:

Throughout Mr. Taylor's trial, the prosecutor misstated the State's burden, defining reasonable doubt as a doubt for which a juror could give a good reason [(R. Vols. 5-7, Tab. 7, pp. 312, 377, 530, 636, 715; R. Vol. 8, Tab. 13, p. 1094)].  The prosecutor repeatedly told the jury that a reasonable doubt must arise from the evidence, lack of evidence or unsatisfactory nature of the evidence, and the jury was not free to "go outside the evidence to hunt up a doubt" because that would be unfair to the State [(R. Vols. 5-7, Tab. 7, pp. 312, 377, 530-31, 636, 715; R. Vol. 8, Tab. 13, pp. 1094-95)].  During his closing argument at the guilt phase, the prosecutor described the State's burden of proof as "beyond a reasonable doubt to a moral certainty."  The plain meaning of the prosecutor's extensive remarks was that, as lay people, the jurors would not be able to understand the law.  For that reason, the law allowed their individual consciences and moral codes to guide them in reaching a verdict.  Taken in its entirety, the prosecutor's comments conveyed that the jurors could convict based upon their own sense of moral certainty and were not required to apply the legal definition of reasonable doubt in evaluating the proof [(R. Vol. 8, Tab. 13, pp. 1095-98)].

The trial court's instructions reinforced and validated the prosecutor's misleading statements diluting the State's burden of proof.  The trial court informed the jury that, although the attorneys' remarks are not evidence, they are intended to help the jury apply the law [(R. Vol. 9, Tab. 16, p. 1138)].  The court repeated, word for word, the prosecutor's improper definition of a reasonable doubt as a doubt for which a juror could "give a good reason" and admonished that the jurors were not to go outside the evidence "to hunt up a doubt" [(R. Vol. 9, Tab. 16, pp. 1152-53)].  The court instructed that proof "beyond a reasonable doubt," "to a moral certainty," and "beyond a reasonable doubt and to a moral certainty" are all the same [(R. Vol. 9, Tab. 16, p. 1154)].

---

[83] Taylor raises a similar contention within the context of his ineffective assistance claim.  He asserts: "Counsel did not object to . . . the prosecutor's statements . . . that proof beyond a reasonable doubt was proof to 'a moral certainty,' [and] that a reasonable doubt must be a 'good' reason."  (Doc. 1, pp. 40-41 (quoting R. Vol. 8, Tab. 13, pp. 1095-98); *see also* Doc. 36-1, pp. 88-90).  While this contention will be discussed briefly in that context, *see* Part XIX(B)(4)(b) *infra*, the merits of his underlying substantive claim will be addressed here, in Part IX.

(Doc. 1, pp. 17-18 (updated citations to the record supplied)).

Respondents answer by claiming that "[t]his issue was raised on direct appeal and denied on the merits by the Alabama Court of Criminal Appeals." (Doc. 13, p. 26 (citing *Taylor v. State*, 666 So. 2d 36, 56-59 (Ala. Crim. App. 1994)); *see also* Doc. 14, p. 41 (same)). Respondents state:

> The Court [of Criminal Appeals] analyzed this issue in light of *Cage v. Louisiana*, 111 S.Ct. 328 (1990). In *Cage*, the United States Supreme Court held that a Louisiana trial court's reasonable doubt instruction impermissibly suggested a higher degree of doubt than is required for acquittal under the reasonable doubt standard of *In re Winship*, 397 U.S. 358, 364 (1970). The Supreme Court limited and qualified *Cage* by its use of the following language:
>
> > It is plain to us that the words "substantial" and "grave," as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable-doubt standard. When those statements are then considered with the reference to "moral certainty," rather than evidentiary certainty, it becomes clear that a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause.
>
> *Cage*, 111 S. Ct. at 329[-30 (footnote omitted).[84]]
>
> A review of the record reveals that the instruction in *Cage* is not similar to the instruction given in this case. In *Cage*, the error occurred when the trial court equated "reasonable doubt" with "grave uncertainty" and an "actual substantial doubt," and then made an ambiguous reference to the term "moral certainty". In construing the instruction in this case, consideration must be given to how jurors could have understood the charge as a whole. *Cage*, 111 S.Ct. at 329. In this case, the trial court defined reasonable doubt in its oral charge as follows:
>
> > The term reasonable doubt means some doubt which has some good reason for it arising out of the evidence or a part of the evidence or lack of evidence in the case. It does not mean a doubt which arises from some mere whim or from some groundless surmise or guesswork on your part.

---

[84] In addition to failing to cite the correct page numbers and to note that it omitted a footnote from the Supreme Court's opinion in *Cage*, the Respondents also incorrectly indented its quotation of *Cage*, all of which are corrected above. (*Compare* Doc. 14, p. 41, *with Cage v. Louisiana*, 498 U.S. 39, 41 (1990) (per curiam)).

Now, ladies and gentlemen, while it's rarely possible to prove anything to an absolute certainty, a defendant is not to be convicted upon mere suspicion, conjecture or surmise.  The law requires you to be satisfied of the defendant's guilt beyond a reasonable doubt, but the law at the same time prohibits you from going outside the evidence to hunt up doubts upon which to acquit the defendant.

As I've told you, a reasonable doubt may arise not only from the evidence produced, but it may also arise from a part of the evidence or lack of evidence in the case.

. . . .

It is your duty to carefully consider all of the evidence in the case, and in so doing you should entertain such doubts only as arise from the evidence or a part of the evidence or lack of evidence in the case and are reasonable as I have defined the term reasonable to be to you.

Unless the doubt is a reasonable one and does so arise, it would not be sufficient in law to authorize a verdict of guilty – of not guilty.

Stated another way, ladies and gentlemen, a reasonable doubt exists in a case when after careful and impartial consideration of all the evidence in the case the jurors do not feel convinced to a moral certainty that the defendant is guilty.

Now, I've given you a term "reasonable doubt," and I want to tell you a little bit about moral certainty.  Oftentimes, ladies and gentlemen, you will hear an explanation of the State's burden of proof in a criminal case.  The State has the burden of proving a defendant guilty beyond a reasonable doubt.  At times you'll hear it stated the burden is to prove the defendant guilty to a moral certainty.  Sometimes you'll hear it stated that it's to prove the defendant guilty beyond a reasonable doubt and to a moral certainty.

These terms mean the same thing and just because one is used in place of another or they may be used together does not add anything or take away anything from it.

. . . .

The court charges the jury that the burden is on the State and

114

it is the duty of the State to show beyond all reasonable doubt and to the exclusion of every other reasonable hypothesis every circumstance necessary to show that the defendant is guilty, and unless the State has done that in this case it is your duty, ladies and gentlemen of the jury, to render a verdict of not guilty.

[(R. Vol. 9, Tab. 16, pp. 1152-56).[85]]

It is clear from the record that the instructions in this case, especially when considered in the context of the entire charge, could not have been interpreted by reasonable jurors to allow a finding of guilt based upon a degree of proof below that mandated by the principles of due process. At no point did the trial court equate the term "reasonable doubt" with "grave uncertainty" or an "actual substantial doubt" or any other restrictive term and therefore, this case is distinguishable from *Cage*.

The instructions here properly protected Taylor "against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). Furthermore, the trial court's use of the phrases "beyond a reasonable doubt and to a moral certainty" at one point in his instructions, actually suggests that the State must prove Taylor's guilt to a *higher* degree than required by due process. If anything, the State's burden of proof in this case was increased, not decreased.

At the end of the Court's oral charge to the jury, Taylor merely objected to the Court's charge because it did not come from any approved charge, book, or document. ([R. Vol. 9, Tab. 16, p. 1161].) Taylor, however, did not specifically object to the trial court's charge on reasonable doubt, but only objected that the charge did not follow a pattern jury instruction. Therefore, the Alabama Court of Criminal Appeals correctly reviewed the same under the plain error standard and held, "Use of some but not all of the terminology found offensive in *Cage* does not automatically constitute reversible error." *Taylor*, 666 So. 2d at 56-57.

(Doc. 14, pp. 41-44 (emphasis in original) (updated citations to the record supplied)).

Before proceeding to the merits of Taylor's claim, the court notes that the Court of Criminal Appeals's opinion on direct appeal is not the last reasoned judgment by the state courts on this issue and thus not the operative opinion for present purposes. In particular, the Alabama Supreme Court's

---

[85] In addition to failing to denote two omissions from the trial court's charge to the jury at the guilt phase, the Respondents' Brief on the Merits also contains a number of typographical errors, all of which are corrected above. (*Compare* Doc. 14, pp. 42-43, *with* R. Vol. 9, Tab. 16, pp. 1152-54, 1156). And because of the sheer number of errors, the court's corrections are not placed within brackets. *See id.*

subsequent opinion on direct appeal specifically addressed Taylor's qualms with both the prosecutor and trial court's definitions of reasonable doubt—a point the Respondents' submissions fail to denote.  In that opinion, the Alabama Supreme Court entered the following findings of fact and conclusions of law:

> A.  Taylor argues that his conviction should be reversed because, he says, both the prosecutor and the trial judge improperly defined "reasonable doubt" to the jurors when they described the State's burden of proof.  He argues that it was improper for the prosecutor to tell the jury that for a juror to have a reasonable doubt, the reason attached to the juror's doubt must be a "good" reason.  He also argues that the prosecutor improperly told the jury that it was the State's burden to prove Taylor guilty to a "moral certainty," and that, in essence, that instruction had the same effect as if the prosecutor had told the jurors to follow their individual moral codes rather than the law.  In sum, Taylor argues that the trial court committed reversible error by not curing statements made by the prosecutor regarding reasonable doubt that Taylor says were improper and committed further reversible error by repeating a definition of "reasonable doubt" that Taylor claims violated the holding of *Cage v. Louisiana*, 498 U.S. 39 (1990).

> In response, the State first argues that the prosecutor's comments regarding reasonable doubt were not improper.  The State also argues that the trial court properly instructed the jury on the State's burden of proof and on the meaning of "reasonable doubt" and that its instruction did not include any of the improper language condemned by the United States Supreme Court in *Cage*.

> B.  Taylor correctly asserts that while explaining the State's burden of proof to each of the panels of prospective jurors, the prosecutor said that reasonable doubt is a doubt for which one can give a good reason.  For example, he told one of the panels:

>> "Now instead of going through that little balancing test in a civil case, the criminal case, though, the standard is beyond a reasonable doubt.  What that reasonable doubt means and, of course, the judge will go into it in greater detail in his charge, but just to give you kind of a quick overview of it, *it is a doubt for which you could give a good reason*.

>> "It's a doubt and a reasonable doubt that arises out of the evidence in the case or that arises out of a lack of evidence in a case or that arises because of the insufficient status of the evidence in a case.  That's not a mere guess or groundless surmise or a whim.  It is a reasonable doubt."

116

(Emphasis added.)   Taylor did not object to these statements, or to any others regarding the meaning of "reasonable doubt" that were made to prospective jurors during voir dire.

The prosecutor also further defined the State's burden of proof to the jury during closing arguments in the guilt phase of the trial:

"Most of you might think that you know what it means because you've heard it so much, but if each one of you were to be handed a pencil and a piece of paper and ask [sic] you to sit down and write a definition of those two phrases, *'beyond a reasonable doubt' and 'to a moral certainty,'* could you do it?

"Let's stop and look at it just a second since you don't have pencil and paper, and go through it.  What I think the judge is going to charge you as to what the people's burden of proof is in this case, and let's take phrase one, 'beyond a reasonable doubt.'  I think Judge Rhea will tell you that in looking at that definition or that phrase, if you will stop and consider it just a minute, it means exactly what it says.  The defendant must be proven [guilty] beyond *a doubt for which you can give a good reason.*

"Now, that reason is not some mere whim.  It's not groundless surmise.  It's not a guess. . . .

"*A doubt itself for which you can give a good reason is a doubt that has got to either arise out of the evidence, out of the unsatisfactory nature of the evidence, or out of a lack of evidence.*  And unless it gets to that point, then it does not meet the standard of being a reasonable doubt.  Let's be sure that you understand that it's got to be *a doubt for which you can give some good reason . . . based on what has come out of this witness box and these exhibits.*  And unless it rises to that level, then it's not a reasonable doubt and the people, then, are entitled to a verdict of guilty at your hands.

"Now the phrase '*to a moral certainty*' deals a little bit with the way we live our lives. . . .

". . . .

"Since we do not live our lives by mathematical standards, our system of justice does not require the people to prove somebody guilty beyond a mathematical proof, because that would require the people to prove somebody guilty on a standard higher than the way

we, ourselves live.  We live by a moral code, and that moral code is something that is instilled in us and nurtured in us.

    ". . . .

    "*Put another way, too, that phrase 'to a moral certainty' means to the exclusion of all reasonable doubt based on the moral code that we live by*, so both of the phrases, then, end up kind of coming full circle back to each other.  That's the burden of proof people have to meet in a criminal case. . . ."

(Emphasis added.)  Taylor also failed to object to these statements.

We note that following the attorneys' closing arguments, but before charging the jury on the law, the trial judge clearly instructed the jury that statements made by the attorneys were not evidence or law and that any such statements should be disregarded if they were "not supported by the evidence or by the law as given to you by the court."  The trial judge then proceeded to charge the jury on the law, including an instruction on the State's burden of proof.  The portions of that jury instruction most relevant to Taylor's claim of error are as follows:

    "The term reasonable doubt means *some doubt which has some good reason for it arising out of the evidence or a part of the evidence or a lack of evidence in the case*.  It does not mean a doubt which arises from some mere whim or from some groundless surmise or guesswork on your part.

    "Now, . . . while it's rarely possible to prove anything to an absolute certainty, a defendant is not to be convicted on mere suspicion, conjecture or surmise.  The law requires you to be satisfied of the defendant's guilt beyond a reasonable doubt, but the law at the same time prohibits you from going outside the evidence to hunt up doubts upon which to acquit the defendant.

    "As I've told you, a reasonable doubt may arise not only from the evidence produced, but it may also arise from a part of the evidence or lack of evidence in the case.

    ". . . .

    "Stated another way, ladies and gentlemen, *a reasonable doubt exists in a case when after careful and impartial consideration of all the evidence in the case the jurors do not feel convinced to a moral certainty that the defendant is guilty*.

118

"Now, I've given you a term 'reasonable doubt,' and I want to tell you a little bit about *moral certainty*. Oftentimes, ladies and gentlemen, you will hear an explanation of the State's burden of proof in a criminal case. The State has the burden of proving a defendant guilty beyond a reasonable doubt. *At times you'll hear it stated the burden is to prove the defendant guilty to a moral certainty. Sometimes you'll hear it stated that it's to prove the defendant guilty beyond a reasonable doubt and to a moral certainty.*

"*These terms mean the same thing and just because one is used in place of another or they may be used together does not add anything or take away anything from it.*

". . . .

"The court charges the jury that the burden is on the State and it is the duty of the State to show beyond all reasonable doubt and to the exclusion of every other reasonable hypothesis every circumstance necessary to show that the defendant is guilty, and unless the State has done that in this case it is your duty, ladies and gentlemen of the jury, to render a verdict of not guilty.

"The court charges the jury that the burden is never on the defendant to establish his innocence or to disprove the facts in this case. If any or all of the evidence . . . raises in the minds of the jury a reasonable doubt as to the guilt of the defendant, they should acquit him.

"The court charges the jury that the defendant is presumed to be innocent until the evidence convinces the jury beyond all reasonable doubt that he is guilty. And if upon all—consideration of all the evidence the jury has a reasonable doubt growing out of all the evidence they must acquit him."

(Emphasis added.)

As noted previously, Taylor failed to object during trial to any of the prosecutor's statements regarding the meaning of "reasonable doubt." He also failed to make a sufficient objection to the trial judge's jury instruction. Defense counsel objected only on the basis that the trial court's jury charges had not come from an approved book of charges. Defense counsel made no specific objection to the reasonable doubt charge, and counsel's general objection was insufficient to preserve for review the alleged error now complained of. *Reuther v. City of Leeds*, 599 So.2d 1246 (Ala. Crim. App. 1992); *Hagood v. State*, 588 So.2d 526 (Ala. Crim. App.),

119

*cert. denied*, *Martin v. Alabama*, 504 U.S. 911 (1992).  *Thus, Taylor has raised this issue for the first time on appeal; therefore, it can be reviewed only under the "plain error" rule.*  Rule 39(k), Ala.R.App.P.  Plain error is error that "has or probably has adversely affected the substantial rights of the petitioner."  *Id.*  "In other words, the plain-error exception to the contemporaneous-objection rule is to be 'used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'"  *United States v. Young*, 470 U.S. 1, 15 (1985), quoting *United States v. Frady*, 456 U.S. 152, 163, n.14 (1982).

C.

In *Cage*, the United States Supreme Court condemned a jury instruction in a first-degree murder trial that equated reasonable doubt with "*such doubt as would give rise to a grave uncertainty*," an "*actual substantial doubt*," and a doubt believed to a "*moral certainty*."  498 U.S. at 40 (emphasis [in] original).  The Supreme Court held:

> "It is plain to us that the words '*substantial*' and '*grave*,' as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard.  *When those statements are then considered with the reference to 'moral certainty,' rather than evidentiary certainty, it becomes clear that a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause*."

498 U.S. at 41 (emphasis added).

In this case, neither the prosecutor nor the trial judge used the term "actual substantial doubt" or "grave uncertainty" in explaining the reasonable doubt standard.  The use of those terms by the trial court in *Cage* was the major flaw in that court's jury charge.  See *Gaskins v. McKellar*, 500 U.S. 961 (1991) (Justice Stevens, concurring specially).  Thus, the prosecutor's comments and the trial judge's jury charge in this case are clearly distinguishable from the charge that was condemned in *Cage*.  Even though the prosecutor and the trial judge equated the term "beyond a reasonable doubt" with "to a moral certainty"—terms this Court has previously noted are not exactly synonymous, *Ex parte McWilliams*, 640 So.2d 1015 (Ala. 1993)—we conclude that neither the prosecutor's comments nor the jury charge violates *Cage* and that they do not suggest a finding of guilt based on a burden of proof lower than that required by constitutional due process protections.

This Court has previously reviewed similar jury instructions regarding the meaning of "reasonable doubt," without finding reversible error.  See *Ex parte McWilliams*, supra; *Ex parte Adkins*, 600 So.2d 1067 (Ala. 1992); *Ex parte Beavers*,

> 598 So.2d 1320 (Ala. 1992).  Moreover, the United States Supreme Court recently noted that although it does not condone the use of the words "moral certainty" in a jury charge, it found no reversible error in the trial judge's use of that phrase.  *Victor v. Nebraska*, [511] U.S. [1] (1994).  It is clear that neither the prosecutor's comments nor the trial court's jury charge in this case was plain error.

*Ex parte Taylor*, 666 So. 2d 73, 82-85 (Ala. 1995) (alterations and emphasis in original) (updated citations to the record and subsequently published cases supplied) (parallel citations omitted).

## B.    Merits Analysis.

In *Victor v. Nebraska*, 511 U.S. 1 (1994), the Supreme Court summarized the basic precepts concerning a state's burden of proof and a trial court's corresponding charge in a criminal case:

> The government must prove beyond a reasonable doubt every element of a charged offense.  *In re Winship*, 397 U.S. 358 (1970).  Although this standard is an ancient and honored aspect of our criminal justice system, it defies easy explication. . . .
>
>         . . . .
>
> The beyond a reasonable doubt standard is a requirement of due process, but the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course.  Cf. *Hopt v. Utah*, 120 U.S. 430, 440-441 (1887).  Indeed, so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, see *Jackson v. Virginia*, 443 U.S. 307, 320, n. 14 (1979), the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof.  Cf. *Taylor v. Kentucky*, 436 U.S. 478, 485-486 (1978).  Rather, "taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury." *Holland v. United States*, 348 U.S. 121, 140 (1954).

511 U.S. at 5 (alterations in original) (parallel citations omitted).

In reviewing the constitutionality of such an instruction, the proper inquiry is whether "there is a *reasonable likelihood* that the jury understood the instruction to allow conviction without proof beyond a reasonable doubt."  *Tyler v. Cain*, 533 U.S. 656, 658 (2001) (emphasis added) (footnote omitted); *see also Johnson v. Alabama*, 256 F.3d 1156, 1192 (11th Cir. 2001) ("[T]he appropriate

standard is whether there exists a 'reasonable likelihood' that the jury read the instruction to lower the required threshold." (citations omitted)).[86]  The preceding standard demands courts to look at the challenged jury instruction as a whole and to avoid strained readings.  *See Jones v. United States*, 527 U.S. 373, 391 (1999) ("We previously have held that instructions that might be ambiguous in the abstract can be cured when read in conjunction with other instructions." (citations omitted)).

In his Reply Brief, Taylor asserts: "[t]he trial court's reasonable doubt instructions, reiterated and amplified by the prosecutor, denied Mr. Taylor's due process rights set forth in In re Winship, 397 U.S. 358 (1970) and Cage v. Louisiana, 498 U.S. 39 (1990)[ (per curiam)]."[87]  (Doc. 36-1, p. 165).  Taylor claims the Alabama Supreme Court's resolution of his claim is both contrary to and an unreasonable application of clearly established federal law.  (*See* Doc. 36-1, pp. 173-78).[88]  At no point, however, does Taylor delineate between the two distinct modes of analysis required of habeas

---

[86] In *Tyler*, the Supreme Court explained the evolution of this standard of review:

> In *Cage*, this Court observed that a reasonable juror "could have" interpreted the instruction at issue to permit a finding of guilt without the requisite proof.  In *Estelle v. McGuire*, however, this Court made clear that the proper inquiry is not whether the instruction "could have" been applied unconstitutionally, but whether there is a reasonable likelihood that the jury *did* so apply it. . . .

*Tyler*, 533 U.S. at 658 n. 1 (alterations and emphasis in original) (internal citations omitted).

[87] The court also notes at the outset that *Cage* was partly overruled by the Supreme Court's subsequent opinion in *Estelle v. McGuire*, 502 U.S. 62, 74 n. 4 (1991) ("[W]e now disapprove the standard of review language in *Cage* and *Yates*[ *v. Evatt*, 500 U.S. 391 (1991)], and reaffirm the standard set out in *Boyde*[ *v. California*, 494 U.S. 370 (1974)]."). *See Johnson v. Alabama*, 256 F.3d 1156, 1190 (2001) (recognizing *Estelle* partly overruled *Cage*).

[88] In his Reply Brief's first iteration that the state courts contravened the AEDPA, Taylor overlooks the "contrary to" clause of § 2254(d)(1); he states: "[T]he Alabama Supreme Court's decisions unreasonably applied clearly established federal law."  (Doc. 36-1, p. 166).  In fact, the only time Taylor mentions the "contrary to" clause is within a heading, stating: "The State Court's Decision Rejecting Mr. Taylor's Claim Was Contrary To and an Unreasonable Application of Clearly Established Federal Law."  *Id.* at 173 (emphasis redacted).  In this court's view, the only aspect of Taylor's claim that remotely suggests the Alabama Supreme Court's decision was "contrary to" clearly established federal law is the following assertion: "In rejecting Mr. Taylor's claim, the Alabama Supreme Court relied on Victor v. Nebraska, 511 U.S. 1 (1994), and Justice Steven's concurrence in Gaskins v. McKellar, 500 U.S. 961 (1991).  But, Justice Stevens' concurrence in Gaskins is not controlling precedent . . . ."  *Id.* at 165; *see also id.* at 174-75.  Such cursory reference fails to adequately address such contention.

petitioners.  *See Alderman v. Terry*, 468 F.3d 775, 790-91 (11th Cir. 2006) ("[T]he 'contrary to' and 'unreasonable application' clauses are interpreted as independent statutory modes of analysis." (citation omitted)).  Nevertheless,  this infirmity does not require extensive analysis because the Alabama Supreme Court correctly identified *Cage* and *Victor* as the applicable Supreme Court precedent, *see Ex parte Taylor*, 666 So. 2d 73, 85 (Ala. 1995), and the facts at issue are not "materially indistinguishable" from those in *Cage* or any other Supreme Court opinion discussing the propriety of reasonable doubt instructions.  *See Williams v. Taylor*, 529 U.S. 362, 405 (2000) (discussing the instances in which a state-court decision is "contrary to [Supreme Court] precedent" for purposes of § 2254(d)(1)).[89]  In this light, the court will only address whether the Alabama Supreme Court's decision "involved an unreasonable application of[] clearly established Federal law."  28 U.S.C. § 2254(d)(1).

In light of the foregoing, Taylor argues that the prosecutor misstated the law concerning reasonable doubt repeatedly throughout both voir dire and the guilt phase of his trial.  (*See* Doc. 36-1, pp. 169-72).  He further faults the trial court because, in his view, it not only failed to repudiate and correct the prosecutor's misstatements, but also reinforced the prosecutor's improper definition by repeating it within the jury charge.  *See id.* at 168-69, 173.

As for the trial court's allegedly improper instructions to the jury, Taylor argues that the trial judge "overstate[d] the degree of doubt required" by combining "the ambiguous and much-criticized

---

[89] Similarly, the Eleventh Circuit has held in the context of an ineffective assistance of counsel claim:

> We conclude that the state court's decision was not "contrary to" clearly established federal law because the state court applied the appropriate standard, as identified by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), and there is no Supreme Court case with materially indistinguishable facts dictating a different outcome than that reached by the state court.

*Forrest v. Fla. Dep't of Corr.*, 342 Fed. Appx. 560, 563 (11th Cir. 2009) (parallel citations omitted).

term 'to a moral certainty'" with "language suggesting a higher degree of doubt than is required for acquittal under the reasonable doubt standard." *Id.* at 168-69 (footnote omitted) (citing R. Vol. 9, Tab. 16, pp. 1142, 1153). As the Alabama Supreme Court held, however, the analysis of *Victor* negates his claim. *See Ex parte Taylor*, 666 So. 2d 73, 85 (Ala. 1995). There, the Supreme Court explained that the reason the term "moral certainty" is sometimes considered suspect was because, "standing alone, [it] might not be recognized by modern jurors as a synonym for 'proof beyond a reasonable doubt.'" *Victor*, 511 U.S. at 14. So while Taylor is correct that moral certainty is ambiguous, (*see* Doc. 36-1, p. 168), it is only ambiguous when the term is used "in the abstract," which can be cured if the rest of the instruction "lends content to the phrase," *Victor*, 511 U.S. at 14; *see also Harvell v. Nagle*, 58 F.3d 1541, 1544 (11th Cir. 1995).

After reviewing the entirety of the trial court's charge, this court is satisfied that the jury instruction on reasonable doubt in Taylor's case was constitutionally sufficient. Further, the trial court's use of moral certainty was not improper because it explicitly informed the jury that the terms "beyond a reasonable doubt," "to a moral certainty," and "beyond a reasonable doubt and to a moral certainty" all "mean the same thing." (R. Vol. 9, Tab. 16, pp. 1153-54). Therefore, there is no reasonable likelihood that the jury in Taylor's case failed to recognize that the term moral certainty was not "a synonym for 'proof beyond a reasonable doubt.'" *Victor*, 511 U.S. at 14.[90]

Turning to the prosecutor's remarks, Taylor contends:

> The clear implication of the District Attorney's statements . . . was that the jurors couldn't hope to apply the law properly. Instead, the District Attorney told the

---

[90] Notably, Taylor concedes that "the [trial] judge did not use the 'substantial' and 'grave' formulation" found to be constitutionally infirm in *Cage*. (Doc. 36-1, pp. 168-69). Viewed this way, even Taylor distinguishes the infirmities identified by the Supreme Court in *Cage* from the trial court's reasonable doubt charge in his case. *See Cage*, 498 U.S. at 40 (finding the trial court erred by defining the evidentiary standard of "proof beyond a reasonable doubt" as tantamount to "a *grave* uncertainty" and "an actual *substantial* doubt" (emphasis added)).

> jurors, they could rely on "that moral code we live by" when determining whether guilt was proved beyond a reasonable doubt. Thus, rather than instructing the jury to base its decision on the law and the evidence, the District Attorney told the jury that they could rely on their individual moral codes to decide whether the state had proved its case.

(Doc. 36-1, p. 172 (footnote omitted)).

Even though Taylor acknowledges that "the reasonable doubt instructions given by the court must be assessed 'in the context of the whole trial as observed by the jury,'" (Doc. 36-1, p. 169 (quoting *Chalmers v. Mitchell*, 73 F.3d 1262, 1269 (2d Cir. 1996)), he fails to follow his own admonition by considering some of the prosecutor and trial court's remarks to the exclusion of others. First, Taylor fails to denote that—immediately before the statements he complains of—the prosecutor told the jury not to "go outside the evidence" and that reasonable doubt "has got to either arise out of the evidence, out of the unsatisfactory nature of the evidence or out of a lack of evidence." (R. Vol. 8, Tab. 13, p. 1094). As the Supreme Court has acknowledged when reviewing the entirety of a court's instruction, "[a]ccordingly, there is no reasonable likelihood that the jury would have understood moral certainty to be disassociated from the evidence in the case." *Victor*, 511 U.S. at 16.[91]

Probably the most important statement Taylor overlooks, however, is the trial court's charge to the jury that the arguments and statements of attorneys "are not evidence." (R. Vol. 9, Tab. 16, p. 1138). As the Alabama Supreme Court noted:

> We note that following the attorneys' closing arguments, but before charging the jury on the law, the trial judge clearly instructed the jury that statements made by the attorneys were not evidence or law and that any such statements should be

---

[91] *See also Harvell v. Nagle*, 58 F.3d 1541, 1545 (11th Cir. 1995) ("The combination of the abiding conviction language and the rest of the instruction, *which emphasized the jury's obligation focus on the evidence presented in court*, convinces us that it was not reasonably likely that the jury understood the instructions to allow conviction based on proof insufficient to meet the *Winship* standard." (emphasis added) (citations omitted)).

> disregarded if they were "not supported by the evidence or by the law as given to you by the court." . . .

*Ex parte Taylor*, 666 So. 2d 73, 83 (Ala. 1995).  Specifically, at the very beginning of the jury charge, the trial court instructed:

> An attorney is an officer of the Court.  It is his duty to present the evidence on behalf of his clients, to make such objections as he deems proper and to fully argue his client's cause.

> An attorneys [sic] statements and arguments are not intended to help you understand the evidence and to apply the law.  *However, they are not evidence and you should disregard any remark, statement or argument which is not supported by the evidence or the law as given to you by the Court.*

(R. Vol. 9, Tab. 16, p. 1138 (emphasis added)).

In *Felker v. Turpin*, 83 F.3d 1303 (11th Cir. 1996) (per curiam), the Eleventh Circuit faced a substantially similar argument, *i.e.*, one in which the petitioner claimed that both the trial court *and* the prosecutor's statements allowed the jury to convict him based on a degree of proof lower than that required by the Due Process Clause.  Concerning the prosecutor's comments in particular, the Eleventh Circuit held:

> In addition to contending that the trial court's charge to the jury violated his due process right under *Cage*, Felker also argues that the prosecutor's remarks to individual jurors during voir dire regarding the state's burden of proof implicate the same concern as that addressed by the Supreme Court in *Cage*.  Felker correctly points out that, during voir dire, the prosecutor explained to several jurors that "moral and reasonable certainty is all that is required in a legal investigation."

> The purpose of voir dire examination is to allow the government and the defendant to evaluate and select an impartial jury capable of fairly deciding the issues presented by applying the law *as instructed by the court* to the facts as produced during the trial.  *United States v. Miller*, 758 F.2d 570, 571 (11th Cir.) (emphasis added), *cert. denied*, 474 U.S. 994 (1985).  **We note that, immediately following voir dire, the court explicitly instructed the impanelled jurors that "[a]rguments by counsel are not evidence, and you are not bound by them."**  In light of our conclusion that the trial court's jury charge, viewed in its entirety, appropriately instructed the jury with respect to its responsibility to find the defendant guilty

126

beyond a reasonable doubt, and therefore did not violate Felker's due process right pursuant to *Cage*, we find that the prosecutor's remarks during voir dire to which Felker now objects were adequately rectified by the jury charge and the timely admonition to the jury discussed above, and did not taint the trial or the verdict.

Therefore, we conclude that even if Felker's claim under *Cage* was not barred under pre-[AEDPA] second or successive petition law, he could not prevail on its merits because the trial court's references to "moral certainty," when viewed in context, as well as the admonition of the trial judge to the jury relative to the arguments of counsel, the entire charge, and the proximity of the charge to the jury's deliberation, did not create a reasonable likelihood that the jury was misled as to the proper burden of proof or encouraged to arrive at its verdict by applying a standard of proof lower than reasonable doubt.

*Id.* at 1309-10 (first alteration in original) (emphasis in bold added) (parallel citations and citations to the record omitted). Because the trial court in Taylor's case made the same admonition as the trial court in *Felker*, it lends further credence to this court's finding that "any potential constitutional harm created by the moral certainty language in [the prosecutor's remarks] was eviscerated by the rest of the jury charge." *Harvell*, 58 F.3d at 1544.

In sum, this court finds neither the trial court's instructions nor the prosecutor's remarks concerning reasonable doubt problematic. The trial court's explanation that the terms "beyond a reasonable doubt," "to a moral certainty," and "beyond a reasonable doubt and to a moral certainty" all "mean the same thing," (R. Vol. 9, Tab. 16, pp. 1153-54), comports with the Supreme Court's holding in *Victor v. Nebraska*, 511 U.S. 1, 13-17 (1994), and, therefore, survives constitutional muster. At bottom, the court finds no reasonable likelihood that Taylor's jury interpreted the trial judge's instructions or the prosecutor's remarks as lowering the State's burden of proof. Taylor has failed to show that the Alabama Supreme Court's adjudication of his claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). Accordingly, his claim is due to be denied.

**X.** **THE TRIAL COURT IMPROPERLY INSTRUCTED THE JURY THAT IT HAD A DUTY TO CONVICT, AN INSTRUCTION WHICH DENIED MR. TAYLOR THE RIGHT TO A JURY TRIAL AS SECURED BY THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS. (DOC. 1, PP. 18-19).**

**A.** **Summary of the Parties' Respective Arguments.**

To support this argument, Taylor's Petition states:

> The instructions to the jury at the guilt phase of trial wrongly conveyed to the jury that it had a <u>duty</u> to convict if it was convinced beyond a reasonable doubt: It actually has the prerogative to nullify a conviction and acquit, if it sees fit.

(Doc. 1, pp. 18-19 (emphasis in original)).   Within his Reply Brief, however, Taylor does not

elaborate or expound upon this claim any further.   And this omission is especially illuminating due

to Taylor's subsequent argument that his trial counsel was ineffective for failing to object to three

other aspects of the trial court's instructions to the jury at the guilt phase.  (*See* Doc. 1, pp. 41-42;

Doc. 36-1, pp. 88-92).[92]

Respondents answer by arguing that "[t]his issue was raised on direct appeal and denied on

the merits by the Alabama Court of Criminal Appeals."  (Doc. 13, p. 27 (citing *Taylor v. State*, 666

So. 2d 36, 68-69 (Ala. Crim. App. 1994)); *see also* Doc. 14, p. 45 (same)).   Respondents further

state:

> The Alabama Court of Criminal Appeals acknowledged that it previously addressed and rejected a similar argument to that made by Taylor in *Kuenzel v. State*, 577 So. 2d 474, 516-517 (Ala. Crim. App. []1990).  In citing to that opinion, the Alabama Court of Criminal Appeals again set forth the rule:
>
> > "In a very real sense, a jury does have the 'duty' to convict the accused of the offense charged in the indictment if it finds the accused guilty of that offense beyond a reasonable doubt.  'A jury is not empowered to waive the law or any of its rules—its only power is to take the law of the case as given by the trial judge and apply it

---

[92] This aspect of his ineffective assistance claim, *i.e.*, his counsel's failure to object to three other aspects of the trial court's instructions to the jury at the guilt phase, is discussed in Part XIX(B)(4)(d) *infra*.

> to the facts as developed on the trial.  Out of this process comes the verdict.'  *Patterson v. State*, 45 Ala.App. 229, 236, 228 So.2d 843, 849 (1969).  'Admonition of the high and sacred duty resting upon juries by nisi prius judges should be encouraged rather than condemned.'  *Hope v. State*, 21 Ala.App. 491, 492–93, 109 So. 521, 522 (1926).  See also *Dolan v. State*, 81 Ala. 11, 16–17, 1 So. 707, 711 (1887).  The trial judge did not violate the principle that '[c]ourts may instruct the jury as to the law of the case, but they may not instruct a jury as to what verdict they shall render in a criminal case on a given statement of facts.'  *Woodham v. State*, 28 Ala.App. 62, 64, 178 So. 464, 466 (1938)."

*Taylor*, 666 So. 2d at 68-69.

> In Taylor's case, the trial court simply instructed the jury as follows:

>> If you are convinced beyond a reasonable doubt that the defendant committed the crime of Murder of the intentional killing type during a Robbery in the First Degree as alleged in the first two counts of the indictment, then it would be your duty to find the defendant guilty of the said Capital offense.

> [(R. Vol. 9, Tab. 16, pp. 1143-44).[93]]

> First, it should be noted that Taylor failed to object to the trial court's instructions to the jury that he now challenges.  Therefore, Taylor's assertion was only reviewable by the Alabama Court of Criminal Appeals for plain error.  The Alabama Court of Criminal Appeals correctly held the trial court properly instructed the jury and found no error, plain or otherwise.  *Taylor*, 666 So. 2d at 68-69.

(Doc. 14, pp. 45-46).

### B.    Merits Analysis.

Except for bare citations to the Fifth, Sixth, and Fourteenth Amendments, Taylor fails to cite

any legal authority in support of this claim.[94]  Moreover, the Court of Criminal Appeals'

---

[93] The Respondents' Brief on the Merits fails to capitalize a number of words that are capitalized in the reporter's transcript of Taylor's trial proceedings, all of which are corrected above.  (*Compare* Doc. 14, p. 53, *with* R. Vol. 9, Tab. 16, pp. 1143-44).

[94] Taylor's briefs before both the Alabama Court of Criminal Appeals and the Alabama Supreme Court on direct appeal raised this issue, though neither cited Supreme Court precedent.  (*See* C.R. Vol. 11, Tab. 29, p. 102; *see also* C.R.

characterizations of the law and facts on this issue are not only reasonable, but accurate. Because Taylor provides no support for his argument that the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law," this claim is due to be denied.  *See* 28 U.S.C. § 2254(d)(1) (2006).

## XI.   THE TRIAL COURT IMPERMISSIBLY EXCLUDED MITIGATING EVIDENCE DURING THE PENALTY PHASE IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS. (DOC. 1, P. 19; DOC. 36-1, PP. 152-65).[95]

### A.   Summary of the Parties' Respective Arguments.

Taylor's Petition supports this claim with the following factual averments:

> During the penalty phase, the trial court precluded the defense from making a plea for mercy.  The court refused to allow Mr. Taylor's family and friends, including Reverend Norris Hilton, Mr. Taylor's father, and his aunt, who was also the Moores' close friend and neighbor, to ask the jury to spare his life [(R. Vols. 9-10, Tab. 21, pp. 1255, 1295, 1315)].

(Doc. 1, p. 19).

Respondents answer by arguing that "[t]his issue was raised on direct appeal and denied on

---

Vol. 14, Tab. 33, pp.111-12 (same)).  While his briefs cited two cases from the courts of appeal, both are inapposite and fail to vitiate his present claim.  (*See* C.R. Vol. 11, Tab. 29, p. 102 (citing *United States v. Spock*, 416 F.2d 165, 182 (1st Cir. 1969); *United States v. Johnson*, 718 F.2d 1317, 1325 (5th Cir. 1983); *see also* C.R. Vol. 14, Tab. 33, pp.111-12 (same)).  In *Spock*, the First Circuit held that the district court's *sua sponte* submission of ten "special questions" to the jury—in addition to the general issue of guilty or not guilty—was prejudicial error.  416 F.2d at 180-83.  And in *Johnson*, the Fifth Circuit reversed the judgment of the district court and remanded the case for a new trial because the district judge "usurped the jury's province and applied the law to the facts as he understood them."  718 F.2d at 1325.

Regardless of the foregoing, Taylor's Petition and Reply Brief neither cites nor discusses Supreme Court precedent before this court.  Further, this court's responsibility is not to sort through the record and decipher the petitioner's legal basis for his or her arguments, and, therefore, this claim is still due to be denied.

[95] Taylor raises a similar claim in "Ground XVI" in his Petition, *i.e.*, "The court's jury instructions at the penalty phase of trial violated the Fifth, Sixth, Eighth and Fourteenth Amendments."  (Doc. 1, pp. 26-27).  In particular, he asserts that "his rights were violated by the trial court's failure to inform the jurors they could consider mercy."  (Doc. 36-1, p. 231; *see also id.* at 231-36, 239-41).  To the extent this separate ground for relief also argues that capital defendants are entitled to present pleas for mercy during the penalty phase, the merits of the claim are addressed here, in Part XI.  Otherwise, only the novel aspects of Ground XVI will be addressed in Part XVI *infra*.

Further, Taylor also raises a variant of this ground for relief within his ineffective assistance of counsel claim; specifically, he alleges that his trial counsel were deficient for ineffectively arguing his right to present mercy pleas during the penalty phase.  (Doc. 1, p. 43; Doc. 36-1, p. 94).  While the court will address this issue briefly in that context, *see* Part XIX(B)(5)(d) *infra*, the merits of his underlying substantive claim are addressed here, in Part XI.

the merits by the Alabama Court of Criminal Appeals." (Doc. 13, p. 29 (citing *Taylor v. State*, 666 So. 2d 36, 52-53 (Ala. Crim. App. 1994)); *see also* Doc. 14, p. 47 (same)). Specifically, Respondents quote the following from the Court of Criminal Appeals's ruling:

> [At the sentence phase of trial, the trial court properly refused to allow testimony from the appellant's family and friends requesting that the jury spare the appellant's life. We find that the action of the trial court did not prevent the jury from considering any mitigating evidence.

> The trial court sustained the objection of the prosecutor and refused to allow Reverend Norris Hilton, Pastor of Forrest Avenue Baptist Church, to respond to the question, "[W]hat are your feelings about whether Michael ought to receive death in the electric chair . . . or whether he ought to receive a sentence of life imprisonment without parole?" [(R. Vol. 9, Tab. 21, p. 1255)], because to do so "invades the province of the jury.".

> The trial court refused to allow the appellant's father, Robert Taylor, to respond to the question, "Are you asking the jury to spare his life?" [(R. Vol. 9, Tab. 21, p. 1295)].

> The trial court sustained the prosecutor's objection to the following question asked by defense counsel of the appellant's aunt, Betty McGriff, "Mrs. McGriff, are you asking this jury to spare Michael's life?" [(R. Vol. 10, Tab. 21, p. 1315)]. The trial court then informed defense counsel: "If you gentlemen can show me some law on that, that's fine, but I don't want that question asked again of any witness. . . . [M]y understanding of the law is that [that] is a question that invades the province of the jury and cannot be asked." [(R. Vol. 10, Tab. 21, pp. 1315-16, 1317)].]

> "[T]he opinion of a relative of a victim is irrelevant to the jury's determination of whether the death penalty should be imposed." *Robison v. Maynard*, 943 F.2d 1216, 1217 (10th Cir.), cert. denied, 502 U.S. 970, 112 S.Ct. 445, 116 L.Ed.2d 463 (1991). See also *Robison v. Maynard*, 829 F.2d 1501, 1504-05 (10th Cir. 1987). Such testimony is "calculated to incite arbitrary response" from the jury. *Robison*, 829 F.2d at 1505.

> Although *Payne v. Tennessee*, 501 U.S. 808, 826-28, 111 S.Ct. 2597, 2609, 115 L.Ed.2d 720 (1991), held that the Eighth Amendment does not prohibit the admission of "victim impact" evidence at the sentencing phase of a capital trial,

> > "*Payne* merely put aside the bar to the introduction of and comment upon victim impact evidence which had been created in *Booth* [*v. Maryland*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987)],

and *South Carolina v. Gathers*, 490 U.S. 805, 109 S.Ct. 2207, 104 L. Ed.2d 876 (1989).  The Court did not expand the universe of admissible relevant mitigating evidence established by *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), and *Eddings v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982).[FN]4  . . .  We cannot agree that *Payne* portends admissibility of any evidence other than that related to the victim and the impact of the victim's death on the members of the victim's family.  Nothing said by the Court suggests the Court intended to broaden the scope of relevant mitigating evidence to include the opinion of a victim's family member that the death penalty should not be invoked. . . .

"We can take cognizance of the Court's rationale that victim impact evidence relates directly to the harm resulting from a defendant's act.  The Chief Justice stated:

"'Victim impact evidence is simply another form or method of informing the sentencing authority about the specific harm caused by the crime in question, evidence of a general type long considered by sentencing authorities.'

"*Payne*, 501 U.S. at 825, 111 S.Ct. at 2608.  In this context, the desire of the victim's relative in no way constitutes relevant evidence because it does not relate to the harm caused by the defendant."

*Robison*, 943 F.2d at 1217-18 (footnote added).

[FN]4 In *Robison v. Maynard*, 829 F.2d at 1504-05 [footnote omitted], the court stated:

"In short, the Petitioner's federal constitutional guarantees give him the right to present 'any aspect of [his] character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.'  *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S.Ct. 2954, 2965, 57 L.Ed.2d 973 (1978).  Yet, the corollary to that rule is the exhortation that the sentencer may not refuse to consider or be precluded from considering 'any *relevant* mitigating evidence.'  *Eddings v. Oklahoma*, 455 U.S. 104, 114, 102 S.Ct. 869, 877, 71 L.Ed.2d 1 (emphasis added [in *Robison*]).

". . . .

"In short, we cannot agree with Petitioner's contention that *any* testimony a defendant believes would make the jury less likely to return a death verdict must be allowed to satisfy the dictates of federal due process. The broad range of facts admissible under the *Eddings* delineation of mitigating evidence must focus on the persona of the defendant or on the fabric of the crime of which he has been convicted. We can find no justification for broadening that focus."

Under Alabama law, nonstatutory mitigating evidence must be relevant.

"In addition to the mitigating circumstances specified in section 13A-5-51, mitigating circumstances shall include any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant offers as a basis for a sentence of life imprisonment without parole instead of death, and any other relevant mitigating circumstance which the defendant offers as a basis for a sentence of life imprisonment without parole instead of death."

Ala. Code 1975, § 13A-5-52. "'[S]ubject only to the loose evidentiary requirement of relevance, capital defendants have a right to offer any evidence they choose on character or record or circumstances of the offense.'" *Clisby v. State*, 456 So.2d 99, 101 (Ala. Crim. App. 1983) (quoting *Stanley v. Zant*, 697 F.2d 955, 960 (11th Cir. 1983)), cert. denied, 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984).

"Evidence is 'relevant' if it logically relates to the ultimate, material inference in the case for which it is proffered." J. Colquitt, *Alabama Law of Evidence* § 4.1 (1990). "'Evidence is relevant if it has any probative value, however slight, upon a matter at issue in the case.' *Phelps v. State*, 439 So.2d 727, 736 (Ala. Crim. App. 1983) 'Evidence is relevant if it has any tendency to throw light upon the matter in issue, even though such light may be weak and fall short of demonstration.' *Austin v. State*, 434 So.2d 289, 292 (Ala. Crim. App. 1983)." *Brewer v. State*, 644 So.2d 39 (Ala. Cr. App. 1994). "In this State, evidence is relevant if it has any logical relationship to the purpose for which it is offered." *Rose v. State*, 598 So.2d 1040, 1042 (Ala. Cr. App. 1992).

It is the holding of this Court that the opinion of the friends or relatives of the defendant that the defendant should not be sentenced to death is not a relevant mitigating circumstance for the jury to consider at the penalty phase of a capital case. Compare *McGahee v. State*, 632 So.2d 976, 978 (Ala. Cr. App.), affirmed, 632 So.2d

981 (Ala. 1993) ("The physical effects of electrocution are not an aspect of the appellant's character or record and are not relevant to any of the circumstances of the crime; and we conclude that this type of evidence does not constitute evidence of mitigation."); *Hinton v. State*, 548 So.2d 547, 560-61 (Ala. Cr. App. 1988), affirmed, 548 So. 2d 562 (Ala. 1989), cert. denied, 493 U.S. 969, 110 S.Ct. 419, 107 L.Ed.2d 383 (1989) ("We interpret this section to limit mitigating evidence to that which assumes that the defendant committed the crime for which he was convicted . . . . This court therefore finds that polygraph results which indicate that the defendant is not guilty of the crime for which he is being sentenced are not relevant to either aggravating or mitigating circumstances and thus are inadmissible in a sentencing proceeding under § 13A-5-45(d).").

*Taylor v. State*, 666 So. 2d 36, 51-53 (Ala. Crim. App. 1994) (alterations in original) (updated citations to the record provided).[96]

### B.    Merits Analysis.

In his Reply Brief, Taylor argues that when "the trial judge barred Mr. Taylor's family and friends from making pleas for mercy on his behalf" it "violated [his] rights under the Eighth and Fourteenth Amendments to offer any relevant mitigating evidence relating to his character." (Doc. 36-1, p. 152; *see also id.* at 153-57 (citing *Skipper v. South Carolina*, 476 U.S. 1 (1986); *Eddings v. Oklahoma*, 455 U.S. 104 (1982); *Lockett v. Ohio*, 438 U.S. 586 (1978) (plurality) (Burger, C.J.))). Taylor further contends "the Alabama Court of Criminal Appeals failed to identify the correct governing Supreme Court precedent, and instead relied on cases wholly irrelevant to the issues before the court." (Doc. 36-1, p. 152). Because of this failure, Taylor claims "[t]he State Court's conclusion, therefore, was contrary to or an unreasonable application of clearly established federal law." *Id.* (footnote omitted) (citing 28 U.S.C. § 2254(d)(1)).

───────────

[96] The Respondents' Brief on the Merits quotes a substantial portion of the Alabama Court of Criminal Appeals's opinion above. (*See* Doc. 14, pp. 47-49 (quoting *Taylor v. State*, 666 So. 2d 36, 51-53 (Ala. Crim. App. 1994))). But it omits, *inter alia*, the first four paragraphs of that court's ruling and footnote four, which further quotes the Tenth Circuit's opinion in *Robison*. (*Compare* Doc. 14, pp. 47-49, *with Taylor v. State*, 666 So. 2d 36, 51-53 (Ala. Crim. App. 1994)). The court thought it best, however, to reproduce that court's ruling in its entirety.

The fundamental flaw in Taylor's argument is his view that the presentation of mercy pleas from his family and friends constitutes "relevant mitigating evidence relating to his character." (Doc. 36-1, p. 152). A mitigation witness's belief that a criminal defendant's life should be spared does not relate to Taylor's character. Taylor attempts to overcome this fallacy by stating that "[a] rational juror *could have inferred* from the excluded testimony that Mr. Taylor's family and minister wished to see his life spared because of something positive about his character." *Id.* at 159 (emphasis added). This inference underlies Taylor's entire argument; he claims the jury "*could have inferred* . . . something positive about his character" if his mitigation witnesses had been allowed to plead for mercy. *Id.* (emphasis added). Taylor does not argue that his witnesses were precluded from testifying about some positive aspect of his character; rather, Taylor only argues that "[a] rational juror *could have inferred*" from his witnesses' pleas for mercy that some unidentified, yet positive, aspect of his character existed. *Id.* (emphasis added). Viewed this way, this court finds that the trial court's exclusion of mercy pleas from Taylor's mitigation witnesses does not contravene the Supreme Court's holdings in *Lockett*, *Eddings*, and *Skipper*.

The preceding finding is confirmed from a review of the Supreme Court cases Taylor presently cites as support.[97] First, the plurality's decision in *Lockett v. Ohio*, 438 U.S. 586 (1978)

---

[97] In addition to *Lockett*, *Eddings*, and *Skipper*, Taylor also cites *Payne v. Tennessee*, 501 U.S. 808 (1991), and *Harris v. Dugger*, 874 F.2d 756 (11th Cir. 1989). (*See* Doc. 36-1, p. 156). He contends *Payne* "recogniz[es] that evidence that the victim is missed reflects on the victim's character and uniqueness as an individual human being," and, therefore, pleas for mercy "shed[] light on the defendant's character by demonstrating the nature of his interpersonal relationships and his capacity to be of emotional value to others." *Id.* At no time, however, did the trial court preclude Taylor's mitigation witnesses from stating that Taylor would be missed, and many of his mitigation witnesses actually testified as to the nature and depth of their interpersonal relationships with Taylor. (*See* R. Vols. 9-10, Tab. 21, pp. 1191-1321). Tellingly, Taylor does not argue otherwise.

As to *Dugger*, Taylor states the Eleventh Circuit found the petitioner's counsel to be ineffective because, "due to counsel's failure to present mitigating evidence at the sentencing phase, the jury was precluded from knowing that the defendant's 'relatives and minister would describe [the defendant] as a decent, loving man whose life was important to them.'" (Doc. 36-1, p. 156 (alteration in original) (quoting *Harris v. Dugger*, 874 F.2d at 763)). Likewise, the trial court in this case did not preclude Taylor's mitigation witnesses from describing Taylor's interpersonal characteristics;

(plurality) (Burger, C.J.), concluded "that the sentencer, in all but the rarest kind of capital case, [should] not be precluded from considering*, as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Id.* at 604 (footnote omitted) (emphasis in original). Subsequently, in *Eddings v. Oklahoma*, 455 U.S. 104 (1982), the Supreme Court adopted the plurality's decision in *Lockett*. The Court held that the sentencer may not "refuse to consider, *as a matter of law*, any relevant mitigating evidence." *Id.* at 114 (emphasis in original). While the version of the rule recited in *Eddings* may appear broader than that stated by the plurality in *Lockett*, it is only so when one looks at this statement in isolation, because *Eddings* contained the same limiting principles as *Lockett*. In fact, the Court noted that "[T]he rule in *Lockett* recognizes that 'justice . . . requires . . . that there be taken into account the circumstances of the offense together with the character and propensities of the offender.'" *Id.* at 113 (alterations in original) (quoting *Pennsylvania v. Ashe*, 302 U.S. 51, 55 (1937)).

Finally, in *Skipper v. South Carolina*, 476 U.S. 1 (1986), the Supreme Court clarified that the broader view of *Eddings* controlled. The Court stated, near the outset of its opinion, that its "decision in *Eddings* requires that in capital cases '"the sentencer . . . not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death."'" *Id.* at 4 (emphasis in original) (quoting *Eddings*, 455 U.S. at 110) (quoting, in turn, *Lockett*, 438 U.S. at 604). That is, a trial court may not prevent a defendant from presenting "relevant mitigating evidence" at the penalty phase. *Id.* (citation omitted).

---

therefore, the trial court did not contravene the underlying rule expressed in *Dugger*.

Taylor, however, takes one quote from *Skipper* out of context to substantiate his present claim. He states: "The Supreme Court vacated the defendant's death sentence, explaining that because the 'jury could have drawn favorable inferences from this [evidence] regarding petitioner's character,' the exclusion violated the petitioner's rights under <u>Lockett</u> and <u>Eddings</u>." (Doc. 36-1, pp. 154-55 (alteration in original) (quoting *Skipper*, 476 U.S. at 4)). The phrase Taylor conveniently replaces with "[evidence]," however, is the very phrase that defeats his present claim because the evidence excluded by the trial judge in *Skipper* was "testimony regarding petitioner's character and his probable future conduct if sentenced to life in prison." *Skipper*, 476 U.S. at 4. Therefore, the excluded evidence from which the "jury could have drawn favorable inferences from" in *Skipper* was *actual* character evidence. *Id.*

In contrast, Taylor claims the trial court improperly excluded pleas for mercy from his mitigation witnesses and that this "is precisely the type of evidence that the court found constitutionally relevant in <u>Skipper</u> – that is, evidence from which the jury may draw favorable inferences regarding the defendant's character." (Doc. 36-1, pp. 155-56 (citing *Skipper*, 476 U.S. at 4-5)). But pleas for mercy are *precisely not* the type of evidence that the Court found constitutionally relevant in *Skipper*, because pleas for mercy by themselves say nothing of a defendant's character. On the other hand, as the Court found in *Skipper*, testimony that a defendant "had 'made a good adjustment' during his time spent in jail" is actual character evidence and relevant to the issue of future dangerousness. *Skipper*, 476 U.S. at 4-5 & n.1.[98]

---

[98] Put differently, if Taylor's mitigation witnesses would have made their pleas for mercy in conjunction with—or because of some aspect of—some aspect of Taylor's character, then that would present a much closer question because that would constitute "relevant mitigating evidence." *See Skipper*, 476 U.S. at 4. But as presently formulated in his submissions before this court, Taylor only claims that the trial court excluded them from testifying that they "believed that Mr. Taylor deserved mercy and should not be sentenced to death." (Doc. 36-1, p. 158 (citing R. Vol. 9, Tab. 21, p. 1255); *see also id.* ("Had Mr. Taylor's father been permitted to answer the question from defense counsel,

While the jury may have drawn favorable inferences regarding Taylor's character from the pleas of his father, great aunt, and Reverend Hilton, pleas for mercy standing alone do not constitute relevant evidence of Taylor's character.  In light of the foregoing, the Alabama Court of Criminal Appeals's ruling that "the opinion of the friends or relatives of the defendant that the defendant should not be sentenced to death is not a relevant mitigating circumstance for the jury to consider at the penalty phase of a capital case," *Taylor v. State*, 666 So. 2d 36, 53 (Ala. Crim. App. 1994) (citations omitted), is not an unreasonable application of clearly established federal law because pleas for mercy without more do not relate to "any aspect of [Taylor's] character." *Skipper*, 476 U.S. at 4.  Further, since the Court of Criminal Appeals correctly identified *Lockett*, *Eddings*, and *Skipper* as the applicable Supreme Court precedent and applied the rules articulated in those cases,  the Court of Criminal Appeals's decision is not contrary to clearly established law.[99]  *See Taylor v. State*, 666 So. 2d 36, 51-53 (Ala. Crim. App. 1994).  Finally, the court need not conduct a harmless error analysis because the trial court did not err by precluding his mitigation witnesses from presenting mercy pleas.  (*See* Doc. 36-1, pp. 162-165).  Taylor's claim, accordingly, is due to be denied.

---

he would have asked the jury to spare Mr. Taylor's life." (citing Rule 32 R. Vol. 23, Tab. 58, p. 318))).

[99] In this vein, Taylor argues that the Alabama Court of Criminal Appeals erred by extensively relying on *Robison v. Maynard*, 943 F.2d 1216 (10th Cir. 1991), because *Robison* "involv[ed] testimony from the victim's family members who desired to see the death penalty avoided" and "Taylor did not seek to introduce any victim impact evidence." (*See* Doc. 36-1, p. 160 (citing *Taylor v. State*, 666 So. 2d 36, 51 (Ala. Crim. App. 1994))).  But Taylor is simply incorrect to suggest that "[t]his is a distinction with a very important difference." *Id.*  First, *Robison*'s analysis was much broader than Taylor is willing to admit because it was not confined merely to the context of victim-impact evidence as it discussed "the universe of admissible relevant mitigating evidence." *Robison*, 943 F.2d at 1217.  In particular, the *Robison* court held that "Simply put, *Payne* merely put aside the bar to the introduction of and comment upon victim impact evidence which had been created in *Booth* and *South Carolina v. Gathers*.  The Court did not expand the universe of admissible relevant mitigating evidence established by *Lockett v. Ohio* and *Eddings v. Oklahoma*." *Id.* (internal citations omitted).  Second, the specific issue of a capital defendant's ability to present pleas for mercy from his friends and family in mitigation during the penalty phase is somewhat novel.  While Supreme Court precedent discusses general principles of "relevant mitigating evidence," *see, e.g.*, *Skipper*, 476 U.S. at 4, the Court has not hashed out every detail on this topic.  Therefore, the Alabama Court of Criminal Appeals did not err by looking to and relying upon the Tenth Circuit's opinion in *Robison* for guidance in navigating these unchartered waters.

**XII.   THE TRIAL COURT FAILED TO INSURE THAT MR. TAYLOR'S STIPULATION TO THE AGGRAVATING CIRCUMSTANCE OF 'HEINOUS, ATROCIOUS OR CRUEL,' WHICH IS TANTAMOUNT TO A PARTIAL GUILTY PLEA TO CAPITAL MURDER, WAS KNOWINGLY AND VOLUNTARILY MADE, IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS.  (DOC. 1, PP. 19-20; DOC. 36-1, PP. 188-200).**

**A.      Summary of the Parties' Respective Arguments.**

To support this claim, Taylor's Petition makes the following factual averments:

> Prior to the penalty phase, counsel offered to stipulate to both aggravating circumstances alleged by the state - that the murders were committed during a robbery and were especially heinous, atrocious or cruel (R.1172-1173). The court did not conduct sufficient colloquy to ensure that Mr. Taylor was knowingly and voluntarily entering a partial guilty plea to a death sentence and was waiving numerous constitutional rights by so stipulating (see R.1173-1174).

(Doc. 1, p. 19).

Respondents answer by arguing that "[t]his issue was raised on direct appeal and denied on the merits by the Alabama Court of Criminal Appeals."  (Doc. 13, p. 31 (citing *Taylor v. State*, 666 So. 2d 36, 67-68 (Ala. Crim. App. 1994)); *see also* Doc. 14, p. 50 (same)).   Specifically, Respondents quote the following from the Court of Criminal Appeals's opinion:

> Before the penalty phase of trial began, defense counsel stipulated to the existence of two aggravating circumstances: that the murders were committed during a robbery and that the murders were especially, heinous, atrocious, or cruel.  The appellant now claims that this was "in effect, a partial 'guilty plea'" and that the trial court "had a responsibility to conduct a colloquy on the record sufficient to demonstrate that such a 'plea' was intelligently and voluntarily made."  Appellant's brief at 96, 97.  This issue is raised for the first time on appeal.

> Defense counsel made this stipulation in an strategic effort "to prevent the District Attorney from asking any of these witnesses that we're fixing to call in mitigation, from asking them any questions about the crime itself or the events involving the crime or prevent him from in any way showing these photographs or making reference to these photographs, because that now has been proved by stipulation with the defendant."  R. 1174.  In response to questions by both defense counsel and the trial court, the appellant indicated that he understood the stipulation.

R. 1173-74.[100]

>   The appellant is represented on appeal by the same counsel who represented
>   him at trial.  "A party cannot assume inconsistent positions in the trial and appellate
>   courts and, as a general rule, will not be permitted to allege an error in the trial court
>   proceedings which was invited by him or was a natural consequence of his own
>   actions."  *Leverett v. State*, 462 So.2d 972, 976-77 (Ala. Cr. App. 1984).  This rule
>   applies in capital cases.  *Rogers v. State*, 630 So.2d 78, 84 (Ala. Cr. App. 1991),
>   reversed on other grounds, 630 So.2d 88 (Ala. 1992).

(Doc. 14, pp. 57-58 (quoting *Taylor v. State*, 666 So.2d 36, 67-68 (Ala. Crim. App. 1994))).

**B.     Merits Analysis.**

Because, as the Respondents assert, this claim was adjudicated on the merits by the Court of

Appeals, habeas relief can only be granted if the state court's denial of the claim "(1) resulted in a

decision that was contrary to, or involved an unreasonable application of, clearly established federal

law . . . or (2) resulted in a decision that was based on an unreasonable determination of the facts in

light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). The court notes

that in his Reply Brief, Taylor cites several cases in support of his argument, but this court will only

consider the portions of Taylor's arguments supported by Supreme Court cases, and not other federal

courts, as "clearly established federal law" means only controlling decisions by the Supreme Court.

*See* 28 U.S.C. § 2254 (d)(1).

Taylor claims that *Boykin v. Alabama*, 395 U.S. 238, 243 (1969) stands for the proposition

that "by entering a guilty plea, a defendant waives his constitutional privilege against self-

incrimination guaranteed by the Fifth and Fourteenth Amendments and rights to a trial by jury and

to confront one's accusers." (Doc. 36-1, p. 190). A trial court must ensure, by making a proper

inquiry, that the defendant's plea was made voluntarily and his waiver of rights made knowingly.

---

[100] (*See* R. Vol. 9, Tab. 17, pp. 1173-74).

*See United States v. Ruiz*, 536 U.S. 622, 628-29 (2002). Taylor then provides that "*circuit courts have applied the principles in* Boykin *and* Henderson *and their progeny to instances in which a stipulation to facts is the functional equivalent of a guilty plea because such facts are necessary to enhance a sentence.*" (Doc. 36-1, p. 191) (emphasis added). However, any such decisions cannot support a habeas petition because a court may only grant relief from state court decisions that are contrary to clearly established *Supreme Court* precedent.

Regardless, Taylor has presented no evidence, and the court is aware of none, that suggests Taylor's stipulation to the two aggravating factors described above was involuntary or unintelligent. Taylor cites the following exchange between himself and his attorney at the sentencing hearing:

> Mr. Downs: ... And, Michael, do you understand that we are agreeing that those don't have to be proved, that they're automatically proved by this stipulation?

> Taylor: Yes.

> Mr. Downs: Do you agree with that?

> Taylor: Yes, sir.

> Mr. Downs: Do you think you understand what we're doing here?

> Taylor: Yes, sir.

(Doc. 36-1, p. 192-93).

Then, the court read the definitions of "especially heinous, atrocious and cruel," to Taylor and asked him:

Now, Taylor, what I've just read to you is part of the charge that will be read to this jury, that will be stated, and our attorneys have admitted and the District Attorney will be allowed to argue to the jury and the Court will so read that as one of the aggravating circumstances in this case; do you understand that?

Taylor: Yes, sir.

(Id. at 193).

These two passages, cited by Taylor himself, belie Taylor's argument that neither the trial court nor his attorney explained the consequences of stipulating to the aggravating circumstance, including the fact that the prosecution would not have to prove the circumstance to the jury. Taylor's attorney explicitly said to him that the circumstance would be "automatically proved," to which Taylor agreed. The Supreme Court held in *Boykin* that a trial judge was not allowed to "accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary." *Boykin*, 395 U.S. at 242. Aside from the lack of Supreme Court authority that stipulating to aggravating circumstances is the functional equivalent of a guilty plea, Taylor's above responses constitute such an affirmative showing, and this court is satisfied that the *Boykin* standard has been met in this case.

Taylor makes other arguments under this particular claim, including that he was prejudiced by his attorney's stipulation to the aggravating circumstance because the prosecutor *might* not have been able to prove it beyond a reasonable doubt. (Doc. 36-1, p. 198-99). Taylor states that it is *possible* the jury might not have found the crime especially heinous, cruel, or offensive. (*Id*. at 199). However, these arguments constitute mere speculation, not grounded in Supreme Court law, and, therefore, do not support habeas relief. Thus, because Taylor has failed to show that the court's allowing him to stipulate to the aggravating circumstance was contrary to clearly established federal law or was based on an unreasonable application of the facts of the case, Taylor's claim for habeas relief is due to be denied. *See* 28 U.S.C. § 2254.

XIII.   THE PROSECUTOR MISLED THE JURY REGARDING ITS SENTENCING ROLE AND MINIMIZED ITS SENSE OF RESPONSIBILITY FOR DETERMINING MR. TAYLOR'S SENTENCE IN VIOLATION OF THE RULE STATED IN *CALDWELL V. MISSISSIPPI*, 472 U.S. 320 (1985).  (DOC. 1, PP. 20-21; DOC. 36-1, PP. 200-10).

### A.      Summary of the Parties' Respective Arguments.

Taylor's Petition supports this claim with the following factual averments:

> Throughout Mr. Taylor's trial, the prosecutor minimized the jury's responsibility in the sentencing process.  During voir dire of each group of prospective jurors, the prosecutor emphasized that their verdict was only an advisory recommendation and that the judge would make the ultimate decision as to punishment [(R. Vols. 4-6, Tab. 7, pp. 272, 332-33, 397, 463-64, 653)].  In his opening argument at the penalty stage, the prosecutor again minimized the jury's role in remarks including, "So, please, don't personally feel like that you're making a decision on someone's life, that the decision is strictly yours or allow somebody to put some kind of guilt trip on you that you're doing something" [(R. Vol. 9, Tab. 12, pp. 1181-82)].  In his final summation, the prosecutor repeated this argument stating, in part, "[Y]ou're not going to kill anybody.  Nobody is asking you to do that.  Nobody is walking up and saying, 'Here's the switch, pull it.'  Nothing like that.  What you're being asked to do is sit here in an advisory capacity . . ." [(R. Vol. 10, Tab. 24, pp. 1371-72)].  The trial court failed to correct the prosecutor's misleading remarks and, in its own instructions, reinforced them [(C.R. Vol. 1, Tab. 1, p. 189; R. Vol. 9, p. 1179; R. Vol. 10, pp. 1324-29)].

(Doc. 1, pp. 20-21 (alterations in original) (updated citations to the record supplied)).

Respondents answer by claiming "[t]his issue was raised on direct appeal and denied on the

merits by the Alabama Court of Criminal Appeals."  (Doc. 13, p. 33 (citing *Taylor v. State*, 666 So.

2d 36, 50-51 (Ala. Crim. App. 1994)); *see also* Doc. 14, p. 51 (same)).  Respondents state:

> Specifically, the Court analyzed Taylor's case in light of *Caldwell v. Mississippi*, 472 U.S. 320, [328-29] (1985).  In *Caldwell*, the United States Supreme Court held ["]it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death sentence rests elsewhere.["]  *Id.*
>
> In citing *Martin v. State*, 548 So. 2d 488, 494 (Ala. Crim. App. 1988), the Alabama Court of Criminal Appeals distinguished the comments of the prosecutor

and the instructions of the trial court in Taylor's trial.  *Taylor*, 666 So. 2d at [47-48].
The Court noted that accurately informing a jury of the extent of its sentencing
authority, specifically that its sentencing verdict was "advisory" and a
"recommendation" and that the trial court would make the final decision as to
sentence does not violate *Caldwell*.  *Id.* at 47.

(Doc. 14, pp. 51-52 (parallel citation omitted)).  Respondents proceed to quote the following from

the Court of Criminal Appeals's opinion:

> Considering the prosecutor's statements in the context of the entire trial, in
> the context in which those statements were made, and in connection with the other
> statements of the prosecutor and of the trial court, which correctly informed the jury
> of the advisory function of its verdict, we find no reversible error in the record in this
> regard.
>
> > "In reviewing allegedly improper prosecutorial comments, conduct,
> > and questioning of witnesses '(o)ur task is to consider their impact in
> > the context of this particular trial', and 'not view the group of
> > allegedly improper questions and comments in the abstract.'  *United
> > States v. Davis*, 546 F.2d 583, 593 (5th Cir. 1977).  '(W)e must assess
> > the impact of the questions in the context of the entire trial.'  *United
> > States v. Bosby*, 675 F.2d 1174, 1185 (11th Cir. 1982)."
>
> *Wysinger v. State*, 448 So.2d 435, 438 (Ala. Cr. App. 1983).  We find no reasonable
> possibility that the jury was misled, misinformed, or confused as to its critical role
> in sentencing under Alabama law.  See *Martin*, 548 So. 2d at 494.

*Id.* at 59 (quoting *Taylor v. State*, 666 So. 2d 36, 51 (Ala. Crim. App. 1994)).[101]

Before analyzing the merits of Taylor's claim, the court notes that the Court of Criminal

Appeals's opinion on direct appeal is not the last reasoned judgment by the state courts on this issue

and, thus, not the operative opinion for present purposes.  In particular, the Alabama Supreme

Court's subsequent opinion on direct appeal specifically addressed the prosecutor's comments

---

[101] The Respondent's Brief on the Merits contains a number of typographical errors in its recitation of the
Alabama Court of Criminal Appeals's opinion on direct appeal, all of which are corrected above.  (*See* Doc. 14, p. 59
(quoting *Taylor v. State*, 666 So. 2d 36, 51 (Ala. Crim. App. 1994))).  Further, the Respondents' quotation of the Court
of Criminal Appeals's decision omits the bulk of that court's analysis in which the court discussed the requisite standard
of review and detailed the prosecutor's comments.  *See Taylor v. State*, 666 So. 2d 36, 47-51 (Ala. Crim. App. 1994).

relating to the jury's role in sentencing – a point the Respondents' submissions fail to denote.  After discussing the parties' arguments and placing some of the prosecutor's comments in the context in which they arose, the Court held:

> We must determine whether the statement of the prosecutor and the trial judge indicating to the jury that it would only render "an advisory verdict" or "a recommended sentence" require Taylor's death sentence to be vacated.  Taylor claims that the statements misled the jury as to the importance of its role in sentencing, in violation of *Caldwell v. Mississippi*, 472 U.S. 320 (1985).  In *Caldwell*, the United States Supreme Court stated that "it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere."  472 U.S. at 328-29.

> Because Taylor failed to object to the prosecutor's remarks, made during voir dire and during his opening statement at the penalty phase of trial, and to the trial judge's instructions, we review those statements under the plain error standard.  Rule 39(k), Ala. R. App. P.  First, we find no conflict between the prosecutor's statements and the trial judge's instructions regarding the jury's role in sentencing (as that of offering only a recommended or advisory verdict) and Alabama law—that is the jury's role under Alabama's unique capital sentencing scheme.  Under Ala. Code 1975, § 13A-5-46, the jury's role in sentencing in a capital case is to render an advisory verdict recommending a sentence to the trial judge.  It is the trial judge who ultimately decides the capital defendant's sentence, and, "[w]hile the jury's recommendation concerning sentence shall be given consideration, *it is not binding upon the courts*."  § 13A-5-47 (emphasis added).

> Even though we find no error with regard to the prosecutor's statements regarding the jury's role in sentencing, we note that the trial judge correctly instructed the jury that statements made by the attorneys were not evidence and were not law and that those statements should be disregarded if they were "not supported by the evidence or by the law as given to you by the court."  We also find no error in the trial judge's instructions to the jury on its role in sentencing.  It is well established that "the comments of the prosecutor and the instructions of the trial court accurately informing the jury of the extent of its sentencing authority and that its sentence verdict was 'advisory' and a 'recommendation' and that the trial court would make the final decision as to sentence does not violate *Caldwell*."  *Martin v. State*, 548 So.2d 488, 494 (Ala. Crim. App.), *affirmed*, 548 So.2d 496 (Ala. 1988), *cert. denied*, 493 U.S. 970 (1989).  *See White v. State*, 587 So.2d 1218 (Ala. Crim. App. 1990), *affirmed*, 587 So.2d 1236 (Ala. 1991); *cert. denied*, 502 U.S. 1076 (1992); *Kuenzel v. State*, 577 So.2d 474 (Ala. Crim. App. 1990), *affirmed*, 577 So.2d 531 (Ala. 1991), *cert. denied*, 502 U.S. 886 (1991).  In sum, we find no error, plain or otherwise, in the comments of the prosecutor, or in those of the trial judge, regarding the jury's

role in sentencing in a capital murder trial.

Although Taylor does not argue that Alabama's capital sentencing scheme is unconstitutional, we note that this issue was recently addressed by the United States Supreme Court in *Harris v. Alabama*, [513] U.S. [504] (1995). In *Harris*, the petitioner sought a mandate from the Supreme Court stating that the United States Constitution requires Alabama trial judges to give "great weight" to the jury's advisory verdict. However, the Supreme Court ruled that Alabama's death penalty sentencing scheme, which does not prescribe the weight the trial judge is to give the jury's verdict, is not unconstitutional. The Court stated: "The Constitution permits the trial judge, acting alone, to impose a capital sentence. It is thus not offended when a State further requires the sentencing judge to consider a jury's recommendation and trusts the judge to give it the proper weight." [513] U.S. at [515].

Finally, we must review the final comments the prosecutor made to the jury during the penalty phase of the trial, in which he told the jurors they were "not going to kill anybody." Taylor claims that the prosecutor's comment misled the jurors regarding the importance of their responsibility in rendering an advisory verdict. This statement by the prosecutor was the only one to which Taylor's objection by motion in limine, made before closing arguments, would apply. We conclude, however, that the prosecutor's comment was a fair response to defense counsel's statement made immediately before, by which defense counsel argued to the jury that a recommendation of death would kill both Michael Taylor and his mother. "[A] prosecutor has the right to 'reply in kind' to statements made by defense counsel in the defense's closing argument." *Ex parte Musgrove*, 638 So.2d 1360, 1369 (Ala. 1993), *cert. denied*, *Rogers v. Alabama*, 513 U.S. 845 (1994). The prosecutor's remark was not reversible error.

*Ex parte Taylor*, 666 So. 2d 73, 87-88 (Ala. 1995) (alterations and emphasis in original) (parallel citations omitted).[102] For a complete rendition of the statements Taylor presently complains of, the reader is directed to the state courts' opinions on direct appeal, especially the Court of Criminal Appeals's opinion. *See id.* at 86-87; *Taylor v. State*, 666 So. 2d 36, 48-50 (Ala. Crim. App. 1994).

---

[102] The court notes that Taylor describes the Alabama Supreme Court's analysis as "severely truncated." (Doc. 36-1, p. 200 (citing *Ex parte Taylor*, 666 So. 2d 73, 87-88 (Ala. 1995))). While the court is unaware what would *not* be considered a "severely truncated analysis" in Taylor's view, under any standard, the eight-hundred plus word analysis quoted above is far from truncated. *See Ex parte Taylor*, 666 So. 2d 73, 87-88 (Ala. 1995). Further, this quotation omits the more than one-thousand two hundred words the Alabama Supreme Court attributed to discussing the parties' respective arguments and transcribing some of the prosecutor's statements. *See id.* at 85-87. Nor does it take into account the Court of Criminal Appeals's opinion, whose thoughtful consideration of this claim encompassed over two-thousand six hundred words. *See Taylor v. State*, 666 So. 2d 36, 47-51 (Ala. Crim. App. 1994).

B.      **Merits Analysis.**

In his Reply Brief, Taylor alleges that "the prosecutor repeatedly tried to diminish the jury's sense of responsibility for its role in determining Mr. Taylor's sentence." (Doc. 36-1, p. 200). These comments, according to Taylor, "effectively reduced the jury's role to nothing" and contravened the Supreme Court's opinion in *Caldwell v. Mississippi*, 472 U.S. 320, 330 (1985). (Doc. 36-1, p. 200). "By explaining to the jury that they were not making a decision on someone's life, and removing any feelings of guilt that the jurors would have for recommending death, the prosecutor created a material risk that the jury would 'feel less responsible than it should for the sentencing decision.'" *Id.* at 209-10 (quoting *Romano v. Oklahoma*, 512 U.S. 1, 9 (1994)).

Taylor claims the state court's denial of his claim on the merits is an unreasonable application of clearly established federal law for two reasons. First, he argues that the Alabama Supreme Court "outright ignored" the totality of the prosecutor's remarks by "turning a blind eye toward highly misleading remarks that created the exact sort of mistaken impression that existed in Caldwell." *Id.* at 205-06 (emphasis added); *see also id.* at 200-01 ("The State Court overlooked entire statements, focused exclusively on isolated references, and failed to evaluate the impact of the prosecutor's comments as a whole on Mr. Taylor's trial and the jury's sense of responsibility for determination his punishment."). Second, he asserts that "[t]he State Court further erred when it held that the prosecutor's comments during rebuttal argument were permissible as a fair response to defense counsel's argument." *Id.* at 207.

Recently, in *Belcher v. Sec'y, Dep't of Corr.*, No. 10-14870, 2011 U.S. App. LEXIS 10268

(11th Cir. May 20, 2011) (unpublished opinion),[103] the Eleventh Circuit discussed the relevant precedent for Taylor's claim—albeit in the context of Florida's capital sentencing scheme and as part of an ineffective assistance of counsel claim.  It stated:

> In *Caldwell*, the Supreme Court ruled in a partially divided opinion that the Eighth Amendment is violated when a jury is "led to believe that responsibility for determining the appropriateness of a death sentence rests not with the jury but with the appellate court which later reviews the case."  472 U.S. 320, 323.  *Caldwell* involved a death sentence in Mississippi, where the jury had the sole responsibility for imposing the sentence and appellate courts reviewed the sentence with a "presumption of correctness."  *See Id.* at 331-32.  Because only four Justices joined part of the majority's analysis in *Caldwell*, the Court in *Romano v. Oklahoma* adopted Justice O'Connor's *Caldwell* concurrence as limiting the case's reach:
>
>> *Caldwell* [is] relevant only to certain types of comment—those that mislead the jury as to its role in the sentencing process in a way that allows the jury to feel less responsible than it should for the sentencing decision.  Thus, [t]o establish a *Caldwell* violation, *a defendant necessarily must show that the remarks to the jury improperly described the role assigned to the jury by local law.*
>
> 512 U.S. 1, 9 (1994) (citations and quotation marks omitted) (second alteration in *Romano*).
>
> The capital sentencing scheme in Florida, unlike that in Mississippi and Oklahoma, treats the jury's verdict as advisory, albeit one carrying great weight that a judge can override only if "virtually no reasonable person could differ" as to the correct result.  *Tedder v. State*, 322 So. 2d 908, 910 (Fla. 1975).  In *Davis v. Singletary*, 119 F.3d 1471, 1482 (11th Cir. 1997), this Court applied *Caldwell* and *Romano* to Florida's sentencing scheme, noting that *Romano* required that the comments misstate the law on the jury's responsibility.  In *Davis*, the jury instructions and prosecutor's comments contained "references to and descriptions of the jury's sentencing verdict . . . as an advisory one, as a recommendation to the judge, and of the judge as the final sentencing authority."  *Id.*  We held that such comments "accurately characterize the jury's and judge's sentencing roles under Florida law" and so "are not error under *Caldwell*."  *Id.*  Thus, defense counsel here could have validly objected only if the prosecutor inaccurately stated the jury's role in such a way that would "allow[] the jury to feel less responsible than it should for the sentencing decision."  *Romano*, 512 U.S. at 9.

---

[103] Although an unpublished Eleventh Circuit opinion is not precedent or binding on this court, such an opinion is helpful in understanding the precedent for Taylor's claim.

Having reviewed the record, we cannot say that the state misrepresented the law regarding the jury's role. The remarks made by the prosecutor, viewed in context, accurately portrayed the relationship between the judge and jury and did not denigrate the jury's role in the proceedings. Indeed, the prosecutor repeatedly stressed that the jury's recommendation held "great weight" in the judge's decision. Thus, counsel's performance in declining to object was not deficient, and we cannot say the Florida courts' denial of his ineffective assistance claim on this ground was contrary to or an unreasonable application of federal law.

*Id.* at *8-10 (alterations in original) (emphasis added) (footnote and parallel citations omitted).

Alabama's capital sentencing scheme, like that of Florida, treats the jury's verdict as advisory in that the jury's role is to recommend a sentence to the trial judge. *See* Ala. Code § 13A-5-46 (1975). After the jury renders its advisory verdict and the trial judge conducts a separate sentencing hearing, the trial judge then ultimately decides the capital defendant's sentence. *See* Ala. Code § 13A-5-47(a) (1975) ("After the sentence hearing has been conducted, and after the jury has returned an advisory verdict, . . . the trial court shall proceed to determine the sentence."). The important point for present purposes, however, is that Alabama law states: "While the jury's recommendation concerning sentence shall be given consideration, *it is not binding upon the court*." Ala. Code § 13A-5-47(e) (1975) (emphasis added). *See also Hooks v. State*, 534 So. 2d 329 (Ala. Crim. App. 1987), *aff'd*, 534 So. 2d 371 (Ala. 1988); *Bush v. State*, 431 So. 2d 555, 559 (Ala. Crim. App. 1982), *aff'd*, 43 1 So.2d 563 (Ala. 1983). Thus, the prosecutor's statements, as the Alabama court found, correctly reflected the jury's advisory role in sentencing.

In this vein, Taylor contends that even statements that are "technically correct" can still run afoul of *Caldwell*. (*See* Doc. 36-1, p. 202 (citing *Mann v. Dugger*, 844 F.2d 1446, 1457 (11th Cir. 1988))). Such arguments, however, have been foreclosed by cases subsequent to those cited by Taylor. As the Eleventh Circuit has held:

149

We agree with [the district court's] conclusion and would add to the legal analysis only an observation about how the law relating to *Caldwell* claims has developed since *Mann* and *Harich*.  In both of those en banc decisions the Court at least implied that a prosecutorial or judicial comment or instruction could constitute *Caldwell* error even if it was a technically accurate description under state law of the jury's actual role in capital sentencing.  *See Mann*, 844 F.2d at 1457; *Harich*, 844 F.2d at 1475 (plurality opinion).  Those implications cannot survive the Supreme Court's subsequent holdings that in order "to establish a *Caldwell* violation, a defendant necessarily must show that the remarks to the jury improperly described the role assigned to the jury by local law," *Romano v. Oklahoma*, 512 U.S. 1, 9 (1994) (quoting *Dugger v. Adams*, 489 U.S. 401, 407 (1989)).  "The infirmity identified in *Caldwell* is simply absent" in a case where "the jury was not affirmatively misled regarding its role in the sentencing process." *Romano*, 512 U.S. at 9.

To the extent of any inconsistency between our *Mann*/*Harich* pronouncements and the Supreme Court's supervening ones, of course, we are required to heed those of the Supreme Court.  *See, e.g.*, *Cottrell v. Caldwell*, 85 F.3d 1480, 1485 (11th Cir. 1996); *Leach v. Pan American World Airways*, 842 F.2d 285, 286 (11th Cir. 1988).  Thus, it is clear that the references to and descriptions of the jury's sentencing verdict in this case as an advisory one, as a recommendation to the judge, and of the judge as the final sentencing authority are not error under *Caldwell*.  Those references and descriptions are not error, because they accurately characterize the jury's and judge's sentencing roles under Florida law.

*Davis v. Singletary*, 119 F.3d 1471, 1482 (11th Cir. 1987) (footnote and parallel citations omitted).

Thus, the "technically correct" statements alone do not constitute error.

Returning to the standard governing Taylor's present claim, the Supreme Court has, in the days since *Caldwell* was decided, clarified the breadth of the rule now cited by Taylor.  That is, "a *Caldwell* violation is not established where 'the jury was not affirmatively misled regarding its role in the sentencing process.'"  *Carr v. Schofield*, 364 F.3d 1246, 1258 (11th Cir. 2004) (quoting *Romano*, 512 U.S. at 9); *see also Dugger v. Adams*, 489 U.S. 401, 407 (1989) ("[I]f the challenged instructions accurately described the role of the jury under state law, there is no basis for a *Caldwell* claim."); *Davis*, 119 F.3d at 1482.  This standard, thus, governs how Taylor's claim must be judged.

150

Simply stated, Taylor's assertion that the Alabama Supreme Court "outright ignored" the totality of the prosecutor's remarks is without merit. Although the court only *quoted* some of the prosecutor's statements within its opinion,[104] a comparison of that opinion to Taylor's Reply Brief shows that the Alabama Supreme Court considered the entirety of the remarks of the prosecutor, defense counsel, and trial judge on this subject. In fact, Taylor is the one that considers the prosecutor's remarks in isolation because he trumpets two statements to the exclusion of a number of others, while both the prosecutor and trial judge accurately stated the jury's role in sentencing under Alabama law.

The totality of the comments Taylor complains of were reproduced and thoroughly addressed in the opinions of both the Alabama Supreme Court and Court of Criminal Appeals on direct appeal and, therefore, do not need to be reproduced again here in their entirety. *See Ex parte Taylor*, 666 So. 2d 73, 86-87 (Ala. 1995); *Taylor v. State*, 666 So. 2d 36, 48-50 (Ala. Crim. App. 1994). Taylor primarily takes issues with the following two statements by the prosecutor during his opening and rebuttal closing statements at the penalty phase. (*See* Doc. 36-1, pp. 203-04, 208). In his penalty phase opening statement, the prosecutor stated:

> Again, let me, please, make sure you understand it's a recommendation. *Don't want anybody getting up here giving you the idea that you're sending somebody to their death, that you're killing anybody. You're not. Don't let anybody try to put a guilt trip on you or anything like that.*
>
> The function of the jury in this particular phase of the trial is to listen to the evidence, go through then the weighing of aggravating and mitigating circumstances as the evidence proves those to you and then provide some assistance to the Judge by

---

[104] While the Alabama Supreme Court did not transcribe all of the prosecutor's comments of which Taylor presently complains, (*compare Ex parte Taylor*, 666 So. 2d 73, 86-87 (Ala. 1995), *with* Doc. 1, pp. 20-21), the Court of Criminal Appeals's opinion quoted each and every statement that is quoted in Taylor's Petition as well as a number of others, *see Taylor v. State*, 666 So. 2d 36, 48-50 (Ala. Crim. App. 1994).

means of what is known as an advisory verdict.

The ultimate decision that's got to be made in this case is Judge Rhea's. You're kind of sitting here now as his council of advisers. By the verdict that you will return at the conclusion of this phase of the trial, based on the verdict that you would bring back to him in accordance with the law and the evidence as you hear it, then he will take your advice under consideration in ultimately making the decision that has to be made.

*So, please, don't personally feel like that you're making a decision on someone's life, that the decision is strictly yours or allow somebody to put some kind of guilt trip on you that you're doing something.*  You're sitting here merely as an adviser to the Court.  The decision ultimately is the Judge's.

(R. Vol. 9, Tab. 12, pp. 1181-82 (emphasis added)).  And during his rebuttal closing statement, the

prosecutor stated:

Ladies and gentlemen, *you're not going to kill anybody.  Nobody is asking you to do that.  Nobody is walking up and saying, "Here's the switch, pull it." Nothing like that.*

What you're being asked to do is sit here in an advisory capacity and based on your many years of combined experience, your lives, your experiences, you're asked to sit here and to weigh things in the balance, the evidence as you've heard it, and to make a recommendation to Judge Rhea of what you feel like is an appropriate sentence.

The Judge himself is going to have to sit down and weigh this evidence just as you've already had to do in the trial, in the guilt phase, and just as you'll go back and weigh it again now.  He's going to have to determine the aggravating and mitigating circumstances that he finds and he's going to have to go through the same weighing process.  He's going to have to take all of that into consideration with a pre-sentence report that will be done by another agency.  And with your guidance and your counsel that you're going to give him by the advisory verdict that you bring—And it's important.

It's very important, because it will give this Judge some guidance and some assistance in what is appropriate for this type of offense, especially when it comes from law-abiding citizens such as you.  It carries some weight and it does matter.

(R. Vol. 10, Tab. 24, pp. 1371-72 (emphasis added)).

Parts of the preceding statements may be viewed as improper characterizations of Alabama

152

law if viewed in isolation.  But, as the Eleventh Circuit has repeatedly stressed, "such remarks must be considered in the context of the entire trial."  *Davis*, 119 F.3d at 1482.  After a careful review of the prosecutor's remarks as well as the trial judge's instructions,[105] this court believes that "the jury was not affirmatively misled regarding its role in the sentencing process," *See Romano*, 512 U.S. at 9, and the prosecutor "accurately described the role of the jury under state law," *See Dugger*, 489 U.S. at 407.  Consequently, the prosecutor's statements—and the trial court's corresponding failure to preclude such statements *sua sponte*—were not error under *Caldwell*.

In conclusion, Alabama's hybrid system passes constitutional muster.  *See Harris v. Alabama*, 513 U.S. 504 (1994).  And the phrases "advisory verdict" and "recommended sentence" are correct statements of Alabama law.  In fact, they are even used in the text of the relevant statutes. *See* Ala. Code §§ 13A-5-46, 13A-5-47 (1975).  The prosecutor did not improperly belabor that point, and Taylor does not deny that the trial court properly instructed the jury of its duties.  Because the state court's ruling on this issue did not "involve[] an unreasonable application of[] clearly established Federal law," his claim is accordingly due to be denied.  *See* 28 U.S.C. § 2254 (2006).

---

[105]     As the Court of Criminal Appeals found:

> In its closing instructions, the trial court repeatedly referred to the nature of the jury's sentence verdict as a "recommendation." R. [Vol. 10, Tab. 25, p.] 1381 ("recommended sentence"); R. [Vol. 10, Tab. 25, p.] 1382 ("[i]n making your recommendation concerning what the punishment should be"); R. [Vol. 10, Tab. 25, p.] 1383 ("in recommending punishment"); R. [Vol. 10, Tab. 25, p.] 1383 ("the jury must recommend the defendant's punishment"); R. [Vol. 10, Tab. 25, p.] 1391 ("[i]n order to bring back a verdict recommending a sentence); R. [Vol. 10, Tab. 25, p.] 1391 ("in order for a verdict to be returned recommending imprisonment"); R. [Vol. 10, Tab. 25, pp.] 1391, 1392 ("recommend"); R. [Vol. 10, Tab. 25, p.] 1392 ("recommendation"). The forms of the different verdicts submitted to the jury were phrased in terms of "we, the jury, recommend." R. [Vol. 10, Tab. 25, pp.] 1393–95.

*Taylor v. State*, 666 So. 2d 36, 49 (Ala. Crim. App. 1994) (updated citations to the record supplied).

XIV. **THE PROSECUTOR IMPROPERLY COMMENTED ON MR. TAYLOR'S RIGHT TO REMAIN SILENT IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS. (DOC. 1, P. 21; DOC. 36-1, PP. 178-88).[106]**

### A.    Summary of the Parties' Respective Arguments.

In his Petition, Taylor supports this claim with the following factual averments:

> During the penalty phase, the prosecutor emphasized Mr. Taylor's failure to show remorse during trial: "There's absolutely no showing of remorse or grief . . . . I have seen that kind of emotion from his family.  They're sorry for what he's done." [(R. Vol. 10, Tab. 22, p. 1358)].  During his second closing argument, the prosecutor repeated this point about Mr. Taylor's alleged lack of remorse [(R. Vol. 10, Tab. 24, p. 1377)].  The prosecutor's remarks plainly referred to Mr. Taylor's failure, unlike his family, to testify at the penalty phase.

(Doc. 1, p. 21 (first alteration in original)).

Respondents answer by arguing that "[t]his issue was raised on direct appeal and denied on the merits by the Alabama Court of Criminal Appeals."  (Doc. 13, p. 34 (citing *Taylor v. State*, 666 So. 2d 36, 55 (Ala. Crim. App. 1994)); *see also* Doc. 14, p. 53 (same)).  Respondents claim:

> Specifically, the Court [of Criminal Appeals] rejected Taylor's argument that the prosecutor improperly commented on Taylor's right to remain silent by arguing that "there's absolutely no showing of remorse or grief."  [(R. Vol. 10, Tab. 22, p. 1358; R. Vol. 10, Tab. 24, p. 1377).]  The Court noted that there was no objection to this comment at trial and there was evidence presented at the penalty phase that Taylor displayed no remorse after being taken into custody.  [(R. Vol. 9, Tab. 21, pp. 1243-44).]

---

[106] Taylor raises a variant of this claim on two separate occasions within his ineffective assistance of counsel claim.  First, he raises it in the context of his mitigation defense sub-claim.  (*See* Doc. 36-1, pp. 38-39, 49-50).  Second, he raises this claim in the context of his penalty phase, prosecutorial misconduct sub-claim.  (*See* Doc. 1, pp. 43-44; Doc. 36-1, pp. 94-95).  More broadly, Taylor also includes this claim within his oft-repeated allegations of prejudice in his ineffective assistance claim.  (*See, e.g.*, Doc. 1, pp. 45-46; Doc. 36-1, pp. 100-01).  The court will address the merits of his underlying substantive claim here, and it will briefly address it in the context of his ineffective assistance sub-claims in Parts XIX(B)(1)(a)(iii) and XIX(B)(5)(e) *infra*.

(Doc. 14, p. 53).  Respondents proceed to quote the following from the Court of Criminal Appeals's

opinion:

> [We reject the appellant's contention that at the penalty phase of the trial, the
> prosecutor improperly commented on the appellant's right to remain silent by arguing
> that "[t]here's absolutely no showing of remorse or grief."  [(R. Vol. 10, Tab. 22, p.
> 1358; R. Vol. 10, Tab. 24, p. 1377)].  There was no objection to this comment at
> trial.  There was evidence presented at the penalty phase that the appellant displayed
> no remorse after being taken into custody.  [(R. Vol. 9, Tab. 21, pp. 1243-44)].]
>
>> """While this failure to object does not preclude review in a
>> capital case, *it does weigh against any claim of prejudice*."  *Ex parte
>> Kennedy*, 472 So.2d [1106], at 1111 [(Ala. 1985)] (emphasis in
>> [*Kennedy*]).  "This court has concluded that the failure to object to
>> improper prosecutorial arguments . . . should be weighed as part of
>> our evaluation of the claim on the merits because of its suggestion
>> that the defense did not consider the comments in question to be
>> particularly harmful."  *Johnson v. Wainwright*, 778 F.2d 623, 629 n.
>> 6 (11th Cir. 1985), cert. denied, 484 U.S. 872, 108 S.Ct. 201, 98
>> L.Ed.2d 152 (1987).  "Plain error is error which, when examined in
>> the context of the entire case, is so obvious that failure to notice it
>> would seriously affect the fairness, integrity, and public reputation of
>> the judicial proceedings."  *United States v. Butler*, 792 F.2d 1528,
>> 1535 (11th Cir.), cert. denied, 479 U.S. 933, 107 S.Ct. 407, 93
>> L.Ed.2d 359 (1986).  See also *Biddie v. State*, 516 So.2d 837, 843
>> (Ala. Cr. App. 1986), reversed on other grounds, 516 So.2d 846 (Ala.
>> 1987).'"

*Ex parte McWilliams*, 640 So. 2d 1015 (Ala. 1993).

> Reviewing the closing argument of the prosecutor, in its entirety, this Court
> is convinced that the references to the appellant's lack of remorse were not comments
> on the appellant's constitutional right against self-incrimination but rather references
> to the appellant's behavior after he had murdered the victims.

*Id.* at 53-54 (alterations and emphasis in original) (revised citations to the record supplied) (quoting

*Taylor v. State*, 666 So. 2d 36, 55 (Ala. Crim. App. 1994)).[107]

---

[107] The Respondents' Brief on the Merits omits the first paragraph above of the Court of Criminal Appeals's
opinion on direct appeal.  (*Compare* Doc. 14, pp. 53-54, *with Taylor v. State*, 666 So. 2d 36, 55 (Ala. Crim. App. 1994)).
The court, however, thought it best to reproduce the state court's ruling in its entirety on this issue.

B.       **Merits Analysis.**

In his Reply Brief, Taylor argues that the Alabama Court of Criminal Appeals's "conclusion [on direct appeal] is an unreasonable application of clearly established federal law." (Doc. 36-1, p. 178 (citing 28 U.S.C. § 2254(d)(1))).  Specifically, he contends "that the Fifth and Fourteenth Amendments 'forbid[] comment by the prosecution on the accused's silence.'" *Id.* at 179 (alteration in original) (quoting *Griffin v. California*, 380 U.S. 609, 915 (1965).  And, according to Taylor, "[t]he prosecutor improperly commented on Mr. Taylor's decision not to testify, contrasting Mr. Taylor with his family members who had just testified and encouraging the jury to infer from his silence that Mr. Taylor felt no remorse for his actions." *Id.* at 178.

In *Isaacs v. Head*, 300 F.3d 1232, 1270 (11th Cir. 2002), the Eleventh Circuit described the proper manner in which to evaluate a *Griffin* claim as follows:

> The Fifth Amendment prohibits a prosecutor from commenting directly or indirectly on a defendant's failure to testify.  A prosecutor's statement violates the defendant's right to remain silent if either (1) the statement was manifestly intended to be a comment on the defendant's failure to testify; or (2) the statement was of such a character that a jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.  The question is not whether the jury possibly or even probably would view the remark in this manner, but whether the jury necessarily would have done so.  The defendant bears the burden of establishing the existence of one of the two criteria.  The comment must be examined in context, in order to evaluate the prosecutor's motive and to discern the impact of the statement. . . .
>
> *United States v. Knowles*, 66 F.3d 1146 (11th Cir. 1995) (citations, quotations, and footnotes omitted).  *See also United States v. LeQuire*, 943 F.2d 1554, 1565 (11th Cir.1991) (same); *Solomon v. Kemp*, 735 F.2d 395, 401 (11th Cir. 1984).
>
> In applying *Griffin*, we have strictly enforced the requirement that a defendant show that the allegedly offensive comment was either manifestly intended to be a comment on the defendant's silence or that the comment naturally and necessarily related to the defendant's silence. . . .
>
> *Isaacs v. Head*, 300 F.3d 1232, 1270 (11th Cir. 2002).

Because "[t]he comment[s] must be examined in context, in order to evaluate the prosecutor's motive and to discern the impact of the statement," *Knowles*, 66 F.3d at 1163, the court will reproduce the comments Taylor presently complains of *in context* before analyzing the merits of his claim.  During the State's closing argument at the penalty phase, the prosecutor stated:

> I think he's evidenced the situation as far as how he feels about this whole thing from the demeanor that he has had since the day he was arrested.  Cool, aloof, sometimes bored.  Doesn't really seem to care at all.  I got to noticing on the tape they said something about, "Well, he wiped his eye."  I don't know if he was crying or not, because of what he had done.  But he sure hadn't up until that point.

> He got arrested, what, about 10:30 that evening and he had been with those officers six and a half hours and had shown no remorse at all.  What was causing him the most problem there in that videotape in the jail?  Getting his earring out?

> Look also at the remorse he had immediately after this offense occurred.  I hate to ask you to go back through these exhibits, but I want you to go back and take a look at some of them.  I want you to go back and take a look at State's Exhibit 32, a bill from J. Riggins.  It was on a Monday.  This was before he met Randy Statum.  Randy said he didn't meet him for the first time until Wednesday.

> I think there is a time on that cash register ticket, too.  Shows he bought a shirt.  Seems like it was thirty something dollars.  But there's a date on there, November the 4th, 1991.  And it seems like it was around three o'clock in the afternoon.  Shortly after he had been over at the Central Bank Branch at Eastwood Mall.

> He was so nervous, so upset, so remorseful and so concerned about beating those two old people to death, does he go to a motel somewhere and hide, get under a fictitious name or something?  No.  He's out buying clothes.  Out buying clothes with the fourteen hundred and something dollars off forged checks he got out of the Moores' account.  How much remorse and concern is shown there?  None.

> Goes out and buys a fancy gold chain.  Look at the date on that.  When did he buy it?  Goes out and gets the car fixed the next day.  He's still telling Randy Statum on Wednesday he's got to get the car fixed.  Look at the date on that.  He got that car fixed on Tuesday.  November the 5th, Tom Williams.  The paperwork on that.  That's State's Exhibit 29.  Belden Jewelers, State's Exhibit 30.

> *There's absolutely no showing of remorse or grief.*  You know, I might really have some problem standing up here and asking y'all to recommend death to this Judge if I had seen anything – any kind of outpouring from him that would indicate that he was really sorry for what he's done. *I have seen that kind of emotion from his family.  They're sorry for what he's done.*  But they can't be blamed for that.  You

> can't help. You can only do so much in raising your kids. When they're out on their own, you just hope that they're going to remember what you taught them when they were growing up. And if they don't, it's not always momma's and daddy's fault.

(R. Vol. 10, Tab. 22, pp. 1356-58 (emphasis added)). And during the State's rebuttal closing argument at the penalty phase, the prosecutor stated:

> That's not situation here. He's not even the prodigal son. *No apology. No remorse. No regret.* He never got to the point of eating the husks of the swine. He was too busy eating seafood at the L & N, because he decided, for whatever reason, that the little pleasures in life that he thinks or thought then were pleasures that he wanted so bad that he would pay any price to get them, including the murder of two elderly people just for a car and everything else he got.

(R. Vol. 10, Tab. 24, p. 1377 (emphasis added)).

The passage quoted above demonstrates that Taylor's argument is factually incorrect and belied by the record. Contrary to Taylor's truncated version of the prosecutor's comments, reviewing the entirety of the prosecutor's statements verifies that the "references to [Taylor's] lack of remorse were not comments on [his] constitutional right against self-incrimination but rather references to [his] behavior after he had murdered the victims,"as the Respondents contend. (Doc. 14, p. 54 (quoting *Taylor v. State*, 666 So. 2d 36, 55 (Ala. Crim. App. 1994))). In other words, Taylor has taken a few sentences out of context in an attempt to argue that the prosecutor's comments violated his right to remain silent.

The prosecutor's comment was a reasonable inference from the evidence presented. It was neither improper nor was it unduly prejudicial to Taylor. He pointed to no evidence that the prosecutor's comments in this case were manifestly intended to comment on Taylor's right to silence, and Taylor cannot show that the jury would naturally and necessarily have interpreted the comments as such. The state court's decision was not an unreasonable application of clearly established federal law under the facts of Taylor's case, and, therefore, his claim is due to be denied.

**XV.   THE PROSECUTOR'S PERVASIVE MISCONDUCT DENIED MR. TAYLOR A FAIR TRIAL AND A FAIR SENTENCING DETERMINATION UNDER THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS.  (DOC. 1, PP. 21-26; DOC. 36-1, PP. 241-53).**

**A.      Summary of the Parties' Respective Arguments.**

Taylor asserts that the prosecutor "engaged in a pattern of misconduct" throughout Taylor's trial, penalty hearing, and sentencing. (Doc. 1, p. 22). Taylor's Petition claims several instances of misconduct: " the prosecutor coached prospective jurors to respond to questions in a manner which prevented appropriate challenges for case based upon their exposure to pretrial publicity. . .and ability to consider mitigating circumstances;" "the prosecutor's leading questioning [of witnesses] amounted to his giving unsworn testimony;" "[t]he prosecutor repeatedly injected himself into the proceedings;" "[t]he prosecutor attempted to influence the jurors with his legal knowledge and expertise;""[h]e argued facts not in evidence and even facts which were not true;" and that he elicited and gave many prejudicial statements to the jury over the course of the proceedings. *Id*. at pp. 22-24. Taylor asserts that the decision of the Alabama Court of Criminal Appeals that the prosecutor's comments were acceptable constituted "an unreasonable application of clearly established federal law" by failing to recognize the impropriety of his conduct. (Doc. 32-2, p. 243).

Respondents answer by arguing that "[t]his issue was raised on direct appeal and denied on the merits by the Alabama Court of Criminal Appeals." (Doc. 13, p. 36 (citing *Taylor v. State*, 666 So. 2d 36, 62-66 (Ala. Crim. App. 1994)); *see also* Doc. 14, p. 55 (same)).  Specifically, Respondents divide Taylor's argument into six sub-claims and address each in turn.

First, Respondents reply to Taylor's contention "that the district attorney coached and manipulated veniremembers to say that they had not formed an opinion as to Taylor's guilt or

innocence despite the overwhelming amount of publicity about this case." (Doc. 14, p. 55 (citing

Doc. 1, p. 22)).  Respondents argue that

> The Alabama Court of Criminal Appeals denied this claim, noting that Taylor's
> allegation of overwhelming pretrial publicity was not supported by the record and
> that Taylor made no objection on the basis to the district attorney's questions on voir
> dire.  *Taylor*, 666 So. 2d at 62.  Moreover, the Court held, "The district attorney's
> conduct did not infect the trial with unfairness so as to make the resulting conviction
> a denial of due process."  *Id.* at 62.

*Id.*

Second, Respondents reply to Taylor's allegation that "the district attorney influenced the

veniremembers' ability to consider mitigating circumstances." (Doc. 14, p. 55  (citing Doc. 1, p.

22)).  In response, Respondents claim that the Alabama Court of Criminal Appeals "held Taylor's

contention to be without merit." *Id.* They quote the following from that court's opinion:

> [The appellant asserts that the "District Attorney was allowed to flagrantly
> misrepresent the law and manipulate the prospective jurors into mis-stating their
> ability and willingness to consider mitigating evidence in determining Mr. Taylor's
> punishment." Appellant's brief at 66. We reject the appellant's contention that the
> "District Attorney began to coach the veniremembers to lie about their willingness
> to consider mitigating evidence." Appellant's brief at 66.
>
> The appellant's argument is based on the prosecutor's questions to the veniremembers:
>
> > "Mr. Lee, will you consider it [age and no prior criminal
> > history as mitigating factors]?  You might not put much stock in it,
> > but would you consider his age and consider any prior criminal
> > history or lack of it he had, even if you don't—Like I mentioned
> > earlier, you decide how much weight you give to it.  You might not
> > put any to it, but would you at least consider it?" R. 495.]
>
> The appellant's contention is without merit.
>
> > "We addressed a similar issue in *Cochran v. State*, 500 So. 2d 1161
> > (Ala. Cr. App. 1984):
> >
> > > "'It is not required that evidence submitted by the

160

accused as a nonstatutory mitigating circumstance be weighed as a mitigating circumstance by the trial judge. *Mikenas v. State*, 407 So.2d 892, 893 (Fla. 1981).

> """Although consideration of all mitigating circumstances is required by the United States Constitution, *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), the decision of whether a particular mitigating circumstance in sentencing is proven and the weight to be given it rest with the judge and jury. *Lucas v. State*, 376 So.2d 1149 (Fla. 1979)." *Smith v. State*, 407 So.2d 894, 901 (Fla. 1981).

> """The fact that the sentencing order does not refer to the specific types of non-statutory 'mitigating' evidence petitioner introduced indicates only the trial court's finding the evidence was not mitigating, not that such evidence was not considered. . . . What one person may view as mitigating, another may not." *Dobbert v. Strickland*, 718 F.2d 1518, 1524 (11th Cir. 1983).'

". . . .

". . . Merely because an accused proffers evidence of a mitigating circumstance does not require the judge or the jury to find the existence of that fact. *Mikenas*, supra; *Smith*, supra."

*Harrell v. State*, 470 So. 2d 1303, 1308 (Ala. Cr. App. 1984), affirmed, 470 So. 2d 1309 (Ala.), cert. denied, 474 U.S. 935, 106 S. Ct. 269, 88 L.Ed.2d 276 (1985).

*Taylor v. State*, 666 So. 2d 36, 54-55 (Ala. Crim. App. 1994) (alterations in original).[108]

Third, Respondents reply to Taylor's claim that "the prosecutor's leading questioning

---

[108] The Respondents' Brief on the Merits does not quote the first two paragraphs of the Court of Criminal Appeals's opinion above. (*Compare* Doc. 14, pp. 55-56, *with Taylor v. State*, 666 So.2d 36, 62-63 (Ala. Crim. App. 1994)). The court thought it best, however, to reproduce that court's ruling in its entirety.

amounted to his giving unsworn testimony." (Doc. 14, p. 56 (quoting Doc. 1, p. 22)). In response,

Respondents contend:

> The Alabama Court of Criminal Appeals noted this issue was not preserved for
> appeal and no plain error occurred. [*Taylor*, 666 So.2d] at 63. Moreover, the Court
> held, "Whether to allow or disallow a leading question is within the discretion of the
> trial court and except for a flagrant violation there will not be reversible error." *Id.*
> at 63[] (citing *Bradford v. Stanley*, 355 So. 2d 328, 331 (Ala. 1978)).

*Id.* at 56-57.

Fourth, Respondents reply to Taylor's argument that "the prosecutor repeatedly injected

himself into the proceedings. For example, the prosecutor made statements regarding his family and

experiences." (Doc. 14, p. 57 (quoting Doc. 1, p. 22)). In response, Respondents contend:

> The Alabama Court of Criminal Appeals denied this claim by noting, "No objection
> was made to these allegedly improper remarks. We find no plain error and find that
> the appellant has either exaggerated or mischaracterized the prosecutor's comments."
> [*Taylor*, 666 So. 2d] at 63.

*Id.*

Fifth, Respondents reply to Taylor's "claim[] the district attorney 'argued facts not in

evidence and even facts which were not true.'" (Doc. 14, p. 57 (quoting Doc. 1, p. 23)). In

response, Respondents contend:

> The Alabama Court of Criminal Appeals denied this claim because Taylor failed to
> object at trial and because the court found no plain error. *Id.* at 63. Moreover, the
> court held, "While in argument to the jury, counsel may not argue as a fact that which
> is not in evidence; nevertheless, he may state or comment on proper inferences from
> the evidence and may draw conclusions from the evidence based upon his own
> reasoning." [*Taylor*, 666 So.2d] at 63[] (citing *Sanders v. State*, 423 So. 2d 348 (Ala.
> Crim. App. 1982)).

*Id.*

Sixth, and finally, Respondents reply to Taylor's argument that "the district attorney made

162

several improper remarks, including urging jurors to 'do their duty,' describing the scene of the crime as a 'massacre' or a 'slaughterhouse,' demanding Taylor prove he deserved the 'gift of life,' and characterizing the death penalty as 'doing what needs to be done.'" (Doc. 14, p. 57 (quoting Doc. 1, p. 24-26)). In response, Respondents contend that "[t]he Alabama Court of Criminal Appeals found no plain error in these remarks and determined these characterizations constituted proper inferences from the evidence." *Id.* at 58 (citing *Taylor v. State*, 666 So. 2d 36, 65 (Ala. Crim. App. 1994)).

### B.   Merits Analysis.

In reviewing allegations of prosecutorial misconduct, courts employ the standard of "whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristofo*, 416 U.S. 637 (1974)). A prosecutor's comments do not rise to this level merely by being "offensive" or "improper;" indeed, "it is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Id*. at 180-81 (internal quotation omitted). The standard is the "narrow one of due process, and not the broad exercise of supervisory powers." *Donnelly*, 416 U.S. at 642.

When applying this standard, a court must look at the context of remarks, instead of looking at each of the prosecutor's remarks in isolation. *Cargill v. Turpin*, 120 F.3d 1366, 1379 (11th Cir. 1997). Indeed, as the Supreme Court admonished:

> Inappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding. . . . [T]he remarks must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error. In other words, the Court

163

must consider the probable effect the prosecutor's response would have on the jury's ability to judge the evidence fairly.

*United States v. Young*, 470 U.S. 1, 11-12 (1985).

In his Reply Brief, Taylor groups the prosecutor's conduct into three separate categories. (See Doc. 36-1, p. 243, 246, 250). This court will respond to each argument in turn.

> i. "The Prosecutor's Misconduct During Voir Dire Deprived Mr. Taylor of his Fundamental Right to an Impartial Jury"

Taylor claims that his right to an impartial jury was violated when "the prosecutor effectively prevented defense counsel and the court from identifying and excluding those individuals who had prejudged Mr. Taylor's death sentence" because the prosecutor allegedly told veniremembers that they could give "little or even no weight" to any mitigating circumstances that were introduced. (Doc. 36-1, p. 243, 244-45). This instruction "directly undermined the reliability of the jury's verdict," because, Taylor reasons, the jury could have been filled with people who would recommend the death penalty despite any mitigating circumstances. *Id*. at 245.

In fact, the prosecutor said to one veniremember:

> "Mr. Lee, will you consider it [age and no prior criminal history as mitigating factors]? You might not put much stock in it, but would you consider his age and consider any prior criminal history or lack of it he had, even if you don't . . .
>
> Like I mentioned earlier, you decide how much weight you give to it. You might not put any to it, but would you at least consider it?

R. 495. The record belies no indication that the prosecutor was "coaching veniremembers to lie about their willingness to consider mitigating evidence." Instead, the prosecutor was merely asking

if the veniremembers would at least consider the evidence—which is all the law requires them to do. *See Lockett v. Ohio*, 438 U.S. 586 (1978) (holding that *consideration* of all mitigating circumstances by the *sentencer* is required by the United States Constitution) (emphasis added). Indeed, under Alabama law, "the decision of whether a particular mitigating circumstance in sentencing is proven and the weight to be given it rest with the judge and jury." *Harrell v. State*, 470 So. 2d 1303, 1308 (Ala. Crim. App. 1984), *affirmed*, 470 So. 2d 1309 (Ala.. 1984), *cert. denied*, 474 U.S. 935 (1985).

Furthermore, even if the prosecutor had misstated the role of mitigating evidence in the jurors' decision-making process, nothing indicates that any such misstatement of the law would have violated Taylor's right to an impartial jury as he claims. Taylor cites no legal authority, and this court is aware of none, that supports his contention that this alleged behavior by the prosecutor endangers a jury's impartiality in the penalty phase of a capital trial. Taylor presents pure speculation in his assumption that the prosecutor's remarks resulted in a jury whose members zealously supported the death penalty at all costs, even to the extent of ignoring mitigating evidence. Finally, even if some jurors improperly ignored mitigating evidence, the simple fact remains that if the juror had recommended the death penalty in contravention of clear mitigating evidence, the trial court judge, as the official "sentencer" under Alabama law, could have declined to accept the jury's recommendation. *Ex parte Hays*, 518 So. 2d 768, 774 (Ala. 1986).  Thus, any improper behavior on behalf on the prosecutor in this regard would not have "render[ed] a capital trial fundamentally unfair . . . . that is, a "probability sufficient to undermine confidence in the outcome." (Doc. 36-1, p. 242) (citing *Spivey v. Head*, 207 F.3d 1263, 1275-76 (11th Cir. 2000) (quoting *Strickland*, 466 U.S. at 669)). The decision of the Court of Criminal Appeals is entitled to deference

under § 2254, and this court finds that its determination regarding the prosecutor's comments during voir dire were not contrary to clearly established federal law.

> ii. "The Prosecutor Improperly Argued Facts Not in Evidence and Prejudiced Mr. Taylor by Putting Unfounded Inflammatory Thoughts in the Minds of the Jurors"

Taylor states that "[p]rosecutorial comments that argue facts not in evidence are improper and may render a trial fundamentally unfair." (Doc. 36-1, p. 246) (citing *Berger v. United States*, 295 U.S. 78 (1935)). True, *Berger* stands for the basic proposition that prosecutorial comments *may* render a trial fundamentally unfair in violation of the rule in *Darden*; but the court notes that the *Berger* court was strongly influenced by the fact that the government's case against Berger was weak, making the prosecutor's inappropriate comments and subsequent conviction by the jury all the more unfair. *Berger*, 296 U.S. at 89 ("If the case against Berger had been strong, or, as some courts have said, the evidence of his guilt 'overwhelming,' a different conclusion might have been reached."); *but see Darden*, 477 U.S. at 182 (noting that one factor considered in the court's determination that the prosecutor's comments did not render the trial fundamentally unfair was the overwhelming amount of evidence against the defendant, thus lessening the chance that the jurors were swayed by the prosecutor's statements). Moreover, the *Berger* court looked at the behavior of the prosecutor as a whole, condemning his actions such as "assuming prejudicial facts not in evidence" and "bullying and arguing with witnesses," as "methods calculated to produce a wrongful conviction." *Berger*, 295 U.S. at 88. Again, the standard for prosecutorial misconduct in this context produces a rather high barrier for Taylor to overcome.

Taylor objects to the prosecutor's saying that when Taylor went to the Moores' home the night before the murder, he had intended to kill them then, but that he was unsuccessful because

they would not let him in. (Doc. 36-1, p. 247). Taylor states that there was "absolutely no evidence to suggest that Mr. Taylor planned to kill the Moores on the evening before the murder, or that such a plan was thwarted when he was not allowed into the home. To the contrary, the evidence showed that Mr. Taylor needed a place to stay on Sunday night. . . ." *Id*. However, the prosecutor's inference of Taylor's intent to kill is not unreasonable. While a prosecutor may not argue facts entirely absent from the record, "he may state or comment on proper inferences from the evidence and may draw conclusions from the evidence based upon his own reasoning." *Sasser v. State*, 494 So. 2d 857, 859-60. (Ala. Crim. App. 1986) (internal citations omitted). If Taylor had intent to kill on Monday night, for a reasonable person to infer that he would have killed the Moores the previous night had he had the opportunity is not a "stretch."

Next, Taylor argues the prosecutor made unsupported statements about medical testimony. For example, the prosecutor said: "Why was his adrenaline pumping? He was actually enjoying it." (Doc. 36-1, p. 248) (internal citation omitted). This particular comment was made during the prosecutor's closing argument, (R. 10, tab 22. p. 1356), a time of the trial where "[c]ontrol. . . rests in the broad discretion of the trial judge and, where no abuse of discretion is found, there is no error." *Sasser v. State*, 494 So. 2d 857, 859-60 (Ala. Crim. App. 1986). The defendant made no objection at the time the prosecutor made the statement, and while the comment may be considered offensive or improper, this court finds that it did not "so infect[] the trial with unfairness" to render the outcome of the trial "a denial of due process." *See Donnelly*, 416 U.S. at 643.

The prosecutor also characterized the medical examiner's testimony regarding the number of blows inflicted upon each victim as a "conservative estimate." This language, in and of itself, is not highly prejudicial, and when the prosecutor questioned the medical examiner at trial and told

167

him to give a "conservative estimate" of the number of blows, the medical examiner did not object

to the use of that term, and gave a specific number of blows he claims to have counted. (R., Vol.

8, tab 11. p. 1006-1007). Nothing about the prosecutor's statements in this context would render

the trial fundamentally unfair. Nor is anything unfair about the prosecutor's comments that the

victim's wounds must have been so severe because of the level of force applied by Taylor. (*See*

Doc. 36-1, p. 248).  Any reasonable person could understand that to cause life-ending injuries to

a person's skull would require a high level of force; this conclusion is simply a reasonable

inference, which the law allows a prosecutor—and a jury— to make. *See Sasser*, 494 So. 2d at 859-

60.

Finally, Taylor argues it was unfair for the prosecutor to tell the jury that "experts had said

that Mr. Taylor did not have mental problems." *Id*. at 249. However, one can reasonably assume

that the prosecutor was talking about Taylor's being competent to stand trial and to understand what

he had done, which the medical experts had determined to be true. *See id.* The court must consider

a prosecutor's comments in the context of the trial as a whole. *Cargill*, 120 F.3d at 1379. While the

jury was welcome to consider the defendant's evidence that he suffered from "a host of

developmental and personality disorders," nothing is fundamentally unfair about the prosecutor

pointing out that Taylor was legally sane and competent.

> iii. "The Prosecutor Improperly Impressed Upon the Jury a Moral Duty to Convict
> Mr. Taylor and Sentence Him to Death"

Taylor argues that the prosecutor improperly told the jurors that they had a moral duty to

convict Taylor and to sentence him to death. Specifically, the prosecutor spoke of the jurors' "duty"

to "do[] what needs to be done" and "do what's right." (*See* Doc. 36-1, p. 251). For legal support,

Taylor cites *United States v. Young*, 470 U.S. 1 (1985)[109], which he asserts stands for the proposition that a prosecutor may not "pressure" or "exhort" the jury to "do its job." *Id*. at 250. The *Young* court, while finding such comments from the prosecutor inappropriate, decided that those particular comments "were not such as to undermine the fundamental fairness of the trial and contribute to a miscarriage of justice," *Young*, 470 U.S. at 16, thereby directly undermining Taylor's argument. Furthermore, as the Alabama Court of Criminal Appeals noted, "[i]n a very real sense, a jury does have a 'duty' to convict the accused of the offense charged in the indictment if it finds the accused guilty of that offense beyond a reasonable doubt." *Taylor*, 666 So. 2d at *95 (quoting *Kuenzel v. State*, 577 So. 2d 474, 517 (Ala. Crim. App. 1990)). The state court's decision is entitled to deference under § 2254, and this court finds that the decision was reasonable and was not contrary to clearly established federal law.

Taylor's attorney did not object to any of these comments by the prosecutor at trial. While not dispositive, courts have considered "the lack of an objection" by defense counsel at the time the prosecutor's comment was made as an important factor, as such an omission "may demonstrate defense counsel's belief that the live argument, despite its appearance in cold record, was not overly damaging." *Brooks v. Kemp*, 762 F.2d 13983, 1397 n.19 (11th Cir. 1985); *see also Davis v. Zant*, 36 F.3d 1538, 1551 n. 20 (11th Cir. 1994) ("The failure to object can sometimes serve to clarify an ambiguous record as to whether a particular argument was in fact misleading or prejudicial."). This court finds that none of the allegedly inappropriate comments, taken in the context of the entire trial, was so prejudicial as to deny Taylor due process. Thus, this claim is due to be denied.

---

[109] Taylor also cites a few other federal circuit and district court cases, but because they cannot be used to meet the "contrary to clearly established federal law" standard, as discussed previously, they will not be discussed here.

169

XVI.   THE COURT'S JURY INSTRUCTIONS AT THE PENALTY PHASE OF TRIAL VIOLATED THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS. (DOC. 1, PP. 26-27; DOC. 36-1, PP. 228-41).[110]

A.      Summary of the Parties' Respective Arguments.

Taylor's Petition supports this ground for relief with the following factual averments:

The court failed to inform the jury of its unfettered prerogative to impose life: The court never informed the jury that it retained the option to recommend life without parole regardless of its calculus as to mitigating and aggravating circumstances. [(See R. Vol. 10, Tab. 25, pp. 1380-1407)]. The instructions, and underlying statute, Ala. Code. §13A-5-46(e), created a presumption of death unless Mr. Taylor could prove that the aggravating circumstances were outweighed by mitigating circumstances. [(See R. Vol. 10, Tab. 25, pp. 1380-1407)]. The jury instructions also failed to inform the jury that it could consider mercy and sympathy in determining whether Mr. Taylor should live or die. [(See R. Vol. 10, Tab. 25, pp. 1380-1407)]. The prosecutor urged in penalty phase summation that the jury was not to extend any sympathy to Mr. Taylor in its deliberations [(R. Vol. 10, Tab. 24, pp. 1378-79)], and the court did not correct this misstatement in its jury instructions. [(See R. Vol. 10, Tab. 25, pp. 1380-1407)]. The court also failed to adequately instruct the jury of its duty to consider mitigating evidence, telling the jury instead that it "may" and "should" consider mitigating circumstance[s], and not that it "must," [(R. Vol. 10, Tab. 25, pp. 1381, 1386-88)], notwithstanding counsel's timely objection [(R. Vol. 10, Tab. 25, p. 1396)].

By instructing the jury that the aggravating circumstances had been conclusively established [(R. Vol. 10, Tab. 25, p. 1380)], the court shifted the burden of proof to Mr. Taylor to show why he should not be sentenced to death and usurped the jury's sentencing role in a capital case.

_____

[110] Taylor addresses similar contentions in two different contexts. First, as a separate ground for relief, Taylor claims "the trial court precluded the defense from making a plea for mercy." (See Doc. 1, p. 19 ("Ground XI"); Doc. 36-1, pp. 152-65). Second, Taylor raises a variant of this claim within his ineffective assistance of counsel claim; specifically, he alleges that his trial counsel were deficient for ineffectively arguing his right to present mercy pleas during the penalty phase. (Doc. 1, p. 43; Doc. 36-1, p. 94).

As for this court's analysis of Taylor's interrelated, yet disparate, claims, any and all discussion of a capital defendant's alleged right to present pleas for mercy at the penalty phase is addressed above in Part XI *supra*, though it will also receive very brief attention in the context of Taylor's ineffective assistance claim, *see* Part XIX(B)(5)(d) *infra*. Otherwise, any aspect of Taylor's assertion that "the trial court[] fail[ed] to inform the jurors that they could consider mercy," (*see* Doc. 36-1, p. 231; *see also id.* at 231-36, 239-41), not previously addressed in Part XI *infra* will be addressed here, in Part XVI.

(Doc. 1, pp. 26-27 (updated citations to the record supplied)).

Respondents answer by arguing that "[these issues were] raised on direct appeal and denied on the merits by the Alabama Court of Criminal Appeals." (Doc. 13, p. 38 (citing *Taylor v. State*, 666 So. 2d 36, 69-70 (Ala. Crim. App. 1994)); *see also* Doc. 14, p. 58 (same)). Respondents divide Taylor's argument into five sub-claims and address each in turn by adopting and reproducing the decision of the Court of Criminal Appeals under each sub-claim.

First, Taylor claims that "the court failed to inform the jury of its unfettered prerogative to impose life: The court never informed the jury that it retained the option to recommend life without parole regardless of its calculus as to mitigating and aggravating circumstances." (Doc. 14, p. 58 (quoting Doc. 1, p. 26-27)). The Court of Criminal Appeals held:

> 1. The appellant claims that the "trial judge never informed the jury that it *always* retained the option to impose life without parole, whatever its calculus as to aggravators and mitigators." [(C.R. Vol. 11, Tab. 29, p. 103)]. However, "the jury may not recommend mercy without reason. . . . The jury does not have an 'unfettered option' to recommend a sentence of life without parole unless after weighing the aggravating and mitigating circumstances it finds that life without parole is warranted." *Williams v. State*, 601 So.2d 1062, 1081 (Ala. Cr. App. 1991) (citations to authority omitted).

*Taylor v. State*, 666 So. 2d 36, 69-70 (Ala. Crim. App. 1994) (emphasis in original) (updated citations to the record applied) (parallel citations omitted).

Second, Taylor alleges that "the instructions given at the sentencing phase '. . . shifted the burden of proof to Mr. Taylor to show why he should not be sentenced to death and usurped the jury's sentencing role in a capital case.'" (Doc. 14, p. 59 (quoting Doc. 1, p. 27)). The Court of Criminal Appeals held:

2.   The appellant contends that the instructions given at the sentence phase and Alabama's capital sentencing statute placed on the appellant an unconstitutional burden of proving at the sentence phase that the statutory aggravating circumstances proved by the state were outweighed by the mitigating circumstances.  The appellant asserts that "if the State proves that one or more statutory aggravating factors are present, the statute *requires* the jury to impose death unless the defendant shows that mitigating circumstances exist in the case, and that they outweigh the aggravating circumstances."  [(C.R. Vol. 11, Tab. 29, p. 104)].

This Court rejected similar claims in *Pierce v. State*, 576 So.2d 236, 254-55 (Ala. Cr. App. 1990), affirmed after remand, 612 So.2d 516 (Ala. 1992), cert. denied, [510 U.S. 872] (1993), and *Kuenzel*, 577 So.2d at 501.

*Taylor v. State*, 666 So. 2d 36, 69-70 (Ala. Crim. App. 1994) (emphasis in original) (updated citations to the record applied) (parallel citations omitted).

Third, Taylor argues that "the trial court 'failed to inform the jury that it could consider mercy and sympathy in determining whether Mr. Taylor should live or die.'" (Doc. 14, p. 59 (quoting Doc. 1, p. 27)).  The Court of Criminal Appeals held:

3.   The appellant claims error because the trial court "failed to inform the jury that it could consider mercy and sympathy in determining whether [the appellant] should live or die." [(C.R. Vol. 11, Tab. 29, p. 105)].  "The jury may not recommend mercy without reason." *Williams v. State*, 601 So.2d at 1081.  The jury is "not, . . . free to arbitrarily ignore any factor either positive or negative in arriving at the correct sentence." *Morrison v. State*, 500 So.2d 36, 43 (Ala. Cr. App. 1985), affirmed, 500 So.2d 57 (Ala. 1986), cert. denied, 481 U.S. 1007 (1987) (holding improper the requested instruction that "If you see fit, whether mitigating circumstances exist or not, you may recommend mercy for the defendant.  This recommendation is solely in your discretion and not controlled by any rule of law.  You may make such recommendation with or without a reason.").

*Taylor v. State*, 666 So. 2d 36, 69-70 (Ala. Crim. App. 1994) (emphasis in original) (updated citations to the record applied) (parallel citations omitted).

Fourth, Taylor claims that "the trial court erred by instructing the jury that it 'should' and 'may' consider mitigating evidence rather than it 'must.'" *Id.*  The Court of Criminal Appeals held:

4. [The appellant contends that the trial court failed to adequately instruct the jury regarding its duty to consider mitigating evidence because, he says, the trial court instructed the jury only that it "should" and "may" consider mitigating evidence and never informed the jury that it "*must* consider mitigating circumstances which are proven by a preponderance of the evidence." [(C.R. Vol. 11, Tab. 29, p. 108)].] We addressed a similar situation in *Carroll v. State*, 599 So. 2d 1253, 1271 (Ala. Cr. App. 1992), affirmed, 627 So. 2d 874 (Ala. 1993), cert. denied, [510 U.S. 1171] (1994):

"Although the trial court did use the terms 'may' and 'should' in connection with the jury's duty to consider and find the existence of any mitigating circumstances, a review of the court's entire charge reveals that the court made it clear that consideration of mitigating circumstances was an obligation on the jury that it 'must' perform in arriving at its verdict, and not something that was optional."

"'The language of a charge must be given a reasonable construction, and not a strained and unreasonable one.'" *Harris v. State*, 394 So. 2d 96, 100 (Ala. Cr. App. 1981). "Hypercriticism should not be indulged in in [sic] construing charges of the court. . . ." *Addington v. State*, 74 So. 2d 846, 855 (1916).

*Taylor v. State*, 666 So.2d 36, 69 (Ala. Crim. App. 1994) (second alteration and emphasis in original) (updated citation to the record supplied).[111]

Fifth, and finally, Taylor alleges that "the trial court's supplemental charge that the state 'has met the burden of proof of proving to you that there have been two aggravating circumstances committed in this case' improperly slanted the jury toward death." (Doc. 14, p. 60 (quoting Doc. 1, p. 27)). The Court of Criminal Appeals held:

5. The appellant asserts that the trial court's supplemental charge that the state "has met the burden of proof of proving to you that there have been two aggravating circumstances committed in this case," [(R. Vol. 10, Tab. 25, p. 1404)], "was confusing and improperly slanted the jury toward death." [(C.R. Vol. 11, Tab. 29, p. 108)]. We find this argument without merit. In obtaining the appellant's

---

[111] The Respondents' Brief on the Merits does not quote the first sentence in the first paragraph of the Alabama Court of Criminal Appeals's opinion reproduced above. (*Compare* Doc. 14, p. 60, *with Taylor v. State*, 666 So. 2d 36, 69 (Ala. Crim. App. 1994)). The court thought it best, however, to reproduce that court's ruling in its entirety as reflected in brackets. Further, the court also corrected the Respondents' formatting of the Court of Criminal Appeals's opinion. *See id.*

conviction, the state proved the aggravating circumstance that the murder was committed during the course of a robbery.  See *Kuenzel*, 577 So.2d at 486-87.  Defense counsel stipulated to the existence of the especially heinous, atrocious, or cruel aggravating circumstance.  Our review of the instructions of the trial court at the penalty phase convinces this Court that the jury was properly instructed on aggravating and mitigating circumstances, the burden of proof as to each, and the process to be used in weighing those circumstances.  We find no indication that the charge signaled to the jury that the trial court favored a sentence of death.

*Taylor v. State*, 666 So. 2d 36, 69-70 (Ala. Crim. App. 1994) (emphasis in original) (updated citations to the record applied) (parallel citations omitted).

## B.      Merits Analysis.

Taylor alleges the trial court made numerous errors in giving jury instructions, violating clearly established federal law and failing to correct erroneous statements made by the prosecutor related to the jury instructions. (Doc. 1, pp. 26-27).  In his Reply Brief, Taylor divides his claim into three categories of alleged errors by the trial court with respect to the jury instructions. (Doc. 36-1, pp. 231, 236, 239).  This court will address each argument in turn.

### i. "The Jury Instructions Failed to Inform the Jury that It Could Consider Mercy and Sympathy."

The Court of Criminal Appeals rejected Taylor's argument that "his rights were violated by the trial court's failure to inform the jurors that they could consider mercy." (Doc. 32-2, p. 231). True, the trial court did not specifically mention mercy as a factor for the jurors to consider. (See C.R. Vol. 10, Tab 25, p. 1380-1395). Instead, the court instructed the jury that when it considered the existence of mitigating factors, it could consider any listed by the court, or *any others* not listed that the jury believed were shown by the evidence. *Id*. at 1386 - 1388. While mercy was not specifically emphasized as a factor, its absence from the jury instructions does not necessarily

conflict with the "principle that mercy is an appropriate and important sentencing consideration." (Doc. 32-2, p. 232). The court did not, as trial courts had done in cases cited by Taylor in his Reply Brief, suggest to the jury that mercy was an *inappropriate* consideration. (*See* Doc. 32-2, p. 233).

Taylor also argues that several comments made by the prosecutor "clearly implied that mercy was an inappropriate consideration," and that the court should have taken steps in its jury instructions to correct such an implication. *Id*. at 234. "In this context," Taylor argues, "the court's failure to inform the jury of its authority to consider mercy created a reasonable probability that the outcome of the sentencing was changed." *Id*. at 236 (citing *Presnell v. Zant*, 959 F.2d 1524, 1528 (11th Cir. 1992)).

However, even Taylor admits that "the prosecutor's statements in Mr. Taylor's case were less egregious than those in *Presnell*," casting a dubious light on the strength of the legal support that case lends to Taylor's argument. The difference between *Presnell* and the present case is that the prosecutor in *Presnell* specifically decried mercy as an important consideration, while the prosecutor in Taylor's case merely "implied" it, at most. *Cf. Presnell*, 959 F.2d at 1528; *with* Doc. 32-2, p. 234 (citing examples of the prosecutor's statements allegedly implying that the jurors should not consider mercy). Furthermore, the judge's instructions emphasized that the jurors should consider *any* mitigating factors shown in the *evidence*, and evidence does not include statements by the attorneys. Finally, even the prosecutor told the jury that, "[m]itigating circumstances. . . .are those types of circumstances which if shown to you by the evidence and when compared with aggravating circumstances, if they are found to outweigh those aggravating circumstances, then that would tend to indicate to the jury that your recommendation to the Judge should be Life Without Parole." (R.vol. 10 tab 22 p. 1340). This court is satisfied that given the nature of the prosecutor's

statements in the overall context of the trial, as well as the judge's instructions about mitigating evidence, the failure of the court to specifically emphasize the importance of mercy did not deprive Taylor of his right to due process.

> ii. "The Court Did Not Adequately Instruct the Jury on its Duty to Consider Mitigating Evidence."

The Court of Criminal Appeals also rejected Taylor's argument that "the trial judge did not adequately instruct the jury about its duty to consider mitigating evidence." (Doc. 32-2, p. 229); *Taylor*, 666 So. 2d at 69. Taylor cites *Eddings v. Oklahoma*, 455 U.S. 104, 114 (1982), for the proposition that "the sentencer in a capital case may not refuse to consider any relevant mitigating evidence," and that jury instructions that "do not direct the jury to consider fully [the defendant's] mitigating evidence" are "prohibited" by *Eddings* and other Supreme Court cases. (Doc. 32-2, p. 236-37) (internal citations omitted). Taylor's argument centers on his objection to the judge's use of the word "may," instead of telling the jury they "must" consider mitigating circumstances. (Doc. 32-2, p. 237).

The Court of Criminal Appeals presented the following quotation from its own precedent in response to Taylor's argument:

> Although the trial court did use the terms 'may' and 'should' in connection with the jury's duty to consider and find the existence of any mitigating circumstances, a review of the court's entire charge reveals that the court made it clear that consideration of mitigating circumstances was an obligation on the jury that it 'must' perform in arriving at its verdict, and not something that was optional.

*Taylor*, 666 So. 2d at 69 (quoting *Carroll v. State*, 599 So. 2d 1253, 1271 (Ala. Crim. App. 1992)). Taylor acknowledges the court's position, but argues that "[c]onsidering [the] court's entire charge

in Mr. Taylor's case, however, it is clear that the judge did not adequately charge the jury of its duty to consider mitigating evidence in a manner that satisfies the Supreme Court's mandate in *Eddings*." (Doc. 32-2, p. 238).

This court disagrees. The Supreme Court announced in *Boyde v. California*, 494 U.S. 370, 378, 380 (1990), "[t]he legal standard for reviewing jury instructions claimed to restrict impermissibly a jury's consideration of relevant mitigating evidence [is] whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." After considering the trial judge's instructions to the jury in their entirety, this court is satisfied that the judge did, in fact, adequately charge the jury about its duty to consider mitigating evidence. (*See* R. Vol. 10 Tab. 25, p. 1380-1396). The trial judge's instructions did not run afoul of the standard cited by the Supreme Court in *Boyde*, nor the rule in *Eddings* or any of the other Supreme Court cases cited by Taylor; the instructions did not likely prevent jurors from giving meaningful consideration to the mitigating evidence. *See*, *e.g.*, *Penry v. Lynaugh*, 492 U.S. 301 (1989); *Brewer v. Quarterman*, 550 U.S. 286 (2007); *Abdul-Kabir v. Quarterman*, 550 U.S. 233 (2007).

> iii. "The Jury Instruction that Two Aggravating Circumstances Had Been Proven Made Instructions on the Duty to Consider Mitigating Circumstances and Authority to Consider Mercy Especially Necessary."

Taylor argues that "the court's instructions unfairly stacked the deck against Mr. Taylor: they told the jury that two aggravating circumstances had been proved beyond a reasonable doubt but failed to inform the jury of its duty to consider mitigating evidence. . . ." (Doc. 32-2, 240-41). As explained above, this court finds the judge's instructions adequately informed the jury of its duty to consider mitigating evidence. Furthermore, the judge was merely stating facts; Taylor had indeed pled guilty to robbery, one of the aggravating circumstances, and had stipulated to the existence of the second aggravating circumstance - that the crime was "especially heinous, atrocious or cruel." The judge was merely instructing the jury that these two aggravating circumstances had already

been proven to exist. Taylor may, and does, in fact, argue against the circumstances that gave rise to such a state of affairs, but nothing was improper with the judge's instruction in this regard.

Under 28 U.S.C. § 2254, the decision of the Court of Criminal Appeals is entitled to deference, and Taylor has failed to demonstrate how its decision was contrary to clearly established federal law. Therefore, his claim is due to be denied.

## XVII. THE USE OF ALA. CODE § 13A-5-49(4) TO AGGRAVATE A CONVICTION UNDER SECTION 13A-5-40[(a)](2) PUNISHES MR. TAYLOR TWICE FOR THE SAME OFFENSE, IN VIOLATION OF THE PROHIBITION AGAINST DOUBLE JEOPARDY, AND FAILS TO NARROW THE CLASS OF DEATH ELIGIBLE DEFENDANTS AS REQUIRED BY THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS. (DOC. 1, P. 28).[112]

### A.    Summary of the Parties' Respective Arguments.

Taylor's Petition supports this ground for relief with the following factual averments:

Sentencing Mr. Taylor to death based upon the aggravating circumstance that the offense had been committed during a robbery punishes him twice for the same act. By merely doubling the elements of felony murder as sentencing considerations, the Alabama Code, as it was applied here, allows the arbitrary imposition of the death penalty.

(Doc. 1, p. 28).  This argument represents the entirety of Taylor's claim because his Reply Brief does not elaborate or expound upon this claim any further.  Although Taylor's Petition and Reply Brief both raise another ground for relief alleging a violation of the Fifth Amendment's Double Jeopardy Clause,[113] that ground is separate and distinct from the claim raised here.  (*See* Doc. 1, pp.

---

[112] Taylor's Petition inaccurately cites both statutory provisions above. (Doc. 1, p. 28).  His citation to § 13A-5-49(4) contains an erroneous dash, and his citation to § 13A-5-40(a)(2) omits that subparagraph (2) is located within paragraph (a).  *See id.*  Nevertheless, both errors were corrected above for clarity.

Further, the capital offense in Ala. Code. § 13A-5-40(a)(2) (1975) states: "Murder by the defendant during a robbery in the first degree or an attempt thereof committed by the defendant." And the aggravating circumstance in Ala. Code § 13A-5-49(4) states: "The capital offense was committed while the defendant was engaged or was an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit, rape, robbery, burglary or kidnapping."

[113] Taylor's separate ground for relief alleging a violation of the Fifth Amendment's Double Jeopardy Clause, *i.e.*, "Ground XVIII," is discussed in Part XVIII *infra*.  Moreover, Taylor also raises a variant of that ground for relief in his ineffective assistance of counsel claim (*see* Doc. 1, p. 37; Doc. 36-1, pp. 61-62), and it is discussed in that context

28-29; Doc. 36-1, pp. 210-19).

Respondents answer by arguing that "[t]his issue was raised on direct appeal and denied on the merits by the Alabama Court of Criminal Appeals." (Doc. 13, p. 39 (citing *Taylor v. State*, 666 So. 2d 36, 70 (Ala. Crim. App. 1994)); *see also* Doc. 14, p. 61 (same)). Specifically, Respondents state: "The Alabama Court of Criminal Appeals simply held, 'Similar issues were addressed and decided adversely to the appellant in *Kuenzel*, 577 So. 2d at 487-88.'" (Doc. 14, p. 61 (quoting *Taylor v. State*, 666 So. 2d 36, 70 (Ala. Crim. App. 1994))).

### B.   Merits Analysis.

Except for bare citations to the Fifth, Sixth, Eighth, and Fourteenth Amendments, Taylor fails to cite any legal authority to support his claim that duplication by an aggravating circumstance of the underlying capital felony violates the United States Constitution.[114]   (*See* Doc. 1, p. 28). Because he has failed to posit any Supreme Court precedent showing that the state court's denial of his claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," Taylor's claim is due to be denied. 28 U.S.C. § 2254(d)(1) (2006).[115]

---

in Part XIX(B)(2)(c) *infra*.

[114] On the other hand, Taylor's briefs before the Alabama Court of Criminal Appeals and the Alabama Supreme Court on direct appeal discussed this issue and cited both United States Supreme Court precedent as well as cases from state courts discussing the federal constitutional dimension of this claim.  (*See* C.R. Vol. 11, Tab. 29, pp. 112-13 (citing *Zant v. Stephens*, 462 U.S. 862 (1983); *State v. Middlebrooks*, 840 S.W.2d 317, 341-47 (Tenn. 1992), *cert. granted*, 507 U.S. 1028 (1993), *cert. dismissed as improvidently granted*, 510 U.S. 124)); *see also* C.R. Vol. 14, Tab. 33, pp.122-23 (same)).  But Taylor neither cites nor discusses those cases before this court.  Further, this court's responsibility is not to sort through the record and decipher a petitioner's legal basis for his arguments, and, therefore, this claim is still due to be denied.

[115] Even though Taylor fails to posit any Supreme Court precedent to the contrary, the court would like to point out that the Alabama Court of Criminal Appeals has addressed this issue since Taylor's case, and this court agrees with its reasoning.  *See Johnson v. State*, 820 So. 2d 842, 881 (Ala. Crim. App. 2000), *aff'd sub nom.*, *Ex parte Johnson*, 820

XVIII.    **MR. TAYLOR'S CONVICTION AND PUNISHMENT FOR THREE COUNTS OF CAPITAL MURDER VIOLATES THE PROHIBITION AGAINST DOUBLE JEOPARDY, AS SECURED BY THE FIFTH, EIGHTH, AND FOURTEENTH AMENDMENTS.  (DOC. 1, PP. 28-29; DOC. 36-1, PP. 210-19).**[116]

A.    **Summary of the Parties' Respective Arguments.**

In support of this ground for relief, Taylor's Petition offers the following factual averments:

> Mr. Taylor was convicted under counts one and two of murder during a robbery (Ala. Code § 13A-5-40(a)(2)) and, under count three, of murder of two or more persons "pursuant to a [sic] one scheme or course of conduct" (Ala. Code § 13A-5-40(a)(10)).  The course of conduct in the third count was the same robbery alleged in the first two counts [[R. Vol. 9, Tab. 13, pp. 1126-27]].  As a result, the third count required no proof of any fact not required by the first two.  The prosecutor argued that the identity of the offenses established Mr. Taylor's guilt of all three counts [[R. Vol. 9, Tab. 18, pp. 1183-84]].  The jury convicted Mr. Taylor of all three counts, and the court imposed three death sentences [[C.R. Vols. 1-2, Tab. 1, pp. 195-97, 204-06, 213-15; R. Vol. 10, Tab. 28, pp. 1425-26]].

(Doc. 1, pp. 28-29 (updated citations to the record supplied)).[117]

Respondents answer by claiming "[t]his issue was raised on direct appeal and denied on the merits by the Alabama Court of Criminal Appeals."  (Doc. 13, p. 41 (citing *Taylor v. State*, 666 So. 2d 36, 70 (Ala. Crim. App. 1994)); *see also* Doc. 14, p. 62 (same)).  Respondents further state:

> The Alabama Court of Criminal Appeals simply held, "This case does not involve multiple trials for the same offense.  Nor does it concern a situation where a defendant is charged with more than one offense arising out of the same transaction,

---

So. 2d 883 (Ala. 2001), *cert. denied sub nom.*, *Johnson v. Alabama*, 535 U.S. 1058 (2002).

[116] Taylor also raises a variant of this ground for relief within his ineffective assistance of counsel claim; specifically, he alleges that his trial counsel were deficient for failing to object to the duplicative counts within his indictment. (Doc. 1, p. 37; Doc. 36-1, pp. 61-62).  While the court will address that claim briefly in that context, *see* Part XIX(B)(2)(c) *infra*, the merits of his underlying substantive claim will be addressed here.

[117] In his Petition, Taylor uses brackets, as opposed to parentheses, around his citations to the Alabama Code. (*See* Doc. 1, p. 28).  For purposes of clarity, the court replaced the brackets with parentheses to avoid confusion with the court's alterations to the factual averments in Taylor's Petition, *i.e.*, the updated citations to the record and "[sic]."

convicted of those offenses, and given separate sentences for each offense, triggering analysis under *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932)."

(Doc. 14, p. 62 (quoting *Taylor v. State*, 666 So. 2d 36, 70 (Ala. Crim. App. 1994))).

While Respondents state the Court of Criminal Appeals "simply held" the two sentences quoted above within its Brief on the Merits, *see id.*, that simple statement does not accurately reflect the totality of that court's ruling on direct appeal.[118] The Court of Criminal Appeals's entire ruling on this issue was as follows:

> The appellant contends that his conviction of one count of capital murder under Ala. Code 1975, § 13A-5-40(a)(10) (murder of two persons pursuant to a single course of conduct), and his conviction of two counts of capital murder under § 13A-5-40(a)(2) (murder during robbery), violate constitutional principles of double jeopardy. This issue is raised for the first time on appeal.

> This case does not involve multiple trials for the same offense. Nor does it concern a situation where a defendant is charged with more than one offense arising out of the same transaction, convicted of those offenses, and given separate sentences for each offense, triggering an analysis under *Blockburger v. United States*, 284 U.S. 299 (1932). The appellant in this case was given only one sentence. None of these double jeopardy protections encompasses the circumstances of which the appellant complains. See *Ex parte Giles*, 632 So.2d 577, 584 (Ala. 1993), cert. denied, [512] U.S. [1213] (1994). The guarantee "does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366 (1983). See *Jackson v. State*, 516 So.2d 726, 761-63 (Ala. Cr. App. 1985), affirmed on related part and remanded on unrelated part, 516 So.2d 768 (Ala. 1986), appeal dismissed on return to remand, 516 So. 2d 774 (Ala. Cr. App. 1987). The appellant's conviction of three counts did not violate Ala. Code

---

[118] Both Taylor and Respondents cite the Court of Criminal Appeals's ruling *on direct appeal*. (Doc. 36-1, pp. 211, 216; Doc. 13, p. 41; Doc. 14, p. 62). This reference is significant because Taylor raised a similar claim during the course of his Rule 32 proceedings, but it was in conjunction with his ineffective assistance claim. (*See* Rule 32 C.R. Vol. 19, Tab. 49, p. 26 ("Counsel failed to object to the Court's submission of three counts of capital murder to the jury . . . even though it violated petitioner's constitutional right against double jeopardy . . . .")). The state collateral courts accordingly utilized *Strickland*'s analytical framework to make their rulings. *See Taylor v. State*, 10 So. 3d 1037, 1054-55 (Ala. Crim. App. 2004); (Rule 32 C.R. Vol. 37, Tab. 84, pp. 65-66). As such, the state court's disposition of that claim during Taylor's Rule 32 proceedings is not at issue here and should not be confused with the Court of Criminal Appeals's earlier ruling on direct appeal, which is the operative opinion for present purposes. *See Taylor v. State*, 666 So. 2d 36, 70 (Ala. Crim. App. 1994).

1975, § 13A-1-8(b).  See *Ex parte Haney*, 603 So. 2d 412, 419 (Ala. 1992), cert. denied, 507 U.S. 925 (1993).

We summarily reject the appellant's contention that "the jurors might naturally have felt Mr. Taylor was more deserving of death because he had been convicted of *three* capital offenses."  [(C.R. Vol. 14, Tab. 33, pp. 124-25)].  The jury was properly instructed on aggravating circumstances and jurors are presumed to follow the oral instructions of the trial court.

*Taylor v. State*, 666 So. 2d 36, 70 (Ala. Crim. App. 1994) (parallel citations omitted) (emphasis in

original), *aff'd sub silentio sub nom.*, *Ex parte Taylor*, 666 So. 2d 73, 76 (Ala. 1995) ("As for the

other issues raised by Taylor, we find no error in the opinion of the Court of Criminal Appeals.").

**B.      Merits Analysis.**

Taylor's claim, while couched as *one* ground for relief, actually comprises two distinct

arguments.  While this point is implicit within the "Supporting Facts" section of Taylor's Petition,

it only becomes apparent after analyzing his Reply Brief.  Even then, however, Taylor conflates the

two and, at one point, utilizes the wrong standard of review.  Due to this commingling, the court

will begin by deconstructing Taylor's claim into its two constituent parts and then address each in

turn.

*1.      Deconstructing Taylor's two distinct arguments.*

*First*, Taylor claims his "conviction and punishment for counts one and two of murder

during a robbery (Ala. Code § 13A-5-40(a)(2)) and, under count three, for murder of two or more

persons 'pursuant to one scheme or course of conduct' (Ala. Code § 13A-5-40(a)(10)) fail the . .

. test" articulated by the Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 304 (1932).

(Doc. 36-1, p. 212).  This failure is because, in Taylor's view, his "conviction under Ala. Code §

13A-5-40(a)(10) did not require proof of any additional fact not already proven under [his] two

convictions under Ala. Code § 13A-5-40(a)(2)." *Id.* at 212-13.  After articulating this claim, Taylor

attempts to demonstrate how the Alabama Court of Criminal Appeals's ruling was based on an

unreasonable determination of the facts, in violation of 28 U.S.C. § 2254(d)(2), by asserting that

he was given three separate sentences of death.  *See id.* at 215-17.  In so doing, however, Taylor

conflates two distinct claims, because the correct standard to judge whether count three "fails the

*Blockburger* test" is whether the Court of Criminal Appeals's ruling "resulted in a decision that was

. . . an unreasonable application of[] clearly established Federal law, as determined by the Supreme

Court of the United States."  28 U.S.C. § 2254(d)(1).  Regardless of Taylor's failure to cite the

requisite provision of the AEDPA, the court will overlook this oversight as he essentially argues

as much within his Reply Brief.  (*See* Doc. 36-1, p. 215 (arguing that his "convictions fail the

<u>Blockburger</u> 'same elements' test" and that his convictions "violated his rights under the Double

Jeopardy Clause")).

 Taylor's *second* argument is never explicitly designated as a separate claim because it

actually forms the basis of his attempt to establish that the state court's ruling was an unreasonable

determination of the facts.  *Id.* at 215-17.[119]  Nevertheless, he states that "the Alabama court was

simply wrong on the facts: The trial court sentenced Mr. Taylor to a separate sentence of death for

each of his three convictions."  *Id.* at 216-17 (citing R. Vol. 10, Tab. 28, pp. 1425-26).  According

to Taylor, "[t]he Alabama courts' rejection of [his] double jeopardy claim was thus based on an

---

[119] While Taylor makes this assertion at the outset of his claim, (Doc. 36-1, p. 211 ("[T]the Alabama Court of Criminal Appeals mistakenly concluded that Mr. Taylor was given only one sentence for his three convictions . . . .  As the trial record makes quite clear, Mr. Taylor was given a separate sentence of death for each of the three counts of which he was convicted." (citing *Taylor v. State*, 666 So. 2d 36, 70 (Ala. Crim. App. 1994))), it actually forms the basis for his argument that the state court's ruling was an unreasonable determination of the facts, thereby satisfying his present burden under the AEDPA (*see* Doc. 36-1, pp. 215-17).  Thus, it is distinct from the first aspect of this claim, *i.e.*, that the Court of Criminal Appeals unreasonably applied "the *Blockburger* 'same-elements' test."  *Id.* at 215.

unreasonable determination of the facts in light of the evidence presented in the state court proceedings." *Id.* at 211 (citing 28 U.S.C. § 2254(d)(2) (2006)); *see also id.* at 215-17.  In this vein, he claims "Supreme Court and Eleventh Circuit precedent makes clear that, because of the danger that the jury may have been influenced in the sentencing phase by the third, improper conviction, [he] is entitled to a new sentencing hearing." *Id.* at 211; *see also id.* at 217-19.

   **2.**  ***Whether Taylor's conviction under § 13A-5-40(a)(10) of the Alabama Code violates the Double Jeopardy Clause of the Fifth Amendment in light of his two separate convictions under § 13A-5-40(a)(2).***

   The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.  In common parlance, the Double Jeopardy Clause protects against, *inter alia*, "multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (footnote omitted).  As both parties—as well as the state courts—correctly point out, the *Blockburger*, or "same-elements," test governs the disposition of Taylor's present claim.  This test "inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution." *United States v. Dixon*, 509 U.S. 688, 696 (1993).

   The capital offense outlined in § 13A-5-40(a)(10) is defined as: "Murder wherein two or more persons are murdered by the defendant by one act or pursuant to one scheme or course of conduct."  In this regard, Taylor argues his "conviction under Ala. Code § 13A-5-40(a)(10) did not require proof of any additional fact not already proven under [his] two convictions under Ala. Code § 13A-5-40(a)(2)."  (Doc. 36-1, pp. 212-13).  Stated differently, Taylor claims sub-paragraph (a)(10)'s requirement that the murders be "pursuant to one scheme or course of conduct" was

184

satisfied by the same robbery that formed the basis of his two convictions under sub-paragraph (a)(2) for murder during a robbery.  *See id.* at 213.  Therefore, according to Taylor's logic, "the *same elements* necessary to convict Mr. Taylor under Ala. Code § 13A-5-40(a)(10) were the *same elements* necessary to convict him under the two counts of murder during a robbery." *Id.* (emphasis added) (footnote omitted).[120]

Taylor's argument suffers from faulty logic.  He fails to recognize that § 13A-5-40(a)(10) requires the "[m]urder [of] two or more persons."  In other words, a defendant must have committed two separate offenses before he or she is subject to this additional and distinct capital offense.  Viewed this way, Taylor's conviction under sub-paragraph (a)(10) did not subject him to "multiple punishments for the *same offense*," *Pearce*, 395 U.S. at 717 (emphasis added) (footnote omitted); rather, his conviction under (a)(10) resulted from the combination of two offenses, *i.e.*, an additional element.

In sum, Taylor did not receive "multiple punishments for the same offense."  *Id.*  He received one punishment for the offense of killing Mrs. Moore during the course of a robbery.  He received another punishment for the offense of killing Mr. Moore during the course of a robbery.

---

[120] Subsequently, Taylor attempts to distance his present claim from an exception to the general rule.  (*See* Doc. 36-1, pp. 213-15).  In *Albernaz v. United States*, 450 U.S. 333, 344 (1981), the Supreme Court described this exception and held: "Where Congress intended, as it did here, to impose multiple punishments, imposition of such sentences does not violate the Constitution."  But since Taylor was not sentenced for multiple punishments for the *same offense*, which is discussed in greater detail below, the court need not discuss whether this exception applies.

Even if the court were to reach this issue, Taylor's argument is not only unconvincing, but also contrary to Alabama law.  (*See* Doc. 36-1, p. 215 (quoting Ala. Code §§ 13A-1-8(b)(1), 13A-1-9)).  As the Court of Criminal Appeals held last year: "Each count of capital murder is a separate offense, as shown by the beginning of the statute defining capital offenses, which provides, 'The following are capital offenses.' Ala. Code 1975, § 13A-5-40(a)." *Billups v. State*, 72 So. 3d 122, 128 (Ala. Crim. App. 2010) (quoting *Ex parte Peraita*, 897 So.2d 1227, 1236 (Ala. 2004)).  In light of *Peraita* and *Billups*, Taylor was convicted of three *separate* capital offenses as provided by Alabama law.  *See id.*  Therefore, Taylor was not sentenced to multiple punishments for the same offense, but rather sentenced to multiple punishments for multiple offenses.

And he received a third punishment for the *offenses* of killing *both* Mr. and Mrs. Moore, *i.e.*, "two or more persons," as part of "one scheme or course of conduct," pursuant to § 13A-5-40(a)(10). As such, the Court of Criminal Appeals's ruling that "[n]one of [the] double jeopardy protections encompasses the circumstances of which [Taylor] complains," *Taylor v. State*, 666 So. 2d 36, 70 (Ala. Crim. App. 1994) (citation omitted), was not "an unreasonable application of[] clearly established Federal law," 28 U.S.C. § 2254(d)(1).[121]

> ### 3.   Whether the Court of Criminal Appeals's conclusion that Taylor "was given only one sentence" of death constitutes an unreasonable determination of the facts, in violation of 28 U.S.C. § 2254(d)(2).

Taylor asserts that "the Alabama court was simply wrong on the facts" for not finding that the trial court sentenced him to three separate sentences of death. (*See* Doc. 36-1, p. 216 (citing R. Vol. 10, Tab. 28, pp. 1425-26)). As laid out in the Court of Criminal Appeals's decision quoted above, Taylor was convicted of two counts of capital murder during a robbery, in violation of Ala. Code § 13A-5-40(a)(2), and he was also convicted of an additional, third count of capital murder for murdering two persons pursuant to a single course of conduct, in violation of Ala. Code § 13A-5-40(a)(10). *See Taylor v. State*, 666 So. 2d 36, 70 (Ala. Crim. App. 1994).

Taylor's primary support for his claim that the Alabama Court of Criminal Appeals's ruling "resulted in a decision that was based on an unreasonable determination of the facts," 28 U.S.C. § 2254(d)(2), is the trial judge's entry of three "Judgement[s] of the Court." (C.R. Vols. 1-2, Tab. 1, pp. 196-97, 205-06, 214-15; *see also* C.R. Vol. 37, Tab. 78, pp. 196-97, 205-06, 214-15 (same)).

---

[121] Despite Taylor's failure to expressly claim that the Court of Criminal Appeals's ruling violated 28 U.S.C. § 2254(d)(1) by "unreasonable appl[ying] clearly established Federal law, as determined by the Supreme Court of the United States," the court analyzed it under this analytical framework.

In each of these, the trial judge's concluding statement was "that the punishment of [Taylor] should be fixed by the Court at DEATH." (C.R. Vols. 1-2, Tab. 1, pp. 196-97, 205-06, 214-15; *see also* C.R. Vol. 37, Tab. 78, pp. 196-97, 205-06, 214-15 (same)). Further, Taylor also points to the trial judge's remarks during the pronouncement of Taylor's sentence, wherein the judge referenced each count and then "ordered, adjudged and decreed . . . that it is the judgment and sentence of the Court that the defendant be and hereby is sentenced to Death . . . ." (R. Vol. 10, Tab. 28, pp. 1425-26).

On this point, the record appears to support Taylor's claim that he was sentenced to three sentences of death. While pronouncing Taylor's sentence, the trial judge stated that Taylor was sentenced to death for each of the three counts of capital murder. *See id.* Further, the trial judge entered three separate "Judgment[s] of the Court" that seem to sentence Taylor to death for each of the three counts. (*See* C.R. Vols. 1-2, Tab. 1, pp. 196-97, 205-06, 214-15; *see also* C.R. Vol. 37, Tab. 78, pp. 196-97, 205-06, 214-15 (same)).

However, Taylor's receiving three death sentences in this case does not violate the Constitution; thus, the Alabama Court of Criminal Appeals's incorrect statement that Taylor "was given only one sentence" is of no consequence. *See Taylor v. State*, 666 So. 2d 36, 70 (Ala. Crim. App. 1994). The trial judge entered three separate "Judgement[s] of the Court," which are identical except that each corresponds to a *separate* count, and pronounced that Taylor would be sentenced to death for each of the three capital offenses. As such, the result remains the same regardless of whether Taylor has "rebut[ted] 'the presumption of correctness [of the Court of Criminal Appeals's factual findings] by clear and convincing evidence.'" *Ward v. Hall*, 592 F.3d 1144, 1155-56 (11th

Cir. 2010) (alterations in original) (quoting § 2254(e)(1)).[122]

Assuming, *arguendo*, that the trial court sentenced Taylor to three sentences of death, it does not detract from the fact that Taylor was convicted of three offenses, and, thus, had to receive three sentences. Put differently, Taylor was never subjected to "multiple punishments for the *same offense*." *Pearce*, 395 U.S. at 717 (emphasis added) (footnote omitted).

The Alabama Supreme Court's decision in *Ex parte Peraita*, 897 So. 2d 1227 (Ala. 2004) is directly on point. First, the court noted that "[t]he *Blockburger* test is aimed at, among other things, "'multiple *punishments* imposed in a single prosecution.'" *Id.* at 1236 (quoting *Grady v. Corgin*, 495 U.S. 508, 516-17 (1990)) (internal quotation marks and citation omitted) (emphasis in original). The court then rejected Peraita's argument that his being charged with two separate capital murder offenses for killing one person violated double jeopardy, explaining:

> Each count of capital murder is a separate offense, as shown by the beginning of the statute defining capital offenses, which provides, "The following are capital *offenses*." Ala. Code 1975, § 13A-5-40(a). So long as each count of the crime concerns a separate offense, as opposed to a separate method of proving that offense, the double-jeopardy provision of the United States Constitution is not implicated.

*Id.* (emphasis in original).

Accordingly, even if this court were to grant the relief Taylor requests—a new sentencing hearing before the trial judge, (*See* Doc. 36-1, pp. 211, 217-219)—the outcome would remain the same because a subsequent decision from the Alabama Supreme Court contradicts Taylor's contention that the exception to the general rule does not apply. *See Peraita*, 897 So. 2d at 1236.

---

[122] *See also Schriro v. Landrigan*, 550 U.S. at 473-74 ("AEDPA also *requires* federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" (emphasis added) (quoting § 2254(e)(1))).

At bottom, the Alabama Supreme Court has held that "[e]ach count of capital murder is a separate offense," *id.*, and thus the exception to the general rule recognized by the United States Supreme Court applies, *see Albernaz v. United States*, 450 U.S. 333, 344 (1981) ("Where Congress intended, as it did here, to impose multiple punishments, imposition of such sentences does not violate the Constitution.").

Finally, Taylor's argument "that the jury may have been improperly influenced in the sentencing phase by the third, improper conviction" is without merit because his conviction under Ala. Code § 13A-5-40(a)(10) was not improper and, therefore, not an affront to the protections of the Double Jeopardy Clause of the Fifth Amendment. (*See* Doc. 36-1, pp. 211, 217-19). Because the trial court did not err by placing the third count before the jury, the Alabama Court of Criminal Appeals's resolution of this claim did not contravene the dictates of the AEDPA. *See Taylor v. State*, 666 So.2d 36, 70 (Ala. Crim. App. 1994). Taylor's claim is accordingly due to be denied.

## XIX.   INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Taylor alleges that he was denied effective assistance of counsel in multiple respects. (*See* Doc. 1, pp. 27-42). Before addressing the substance of Taylor's allegations, however, the court will discuss the general constitutional standard applicable to each of Taylor's ineffective assistance sub-claims.

### A.      General Standard

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-pronged standard for judging, under the Sixth Amendment, the effectiveness of attorneys who

represent criminal defendants at trial or on direct appeal.[123]

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. *First*, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Second*, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes *both* showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id*. at 687 (emphasis added); *see also Reed v. Sec'y, Fla. Dep't of Corr.*, 593 F.3d 1217, 1239-41 (11th Cir. 2010). Stated differently, "[a] petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced his defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citation omitted).

Because *Strickland*'s two-part test is clearly framed in the conjunctive, a petitioner bears the burden of proving *both* "deficient performance" *and* "prejudice" by "a preponderance of competent

---

[123] Ineffective assistance of counsel claims are specifically limited to the performance of attorneys who represented a defendant at trial or on direct appeal from the conviction. *See* 28 U.S.C. § 2254(i) (2006) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."). As the Supreme Court stated in *Coleman v. Thompson*: a petitioner has "no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Coleman*, 501 U.S. 722, 752 (1991) (citations omitted). Accordingly, the Eleventh Circuit has observed:

> [B]ecause errors of post-conviction counsel cannot be constitutionally ineffective, a petitioner must bear the risk of attorney error that results in a procedural default. Thus, because [petitioner] had no constitutional right to counsel during his post-conviction proceedings, his attorneys' errors during those proceedings cannot constitute cause to excuse his procedural default. Because [petitioner] has failed to establish one element of the cause and prejudice exception, he cannot show the exception applies.

*Johnson v. Singletary*, 938 F.2d 1166, 1175 (11th Cir. 1991) (en banc) (citations and internal quotation marks omitted).

evidence." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc).[124]  Thus, a court is not required to address both aspects of the *Strickland* standard if a habeas petitioner is unable to establish one prong.  *See*, *e.g.*, *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

Further, when assessing ineffective assistance of counsel claims, the court should

. . .keep in mind that "in addition to the deference to counsel's performance mandated by *Strickland*, the AEDPA adds another layer of deference—this one to a State court's decision—when we are considering whether to grant federal habeas relief from a State court's decision."  Thus, [a petitioner] not only has to satisfy the elements of the *Strickland* standard, but he must also show that the State "court applied *Strickland* to the facts of his case in an *objectively unreasonable manner*."

*Williams v. Allen*, 598 F.3d at 789 (brackets in original omitted) (citations omitted); *see also Porter v. McCollum*, 558 U.S. 30, ____, 130 S. Ct. 447, 452 (2009) (per curiam).

### 1.    The Performance Prong

When reviewing whether defense counsel's performance was deficient, "the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices." *Bobby v. Van Hook*, 558 U.S. 4, ___, 130 S.Ct. 13, 17 (2009*)* (per curiam) (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 479 (2000)).  As such, a habeas petitioner must show that counsel's representation fell "'below an objective standard of reasonableness' in light of 'prevailing

---

[124] *See also Kokal v. Sec'y, Dep't of Corr.*, 623 F.3d 1331, 1344 (11th Cir. 2010) ("[A] petitioner's failure to show either deficient performance or prejudice is fatal to a *Strickland* claim . . . ." (citation omitted)); *Williams v. Allen*, 598 F.3d at 789 ("The petitioner bears the burden of proof on the performance prong as well as the prejudice prong of a *Strickland* claim, and both prongs must be proved to prevail." (citation omitted)).

professional norms'" to establish deficient performance. *Id.* at 16 (quoting *Strickland*, 466 U.S. at 687-88); *see also Williams v. Taylor*, 529 U.S. at 390-91; *Johnson v. Upton*, 615 F.3d 1318, 1330 (11th Cir. 2010) ("[T]he governing standard is objectively reasonable attorney conduct under prevailing professional norms . . . .").

*Strickland* instructs lower federal courts to be "highly deferential" while engaging in such assessments:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, *a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance*; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Strickland*, 466 U.S. at 689 (emphasis added) (citations and quotation marks omitted); *see also Whisenhant v. Allen*, 556 F.3d 1198, 1204 (11th Cir. 2009) (per curiam) ("To counteract the distorting effects of hindsight, the defendant bears the burden of overcoming a strong presumption that the challenged action is sound trial strategy." (citation omitted)). Simply put, a habeas petitioner "must establish that no competent counsel would have taken the action that his counsel did take" to overcome the presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Chandler*, 218 F.3d at 1315 (citation omitted); *see also Stewart v. Sec'y, Dep't of Corr.*, 476 F.3d 1193, 1209 (11th Cir. 2007).

In addition, the reasonableness of counsel's performance is judged from the perspective of the attorney, at the time of the alleged error, and in light of all the circumstances. *See*, *e.g.*, *Newland v. Hall*, 527 F.3d 1162, 1184 (11th Cir. 2008) ("We review counsel's performance 'from counsel's perspective at the time,' to avoid 'the distorting effects of hindsight.'" (quoting *Strickland*, 466 U.S. at 689)); *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) (giving lawyers "the benefit of the doubt for 'heat of the battle' tactical decisions").

As the Eleventh Circuit has stated:

> Under this standard, there are no "absolute rules" dictating what reasonable performance is or what line of defense must be asserted.  [*Chandler*, 218 F.3d] at 1317.   Indeed, as we have recognized, "[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions."  *Putman v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001).

*Michael v. Crosby*, 430 F.3d 1310, 1320 (11th Cir. 2005).   "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).  In short, an attorney's performance will be deemed deficient only if it is objectively unreasonable, *i.e.*, it falls below the wide range of competence demanded of attorneys in criminal cases, and petitioner shows "that no competent attorney would have taken the action that [the petitioner's] counsel did take." *Williams v. Allen*, 598 F.3d at 790 (citation and quotation marks omitted); *see also Stone v. Dugger*, 837 F.2d 1477, 1479 (11th Cir. 1988) ("[E]ven in capital felony cases defendants have no legal right to the very best counsel.").

### 2.     *The Prejudice Prong*

Even when petitioner proves that counsel performed in a deficient manner, a habeas petitioner must still establish that he or she suffered prejudice as a result of that deficiency.  To satisfy this standard, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Williams v. Taylor*, 529 U.S. at 391.

Put differently, as the Eleventh Circuit has stated, "The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable." *Rhode v. Hall*, 582 F.3d 1273, 1280 (11th Cir. 2009) (citing *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).  And "[w]hen evaluating this probability, 'a court . . . must consider the totality of the evidence before the judge or jury.'" *Brownlee v. Haley*, 306 F.3d 1043, 1060 (11th Cir. 2002) (citation omitted).

Further, a habeas petitioner "must affirmatively prove prejudice, because '[a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.'" *Gilreath v. Head*, 234 F.3d 547, 551 (11th Cir. 2000) (quoting *Strickland*, 466 U.S. at 693).  The fact that counsel's "error had some conceivable effect on the outcome of the proceeding" is insufficient to show prejudice.  *Strickland*, 466 U.S. at 693; *see also Porter*, 130 S. Ct. at 455-56.  Instead, a petitioner must present competent evidence proving "that trial counsel's deficient performance deprived him of 'a trial whose result is reliable.'" *Brown v. Jones*, 255 F.3d 1272, 1278 (11th Cir. 2001) (citation omitted).  Therefore, "when a petitioner challenges a death

194

sentence, 'the question is whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.'" *Stewart*, 476 F.3d at 1209 (quoting *Strickland*, 466 U.S. at 695).

### 3. Deference to the State Court's Findings

Section 2254's application applies in addition to the underlying substantive law. "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly so.'" *Harrington v. Richter*, ___ U.S. ___, ___, 131 S. Ct. 770, 788 (2011) (citations omitted). As a result, this "doubly," "highly deferential" standard transforms the *Strickland* inquiry from "whether counsel's actions were reasonable" into "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* (citations omitted). In other words, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Id.* at 785.

Finally, "[i]neffectiveness of counsel is a mixed question of fact and law." *Thompson v. Haley*, 255 F.3d 1292, 1297 (11th Cir. 2001) (citation omitted). "State court findings of historical facts made in the course of evaluating an ineffectiveness claim are subject to a presumption of correctness under 28 U.S.C. § 2254(d)." *Thompson*, 255 F.3d at 1297.

### B.     The Question of Procedural Default

Respondents argue that seven of Taylor's ineffective assistance sub-claims are procedurally defaulted and, therefore, barred from federal habeas review because the sub-claims in question were

195

dismissed under an independent and adequate state procedural rule. (Doc. 14, pp. 13-14). These sub-claims include:

> The Claim that Counsel Failed to Present Evidence At His Youthful Offender Hearing;
>
> The Claim That Counsel Failed to File a Motion to Suppress Taylor's Confession That Was Supported By Evidence Or Argument;
>
> The Claim That Counsel Was Ineffective For Failing to Challenge, Impeach, Or Cross-Examine Officer Higdon Regarding The Supplement to Taylor's Confession;
>
> The Claim That Counsel Was Ineffective For Failing to Object To The Prosecutor's Allegedly Improper Closing Argument;
>
> The Claim That Counsel Was Ineffective For Failing To Object To The Excusing Of Prosecution Witnesses From The Rule On Witness Sequestration, Alabama Rule of Evidence 615;
>
> The Claim That Counsel Was Ineffective Because They Did Not Argue For Instructions On Lesser Included Offenses;
>
> The Claim That Counsel Was Ineffective Because They Did Not Object To The Trial Court's Allegedly Improper Instruction About The Jury's Duty.

*Id*.

Each of these claims were dismissed by the Alabama Court of Criminal Appeals, which held that each claim failed to comply with the specificity and full factual pleading requirements of Rules 32.3 and 32.6(b) of the Alabama Rules of Criminal Procedure. "Accordingly," Respondents argue, "those claims are barred from habeas review . . . . because they were decided in state court under an adequate and independent state procedural rule."

This court's decision is made easy by the Eleventh Circuit's recent holding in *Borden v. Allen*, 646 F. 3d 785, 816 (11th Cir. 2011). The Court held that

an Alabama court's consideration of the sufficiency of the pleadings concerning a

196

federal constitutional claim contained in an Rule 32 petition necessarily entails a determination on the merits of the underlying claim; we cannot construe such a rule to be a state procedural bar that would preclude our review. We therefore must review the merits determination of the Court of Criminal Appeals under the deferential standards set forth in AEDPA. . .

The Court went on to say that, "[e]ven if adjudications under Rule 32.6(b) were not categorically 'on the merits,'" review by a federal court of the merits of the habeas petitioner's claim is not foreclosed where the state court demonstrated that it *did* consider the merits of the petitioner's claim during the Rule 32 proceedings. *Id*. at 813. Because the state court's dismissal of each of the above seven sub-claims was based on Rule 32.6(b), and because the state court plainly addressed the merits, however briefly, of each claim, this court finds that these claims are not procedurally barred from federal habeas review, and will address the merits of each claim in turn.

## C.   Specific Claims of Trial Counsel's Ineffectiveness

In his habeas petition, Taylor raises one general claim of ineffective assistance of trial counsel spanning seventeen pages, and alleges numerous errors by his attorneys in the state proceedings.  (*See* Doc. 1, pp. 29-46).  Taylor supplements these allegations with over 107 pages of argument in his Reply Brief.  (*See* Doc. 36-1, pp. 11-118).

For purposes of organization, the court has divided the voluminous number of alleged errors by Taylor's counsel into six general categories, each having a number of sub-claims and sub-parts: (1) trial counsel's failure to investigate and present mitigation evidence, which allegedly impacted every phase of Taylor's trial; (2) pre-trial inefficiencies, which includes three sub-parts; (3) voir dire inefficiencies, which includes four sub-parts; (4) guilt phase inefficiencies, which includes five sub-parts and numerous sub-claims; (5) penalty phase inefficiencies, which includes six sub-parts; and

197

(6) inefficiencies during the judicial sentencing hearing.  (*See* Doc. 1, pp. 29-46; Doc. 36-1, pp. 21-118).

> **1.     *Mitigation Defense/Inadequate Investigation Sub-Claim  (Doc. 1, pp. 29-36, 45-46; Doc. 36-1, pp. 21-54).***

In his habeas petition, Taylor criticizes his trial counsel's mitigation defense strategy for his attorneys' failure to compile and present an adequate "psycho-social family history."[125]  (Doc. 1, p. 31).  After listing the mitigation evidence his attorneys allegedly failed to uncover, Taylor extensively outlines the testimony of Dr. Sanford Drob, his expert psychologist, at the Rule 32 evidentiary hearing that, in his view, relates the relevancy of conducting such an investigation to an adequate mitigation investigation into a criminal defendant's background.  *See id.* at 31-33. Taylor then discusses the testimony of Dr. Glen King, the State's psychologist, at the Rule 32 hearing and further explains either why it is substandard or does not detract from the veracity of Dr. Drob's contentions.  *See id.* at 34-35.  Finally, Taylor recounts his trial counsel's actions—or rather inactions—and why he believes they were deficient.  *See id.* at 35-36. Taylor argues:

> Counsel did not conduct a reasonable investigation into [Taylor's] background, Williams v. Allen, 542 F.3d at 1339, and did not act upon the clear clues leading to mitigation in the competency reports they possessed, Wiggins, 539 U.S. at 527.  Both of these fundamental failures in a capital case lead inexorably to the conclusion that their performance was deficient within the meaning of Strickland.  See, e.g., Jackson v. Herring, 42 F.3d 1350, 1364 (11th Cir. 1995) (finding deficient performance where counsel failed to interview anyone in defendant's family and thus failed to discover mitigating evidence in defendant's background).

---

[125] Taylor never explicitly defines the term "psycho-social family history" in his submissions to this court.  (*See, e.g.*, Doc. 1, p. 31; Doc. 36-1, p. 23).  Further, the portion of the record Taylor cites as support does not provide a definition for this term either.  (*See* Rule 32 C.R. Vol. 21, p. 706; Rule 32 R. Vols. 22-23, Tab. 21, pp. 109-15, 183, 201).  From this court's independent research, it has found that one commentator has succinctly defined "psycho-social history," which the court believes is analogous to Taylor's psycho-social *family* history,  as the "life story . . . of the capital defendant."  Emily Hughes, *Mitigating Death*, 18 Cornell J. L. & Pub. Pol'y 337, 344 (2009).

(Doc. 36-1, pp. 41-42).[126]

Because of the substantial—not to mention convoluted—nature of this sub-claim, the court will attempt to outline and summarize Taylor's argument. First, the court will discuss the factual basis underlying each of the three sub-parts of Taylor's mitigation defense claim. Next, the court will proceed to address Taylor's legal analysis of the *Strickland*'s performance prong, which will likewise be divided among the three general, yet distinct, aspects of this sub-claim. Then, the court will discuss Taylor's allegations of prejudice. Finally, the court will conclude by summarizing Taylor's contentions as to how the state collateral courts contravened the dictates of the AEDPA before turning to the Respondents' answers.

<u>a.</u>   <u>Taylor's Mitigation Defense, Ineffective Assistance Sub-Claim.</u>

(i).   *Factual Basis of Taylor's Mitigation Defense Sub-Claim.*

Regarding the *first* aspect of Taylor's mitigation defense sub-claim, the crux of his argument is that by not conducting a reasonable, pre-trial investigation into his background, "[c]ounsel failed to discover numerous categories of mitigating evidence which were presented at the Rule 32 hearing through Mr. Taylor's mother, father, aunt, and Dr. Sanford Drob, Director of Psychological Assessment and Senior Forensic Psychologist at Bellevue Hospital, New York." (Doc. 1, pp. 29-30; *see also* Doc. 36-1, pp. 21-22).[127]   If they had done so, Taylor argues:

---

[126] Before Taylor's trial, two competency reports were prepared to judge Taylor's competency to stand trial. The first, referred to as the "Rogers report," was prepared before trial by Dr. Kathy Rogers of the Taylor Hardin Secure Medical Facility. (Doc. 36-1, p. 28). For a copy of this report, see Rule 32 C.R. Vol. 20., pp. 534-41. The second report, referred to as the "Wilson report" was prepared before trial by Dr. David Wilson, a private psychologist. (Doc. 36-1, p. 28). For a copy of this report, see C.R. Vol. 3, pp. 487-92; see also Rule 32 C.R. Vol. 20, pp. 542-47 (same).

[127] To support this contention, Taylor's Petition cites a litany of pages from the record. (*See* Doc. 1, pp. 29-30). These include Rule 32 C.R. Vol. 21, pp. 706-11 (the so-called "Drob Report"); Rule 32 R. Vol. 22, Tab. 58, pp. 101-04; Rule 32 R. Vol. 23, Tab. 58, pp. 232-54, 258-75, 290-91, 294-331.

Adequate investigation would have revealed, inter alia, [(1) a history of serious mental illness, suicide, alcoholism and emotional and physical abuse on both sides of Mr. Taylor's family;[128] (2)] hereditary disposition to mental disorders, emotional deficits and alcoholism;[129] (3)] that Mr. Taylor had grown up in a rigidly authoritarian, physically abusive and emotionally repressive household;[130] (4)] that family members and psychological experts found Mr. Taylor unusually immature for his age;[131] and [(5)] that Mr. Taylor was unusual, compared to his siblings, in an extreme failure to show emotion ("alexithymia"[132]).[133]

(Doc. 1, pp. 30-31 (internal citations omitted); *see also* Doc. 36-1, pp. 21-22 (similar)).

Taylor supports this claim by contending that his "[c]ounsel never questioned [his] mother, father or aunt about any of the above-noted aspects of the family history." (Doc. 1, p. 31 (citations omitted); *see also* Doc. 36-1, p. 24 (same)).[134]  He further states that counsel "did not follow up on information that Mr. Taylor's father was unusually strict and that friends had seen evidence of the severe beatings administered to Taylor."  (Doc. 1, p. 31 (citing Rule 32 C.R. Vol. 21, pp. 791-97); *see also* Doc. 36-1, p. 24 (same)).  Finally, Taylor argues that while counsel possessed both the

---

[128] For this factual averment, Taylor cites: (Rule 32 R. Vol. 22, Tab. 58, pp. 130-36; Rule 32 R. Vol. 23, Tab. 58, pp. 239-41, 259-60, 297-306).

[129] For this averment, Taylor cites: Rule 32 C.R. Vol. 21, p. 711; Rule 32 R. Vol. 22, Tab. 58, pp. 134, 136.

[130] For this factual averment, Taylor cites: Rule 32 C.R. Vol. 21, p. 709; Rule 32 R. Vol. 22, Tab. 58, pp. 134-35, 236-39, 260-67, 290-91, 308-10.

[131] For this factual averment, Taylor cites: Rule 32 C.R. Vol. 21, p. 708; Rule 32 R. Vol. 22, Tab. 58, pp. 128, 243-47, 267-68.

[132] "Alexithymia" is defined as the "inability to express one's feelings."  *Alexithymia – Medical Definition*, Merriam-Webster Online, http://www.merriam-webster.com/medical/alexithymia (last visited July 29, 2011); *see also What is alexithymia?*, WebMD, http://dictionary.webmd.com/terms/alexithymia (last visited July 29, 2011) (defining "alexithymia" as "Difficulty in recognizing and describing one's emotions, defining them instead in terms of somatic sensations or behavioral reactions.").

[133] For this factual averment, Taylor cites: Rule 32 R. Vol. 22, Tab. 58, pp. 128-29, 262, 268-69, 310-11.

[134] Likewise, both Taylor's Petition and Reply Brief cite a litany of pages from the Record to support this contention.  (Doc. 1, p. 31; *see also* Doc. 36-1, p. 24 (same)).  They are Rule 32 R. Vol. 23, Tab. 58, pp. 242-43, 260, 307, 336; Rule 32 R. Vol. 24, Tab. 58, pp. 446-47.

Rogers and Wilson reports, "[t]he reports, on their face, were confined to evaluating competence and insanity defenses, neither investigated Mr. Taylor's psycho-social background, and, therefore, neither was in any way adequate for a determination of the availability of mitigation." (Doc. 1, p. 31 (citing Rule 32 C.R. Vol. 21, p. 706; Rule 32 R. Vol. 22, Tab. 58, pp. 113-25)).

In his Reply Brief, Taylor thoroughly discusses Dr. Drob's testimony at the Rule 32 hearing where Dr. Drob testified as to why the Rogers and Wilson reports were inadequate proxies for a proper capital mitigation investigation. (*See* Doc. 36-1, pp. 28-30). As Taylor puts it,

> Dr. Drob explained that mitigation is not limited to findings of psychological disorder. The defendant's family circumstances, personal history or psychological pressures and stresses may also create extenuating circumstances for an offense. For that reason, *a proper mitigation investigation requires* interviewing the defendant at great length, administering a battery of psychological tests, and interviewing anyone who knew him at the time of the offense to find out about his mental state at that time. A mitigation investigation also requires interviewing family members about the defendant's personal history and about whatever stresses he was under at the time, which the defendant himself may not be capable of articulating. Additionally, it would be important to know what mental illness or psychological difficulties existed within the family.

*Id.* at 29 (emphasis added) (internal citations omitted) (citing Rule 32 R. Vol. 22, Tab. 58, pp. 109-10). And because the Rogers and Wilson reports were limited to competency and insanity, "numerous issues that were 'critical'" to investigating capital mitigation went unaddressed. *Id.* at 30. For these "critical" issues to have been adequately addressed, Taylor argues,

> [it] would have required a far more extensive interview with Mr. Taylor about his personal history and an investigation of his mental state in the days and weeks before the offense, which would necessarily have included interviews with those who knew him. The reports would have had to assess Mr. Taylor's emotional maturity, coping resources, capacity to deal with adult life and ability to process emotions and deal with feelings.

*Id.* (internal citations omitted) (citing Rule 32 R. Vol. 22, Tab. 58, pp. 114-15).

*Second*, Taylor contends that his counsel failed to act upon "critical information in both competency reports, which were in counsel's possession, and which signaled the existence of psychological mitigation." *Id.* at 22; *see also id.* at 41. Specifically, Taylor quotes Dr. Drob's conclusion on this issue, wherein he opined that the Rogers and Wilson reports contained clear clues that Taylor "was either suffering from a serious psychological disorder and/or was overwhelmed with psychological and emotional stress." *Id.* at 23 (quoting Rule 32 C.R. Vol. 21, p. 706; Rule 32 R. Vol. 22, Tab. 58, p. 116). Dr. Drob's additional statement that "had he [*i.e.*, Dr. Drob,] reviewed this material at the time of trial, he would have advised the defense that substantial mitigation existed." *Id.* at 34 (citing Rule 32 R. Vol. 22, Tab. 58, pp. 127, 128-29).

As support, Taylor lists a number of areas he believes warranted further investigation in light of the findings in the Rogers and Wilson reports. These include:

> [(i)] Mr. Taylor was extremely immature for his age and had a piecemeal view of reality and poor ability to cope with his environment, predisposing him to psychological breakdown;[135] (ii)] he was abusing drugs and alcohol as a teenager, an indicator of emotional, psychological and familial dysfunction;[136] (iii)] there were significant issues concerning Mr. Taylor's relationship with his father;[137] (iv)] Mr. Taylor reported being "crazy all the time" in the months prior to the crime;[138] (v)]

---

[135] For the factual averment corresponding to area (i), Taylor cites: Rule 32 C.R. Vol. 21, p. 709; Rule 32 R. Vol. 22, Tab. 58, pp. 123-24. For Taylor's subsequent discussion of area (i), see Doc. 36-1, p. 32. Areas (i) and (v) are addressed jointly in Taylor's Reply Brief. *See id.* at 32-33.

[136] For the factual averment corresponding to area (ii), Taylor cites: Rule 32 C.R. Vol. 21, p. 707; Rule 32 R. Vol. 22, Tab. 58, p. 123. For Taylor's subsequent discussion of area (ii), see Doc. 36-1, p. 32.

[137] For the factual averment corresponding to area (iii), Taylor cites: Rule 32 C.R. Vol. 20, p. 545; Rule 32 C.R. Vol. 21, p. 708; Rule 32 R. Vol. 22, Tab. 58, p. 123. He does not discuss this area further in this context, but it is discussed regarding the first general aspect above. (*See* Doc. 1, p. 31 (citing Rule 32 C.R. Vol. 21, pp. 791-97); *see also* Doc. 36-1, p. 24 (same)).

[138] For the factual averment corresponding to area (iv), Taylor quotes: Rule 32 R. Vol. 22, Tab. 58, p. 140. For

the events surrounding the offense indicated a panicked mental state, partly a function of pathological emotional and personality disturbance in the weeks and months prior to the crime;[139] and [(vi)] Mr. Taylor had an anti-social personality disorder, which research shows to have an organic basis and to remit in later life.[140]

(Doc. 1, pp. 32-33 (internal citations omitted)).   Taylor's Reply Brief discusses all but one of these areas individually, albeit haphazardly and in no particular order.   (*See* Doc. 36-1, pp. 32-33).

At bottom, Taylor claims:

Dr. Drob's testimony shows that counsel's performance fell well below reasonable professional standards in a death penalty case for failing to develop this information when they knew that psychological factors were crucial to the defense. Competent counsel would have known that a psychological report finding mental competency to stand trial and the absence of legal insanity may nevertheless indicate a multitude of other relevant psychological issues, relating not only to mitigation at sentencing, but also to the question of intent to kill that they themselves had put at issue. . . .

*Id.* at 34-35.

*Third*, Taylor faults his trial counsel for having "failed to procure expert assistance."   (Doc. 1, p. 35 (citing Rule 32 R. Vol. 22, Tab. 58, pp. 422-23)).   This failure is especially damning because, in Taylor's view, "[c]ounsel knew that understanding Mr. Taylor's psychological state was crucial to the guilt and penalty phase" and "acknowledged lacking the skills to investigate

_____

Taylor's subsequent discussion of area (iv), see Doc. 36-1, pp. 33-34.   Note, however, that the tenor of this argument changes somewhat in Taylor's Reply Brief, and, instead, it is referred to as "the uncharacteristic changes in Mr. Taylor's behavior in the months prior to the crime, after Mr. Taylor left home to join the Navy."   *Id.*

[139] For the factual averment corresponding to area (v), Taylor cites: Rule 32 C.R. Vol. 21, pp. 709-10; Rule 32 R. Vol. 22, Tab. 58, pp. 137-40.   For Taylor's subsequent discussion of area (v), see Doc. 36-1, p. 33.   And as noted above, Taylor's Reply Brief discusses areas (i) and (v) jointly.   *See id.* at 32-33.

[140] For the factual averment corresponding to area (vi), Taylor cites: Rule 32 C.R. Vol. 21, pp. 710-11.   For Taylor's subsequent discussion of area (vi), see Doc. 36-1, p. 33.

Case 4:09-cv-00251-KOB-TMP   Document 49   Filed 09/26/12   Page 204 of 295

psychological mitigation without expert assistance." *Id.*; (*see also* Doc. 36-1, p. 24 (similar)).[141]

Further, Taylor avers:

> The psychologist appointed to examine Mr. Taylor (a month before trial began) looked only at competency and insanity. He was not an independent defense expert, in that his report was to be provided to the court and the State [(Rule 32 R. Vol. 23, Tab. 58, pp. 340-42; Rule 32 R. Vol. 24, Tab. 58, pp. 401, 408)]. Counsel, without expert assistance, did not know how to present Mr. Taylor's behavior prior to the crime in a way that would mitigate his conduct [(Rule 32 R. Vol. 24, Tab. 58, pp. 431-32)]. Counsel would have employed such an expert to review the psychological reports if they had had funding [(Rule 32 R. Vol. 23, Tab. 58, p. 347)].

(Doc. 1, pp. 35-36; *see also* Doc. 36-1, p. 36).[142] While Taylor provides a rather lengthy discussion of this aspect, (*see* Doc. 36-1, pp. 24-28), it largely relates to counsel's alleged awareness that his "mental condition would be a significant factor in both phases of the trial and that they were not sufficiently knowledgeable in psychology to conduct an investigation into this area without the help of an expert." *Id.* (citing C.R. Vol. 1, pp. 30-31).

However, Taylor raises this claim in spite of counsel's motion "request[ing] funds for a psychologist who would 'determine and assess the relationship between the defendant's mental condition and the alleged behavior involved in the commission of the crime,' and who would assist the defense in explaining this to the jury." *Id.* at 25-26 (quoting C.R. Vol. 1, p. 31). The trial court denied this motion, and "[c]ounsel never renewed the application" despite the trial court's statement "that it would revisit it at another time." *Id.* at 26 (citing Rule 32 R. Vol. 23, Tab. 58, pp. 341-42).

---

[141] For this statement, Taylor's Petition cites a litany of pages from the record. (*See* Doc. 1, p. 35). These include: C.R. Vol. 1, pp. 30-31; R. Vol. 8, Tab. 6, p. 1077; R. Vol. 10, Tab. 23, pp. 1363-64; Rule 32 R. Vol. 24, Tab. 58, pp. 422-23, 428-30.

[142] By using the third person, personal pronoun "he," Taylor is seemingly referencing Dr. David Wilson's examination and corresponding report. (*See* C.R. Vol. 3, pp. 487-92; *see also* Rule 32 C.R. Vol. 20, pp. 542-47 (same)). As is apparent from Taylor's own references to both the "Rogers *and* Wilson reports," however, this contention fails to account for Dr. Kathy Rogers' examination and report. (*See* Rule 32 C.R. Vol. 20, pp. 534-47).

Finally, and in addition to the three general aspects discussed above, Taylor believes two other factors contributed to his trial counsel's allegedly deficient performance; each of which are listed as separate grounds in his habeas petition. (*See* Doc. 1, pp. 10-11 ("Ground I" and "Ground II")). In his Reply Brief, Taylor claims: "Counsel's deficient performance was also exacerbated by a combination of Alabama's system of inadequate compensation of counsel and the trial court's refusal to appoint an investigator." (Doc. 36-1, pp. 42-43; *see also id.* at 42-46).[143]  But in his Petition, Taylor does not raise these claims in conjunction with his mitigation defense sub-claim. (*See* Doc. 1, pp. 29-36). Nevertheless, both of these claims are addressed above in Parts I and II *supra*, which correspond to their original designation in Taylor's Petition. *Id.* at 10-11.

> *(ii).*    *Taylor's Discussion of* Strickland*'s Performance Prong.*

The deficiencies underlying Taylor's mitigation defense sub-claim are discussed above; the subsequent discussion concerns Taylor's legal authority for this sub-claim. As to his counsel's general duty to conduct a mitigation investigation, Taylor argues:

> As the expert testimony indicated at the hearing, compiling a psycho-social family history is standard to a capital mitigation investigation and is also required for an adequate and complete psychological examination [(Rule 32 C.R. Vol. 21, pp. 706; Rule 32 R. Vol. 22, Tab. 58, pp. 109-15; Rule 32 R. Vol. 23, Tab. 58, pp. 183, 201)]. The caselaw also recognizes that, as part of a constitutionally adequate

---

[143] At one point, Taylor's discussion of this ineffective assistance sub-claim in his Reply Brief even directs the reader to his subsequent discussion of the trial court's denial of his counsel's motion for investigative expenses. (*See* Doc. 36-1, pp. 45-46 ("[W]hile some of counsel's investigative shortcomings might have been remedied with the services of an investigator, the court declined to appoint one, further hampering the defense." (citing Doc. 36-1, pp. 253-66))). As stated in the text above, however, the trial court's denial of funding for investigative expenses is addressed separately in Part II *supra*, and it is only examined briefly in the context of Taylor's ineffective assistance claim.

On the other hand, Taylor's Reply Brief only addresses Alabama's allegedly inadequate system of compensation for court-appointed attorneys in capital cases in conjunction with his ineffective assistance, mitigation defense sub-claim. (*See* Doc. 36-1, pp. 42-45). Even though it is raised as a separate ground for relief within his Petition, (*see* Doc. 1, pp. 10-11 ("Ground I")), Taylor fails to discuss it separately in his Reply Brief. Nevertheless, the court addresses this claim as it is listed in Taylor's Petition—as a separate ground for relief—and discusses it only briefly in the context of his ineffective assistance, mitigation defense sub-claim. *See* Part I *supra*.

sentencing investigation, "counsel had a duty to collect information pertaining to 'family and social history (including physical, sexual or emotional abuse),' and to 'obtain names of collateral persons or sources to verify, corroborate, explain and expand upon [the] information obtained.'" Williams v. Allen, 542 F.3d at 1339, quoting ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases 11.4.1 (C) (1989).

(Doc. 36-1, pp. 23-24 (second alteration in original)).

    Regarding the first general aspect outlined above, Taylor claims:

    This is not a case where counsel engaged in an extensive mitigation investigation, weighed the available expert testimony, and "deliberately chose not to [present the testimony] out of a concern that the limited beneficial information they might have been able to present would have been outweighed by the risk of opening the door to the admission of more damaging information." Kimbrough v. Secretary, DOC, FL, 565 F.3d 796[, ]804 (11th Cir. 2009); see also Wong v. Belmontes, [130 S.Ct. 383] (2009) (same).   Rather, here, counsel were ineffective for failing to reasonably investigate readily available sources of mitigation.  See Rompilla v. Beard, 545 U.S. 374, 389-393 (2005) (mitigation would have been apparent from documents any reasonable attorney would have obtained).

Id. at 36 (first alteration in original).

    Aside from the  factual basis supporting this second aspect, Taylor analogizes his case to the Eleventh Circuit's recent decision in *Williams v. Allen*, 542 F.3d 1326 (11th Cir. 2008).  He states:

    This is a case, such as Williams v. Allen, supra, where the information in counsel's possession, "would have led a reasonable attorney to investigate further." Williams v. Allen, 542 F.3d at 1340, citing Wiggins, 539 U.S. at 527; see also Rompilla, 545 U.S. at 393.  Here, as in Williams, "Counsel uncovered nothing in their limited inquiry into [the petitioner's] background to suggest that 'further investigation would have been fruitless.'"  Williams v. Allen, 542 F.3d at 1340, quoting Wiggins, 539 U.S. at 525.  There, too, given their mitigation strategy of humanizing the petitioner, "acquiring additional mitigation evidence would have been consistent with the penalty phase strategy that counsel ultimately adopted." Accordingly, counsel "had every incentive to develop the strongest mitigation possible."  Id.  Here, too, "[i]t thus is apparent that counsel's failure to expand their

206

investigation 'resulted from inattention, not reasoned strategic judgment.'" <u>Williams</u> v. <u>Allen</u>, 540 F.3d at 1340, <u>quoting</u> <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. at 526.

(Doc. 36-1, p. 42 (alterations in original)).  Relatedly, Taylor claims that "[h]aving failed to make reasonable steps to find out what was contained in these reports, counsel's failure to make use of this information cannot be considered as flowing from any informed judgement and was accordingly unreasonable." *Id.* at 35 (citing *Baxter v. Thomas*, 45 F.3d at 1514).[144]

For the third aspect of this claim, Taylor claims that, at the time of his trial, it was routine in capital cases to "[o]btain[] expert assistance to interpret the available psychological reports, pursu[e] any indications of psychological mitigation therein, and present[] the results at trial," and doing so "would have undoubtedly resulted in the development of the types of mitigation presented at the Rule 32 hearing." (Doc. 1, p. 35 (citing Rule 32 C.R. Vol. 21, pp. 711; Rule 32 R. Vol. 24, Tab. 58, pp. 428-30)).  After explaining that his counsel was aware of his mental condition's significance to his trial and their further awareness that they could not conduct an adequate investigation without the assistance of an expert, (*see* Doc. 36-1, pp. 24-28; *see also id.* at 25 (citing C.R. Vol. 1, pp. 30-31)), Taylor argues that "[i]t was therefore unreasonable not to procure any kind of expert to interpret the psychological reports and relate the information they contained [to aid] the defense." *Id.* at 27 (citing Rule 32 R. Vol. 23, Tab. 58, pp. 341-42).

In sum, Taylor's best summary of his counsel's purported deficiencies in this regard states:

Their failure to make timely, consistent requests for funding for an investigator, independent psychologist, or mitigation expert and their failure to follow up on the

---

[144] Taylor argues that *Baxter* stands for the proposition that a "'strategic' decision cannot be reasonable when counsel has failed to investigate their options and make a reasonable choice between them."  (Doc. 36-1, p. 35 (citing *Baxter*, 45 F.3d at 1514)).

information they had fell below a reasonable professional standard.  If counsel had advocated effectively in this matter, the court *would have probably* granted the funding or, alternatively, the court's denial of necessary funding would have preserved that issue for reversal on appeal.

*Id.* at 24-25 (emphasis added).

(iii).    *Taylor's Discussion of* Strickland*'s Prejudice Prong.*

Taylor claims that "if counsel had conducted an adequate mitigation investigation, [he] would have received a fair trial, in which his mental and moral culpability was accurately litigated before the judge and jury." (Doc. 36-1, p. 39).  Instead, Taylor contends that what he received was "hardly consistent with the imperative that, for the death penalty to be acceptable, it is 'essential' that the sentencer must give 'full consideration of evidence that mitigates against the death penalty' to be able to 'give a reasoned <u>moral</u> response to the defendant's background, character and crime.'" *Id.* at 39-40 (emphasis in original) (quoting *Penry v. Lynaugh*, 492 U.S. 302, 328 (1989)) (internal quotation marks omitted).

Taylor further argues that his "[c]ounsel's general strategy of conceding guilt of capital murder and emphasizing that the crime was horrible and inexplicable, to supposedly preserve an appearance of candor and credibility with the jury, was based on their ignorance of the available psychological and social mitigation." (Doc. 1, p. 45 (citing Rule 32 R. Vol. 24, Tab. 58, pp. 381, 446-67, 450-54); *see also* Doc. 36-1, p. 38 (same)).  As such, Taylor claims his counsel's allegedly faulty trial strategy negatively impacted every aspect of his trial.[145]

---

[145] *Cf.* Doc. 36-1, p. 25 ("Moreover, many of counsel's specific errors at both phases of trial resulted directly from their failure to appreciate the significance of the mitigation evidence they had but failed to pursue."  (footnote omitted)).

208

"Had counsel been aware of the mitigation presented at the Rule 32 hearing," Taylor

contends, they "would have changed their trial strategy." (Doc. 1, p. 45 (citing Rule 32 R. Vol. 24,

Tab. 58, pp. 381, 446-47, 455, 465); *see also* Doc. 36-1, pp. 38-39 (similar)). Such changes would

have included:

> Counsel [(1)] would not have conceded Mr. Taylor's guilt of capital murder during
> voir dire, [(2)] would have made an effective opening argument at the penalty phase,
> and [(3)] would not have stipulated that the murder was heinous, atrocious and cruel.
> [(4)] Counsel would have presented mitigation witnesses differently and [(5)] would
> have presented a mitigation expert to the jury and to the sentencing court.  [(6)]
> Counsel also would have objected to [(a)] the prosecutor telling the jury that Mr.
> Taylor had no mental problems, [(b)] his comments on Mr. Taylor's lack of
> remorse,[146] and [(c)] his argument that the jury should ignore the statutory
> mitigating factors of youth and lack of criminal record.

(Doc. 36-1, pp. 38-39 (citing Rule 32 R. Vol. 24, Tab. 58, pp. 353, 379-81, 387-88, 396-97, 456-59,

467, 469, 471); *see also id.* at 49-50 (same)).[147] Every change listed above, however, is addressed

separately and in greater detail later in both Taylor's Petition and Reply Brief, save one.[148]  That is,

the fifth change to his counsel's general trial strategy, *i.e.*, "Counsel . . . would have presented a

mitigation expert to the jury and to the sentencing court," is somewhat novel to Taylor's mitigation

---

[146] The underlying substantive claim concerning the prosecutor's comments on Taylor's lack of remorse is discussed in Part XIV *supra*.  Further, Taylor also raises a variant of this claim within the context of his penalty phase, prosecutorial misconduct sub-claim.  (*See* Doc. 1, pp. 43-44; Doc. 36-1, pp. 94-95).  And it will be discussed briefly within that context.  *See* Part XIX(B)(5)(e) *infra*.  Finally, and more broadly, this claim is part of Taylor's oft-repeated allegations of prejudice within his ineffective assistance claim.  (*See, e.g.*, Doc. 1, pp. 45-46; Doc. 36-1, pp. 100-01).

[147] On two other occasions, for a total of four separate occurrences, Taylor makes nearly identical allegations of prejudice.  (*See* Doc. 1, pp. 45-46; Doc. 36-1, pp. 100-01).  The first time it appears in Taylor's submissions is within his Petition, and it concerns Taylor's entire ineffective assistance of counsel claim.  (*See* Doc. 1, pp. 45-46).  In contrast, the two occurrences cited in the text above specifically relate to Taylor's mitigation defense sub-claim.  (*See* Doc. 36-1, pp. 38-39; *id.* at 49-50).  Finally, the last time it appears in Taylor's submissions it is raised in relation to all of his other ineffective sub-claims, that is, except his mitigation defense sub-claim.  (*See* Doc. 36-1, pp. 100-01).  Therefore, it can be deduced that Taylor's allegations of prejudice is the same for all of his ineffective assistance claims.

[148] For (#1), see Part XIX(C)(3)(d) of this Memorandum Opinion, *infra*.  For (#2), see (5)(b).  For (#3), see (5)(a).  For (#4), see (5)(c).  For (#6(a)) and (#6(b)), see (5)(e).  And finally, for (#6(c)), see (5)(f).

defense claim.  (Doc. 36-1, pp. 39, 49; *see also* Doc. 1, p. 46 (similar)).  But even then part of this change is discussed separately and in greater detail in the context of his counsel's purported deficiencies during Taylor's judicial sentencing.[149]

As to the legal authority underlying his mitigation defense sub-claim, Taylor states:

> The Supreme Court has noted that "mitigating evidence unrelated to dangerousness may alter the jury's selection of penalty, even if it does not undermine or rebut the prosecution's death-eligibility case." Williams[ v. Taylor], 529 U.S. at 398.  As the Eleventh Circuit also noted in Williams v. Allen, unpresented mitigation, in that case evidence of abuse and its resulting impact, "taken as a whole, might have altered the trial judge's appraisal of [petitioner's] moral culpability." 542 F.3d at 1344.  Here, the jury and judge would have learned that petitioner's life and family history, his psychological problems, and the stress and apparent emotional disturbances he was undergoing set the stage for the horrible crime he committed.

> These things did not excuse Mr. Taylor's conduct but were highly relevant in assessing his moral culpability.  Petitioner was prejudiced, then, by counsel's unreasonable investigation.  The Court of Criminal Appeals' conclusion that the undisclosed mitigation would not have altered the outcome was an unreasonable application of Strickland because it failed to consider that the evidence put the question of petitioner's culpability in an entirely different light, and, therefore, had "a pervasive effect of the inferences to be drawn from the evidence, altering the entire evidentiary picture." Strickland, 466 U.S. at 695-696.

(Doc. 36-1, pp. 51-52 (second alteration in original)).

Taylor then proceeds to distinguish his case from the Supreme Court's recent opinion in *Wong v. Belmontes*, 558 U.S. 15, 130 S. Ct. 383 (2009).  *Id.* at 52.  He argues that, unlike *Wong*, the unpresented mitigation evidence in his case was neither cumulative nor would have opened the door to more powerful evidence in rebuttal.  *Id.* (quoting *Wong*, 130 S. Ct. at 388-89).  Rather, he argues that "the unpresented mitigation filled in a crucial gap in the evidence and its absence, due to counsel's deficient performance, clearly prejudiced [Taylor]."  *Id.*

---

[149]*See* Part XIX(C)(6) of this Memorandum Opinion *infra*.

*(iv).      Taylor's Discussion of the AEDPA.*

As to the additional hurdle presented by the AEDPA, *i.e.*, whether the state court's decision was contrary to or an unreasonable application of federal law, Taylor argues that two facets of the Alabama Court of Criminal Appeals ruling satisfy this standard.   (*See* Doc. 36-1, p. 46). Specifically, he states:

> [(1) T]he Court of Criminal Appeals rejected this aspect of Mr. Taylor's <u>Strickland</u> claim, because "there is no indication that Hart and Downs did not conduct a pretrial investigation." <u>Taylor</u> v. <u>State</u>, 10 So.3d[] 1037, 1053 (Ala. Crim. App. 2004). [(2)] The court stated further that, "because the evidence concerning the appellant's mental condition was conflicting, we do not conclude that counsel rendered ineffective assistance by not presenting this evidence during the penalty phase." <u>Id.</u> at 1063. The State repeats this view before this Court.  [(Doc. 14, pp. 63-64)].

*Id.*  And regarding the first facet of the Court of Criminal Appeals's ruling, Taylor contends:

> [T]he governing standard for assessing a counsel's mitigation investigation was whether the investigation was reasonable and complete, not just that there was one, as the Court of Criminal Appeals stated.  <u>Wiggins</u>, 539 U.S. at 521.  Hence, the State Court's decision rejecting this aspect of petitioner's claim was contrary to, or, at the very least, an unreasonable application of <u>Wiggins</u> and <u>Strickland</u>.

*Id.*

For the second facet of the Court of Criminal Appeals's ruing, Taylor provides a much more extensive discussion.  *See id.* at 47-49.  He begins by stating:

> [C]ontrary to the Court of Appeals' suggestion, the mere existence of Dr. King's opinion, presented by the State at the post-conviction hearing does not render counsel's wholly inadequate mitigation investigation any more reasonable, because counsel had no idea such testimony even existed.  So, obviously they did not make a strategic decision weighing the possibility of State rebuttal testimony.

*Id.* at 47.  Taylor then proceeds to allege that Dr. King's testimony does not detract from the

veracity of Dr. Drob's conclusion. *See id.* at 47-48. Notably, he contends, *inter alia*, that Dr. King "did not contradict Dr. Drob's testimony that the Rogers and Wilson reports contained evidence of psychological dysfunction" and that "Dr. King simply stated his opinion . . . that he did not find the psychological evidence to 'rise to the level where it could be mitigated.'" *Id.* (citation omitted).[150]

At bottom, he argues:

> Hence, while the State could have produced testimony of this type at trial, it does not

---

[150] For this quotation, Taylor references pages 649-50 of the clerk's record of his Rule 32 proceedings. (*See* Doc. 36-1, p. 47 (quoting, purportedly, Rule 32 C.R. Vol. 21, pp. 649-50)). But this reference is a citation to the Rule 32 circuit court's opinion on remand, not Dr. King's testimony from the Rule 32 evidentiary hearing. (*See* Rule 32 C.R. Vol. 21, pp. 649-50; *see also* Rule 32, Tab. 84, p. 71-72 (same)). After looking at the surrounding context and the circuit court's opinion, Taylor appears to provide this citation for the preceding sentence, which quotes that court's opinion but fails to provide a citation. (*Compare* Doc. 36-1, p. 47 ("Nor did Dr. King testify, as the Circuit Court's first order asserted, that 'he saw no evidence that Mr. Taylor suffered from any of the mental diseases described by Dr. Drob.'"), *with* Rule 32 C.R. Vol. 21, pp. 649-50). Nevertheless, the court's independent research has uncovered the location of Dr. King's statement in the Rule 32 hearing transcript. (*See* Vol. 23, Tab. 58, p. 285 ("[I]t would have been my advice to an attorney at the time . . . that there was . . . no evidence for any psychological disorder, psychiatric disorder that was serious, that I think would *rise to the level where it could be mitigated*." (emphasis added))).

Further, Taylor's Reply Brief avers: "Dr. King conceded that . . . Mr. Taylor was possibly suffering from a psychological disorder at the time of the crime . . . ." (Doc. 36-1, pp. 47-48). But this statement is a stretch, at best. At the Rule 32 hearing, Dr. King actually testified:

> Q.    It is your opinion that it is not possible in this case that Mr. Taylor, based on your limited review, had any psychological disorder?
>
> A.    If you're asking me any psychological disorder, that's possible. I think what you were asking me before was whether or not he had any psychotic reaction or something like that. I think that's not possible.

(Rule 32 R. Vol. 23, Tab. 58, pp. 213-14). Earlier, however, Dr. King testified:

> Q.    At the time that could have been related to Mr. Hart and Mr. Downs. Would you agree with the reports – Or if I can preface it just a moment. Would you agree as far as they go, the report of Dr. Wilson, Dr. Rogers, that Mr. Taylor did not suffer from a major mental disease or defect?
>
> A.    Yes.
>
> Q.    Is that still your opinion today?
>
> A.    Yes.

*Id.* at 184-85. In light of the foregoing, Taylor slyly fails to denote the distinction between "any psychological disorder," *id.* at 213, and "major mental disease or defect," *id.* at 185.

lessen the considerable force of the unpresented mitigation testimony and does nothing to make counsel's inadequate mitigation investigation any less unreasonable.

As noted above, counsel was unaware of any of these psychological issues, let alone any "conflict," so any "decision to forego a mitigation presentation cannot be reasonable if it is unsupported by sufficient investigation." Jackson v. Herring, 42 F.3d at 1368. Because it failed to apply this principle, the decision of the Court of Criminal Appeals rejecting counsel's failure to reasonably investigate mitigation was contrary to, or, at the very least, an unreasonable application of Wiggins and Strickland. 28 U.S.C. §2254(d)(1).

Id. at 48-49.

Finally, Taylor claims that the Alabama Court of Criminal Appeals's ruling further contravened the dictates of *Strickland*—thereby allegedly satisfying his present burden under the AEDPA—"for failing to assess the aggregate prejudice of [his] counsel's deficiencies, as Strickland and its progeny require." (Doc. 36-1, pp. 53-54). He states:

[(1) T]he decision of the Court of Criminal Appeals is further contrary to, or an unreasonable application of Strickland, for failing to consider the totality of the prejudice caused by counsel's deficient performance in investigating mitigating evidence and forming a reasonable trial strategy. [(2)] Moreover, the State Court's decision further fails to consider, as Strickland requires, all the consequent prejudice that flowed from these fundamental deficiencies. See Williams[ v. Taylor], 529 U.S. at 412 (state court unreasonably applied Strickland, in assessing prejudice, by failing to "evaluate the totality of the available . . . evidence"); Williams v. Allen, 542 F.3d at 1344 (same).

Id. at 52-53. Taylor emphasizes "that, even without considering the prejudice caused by counsel's other errors, counsel's failure to conduct an adequate mitigation investigation caused prejudice sufficient to satisfy Strickland's prejudice requirement." Id. at 53. "But, when this additional prejudice caused by counsel's other failures is considered," he contends it proves he "was undoubtedly prejudiced by counsel's vast array of ineffectiveness." Id.

213

b.      Respondents' Answer.

In response, Respondents assert that "[t]his claim was raised in Taylor's Rule 32 petition and on collateral appeal in the Alabama Court of Criminal Appeals and was denied on the merits." (Doc. 13, p. 43 (citing, respectively, Rule 32 C.R. Vol. 37, Tab. 84, p. 69-74; *Taylor v. State*, 10 So. 3d 1037, 1062-64 (Ala. Crim. App. 2004)); *see also* Doc. 14, p. 63 (same)).

Specifically, Respondents quote the following from the Court of Criminal Appeals opinion before remand:

> Hart and Downs presented 18 witnesses to testify as to mitigation during the penalty phase of the trial—3 former high school teachers, 8 friends, 4 family members, 1 minister, 1 youth leader at his church, and 1 police officer. His former teachers testified that he was respectful in school, was never a discipline problem, and that they were shocked to hear about his involvement in the murders. His friends and family members all testified that they were shocked to hear about the murders and his arrest. His parents testified that he had regularly attended church, and his mother testified that he had a normal childhood and normal development and had exhibited normal behavior growing up. Betty McGriff, his great-aunt, testified that he received an award for Christian Attitude and Good Sportsmanship at his church. A police officer who was present when he confessed testified that, at the end of the confession, he had to ask the appellant if he was okay. Finally, during their penalty-phase closing arguments, his attorneys pled for his life.
>
> Clearly, counsel's strategy during the penalty phase of the trial was to humanize the appellant by presenting witnesses who testified that the crime was an aberration and totally uncharacteristic of his previous conduct, that he was a good person who regularly attended church, and that he was well liked by his friends and neighbors. This was strong mitigating evidence. . . .

*Taylor v. State*, 10 So. 3d 1037, 1063 (Ala. Crim. App. 2004). Further, Respondents note that the Court of Criminal Appeals also stated that "because the evidence concerning the appellant's mental condition was conflicting, we do not conclude that counsel rendered ineffective assistance by not presenting this evidence during the penalty phase." (Doc. 14, p. 64 (quoting *Taylor v. State*, 10 So.

3d 1037, 1063 (Ala. Crim. App. 2004))).

<u>c.</u>      <u>Merits Analysis</u>.

Under 28 U.S.C. § 2254, the decision of the Court of Criminal Appeals is entitled to deference, and Taylor has failed to demonstrate how its decision was contrary to clearly established federal law.  The Court of Criminal Appeals' application of the *Strickland* standard to the allegedly deficient investigation conducted by Taylor's trial counsel was reasonable.

First, Taylor has failed to demonstrate the type of professionally unreasonable performance by his trial counsel that *Strickland* requires. The Eleventh Circuit has recognized that

> [a]n attorney has a duty to conduct a reasonable investigation, including an investigation of the defendant's background, for possible mitigating evidence. This duty does not necessarily require counsel to investigate every evidentiary lead. However, the decision to limit an investigation must flow from an informed judgment. Under *Strickland*, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690-91, 104 S.Ct. at 2066. Therefore, [i]n assessing the reasonableness of an attorney's investigation, ... a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further.

*Williams v. Allen*, 542 F.3d 1326, 1337 (11th Cir. 2008) (some internal quotations omitted).

Significant factual differences appear, however, between *Williams*, on which Taylor relies heavily in his argument, and Taylor's own case. The defendant Williams had a definite history of psycho-social problems. Witnesses testified that Williams was beaten frequently and severely as a child, watched his mother and siblings abused at the hand of his father, and suffered many years of extreme neglect and mistreatment. *Williams*, 542 F.3d at 1331-33. After one particular episode of horrible physical abuse by his father, Williams "did not speak again for four years." *Id*. at 1332.

215

Later in his life, Williams was diagnosed with clinical depression, and was at one point hospitalized and placed on antidepressant medication. *Id*. at 1334.  Trial counsel even received a report that contained a suggestion of drug abuse during their investigation. *Id*.  Despite this evidence that Williams might have been suffering from mental and emotional problems, Williams' trial counsel interviewed only one family member, did not follow up on the suspicion of drug abuse, and presented no mental health evidence at trial. *Id*. at 1334, 1340. The Eleventh Circuit concluded that "the information that trial counsel did acquire would have led a reasonable attorney to investigate further." *Id*. at 1340.

Here, not only does Taylor's background — thankfully for him — differ drastically from that of Williams, but Taylor's trial counsel did much more at the investigation stage of the trial than did Williams' counsel. Taylor's attorney Mr. Downs testified:

> You look at mental disease or defect type defenses. We had reports from two experts. Both indicated that the defendant did not have significant mental disease or defects.
>
> In addition, [Hart] and I had talked to various family members, numerous friends of the defendant. The almost universal response to the crime was shock, disbelief. He's always been a good kid. He's never done anything wrong.
>
> The normal stuff you look for to try to show there might be some mental impairment, I didn't see.
>
> In addition, we had Michael's statements to us that at the time of the offense he had not been consuming alcohol, he had not been using any kind of drug. He didn't seem to offer any kind of reason for what he did. . . .So, there appeared to us to be zero information to show any sort of significant disease or defect.

*Id*., quoting R. 450-451. Furthermore, Mr. Downs and Mr. Hart offered mitigation testimony from eighteen witnesses: "3 former high school teachers, 8 friends, 4 family members, 1 minister, 1 youth leader at his church, and 1 police officer." *Taylor v. State*, 10 So. 3d at1063.

216

Taylor argues that "mitigation is not limited to findings of psychological disorder." (Doc. 32-1, p. 29). However, the standard that attorneys are held to under *Strickland* is that of a reasonable attorney, not that of a reasonable psychologist. While a professional psychologist may have seen indices of possible psycho-social problems, clues that would allegedly have been "clear" to such a professional, *see* Doc. 32-1, p. 41, this court finds nothing unreasonable about the investigation performed by Taylor's trial counsel. Their reliance on the two professional psychological reports—the Rogers and Wilson reports—or in the way they interviewed Taylor and numerous other people from his life presented nothing unreasonable. Unlike in *Williams*, not enough evidence, from the standpoint of a reasonable attorney, warranted any further investigation.

Even though the court does not find that trial counsel performed unreasonably under the *Strickland* standard, it next turns to the prejudice prong of *Strickland*. Though not specifically citing *Strickland* when evaluating Taylor's counsel's performance under this particular claim, the Court of Criminal Appeals argued that the discovery and presentation of the type of mitigation evidence described by Dr. Drob would not have altered the outcome of the proceedings — of which the prejudice prong of the *Strickland* standard would have required proof. *See Taylor v. State*, 10 So. 3d 1037, 1053 (Ala. Crim. App. 2004). The Eleventh Circuit noted in *Borden* that "a counsel's failure to satisfactorily investigate potential mitigating factors does *not* give rise to a presumption of prejudice. A presumption of prejudice would be proper where counsel's representation was so deficient as to amount in every respect to no representation at all." 646 F. 3d at 819 (emphasis in original) (internal quotations omitted). Taylor, therefore, had to affirmatively demonstrate prejudice, and he failed to do so.

This court agrees with the Court of Criminal Appeals that he demonstrated "no reasonable

probability that the presentation of psychological evidence such as that presented at Taylor's evidentiary hearing would have changed the jury's recommendation." *Taylor v. State*, 10 So. 3d at 1053. The court also stated that the presentation of such evidence "would not have altered [the court's] findings that the aggravating circumstances outweighed the mitigating circumstances." *Id.* No solid reason, beyond pure speculation, arises for this court to accept Taylor's argument that testimony such as that presented by Dr. Drob would have changed either the strategy of Taylor's trial counsel or the results of the proceedings. Despite alleging specific changes Taylor's trial counsel would have made had they known about Taylor's alleged psycho-social problems, Taylor even says that "[c]ounsel's mitigation strategy - to 'humanize' Mr. Taylor - would have been *consistent* with presentation of the psycho-social mitigation detailed at the Rule 32 hearing." (Doc. 32-1, p. 37) (emphasis added).

Therefore, because Taylor has failed to satisfy either the performance or prejudice prong of *Strickland*, his claim is due to be denied.

With respect to Taylor's argument that the state courts failed to "consider the totality of the prejudice caused by counsel's deficient performance in investigating mitigating evidence and forming a reasonable trial strategy," this court finds that argument unavailing. (*See* Doc. 36-1, p. 53). In *Borden*, the Eleventh Circuit recently stated:

> Finally, the COA asks that we determine whether a claim of ineffective assistance of counsel may be based on the "cumulative effect" of multiple non-prejudicial errors by counsel when no individual error standing alone would warrant a finding of prejudice under *Strickland*. Because Borden has not sufficiently pled facts that would establish prejudice—cumulative or otherwise—we decline to elaborate further on the concept of "cumulative effect" for fear of issuing an advisory opinion on a hypothetical issue.

646 F.3d at 823. Similarly, because Taylor has failed to demonstrate that his counsel's investigation and trial strategy, either taken as a whole or taken piece-meal, prejudiced him under *Strickland*, this court declines to rule on whether a habeas petitioner may assert a claim of "cumulative error" as it relates to an ineffective assistance of counsel claim.

### 2.   Pre-Trial.   (Doc. 1, pp. 36-37; Doc. 36-1, pp. 54-62).

Taylor's pre-trial ineffective assistance claims concern three specific areas: (a) his youthful offender hearing; (b) his suppression hearing; and (c) his alleged multiplicitous indictment.  Each will be discussed in turn

#### a.   Youthful Offender Hearing.  (Doc. 1, p. 36; Doc. 36-1, pp. 55-58).

In his habeas petition, Taylor simply states: "Counsel presented no evidence at the youthful offender hearing, [instead] relying solely on the probation report." (Doc. 1, p. 36 (citing R. 12-14); *see also* Doc. 36-1, p. 55 (same)).  Taylor's Reply Brief provides substantially more detail. He alleges that his trial counsel offered no evidence of his "psychological or social background, in particular the available evidence of his relative immaturity."  (Doc. 36-1, p. 56 (citing *Ex parte Farrell*, 591 So. 2d 444, 448 (Ala. 1991))).  In addition, Taylor concedes that counsel filed two subsequent motions for the trial court to reconsider its denial, but he argues effort was ineffective as well because counsel provided no grounds for reconsideration, grounds such as "the court could not summarily deny youthful offender status without indicating the basis for its order."  *Id.* (citing *Watkins v. State*, 357 So. 2d 156, 161 (Ala. Crim. App. 1978)).  "These omissions," Taylor argues, "indicate a failure to know or understand the law and are entitled to no deference as trial strategy." *Id.* (citing *Horton v. Zant*, 941 F.2d 1449, 1461 n. 30 (11th Cir. 1991)).

Further, Taylor alleges that the Alabama Court of Criminal Appeals's determination, during Rule 32 proceedings and before the Alabama Supreme Court's partial reversal and remand, "that counsel may have believed that the youthful offender hearing would have been hopeless and could have reasonably chosen not to litigate it" was incorrect for two reasons. *Id.* at 57 (citing *Taylor v. State*, 10 So. 3d 1037, 1053-54 (Ala. Crim. App. 2004)). First, he argues "that the court's conclusion about counsel's supposed reason for this failure was entirely unfair" because Taylor's "[p]ost-conviction counsel . . . was precluded from questioning counsel about this omission" during the Rule 32 evidentiary hearing. *Id.* (citing Pet'r's Mot. for Evidentiary Hr'g & Disc. (Doc. 37)). Second, Taylor argues that this conclusion was an unreasonable determination of the facts. *Id.* (citing 28 U.S.C. § 2254(d)(2)). "In any event," Taylor argues, "there is no doubt that competent counsel in a case such as this one would not have squandered the opportunity that the youthful offender hearing presented to establish petitioner's relative immaturity and lack of full cognitive development, as Dr. Drob and family members described" during Taylor's Rule 32 evidentiary hearing. *Id.*

Respondent's argument is two-fold. First, Respondents assert that "[t]his claim is procedurally defaulted from this Court's review because it was dismissed under an independent and adequate state procedural rule." (Doc. 13, p. 45; *see also* Doc. 14, p. 65 (same)). As this court has already discussed, however, this claim has not been procedurally defaulted. Alternatively, Respondents also contend that "this claim was raised in Taylor's Rule 32 petition and was denied on the merits." (Doc. 13, p. 46 (citing, respectively, Rule 32 C.R. Vol. 37, Tab. 84, p. 16-17; *Taylor v. State*, 10 So. 3d 1037, 1054 (Ala. Crim. App. 2004)); *see also* Doc. 14, p. 66 (same)).

In particular, Respondents quote the following from the Alabama Court of Criminal

220

Appeals's opinion before remand:

> Moreover, in *Slaton v. State*, [902 So.2d 102] (Ala. Crim. App. 2003), we held that counsel did not render ineffective assistance by not requesting treatment as a youthful offender when they did not have any reason to believe that it would have been granted because the elderly victim was brutally raped and murdered. Here, based on the horrific facts surrounding the murders, counsel could have reasonably concluded that the appellant would not be granted youthful offender treatment in this case. Therefore, the appellant did not satisfy his burden under *Strickland* as to this claim.

(Doc. 14, pp. 66-67 (quoting *Taylor v. State*, 10 So. 3d 1037, 1054 (Ala. Crim. App. 2004))).[151]

The state court determined that Taylor did not meet the pleading requirements under Rule 32.6(b) when pleading this claim. Although this court has already determined that this claim has not been procedurally defaulted, the court's ruling on these grounds is significant. The Eleventh Circuit court stated in *Powell v. Allen*:

> [The] AEDPA limits our review to whether the state court's determination that [the petitioner] failed to plead sufficient facts in his Rule 32 petition to support a claim of ineffective assistance of counsel was contrary to or an unreasonable application of Supreme Court precedent. Thus, *we look only to the allegations in [the petitioner's] Rule 32 petition and whether those allegations sufficiently state a claim for ineffective assistance of counsel.*

602 F.3d 1263, 1273 (11th Cir. 2010) (footnote omitted)(emphasis added).

---

[151] The text of the Alabama Court of Criminal Appeals's opinion reproduced above is from the final version of that court's opinion, as published in *Taylor v. State*, 10 So. 3d 1037, 1054 (Ala. Crim. App. 2004). The Respondents' Brief on the Merits, on the other hand, quotes the Westlaw version, which was produced before the opinion was released for publication, *see Taylor v. State*, No. CR-02-0706, 2004 WL 19092978, at *12 (Ala. Crim. App. 2004), and was likewise reproduced in the record produced to this court, (*see* Vol. 37, Tab.85, p. 18). Therefore, the quote in the Respondents' Brief on the Merits differs slightly from the final version of that court's opinion as reported in the Southern Reporter. For sake of clarity, however, the final version of the Alabama Court of Criminal Appeals's opinion, as it appears in *Taylor v. State*, 10 So. 3d 1037, 1054 (Ala. Crim. App. 2004), is reproduced above. Further, Respondents omit the first sentence from the quote above, but it is reproduced here for purposes of clarity as well. *See id.*

Finally, in this Memorandum Opinion, where the Respondents' Brief on the Merits subsequently quotes the Alabama Court of Criminal Appeals's opinion before remand, the final version of that opinion will likewise appear in its place, and any discrepancies between the two will be resolved in favor of the final, as opposed to the Westlaw, verison of that opinion.

Therefore, this court will only examine this claim as it was raised in Taylor's Rule 32 petition, and whether the state court unreasonably applied Supreme Court precedent in holding that Taylor did not sufficiently allege a claim for ineffective assistance of counsel.[152]

Taylor's Amended Rule 32 petition states:

> Trial counsel failed to advocate effectively at the hearing on petitioner's youthful offender application (R.10 et seq). Counsel failed to present any evidence at the youthful offender hearing, other than having petitioner sworn to verify that his attorneys had gone over the probation report with him (R.12). Counsel made a belated attempt to advance some evidence on behalf of their motion for youthful offender status only after the court had denied their original application, by filing two subsequent motions, both of which were summarily denied without a hearing. Had counsel adequately argued for youthful offender status, Mr. Taylor would not have been subjected to the death penalty.

(Rule 32 C.R. Vol. 19, Tab 49, p. 7).

The court must note that the fact that Taylor's counsel did not obtain youthful offender status for Taylor was not for lack of trying. Trial counsel presented evidence at the youthful offender hearing. After the court denied their application, they filed *two* subsequent motions for reconsideration, both of which were denied. Taylor takes issue with the level of effort and amount of evidence offered during these proceedings — a probation report and affidavit from Taylor's prior attorney recommending youthful offender status — which he describes as unacceptably "minimal." (Doc. 32-1, p. 55). Taylor argues that counsel should have presented "evidence of Mr. Taylor's psychological or social background, in particular the available evidence of his relative immaturity." *Id*. at 56.

---

[152] The court will apply this standard to all similar sub-claims that the state courts dismissed on insufficient pleading grounds.

This court finds that the Court of Criminal Appeals' dismissal of Taylor's sub-claim on insufficient pleading grounds was reasonable. Trial counsel did attempt to obtain youthful offender status for Taylor using the evidence available to them; at the time of the youthful offender hearing trial counsel did not have the type of evidence later presented by Dr. Drob at the Rule 32 proceedings. Moreover, the state court's analysis regarding the fact that Taylor probably would not have been granted youthful offender statuts due to the nature of the crime goes directly to the prejudice prong of *Strickland*. *See Taylor v. State*, 10 So. 3d at 1054. Therefore, this sub-claim is due to be denied.

<u>b.</u>      <u>Suppression Hearing.  (Doc. 1, p. 37; Doc. 36-1, pp. 58-61).</u>

Before proceeding further, two points deserve brief attention.  First, while Taylor raises arguments concerning his confession and related statements to law enforcement officers here in the context of his counsel's alleged pre-trial deficiencies, (*see* Doc. 1, p. 37; Doc. 36-1, pp. 58-61), he also raises substantially similar arguments later regarding his counsel's purported deficiencies during the guilt phase of his trial, (*see* Doc. 1, pp. 39-40; Doc. 36-1, pp. 75-80).  Because the two share much of the same factual basis and even some arguments, the court will discuss both here in one all-encompassing section.  And when Taylor raises aspects that only concern one particular stage of his proceedings, the court will endeavor to note that accordingly.

Second, the court believes it is appropriate to outline Taylor's argument.  At the outset, the court will discuss the factual predicate underlying these contentions; specifically, Taylor's four separate statements to law enforcement officers that are the subject of dispute in his habeas petition.  Next, the court will turn to Taylor's legal analysis and discussion of the *Strickland* standard.  In so

223

doing, the court will attempt to differentiate Taylor's claims between not only the four separate statements outlined below, but also the temporal aspects of his claim, *i.e.*, counsel's alleged deficiencies at the pre-trial suppression hearing in contrast to those later during the guilt phase. Finally, the court will turn to the Respondents' answers.

*(i).      The Factual Basis Underlying Taylor's Claim.*

Taylor argues that his counsel failed to effectively challenge four separate statements he made to law enforcement officers. These statements are: (1) Taylor's signed confession; (2) Officer Troy Higdon's *written* supplement to that confession; (3) Detective Johnny Grant's *oral* supplement to Taylor's confession and Officer Higdon's subsequent rendition of this oral supplement; and (4) the statements taken by Officer Michael Garigues after Taylor's arraignment. (*See* Doc. 1, pp. 37, 39-40). For each of these statements, Taylor argues that counsel failed to raise arguments supporting their exclusion from evidence.

The *first* statement is self-explanatory. Simply put, it is Taylor's signed confession to law enforcement, which was made not long after he was arrested. (C.R. Vol. 3, p. 463 (State's Exhibit No. 124: Statement of Michael Shannon Taylor)).

*Second* is Officer Troy Higdon's so-called *written* supplement to Taylor's confession. *Id.* at 464 (State's Exhibit No. 125: Supplemental Police Report). This document is "dated days after Mr. Taylor's signed confession, relating Officer Higdon's recollection that Mr. Taylor stated that he had gone to the victims' house to steal their car." (Doc. 1, p. 37 (citing C.R. Vol. 3, p. 464; R. Vol. 4, Tab. 5, pp. 123-33, 141); *see also* Doc. 36-1, p. 59 (same)).

The *third* statement is Detective Johnny Grant's so-called *oral* supplement to Taylor's

224

confession.  (*See* R. Vol. 4, Tab. 6, pp. 158, 164-65).  As Taylor describes it, during the suppression hearing counsel "elicited an additional oral statement from Detective Grant that Mr. Taylor had allegedly stated that he intended to kill the victims because they could identify him."  (Doc. 1, p. 37 (citations omitted); *see also* Doc. 36-1, p. 60 (same)).  But in the context of the guilt phase of his trial, Taylor refers to this statement as "Officer Higdon's rendition of the Detective Grant oral supplement on intent to kill."  (Doc. 1, pp. 39-40 (citations omitted); *see also* Doc. 36-1, p. 75 (same)).  While both concern the same subject matter, the latter is based upon Taylor's view that Officer Higdon was only able to testify at trial about his intent to kill statement, (*see* Doc. 36-1, p. 76 (citing R. Vol. 8, Tab. 11, p. 1067)),[153] because earlier, during the suppression hearing, Detective Grant jogged Higdon's memory when he recalled Taylor "stat[ing] that he intended to kill the victims because they could identify him," (Doc. 1, p. 37 (citations omitted)).[154]   This characterization is because Officer Higdon had stated, before Detective Grant testified, "that he did not recall Mr. Taylor saying anything about intent."  (Doc. 36-1, p. 76 (citing R. Vol. 4, Tab. 5, p. 135)).  Put differently, Taylor refers to this statement as "Officer Higdon's rendition of the

---

[153] Adding to the confusion inherent in this portion of Taylor's Reply Brief, this sentence actually states: "Officer Higdon also testified to a second purported statement by Mr. Taylor . . . that he had formed the intent to *rob* prior to going to the Moores' house."  (Doc. 36-1, p. 76 (emphasis added) (citing R. Vol. 8, p. 1067)).  But after referencing the earlier portion of Taylor's Reply Brief as well as the page of the reporter's transcript from the guilt phase of Taylor's trial, it is clear Taylor intended to state "kill," instead of "rob," which explains the alteration to the text above.

[154] Taylor also cites the following statement by James Hedgspeth, the district attorney, (*see* Doc. 1, p. 37), which were made to the trial court while the parties were attempting to resolve a number of pre-trial matters:

> And as I indicated, I had no independent recollection of that until Johnny [Grant] had testified. . . .
>
> Probably wouldn't have come out if somebody hadn't asked about it, because *I don't know about anybody else recalling it until Johnny* [*Grant*] *was asked.  He responded and then they remembered*.  So, I mean, you know, you can't go hollering about dragging a dog out of the dog house when you're the one that had a hold of the tail to start with.

(R. Vol. 4, Tab. 7, p. 225 (emphasis added)).  The pronoun "they" above was a reference to the officers, which included Officer Higdon.  *See id.* at 224.

Detective Grant oral supplement on intent to kill" because of the following sequence of events: (1) Officer Higdon's initial testimony, during the first suppression hearing on January 14, 1993, that he did not remember Taylor saying anything about intent to kill, (R. Vol. 4, Tab. 5, p. 135); (2) Detective Grant's testimony, at the second suppression hearing on March 12, 1993, that Taylor stated he intended to kill the Moores, (R. Vol. 4, Tab. 6, pp. 164-65); and (3) Officer Higdon's subsequent testimony at trial where he testified that Taylor confessed to having formed the intent to kill before going to the Moores' house, (R. Vol. 8, Tab. 11, p. 1067).

Finally, the fourth statement, or rather statements, were those "taken by Officer Garigues, after Mr. Taylor had been arraigned" before a magistrate. (Doc. 1, p. 40 (citing R. Vol. 8, Tab. 11, pp. 924-28); *see also* Doc. 36-1, p. 78 (same)). Specifically, Officer Garigues "questioned Mr. Taylor about the murder weapon and the purse and wallet belonging to the Moores." (Doc. 36-1, p. 80 (footnote omitted) (citing R. Vol. 8, Tab. 11, pp. 923-24)).

### (iii).    Respondents' Answers.

In response to Taylor's assertion of deficiencies during the pre-trial suppression hearing, Respondents answer that "[t]his claim is procedurally defaulted from this Court's review because it was dismissed under an independent and adequate state rule." (Doc. 13, p. 48). As this court discussed above, however, this claim is not procedurally defaulted. Respondents further cite the opinion of the Court of Criminal Appeals:

> In its order on remand, the circuit court found:
>
> > In this claim, Taylor has not alleged any facts that would establish that his confession could have been suppressed. Although he alleges that trial counsel failed to support his motion with

226

evidence, he has not stated what evidence counsel could have produced or how that evidence would have resulted in the suppression of his confession. In fact, other than re-stating what trial counsel alleged in their motion, Taylor does not allege any facts whatsoever. As such, this claim fails to satisfy Rule 32.6(b)'s full factual pleading requirement and is summarily dismissed."

[(Rule 32 C.R. Vol. 38, Tab. 90, pp. 14-15)]. The record supports the circuit court's findings, and we adopt them as part of this opinion. Because the appellant made only bare assertions, he did not satisfy his burden of pleading that his trial attorneys rendered deficient performance in this regard and that that allegedly deficient performance prejudiced him. See Rules 32.3 and 32.6(b), Ala. R. Crim. P., and Strickland. Accordingly, even applying the prejudice standard as set forth in Strickland, he was not entitled to an evidentiary hearing on this allegation and summary dismissal was proper as to this allegation.

(Rule 32 C.R. Vol. 38, Tab. 91, pp. 12-13).[155]

As to Taylor's allegations concerning the guilt phase, Respondents answer by citing a portion of the Court of Criminal Appeals's opinion:

In its order on remand, the circuit court found:

"In paragraphs 21 and 23 of his second amended petition, Taylor alleges that trial counsel failed to object to a document purporting to be a supplement to his statement. . . .

". . . [T]his claim is summarily dismissed because it lacks the specificity required under Rule 32.6(b) of the Alabama Rules of Criminal Procedure. . . . Taylor has not provided any facts or argument in his Rule 32 petition that would have persuaded this Court to suppress the supplemental statement. In fact, Taylor has not alleged what trial counsel did wrong or what he should have done differently. As such, this claim fails to meet the specificity requirement of Rule 32.6(b) and is summarily dismissed."

---

[155] However, the Court of Criminal Appeals's opinion after remand did not expressly adopt two alternative rulings in the Rule 32 circuit court's opinion. (Compare Rule 32 C.R. Vol. 38, Tab. 91, pp. 12-13, with Rule 32 C.R. Vol. 38, Tab. 90, pp. 14-18). Specifically, the Court of Criminal Appeals did not adopt the circuit court's ruling that Taylor's claim was "refuted by the record" and, therefore, "without merit" as well as its ruling that the claim was due to be "dismissed because Taylor has not stated a claim and has not raised a material issue of fact or law that would entitle him to relief. Ala. R. Crim. P. 32.7(d)." (Rule 32 C.R. Vol. 38, Tab. 90, pp. 15-18).

227

[(Rule 32 C.R. Vol. 38, Tab. 90, pp. 24-25)].  The record supports the circuit court's findings, and we adopt them as part of this opinion.  Because the appellant made only bare assertions, he did not satisfy his burden of pleading that his trial attorneys rendered deficient performance in this regard and that that allegedly deficient performance prejudiced him.  See Rules 32.3 and 32.6(b), Ala. R. Crim. P., and Strickland.  Accordingly, even applying the prejudice standard as set forth in Strickland, he was not entitled to an evidentiary hearing on this allegation and summary dismissal was proper as to this allegation.

(Rule 32 C.R. Vol. 38, Tab. 91, pp. 14-15).[156]

This court will now address each of these four sub-claims in turn. The court will evalutate the first and second statements by considering whether the state court reasonably dismissed each respective sub-claim on insufficient pleading grounds. *See Powell*, 602 F.3d at 1273. The court will evaluate the third and fourth statements by considering whether the state court's application of *Strickland* was reasonable. *See Harrinton*, 131 S. Ct. at 785.

First, Taylor argues that his trial counsel "did not effectively challenge the admissibility of Mr. Taylor's confession," including whether that confession was made voluntarily. (Doc. 36-1, p. 58-59). Taylor's Rule 32 petition stated:

19. Counsel failed at the suppression hearing to challenge effectively petitioner's illegal arrest and the fruits thereof, the voluntariness of petitioner's consent to the search of his hotel room, and the evidence elicited by the prosecution. (R. 79, 90, 1020-22). Had counsel effectively challenged the arrest and search, the evidence would have been suppressed and the outcome would have been different.

20. Counsel did not effectively challenge Mr. Taylor's confession at the suppression hearing, although the confession was the only direct evidence against

---

[156] Also noteworthy is that the Court of Criminal Appeals's opinion after remand did not expressly adopt a number of alternative rulings from the Rule 32 circuit court's opinion.  (*Compare* Rule 32 C.R. Vol. 38, Tab. 91, pp. 13-15, *with* Rule 32 C.R. Vol. 38, Tab. 90, pp. 19-25).  Specifically, the Court of Criminal Appeals did not adopt the circuit court's ruling that Taylor's claim was "refuted by the record" and therefore "without merit" in two different respects as well as its ruling that "[t]here was simply no error in the admission of the supplemental statement," which followed a lengthy quotation of the Court of Criminal Appeals's decision on direct appeal.  (Rule 32 C.R. Vol. 38, Tab. 90, pp. 19-24 (quoting *Taylor v. State*, 666 So.2d 36, 53-54 (Ala. Crim. App. 1994))).

petitioner. Counsel failed to offer evidence in support of their own motion, which stated that petitioner was interrogated after his right to counsel had attached, and that during the interrogation, petitioner's request for an attorney had been ignored, his attempt to invoke his right to cut off questioning was overridden, improper threats were made, and that he had been drinking and was experiencing sleep deprivation at the time. (R. 180) (Clerk's Record at 66). . . .

25. Counsel's failure to properly challenge the voluntariness of petitioner's statements to the police also prejudiced Mr. Taylor on appeal, when the appellate court dismissed as unsupported by the record his claim that the confession was involuntarily made. Taylor v. State, 666 So. 2d 36, 61.

(R. 32 C.R., Vol. 19, Tab 49, pp. 9-11).

This court finds that the circuit court's ruling was reasonable. As the circuit court noted, "Taylor has not alleged any facts that would establish that his confession could have been suppressed[;] [a]lthough he alleges that trial counsel failed to support his motion with evidence, he has not stated what evidence counsel could have produced or how that evidence would have resulted in the suppression of his confession." (Rule 32 C.R. Vol. 38, Tab. 90, p. 15). In this aspect Taylor has failed to meet *Strickland's* prejudice requirement.

Moreover, the facts directly contradict any allegation that the performance of Taylor's trial counsel was deficient under *Strickland*. As the circuit court noted,

Trial counsel filed a detailed motion seeking the suppression of Taylor's confession. The Court held a hearing on trial counsel's motion. During that hearing, trial counsel attempted to establish that Taylor was interrogated after an illegal arrest, that Taylor was interrogated after invoking his right to counsel, that Taylor was threatened by officers banging tables, and that Taylor had been drinking and was sleep deprived. . . .The Court finds that counsel's performance in their attempt to have Taylor's confession suppressed was far from constitutionally ineffective.

*Id.* at pp.15-17 (internal citations to the record omitted). This court agrees with the circuit court's characterization of the evidence; the circuit court's dismissal of this claim was not unreasonable.

229

Finally, while Taylor argues that counsel was ineffective for not arguing that his confession was given involuntarily, the evidence does not even suggest that that was the case. Officer Higdon testified that he advised Taylor of his *Miranda* rights and presented Taylor with an "Advice of Rights and a Waiver of Rights" form that Taylor read and signed. (Rule 32 C.R. Vol. 38, Tab. 90, p. 17-18). Further,

> Higdon also testified that no one made any promises or threats to induce Taylor to give his statement. The waiver of rights form signed by Taylor corroborates Officer Higdon's testimony. By signing that form, Taylor affirmed that he was willing to speak with officers, that he did not want an attorney, and that his decision was voluntary. . .

*Id*. at p. 18. Therefore, because no evidence exists  to suggests Taylor's confession was not voluntary under federal law, his trial counsel could not have been ineffective for not adequately arguing against its admissibility. The circuit court's findings were not unreasonable.

As to the second and third statements at issue, Taylor claimed in his Rule 32 petition:

> 21. Counsel did not object to the appearance of a document purporting to be a "supplement" to petitioner's statement, although it was dated several days after the interrogation, never signed by petitioner, and which the prosecutor admitted he had never seen until the day before the hearing, some five months after the interrogation (R. 123, 142). Although this "supplement" was the only direct evidence offered by the State that the murders were committed in furtherance of the robbery, counsel asked no questions about it.. . .
>
> 22. Counsel's deficient performance at the suppression hearing prompted testimony from their own witness that petitioner had said during the interrogation he intended to kill Mr. And Mrs. Moore (R. 164-165).
>
> 23. Although this statement was allegedly made during the interrogation in the presence of all the police witnesses and the District Attorney himself, the prosecution had failed to give the defense any prior notice of the existence of this statement. Counsel did not challenge this discovery violation until immediately before trial, several weeks after the suppression hearing (R. 165, 220). The prosecution then offered this statement through Police Officer Higdon in its case-in-chief at trial.

230

(R. 32 C.R., Vol. 19, Tab 49, pp. 9-11).

The circuit court held that the claim in paragraph 21 was "refuted by the record," because, "[c]ontrary to Taylor's assertions, trial counsel filed a motion 'to suppress all statements of any nature obtained from [Taylor] by government agents. . . ."(Rule 32 C.R. Vol. 38, Tab 90, p. 19). Moreover, the "supplement" was "nothing more tha[n] a recount of information Taylor provided in his statement to police that was accidentally omitted from his signed written statement." *Id*. Therefore, nothing was objectionable about its admission into evidence, and counsel could not have been ineffective for failing to successfully prevent its admission. The circuit court's dismissal on insufficient pleading grounds was reasonable.

The claim in paragraph 22 relates to the later so-called "oral supplement" by Detective Grant that Taylor had told police officers during his interrogation that he had intended to kill the Moores. Taylor argues in his habeas petition that his trial counsel failed to "question Detective Grant about the discrepancy" between Grant's oral supplement and the testimony of three other officers who "testified that Mr. Taylor was not questioned about intent to kill." (Doc. 1, p. 37 (citations omitted)). The circuit court, agreeing with the characterization of the evidence on this issue by the Criminal Court of Appeals, stated "there was more than sufficient evidence, aside from the supplemental statement, to establish intent. As such, the record establishes that there is no reasonable probability that had the statement been suppressed, the outcome of the trial would have been different." (Rule 32 C.R. Vol. 38, Tab 90, p. 24). In support, the circuit court quoted the opinion of the Criminal Court of Appeals: "[w]e take issue with [Taylor's] characterization that his written statement 'suggested a lack of specific intent.' In that statement, the appellant admitted that

he robbed and repeatedly beat both victims with a barbell." *Id.* at p. 21 (citing *Taylor v. State*, 666 So. 2d 36, 53-54 (Ala. Crim. App. 1994)). The circuit court's ruling was reasonable.

The particular claim in paragraph 23 regarding a discovery violation that trial counsel allegedly failed to challenge was not raised in Taylor's habeas petition, and so is not properly before this court. *See* Rule 2(c), Rules Governing Habeas Corpus Cases Under Section 2254 ("The petitioner must: (1) specify all the grounds for relief available to the petitioner. . ."); *see also Cooper v. Sec'y, Dept. of Corrections*, No. 8:08-CV-5-T-27MAP, 2011 WL 795812 at *7 (M.D. Fla. Mar. 1, 2011) (holding that, under Rule 2(c), a habeas petitioner may not later raise claims not contained in his original petition). However, even if Taylor had raised this claim in his habeas petition, the circuit court's dismissal of the claim was reasonable, considering that it found that counsel did, in fact, "thoroughly and effectively argue[] that the belated disclosure violated the Court's discovery order and, thus, the supplement should be suppressed." (Rule 32 C.R. Vol. 38, Tab. 90, p. 20).

Finally, Taylor argues that the statements he made to Officer Garigues after he had been arraigned violated his right to counsel, and that his trial counsel "failed to move to have these statements suppressed on Fifth and Sixth Amendment grounds and did not object to Garigue's trial testimony on this subject." (Doc. 1, p. 80). Taylor raised this claim in his Rule 32 petition as follows:

> 26. Counsel was ineffective for failing to seek suppression of the statements petitioner allegedly made to Police Officer Garigues several days after the interrogation, when Garigues took petitioner to look for the murder weapon (R. 227, 924). Counsel should have sought suppression of all testimony regarding that subsequent interrogation as having been obtained in violation of petitioner's Fifth and Sixth Amendment Rights. Edwards v. Arizona, 451 U.S. 477 (1981); Massiah

v. United States, 377 U.S. 201 (1964).

(R. 32 C.R., Vol. 19, Tab 49, pp. 9-11).  The circuit court stated "[n]either Taylor nor Garigues testified at the evidentiary hearing. Taylor failed to proffer any facts in his petition or present any evidence at his evidentiary hearing that would affirmatively prove this claim. . .or that he was prejudiced as required by Strickland." (R. 32 C.R., Vol. 37, Tab 84, pp. 26-27). The assertions in paragraph 26 of Taylor's Rule 32 petition do not at all provide any indication of how the admission of Taylor's statements to Officer Garigues prejudiced Taylor in any way. Without evidence supporting a claim, the circuit court's application of *Strickland* was reasonable.

<u>c.</u>    Failure to Object to the Duplicative Counts in Taylor's Indictment.
(Doc. 1, p. 37; Doc. 36-1, pp. 61-62).

The entirety of this argument, as stated in Taylor's habeas petition, is that "[c]ounsel did not object to the duplicative counts in the indictment.  Taylor was ultimately subjected to three separate death sentences." (Doc. 1, p. 37).

In his Reply Brief, Taylor's argument is two-fold.  First, Taylor contends that he "was ultimately subjected to three separate death sentences." (Doc. 36-1, p. 61).  Second, he argues that his "[c]ounsel failed to object that the third count in the indictment was duplicative of the first two, in violation of the Alabama Code . . . and the Double Jeopardy Clause" of the United States Constitution.  *Id.* (internal citations omitted).[157]  To buttress this claim, Taylor asserts that "the third

---

[157] In support of Taylor's claim that indictment violated the Alabama Code, he cites: Ala. Code § 13A-1-8(b) (1975); *Borden v. State*, 711 So. 2d 498, 503 (Ala. Crim. App. 1997).  (*See* Doc. 36-1, p. 61).  And in support of Taylor's claim that his indictment violated the Double Jeopardy Clause of the United States Constitution, he cites: *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969); *United States v. Dixon*, 509 U.S. 688, 696 (1993) (citing, in turn, *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).  (*See* Doc. 36-1, p. 61).

count – intentional killing of two persons in one course of conduct – contained no additional element to the first two counts, which involved the same victims and the same course of conduct, i.e., robbery." *Id.* "No conceivable strategy," Taylor argues, "could support failing to raise a double jeopardy objection, especially where the multiplicitous indictment enabled both the prosecutor and court to repeatedly emphasize to the jury that Mr. Taylor was charged with three capital murders." *Id.* at 62.

In turn, Respondents answer that "[t]his claim was raised in Taylor's Rule 32 petition and on collateral appeal in the Alabama Court of Criminal Appeals, and was denied on the merits." (Doc. 13, p. 48 (citing, respectively, Rule 32 Remand C.R. Vol. 38, Tab. 90, pp. 25-29, 72; Rule 32 Remand C.R. Vol. 38, Tab. 91, pp. 36-38); *see also* Doc. 14, p. 69 (same)).   As support, Respondents quote the following from the Alabama Court of Criminal Appeals opinion after remand:

> The appellant argues that his trial counsel rendered ineffective assistance because they did not object to the allegedly multiplicitous indictment.   In his petition, he alleged:
>
>> "Counsel failed to object to the Court's submission of three counts of capital murder to the jury where the third count was multiplicitous of the first two.   Counsel then failed to move to set aside the jury verdict of guilty on all three counts, even though it violated petitioner's constitutional right against double jeopardy, and more likely than not contributed to the jury's death verdict."
>
> In its order on remand, the circuit court found:
>
>> "In paragraph 68 of his second amended petition, Taylor alleges that trial counsel were ineffective for failing to object on doubly jeopardy grounds to the Court's submission of three counts of capital murder to the jury.   This Court addressed this issue in Section IV of this order.   For the reasons stated in Section IV, this claim is dismissed."
>
> In Section IV of its order, the circuit court found:

"The Supreme Court of the United States has held that the Double Jeopardy Clause of the Fifth Amendment contains three protections: 'It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.' North Carolina v. Pearce, 395 U.S. 711, 717 (1969) (overruled on different grounds). See Schiro v. Farley, 510 U.S. 222, 229 (1994) (reaffirming the three protections of the Double Jeopardy Clause). 'These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense.' Schiro, 510 U.S. at 229 (citing United States v. Wilson, 420 U.S. 332, 339 (1975)[)]. The Alabama Supreme Court has held that the Double Jeopardy Clause of Art. I. Section 9 of the Alabama Constitution applies to protect only those three areas enumerated in Pearce. See Ex parte Wright, 477 So. 2d 492, 493 (Ala. 1985); Adams v. State, CR-98-0496, 2003 WL 22026043, at * 52 (Ala. Crim. App. Aug. 29, 2003).

"In Blockburger v. United States, the Supreme Court of the United States enumerated the 'same elements' test for determining whether two charges constitute the 'same offenses' in violation of the Double Jeopardy Clause of the Fifth Amendment. 284 U.S. 299, 304 (1932). Under the Blockburger test, 'where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not.' Id. Thus, if each offense charged requires an element to be proved that the other does not, the two offenses are not the same for Double Jeopardy purposes. Barksdale v. State, 788 So. 2d 898, 910 (Ala. Crim. App. 2000) (quoting Ex parte Howard, 710 So. 2d 460, 462-63 (Ala. 1997) (citing United States v. Dixon, 509 U.S. 688, 696 (1993))).

"Each of the capital murder charges against Taylor contained elements and crimes separate from the other. First, contrary to Taylor's allegation, the two murder/robbery counts did not arise out of a single offense, robbery. As the Court of Criminal [sic] reaffirmed in Brooks v. State, '[i]n Sims v. State, 663 So. 2d 975, 978 (Ala. Crim. App. 1994), this Court applied the McKinney rule to the offense of robbery, holding that the appellant's convictions for two counts of robbery arising out of a single act did not violate double-jeopardy principles because two victims were involved.' Brooks v. State, CR-03-1113, 2006 WL 1793746, at *21 (Ala. Crim. App. June 30, 2006). Thus, the two charges of murder/robbery required proof of elements separate form one another and did not violated the

Double Jeopardy clause. Furthermore, Taylor's conviction of murder of two or more persons required proof that was separate and distinct from murder robbery; therefore, Taylor's conviction of this crime did not violate double jeopardy.

"In sum, Taylor's convictions for three counts of capital murder did not violate double jeopardy. As such, trial counsel could not have made a legitimate challenged on double jeopardy grounds. Because counsel could not have made a legitimate objection, they could not have been ineffective for failing to do so. See McGahee v. State, 885 So. 2d 191, 209 (Ala. Crim. App. 2003); Magwood v. State, 689 So. 2d 959, 981 (Ala. Crim. App. 1996) ('Counsel cannot be held ineffective for failing to make a challenge that has no basis in fact or law.'). Therefore, this claim is without merit and is summarily dismissed."

The record supports the circuit court's findings, and we adopt them as part of this opinion. Because the appellant's allegation was obviously without merit, he was not entitled to an evidentiary hearing on this allegation, and summary dismissal was proper as to this allegation.

(Doc. 14, pp. 69-71 (quoting Vol. 38, Tab. 91, pp. 36-38)(internal citations to the record omitted)).[158]

This court agrees with the state court that, because the three counts presented in the indictment against Taylor did not violate double jeopardy, trial counsel could not have been ineffective for failing to object to the charges on that ground. Taylor was charged with three separate counts of capital murder: (1) "murder by the defendant during a robbery in the first degree" for Mr. Moore; (2) "murder by the defendant during a robbery in the first degree" for Mrs. Moore; and (3) "murder wherein two or more persons are murdered by the defendant by one act or pursuant to one scheme of course of conduct." Ala. Code § 13A-4-40(2) and (10) (1975). The third count

---

[158] Suffice it to say the quotation of the Alabama Court of Criminal Appeals's opinion after remand in the Respondents' Brief on the Merits contains a number of typographical errors. (Compare Doc. 14, pp. 69-71, with Rule 32 C.R. Vol. 38, Tab. 91, pp. 36-38). Therefore, the quotation above mirrors the Court of Criminal Appeals's actual opinion on remand, (see Rule 32 C.R. Vol. 38, Tab. 91, pp. 36-38), and not the quote reproduced in the Respondents' Brief on the Merits, (see Doc. 14, pp. 69-71 (quoting Rule 32 C.R. Vol. 38, Tab. 91, pp. 36-38)).

in the indictment required proof of a separate and distinct element from the first two counts, despite the fact that the same victims and same course of conduct were involved, because it required proof that both people were killed pursuant to a common scheme.

Taylor illuminates no legal authority, and this court is aware of none, that says convictions based on these two types of capital murder violate double jeopardy. In fact, Alabama case law directs this court to the opposite conclusion. In *Holloway v. State*, 971 So. 2d 729, 734 (Ala. Crim. App. 2006), the defendant Holloway "was convicted of (1) capital murder of Rodney Brown and Angela Brown, (2) intentional murder of Rodney Brown, and (3) capital murder of Angela Brown during the course of a burglary." The court held that the "conviction and sentence for both intentional murder [as opposed to capital murder] and capital murder as to one victim [in the capital conviction for murder of two or more persons] violate the principles of double jeopardy." *Id*. The court explained that "intentional murder is a lesser offense to the offense of capital murder. Because the intentional murder of [the victim] as charged in Count I of the indictment was an element of the capital offense of the murder of [the same victim] during the course of a burglary,. . . [the defendant] could not be convicted of both counts." *Id*. (quoting *Cooper v. State*, 912 So. 2d 1150 (Ala. Crim. App. 2005). However, with respect to the fact that Holloway was convicted of the capital murder of Rodney Brown and Angela Brown together, as well as for the capital murder of Angela Brown, the court held that the indictment was "proper" and so should "stand." *Id.* at 735.

The three convictions, therefore, pass the *Blockburger* test, see 284 U.S. at 304, and Taylor has failed to demonstrate that the state court's application of *Strickland* to his counsel's failure to object on these grounds was unreasonable.

### 3.    *Voir Dire.  (Doc. 1, pp. 37-39, 45; Doc. 36-1, pp. 62-75).*

As to his trial counsel's alleged deficiencies during voir dire, Taylor raises four distinct ineffective assistance sub-claims.

<u>a.</u>    <u>Failure to Object to the Trial Court's Off-Record Discussions with, and Excusing of, Potential Jurors Outside of Taylor and His Trial Counsel's Presence.  (Doc. 1, p. 37; Doc. 36-1, pp. 62-64).</u>

Here, Taylor's chief argument is that "[c]ounsel did not object to the court's off-the-record discussions with, and the excusing of, prospective jurors outside the presence of Mr. Taylor and the defense."  (Doc. 1, p. 37) (internal citations to the record omitted); *see also* Doc. 36-1, p. 62 (same)).  Taylor contends that he was "never given a chance to challenge their excusals for cause, and the absence of any record means that the validity of their excuses cannot now be evaluated." (Doc. 36-1, p. 63).

Relatedly, Taylor also asserts that his trial counsel "failed to object when the prosecutor exercised peremptory challenges against two prospective jurors, based solely on remarks indicating that they would vote for death, purportedly made to court personnel outside the presence of the court or counsel."  *Id.* (internal citations to the record omitted).  He argues that "[c]ompetent counsel would have demanded to re-examine the prospective jurors, and would have argued that excusing them on the basis of double hearsay violated Mr. Taylor's constitutional rights to be personally present and represented by counsel at jury selection."  *Id.*  Finally, Taylor contends that the Alabama Court of Criminal Appeals's conclusion that he "could not demonstrate from a 'silent record' that he was prejudiced by counsel's failure to ensure that a record was made in this capital case . . . merely restates the harm caused by counsel's failure."  *Id.* at 63-64.

238

Respondents answer by asserting that "[t]his claim was raised in Taylor's Rule 32 petition and on collateral appeal in the Alabama Court of Criminal Appeals and was denied on the merits." (Doc. 13, p. 52 (citing, respectively, Rule 32 C.R. Vol. 37, Tab. 84, pp. 35-36; *Taylor v. State*, 10 So. 3d 1037, 1055 (Ala. Crim. App. 2004)); *see also* Doc. 14, p. 72 (same)).   Specifically, Respondents quote the following from the Alabama Court of Criminal Appeals's opinion before remand:

> In its order denying the petition, the circuit court made the following findings regarding this contention:
>
>> "Taylor contends that, because prospective jurors were excused off the record, he was deprived of an opportunity to challenge these excuses in violation of his constitutional right to a fair trial.  Downs was briefly examined about his claim at the evidentiary hearing.
>>
>> ". . . In *Ex parte Pierce*, 612 So. 2d 516, 519 (Ala. 1992), the Alabama Supreme Court held that:
>>
>>> "'[a] judge in a capital case may excuse members of the venire outside the presence of the defendant and his counsel for those reasons set forth in [Section] 12-16-63(b), [of the *Code of Alabama* (1975)].'
>>
>> "Taylor fails to allege any facts in his petition and presented no evidence at his evidentiary hearing that would affirmatively prove that any veniremember excused outside of his or his trial counsel's presence did not provide a valid excuse to the Court.  The Court will not hold trial counsel ineffective on the basis of a silent record.  *See*, *Magwood v. State*, 689 So.2d 959, 971 (Ala. Crim. App. 1996).  The Court finds that Taylor has failed to meet his burden of affirmatively proving that trial counsel's performance was deficient or caused him to be prejudiced as required by *Strickland*.  *See also*, Rule 32.3, A. R. Cr. P."
>
> (C.R. 613-14.)[159]  The record supports the circuit court findings, and we adopt them as part of this opinion.

(Doc. 14, pp. 72-73 (alterations in original) (quoting *Taylor v. State*, 10 So. 3d 1037, 1055 (Ala.

---

[159] (*See* Rule 32 C.R. Vol. 37, Tab. 84, pp. 35-36).

Crim. App. 2004))).

This court finds that the state court's application of *Strickland* was reasonable. Alabama law allows a judge in a capital case to excuse veniremembers outside the presence of the defendant and his counsel. *See* Ala. Code § 12-16-63(b) (1975). Because Taylor has failed to demonstrate that the trial judge's decision was not in accordance with the law, he has failed to show how his right to a fair trial was violated, and thus how his counsel was deficient for not objecting to the judge's actions. Taylor has also failed to demonstrate how his counsel's lack of objections regarding the prosecutor's use of peremptory challenges prejudiced him under the *Strickland* standard.

        b.      Failure to Conduct Individualized, Sequestered Voir Dire on the Issue of Pre-Trial Publicity and Failure to Seek a Change of Venue (Doc. 1, pp. 37-38; Doc. 36-1, pp. 64-68).[160]

In his habeas petition, Taylor argues: "[t]he crime was extensively reported in the local media, counsel's motion for individual, sequestered voir dire on pre-trial publicity was granted and Mr. Hart understood the importance of it; nonetheless, counsel failed to voir dire accordingly." (Doc. 1, pp. 37-38 (internal citations to the record omitted)).  Put differently, Taylor's overarching argument is that his "[c]ounsel was further ineffective for failing to conduct individual sequestered questioning of each juror for bias and failing to seek a change of venue," particularly when the trial court granted his motion for individual, sequestered voir dire.  (Doc. 36-1, p. 64).  And by not conducting individual voir dire, Taylor contends that the prosecutor was permitted "to apply the

_____

[160] Taylor also raises the underlying substantive claim, *i.e.*, the trial court failed to conduct individualized questioning of prospective jurors, as a separate ground for relief.  (*See* Doc. 1, p. 13 ("Ground IV")).  And it is addressed in that context in Part IV *supra*.  Further, Taylor also raises a separate ground for relief that is passingly referred to in this ineffective assistance sub-claim.  That is, he argues that the trial court failed to conduct any inquiry whatsoever about the veniremembers' potential bias in favor of the death penalty.  (*See* Doc. 1, p. 13 ("Ground V")).  It is discussed in Part V *supra*.

type of psychological pressure that sequestered voir dire is intended to guard against." *Id.* at 65 (citing *Irvin v. Dowd*, 366 U.S. 717, 728 (1961)).

Taylor further asserts that the Alabama Court of Criminal Appeals's determination that "there was 'no legal basis' for moving for change of venue in Mr. Taylor's case," because counsel could have reasonably concluded that the motion would not have been granted due to a similar motion being denied in an earlier capital case in Etowah County, is unavailing. *Id.* at 65-66 (quoting *Taylor v. State*, 10 So. 3d 1037, 1056 (Ala. Crim. App. 2004)). He contends that his counsel's failure to conduct individualized, sequestered voir dire cannot be considered reasonable trial strategy because counsel believed individual voir dire was necessary and neither the trial court nor the prosecution tried to prevent it. *Id.* at 66. And Taylor asserts that this unreasonableness is especially true when "every jury panel included members who had heard about the case" and "the collective questioning permitted the venirepersons to inform one another of what they knew of the case, and opinions of Mr. Taylor and to taint each other's views about the death penalty." *Id.* (internal citations to the record omitted).

Finally, Taylor argues that the Alabama Court of Criminal Appeals's holding that it "faulted Mr. Taylor for failing to identify 'any juror by name whose verdict was in any way adversely affected by pre-trial publicity' . . . mischaracterizes the issue, which is not juror misconduct, but whether counsel was ineffective for failing to make reasonable efforts to ensure an impartial jury." *Id.* at 67 (quoting *Taylor v. State*, 10 So. 3d 1037, 1056 (Ala. Crim. App. 2004)).

While Respondents fail to address this sub-claim specifically, they deny that Taylor is entitled to relief on this claim. (*Cf.* Doc. 13, p. 80 ("All of the averments in Taylor's habeas

241

petition, which are not expressly admitted, are denied."); *see also id.* ("Taylor's petition for writ of habeas corpus should be denied.")).

First, with respect to counsel's failure to properly conduct voir dire, Taylor has failed to demonstrate how counsel's performance was deficient under *Strickland*, or how any alleged errors performed by his counsel prejudiced him. Taylor argues that the jurors should have been examined individually "[b]ecause of the significant possibility of prejudice when jurors are examined about pretrial publicity en mass." (Doc. 36-1, p. 64) (citing *Coleman v. Kemp*, 778 F.2d 1487, 1542 (11th Cir. 1985) (citing ABA Standard for Criminal Justice 8-3.5(a) (2d ed. 1980)). However, Taylor has presented little evidence that his trial garnered any more publicity than is normal in a capital murder trial, and has not presented this court with any legal authority that sequestered voir dire is necessary in every capital murder trial. Taylor's own attorney claimed to believe that "Taylor's case did not generate more than normal news coverage." *Taylor v. State*, 10 So. 3d 1037, 1056(Ala. Crim. App. 2004) (internal citations omitted). Taylor's citation to a handful of headlines about the trial that were presented in the local paper over a span of three years does not indicate significant or unusual pretrial publicity. (*See* Doc. 36-1, p. 65 n.15). Taylor provides little indication that the level of publicity generated by his trial was similar to that the court found necessitated sequestered voir dire in *Coleman*, the case Taylor cites in support. Simply stated, Taylor's arguments for why sequestered voir dire may be desirable in a capital case do not amount to a demonstration that his counsel was professionally unreasonable for not conducting one in this case.

Furthermore, regardless of the reasonableness of failing to conduct sequestered voir dire, Taylor has utterly failed to demonstrate how such an error would have prejudiced him in a manner that rendered it reasonably possible that the outcome of the proceedings would have been different.

*See Strickland*, 466 U.S. at 694. As the Court of Criminal Appeals noted, "Taylor fails to identify in his petition any juror by name whose verdict was in any way adversely affected by pre-trial publicity." *Taylor v. State*, 10 So. 3d at 1056. Taylor argues the reasoning of the Court of Criminal Appeals "mischaracterizes the issue, which is not juror misconduct, but whether counsel was ineffective for failing to make reasonable efforts to ensure an impartial jury." (Doc. 36-1, p. 67). However, if Taylor cannot demonstrate that the verdict of the jurors was affected by pre-trial publicity or the public voir dire, then he cannot demonstrate how he is prejudiced by his counsel's failure to conduct sequestered voir dire. Taylor vaguely asserts that his counsel's failure to conduct sequestered voir dire "enabl[ed] [the prosecutor] to strongly discourage any individual from saying candidly whether he or she had formed an opinion of Mr. Taylor's guilt," and then Taylor cites to several such alleged instances in trial record. This court has reviewed those respective statements in the record, and finds that they do not "strongly discourage" candid answers by the veniremembers, so there is no support for a claim of prejudice in this allegation.  Because a showing of prejudice is required under *Strickland* in addition to a showing of deficient performance, Taylor has failed to prove that the state court unreasonably applied the *Strickland* standard.

Finally, with respect to trial counsel's failure to move for a change of venue, this court agrees with the Criminal Court of Appeals that Taylor has failed to demonstrate any error by his counsel in this regard. *See Taylor v. State*, 10 So. 3d at 1056. Taylor's counsel stated they "did not think a motion for change of venue would have been granted because Taylor's case did not generate more than normal news coverage." Id. at 1055-56. His counsel referred to a contemporaneous capital case in the same circuit court, in which a motion for change of venue was denied, despite the fact that that particular case had generated much more publicity than Taylor's case. *See id.* at

1056. Counsel's decision not to seek a venue change was reasonable based on what counsel believed at the time. The legal authority Taylor cites in support of his argument merely states available grounds for a change in venue; Taylor has failed to direct the court to any legal authority suggesting that counsel's failure to move for a change in venue constituted unreasonable error under *Strickland* —that is, that "no competent counsel would have taken the action that his counsel did take." *Chandler*, 218 F.3d at 1315. This sub-claim is due to be denied.

<u>c.</u>   <u>Counsel's Response Concerning the Ability of the State Legislature to Change the Law on Life-Without-Parole for Taylor's Benefit. (Doc. 1, p. 38; Doc. 36-1, pp. 68-69).</u>

In his habeas petition, Taylor claims that "[c]ounsel responded to a prospective juror's question whether the [Alabama] Legislature could change the law on life-without-parole 'for [Taylor's] benefit' with 'I guess the Legislature could change it,' and did not object to the prosecutor's invocation of future dangerousness if Mr. Taylor did not receive the death penalty." (Doc. 1, p. 38 (second alteration in original); *see also* Doc. 36-1, p. 68 (same)).  Taylor contends that it would have been reversible error had the prosecutor made the same comment, but the "error was all the more prejudicial for coming from defense counsel."  (Doc. 36-1, p. 68).  He asserts that "[t]he only correct answer to the juror's question was that, if the jury found Mr. Taylor guilty of capital murder, the sentence would be death or life without parole." *Id.* at 68-69.  Taylor concludes by stating: "Not only was counsel's answer incorrect, it prejudiced Mr. Taylor's right to be tried under the law of the case and encouraged jurors to vote for death based on the false conception that Mr. Taylor might be paroled if he was not given death." *Id.* at 69.

While Respondents fail to address this sub-claim specifically, they deny that Taylor is

entitled to relief on this claim.  (*Cf.* Doc. 13, p. 80 ("All of the averments in Taylor's habeas petition, which are not expressly admitted, are denied."); *see also id.* ("Taylor's petition for writ of habeas corpus should be denied.")).

This court finds that Taylor has failed to demonstrate any professionally unreasonable error by his trial counsel in this regard. Taylor's habeas petition completely mischaracterizes his trial counsel's comments on this subject. During voir dire, his attorney Mr. Downs stated in part:

> Under Alabama law we have two basic choices in a Capital Murder case. One is the death penalty that we talked about some. The other is Life in the penitentiary without the possibility of parole.
>
> Under Alabama law that means that a person who receives a sentence of Life Without Parole can just never be released. I mean, never, never. They will die in the penitentiary. . . .
>
> . . . If you get a Life Without Parole sentence, you just never would be reviewed. . . .
>
> [Veniremember Wheeler]: Would there ever be a possibility that while he's serving time that the law might be changed for his benefit or in his favor, rather?
>
> Mr. Downs: I don't know. I guess the Judge would have to answer that. I don't know . . .
>
> . . . I guess the Legislature could change it. I don't know that. I mean, I couldn't answer that question. As the law is now, as the law is as you'll hear this case, there's no parole possible. No review possible. That's about all I could tell you as a lawyer.

(R. Vol. 7, Tab. 7, pp. 742-45).

Therefore, this court agrees with the Criminal Court of Appeals that "the record does not support [Taylor's] argument" here, and this particular effective assistance claim is totally without merit as Taylor has failed to demonstrate any error by his counsel. This sub-claim is due to be denied.

> > d.    Counsel Conceding Taylor's Guilt.  (Doc. 1, pp. 38-39, 45; Doc.
> > 36-1, pp. 69-75).[161]

This portion of Taylor's ineffective assistance of counsel claim is multi-faceted and comprises five distinct, yet interrelated, alleged deficiencies:

> During voir dire, counsel [(1)] repeatedly told prospective jurors that Mr. Taylor was guilty of capital murder beyond a reasonable doubt, [(2)] conceded the aggravating circumstance[s] of killing in furtherance of robbery and heinous, atrocious or cruel murder, [(3)] speculated that the crime was premeditated, [(4)] emphasized the victims' suffering, and [(5)] told jurors there was no psychological mitigation and no explanation of the crimes other than the intent to rob[.]

(Doc. 1, p. 38) (citing R. 287-88, 489, 491, 578, 581, 673-75, 679, 752, 755-56, 805-06); *see also* Doc. 36-1, p. 69 (same)).  Moreover, Taylor argues that his trial counsel was not only ineffective under *Strickland*, but also presumptively unreliable under the standard set forth by the Supreme Court in *United States v. Cronic*, 466 U.S. 648 (1984).[162]  (Doc. 36-1, pp.69-70, 72-73).  Taylor complicates matters, however, by switching back and forth between invoking the *Strickland* and *Cronic* standards throughout his argument.  *See id.*

As to Taylor's *Cronic* argument, he contends that the five deficiencies listed above, "which were the equivalent of a guilty plea without Mr. Taylor's consent," "made the adversary process itself presumptively unreliable" as they "deprived him of an impartial jury, constructively deprived him of counsel, and completely relieved the State of its burden of proof."  *Id.* at 69-70 (citing *Cronic*, 466 U.S. at 656-57, 659).  He argues: "where counsel knowingly and explicitly relieves the

---

[161] Taylor also raises a separate ground for relief that is passingly referred to in this ineffective assistance sub-claim.  That is, he argues that the trial court failed to conduct any inquiry whatsoever about the veniremembers' potential bias in favor of the death penalty.  (*See* Doc. 1, p. 13 ("Ground V")).  It is discussed in Part V *supra*.

[162] For more explanation of this standard, see Part I of this opinion, *supra*  n. 33.

246

State of its burden of proving guilt beyond a reasonable doubt" it is "a *per se* deprivation of the defendant's Sixth Amendment right to have his guilt or innocence decided by a jury." *Id.* at 70 (citing *Brookhart v. Janis*, 384 U.S. 1, 7-8 (1966); *Lobosco v. Thomas*, 928 F.2d 1054, 1056 (11th Cir. 1991)).  This is true, Taylor asserts, because "[t]he decision to plead guilty belongs to the defendant alone and may not be abrogated except by an affirmative showing on the record that he made a valid waiver of his privilege against self-incrimination, his right to a jury trial and his right to confront his accusers." *Id.* at 70-71 (citing *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969); *Brookhart*, 384 U.S. at 7-8).  Finally, Taylor argues that "the 'strategy' of conceding a client's guilt at the guilt phase, absent a valid waiver, so as to ask for mercy at the penalty phase" has been "explicitly rejected as constitutionally unacceptable" by the courts. *Id.* at 71 (citing *Lobosco*, 928 F.2d at 1056-57; *Young v. Zant*, 677 F.2d 792, 797 (11th Cir. 1982)).

Next, regarding the *Strickland* standard, Taylor contends that his counsel's conduct fell below the standard for reasonable, competent assistance. *Id.* at 72.  Taylor begins by outlining his trial counsel's testimony during the Rule 32 evidentiary hearing.  He states that "Hart distanced himself from the concession of capital murder and essentially testified that Mr. Downs was the one who implemented the strategy." *Id.* (internal citations to the record omitted).  On the other hand, Taylor summarizes Downs's testimony in the following manner:

> Downs testified that, because he could not argue innocence, legal insanity or intoxication, he concluded there was no defense and no mitigation.  On his unreasonable view, the only available course was to emphasize the gruesomeness of the crime in the hope that the jury would reward his "honesty" by showing mercy to his client.

*Id.* (internal citations to the record omitted).  Because, in Taylor's opinion, Downs's "explanation

[is] further evidence of counsel's failure to understand either the role of a defense attorney or the well-settled law prohibiting this kind of 'strategy,'" Taylor argues these actions "should not be accorded the deference due to informed trial strategy." *Id.* at 72-73 (citations omitted).[163]

After attacking his counsel's statements at the Rule 32 hearing, Taylor then proceeds to question Downs' belief that the jury would show mercy by conceding guilt in the five ways detailed above. *See id.* at 73. He argues that "counsel failed to offer the jury any explanation of how Mr. Taylor's youth was mitigating, despite comments and questions from jurors showing their misconceptions on this crucial issue." *Id.* (internal citations to the record omitted). Taylor further asserts that "Downs' assurances to the jury of his personal 'honesty'" violated his duty of loyalty to his client, and, in so doing, squandered an opportunity to strengthen the defense of lack of intent. *Id.* at 73-74 (internal citations to the record omitted).

Finally, Taylor argues that "counsel essentially asked the prospective jurors to prejudge the guilt and penalty phases before any evidence was heard" by making these representations of the evidence during voir dire. *Id.* at 74. And because of this, Taylor argues, "[c]ounsel were then unable to have those prospective jurors members [sic] removed for cause when they stated that they would impose the death sentence on the facts set forth by counsel without considering life." *Id.* (footnote omitted) (citing *Ex parte Taylor*, 666 So. 2d 73, 77, 82 (Ala. 1995)).

In response, Respondents assert that "[t]his claim was raised in Taylor's Rule 32 petition

---

[163] In support of his claim that Down's "explanation [is] further evidence of counsel's failure to understand either the role of a defense attorney or the well-settled law prohibiting this kind of 'strategy,'" Taylor cites *Cronic*, 466 U.S. at 667 n. 19; *Lobosco*, 928 F.2d at 1056-57; *Francis v. Spraggins*, 720 F.2d 1190, 1194 (11th Cir. 1983); *Young v. Zant*, 677 F.2d at 797. (*See* Doc. 36-1, pp. 72-73). And in support of his contention that his counsel's actions "should not be accorded the deference due to informed trial strategy," Taylor cites: *Horton*, 941 F.2d at 1461; *Herring v. Estelle*, 491 F.2d 125 (5th Cir. 1974). (*See* Doc. 36-1, p. 73).

and on collateral appeal in the Alabama Court of Criminal Appeals and was denied on the merits."
(Doc. 13, p. 54 (citing, respectively, Rule 32 C.R. Vol. 37, Tab. 84, pp. 28-30; *Taylor v. State*, 10
So. 3d 1037, 1058-59 (Ala. Crim. App. 2004)); *see also* Doc. 14, pp. 73-74 (same)).

Specifically, Respondents quote the following from the Alabama Court of Criminal
Appeals's opinion before remand:

> Although Alabama has had little occasion to address whether counsel renders deficient performance by conceding guilt, we have held that it is not per se ineffective assistance for counsel to concede a client's limited guilt.  *See Thompson v. State*, 581 So. 2d 1216 (Ala. Crim. App. 1991).  This appears to be consistent with the majority of other jurisdictions that have considered this question.  *See United States ex rel. Guest v. Page*, (No. 95 C 5034, March 23, 3004) (N.D. Ill. 2004) (not published in F.Supp.); *United States v. Simone*, 931 F.2d 1186 (7th Cir. 1991); *People v. Johnson*, 128 Ill.2d 253, 131 Ill. Dec. 562, 538 N.E.2d 1118 (1989); *People v. Walker*, 167 Mich.App. 377, 422 N.W.2d 8 (1988), overruled on other grounds by *People v. Mitchell*, 456 Mich. 693, 575 N.W.2d 283 (1998); *State v. Simpson*, (No. 19797, February 13, 2004) (Ohio Ct. App. 2004) (unpublished); *Brown v. State*, 866 S.W.2d 675, 681 (Tex. Ct. App. 1993).
>
> In this case, counsel did not concede guilt as to every element of the offense.  Specifically, the record shows that counsel contested the appellant's intent to kill the victims.  In fact, during closing argument, counsel argued that the appellant's lack of intent was evidenced by the fact that, when he left the victims' house, he knew that Lucille Moore was still alive.  (A.R. 1132.)[164]  Here, the appellant's attorneys were faced with the daunting task of representing a defendant who was absent without leave from the United States Navy, who was arrested while driving the victims' stolen vehicle, who was in possession of other items taken from the victims, and who confessed to savagely beating the victims with a barbell.  Both attorneys testified during the evidentiary hearing that the evidence against the appellant was overwhelming, and Downs testified that it was their decision to admit his participation in the murder to diffuse the overwhelming evidence against him.  Under these circumstances, we do not conclude that counsel's performance was deficient.

(Doc. 14, p. 74 (quoting *Taylor v. State*, 10 So. 3d 1037, 1058-59 (Ala. Crim. App. 2004))).

---

[164] (*See* Vol. 9, Tab. 14, p. 1132).  As a side, what the court was referring to by using the acronym "A.R." is unclear.

This court agrees with the decision of the Alabama Court of Criminal Appeals that counsel's performance was not deficient under *Strickland*. *See Taylor v. State*, 10 So. 3d at 1058-59. Taylor argues that by essentially conceding his guilt in five different ways during voir dire, counsel's performance was so lacking as to constitute a total denial to Taylor of his right to counsel under the *Cronic* standard, or was at least so unreasonable as to meet the *Strickland* standard. (Doc. 36-1, p. 72).

In support of his *Cronic* argument, Taylor cites *dicta* in *Lobosco v. Thomas*, 928 F.2d 1054, 1056 (11th Cir. 1991), in which the Eleventh Circuit discussed the holding in a prior case, *Francis v. Spraggins*, 720 F. 2d 1190 (11th Cir. 1983), cert. denied, 470 U.S. 1059 (1985), where the Eleventh Circuit held that trial counsel's concession of guilt without his client's consent *during counsel's closing argument*—not during voir dire—constituted ineffective assistance of counsel.[165]

However, in *Florida v. Nixon*, 543 U.S. 175, 192 (2004), the Supreme Court held that defense counsel's failure to obtain a defendant's express consent to a strategy of conceding guilt at the guilt phase of a capital trial did not automatically render counsel's performance deficient under *Cronic*. Furthermore, the Court held that "if counsel's strategy, given the evidence bearing on the defendant's guilt, satisfies the *Strickland* standard, that is the end of the matter. . ." 543 U.S. at 192. *Nixon* is directly on point here. Nixon, the defendant, had been convicted of murder, among other crimes, and sentenced to death. *Id*. at 175-76. In his habeas petition, Nixon alleged that his constitutional rights had been violated when his attorney conceded to guilt at the capital penalty

---

[165] The *Lobosco* court itself rejected the defendant Lobosco's ineffective assistance of counsel claim due to evidence that Lobosco consented to counsel's strategy to concede guilt to maintain credibility with the jury. *Id*. at 1056-57.

phase without Nixon's express consent.[166] *Id*. at 185.  The  Supreme Court upheld the attorney's

unilateral decision to proceed with his strategy to "concede guilt, thereby preserving his credibility

in urging leniency during the penalty phase," a strategy the Court deemed reasonable under

*Strickland* because of the weight of evidence against the defendant Nixon. *Id*. at 181, 192.

Taylor argues that his trial counsel's strategy of conceding guilt was "absurd." *(See* Doc. 36-

1, p. 73). But Taylor's attorneys were faced with a similar situation as the attorney in *Nixon*. As the

Criminal Court of Appeals noted in Taylor's case:

> Here, the appellant's attorneys were faced with the daunting task of
> representing a defendant who was absent without leave from the United States Navy,
> who was arrested while driving the victims' stolen vehicle, who was in possession
> of other items taken from the victims, and who confessed to savagely beating the
> victims with a barbell.  Both attorneys testified during the evidentiary hearing that the
> evidence against the appellant was overwhelming, and Downs testified that it was
> their decision to admit his participation in the murder to diffuse the overwhelming
> evidence against him.

*Taylor v. State*, 10 So. 3d at 1059. The statements made by Taylors' counsel to veniremembers

during voir dire reveal their strategy. For example:

> Mr. Hart: We expect in this case there will be evidence, of course, that he
> committed the murder - Mr. Taylor committed murder during an - intentional murder
> during a robbery. . .We expect that there will be evidence for you to consider that you
> could reasonably believe that there are two aggravating circumstances.

(R. Vol. 6, pp.673-74).

Mr. Hart then described the various mitigating circumstances in favor of his client, including his

---

[166] Nixon's attorney had repeatedly tried to get his consent to plead guilty, but Nixon refused to say anything
affirmative or negative in response to his attorney's statements. In fact, Nixon proved so uncooperative that he was
removed from the courtroom after making a scene, and was absent for the majority of the proceedings to avoid
prejudicing his own case. *Id*. at 181-82.

youth and family background, before continuing:

> Mr. Hart: . . .if the facts are assumed to be true as I've outlined them, is there anybody here who has a fixed opinion one way or the other as to whether that set of facts or those sets of facts would justify- Do you have a fixed opinion one way or the other, either in favor of death in the electric chair or in favor of Life Without Parole?

*Id*. at 675.

This exchange and the other citations to the record that Taylor claims to be concessions of guilt to the veniremembers demonstrate that counsel's strategy was to find and eliminate those prospective jurors who would only consider death, given the overwhelming evidence against Taylor, despite any mitigating circumstances. Just as in *Nixon*, the strategy of Taylor's counsel, even if not optimal, was at least reasonable given the circumstances they faced at the time.

Turning to the prejudice prong of *Strickland*, Taylor argues that

> With these representations about the evidence in the case, counsel essentially asked the prospective jurors to prejudge the guilt and penalty phases before any evidence was heard. Counsel were then unable to have those prospective jurors members removed for cause when they stated that they would impose the death sentence on the facts set forth by counsel without considering life.

(Doc. 36-1, p. 74). Taylor then asserts that "the Alabama Supreme Court upheld the trial court's refusal to excuse for cause three veniremembers who openly stated their bias in favor of the death penalty, finding that it was defense counsel who had biased them with their gruesome account of the crime." *Id*. at 75 (citing *State v. Taylor*, 666 So. 2d at 47; *Ex parte Taylor*, 666 So. 2d at 82 (Ala. 1995)).

Taylor's characterization of the state courts' holdings is misguided. The Court of Criminal Appeals actually held:

252

Our review of the record convinces us that veniremembers Maise, Lasseter, and Nance would not automatically impose the death penalty in every capital case, and that their indication that they would impose it in this particular case was based upon the facts provided by defense counsel on voir dire. In effect, these veniremembers were stating that they would consider any mitigating factors but based upon the facts provided by counsel on voir dire examination they would recommend death if they had to make a decision *at that time*. For this reason, we find no error in the trial court's failure to grant the appellant's challenge for cause as to each of these three veniremembers.

*Taylor v. State*, 666 So. 2d at 27. As the court stated, nothing indicated that these veniremembers would necessarily impose death at the end of the proceedings, and thus Taylor can make no affirmative prejudice argument under *Strickland*, regardless of his counsel's role in prompting the responses of the veniremembers.

In conclusion, the respective rulings of the state courts on each of Taylor's ineffective assistance sub-claims regarding voir dire were reasonable under *Strickland*. This sub-claim  is, therefore, due to be denied.

### 4.    *Guilt Phase.  (Doc. 1, pp. 39-42; Doc. 36-1, pp. 75-93).*

As to the guilt phase, Taylor argues that his trial counsel were ineffective in five general respects, four of which contain sub-parts.

#### a.    Taylor's Confession & Related Statements to Law Enforcement Officers.  (Doc. 1, pp. 39-40; Doc. 36-1, pp. 75-80).

Because much, if not all, of this sub-claim merely reproduces arguments already raised above in the context of Taylor's ineffective assistance sub-claims during his pre-trial suppression hearing,[167] reiterating that analysis here does nothing but add length to an already lengthy opinion.

---

[167] (*Compare* Doc. 1, p. 37, *and* Doc. 36-1, pp. 58-61, *with* Doc. 1, pp. 39-40, *and* Doc. 36-1, pp. 75-80).

Therefore, the court will direct the reader's attention to its preceding discussion of Taylor's confession and his related statements to law enforcement officers. *See supra* Part XIX(C)(2)(b). And to the extent Taylor raises aspects of this sub-claim only as to his counsel's alleged deficiencies during the guilt phase, those aspects were added above and noted accordingly. In other words, the court combined Taylor's suppression hearing arguments with his nearly identical guilt phase arguments thereby addressing all of Taylor's contentions regarding his confession and related statements to law enforcement officers in one all-encompassing section. In doing so, the court found those arguments to lack merit.

   b. Failure to Object to Multiple Instances of Misconduct by the District Attorney During the Trial Portion of the Guilt Phase. (Doc. 1, pp. 40-41; Doc. 36-1, pp. 80-87).

 In this portion of Taylor's ineffective assistance claim, he asserts that his trial "counsel failed to object to numerous instances of prosecutorial overreaching." (Doc. 36-1, p. 80). He argues:

>  It is fundamental that a prosecutor may not make misleading, inflammatory or prejudicial statements so as to make the resulting conviction a denial of due process. *Darden v. Wainwright*, 477 U.S. 168, 181-82 (1986); *Arthur v. State*, 575 So. 2d 1165, 1182 (Ala. Crim. App. 1990). The cumulative effect of pervasive and persistent misconduct by the prosecutor may result in the denial of a fair trial. *Berger v. United States*, 295 U.S. 78, 89 (1935). Counsel's failure to object to the pervasive pattern of prejudicial and inflammatory remarks by the prosecutor was ineffective. *Washington v. Hofbauer*, 228 F.3d 689, 702 (6th Cir. 2000).

*Id.* at 82. By failing to object to the six categories of statements listed below, Taylor argues that his counsel "contraven[ed ] their duty, especially in a capital case, to object to all prejudicial error." *Id.* at 80-81. He further argues that his "counsel was obliged to object to all of this," that is, the

particular instances listed below, because "'[b]eing merely a spectator to the state's presentation of evidence will not meet the standard for effective assistance of counsel.'" *Id.* at 87 (quoting *Smith v. Wainwright*, 777 F.2d 609, 617 (11th Cir. 1985)).

In this ineffective assistance sub-claim, Taylor claims his trial counsel was deficient for failing to object to six categories of statements made during trial and during the prosecutor's closing arguments, two of which contain sub-parts:

> Counsel did not object to: [(1)] the prosecutor's misstatements of fact about purported evidence of premeditation; [(2)] introduction of 49 autopsy photos; [(3)] testimony of the medical examiner that Ernest Moore had defensive wounds and was a small, frail old man and Lucille Moore was feeble; [(4)] victim impact testimony from the victim's son; [(5)] the prosecutor's statements [(a)] that there was additional evidence he was not allowed to present, [(b)] that proof beyond a reasonable doubt was proof to "a moral certainty," [(c)] that a reasonable doubt must be a "good" reason, and [(d)] and that the jury must do its duty, "let's go find him guilty," and "we'll come back and do the rest of what needs to be done"; [and (6)] the prosecutor's [(a)] pervasive leading and coaching of witnesses, [(b)] elicitation of facts of which the witness had no personal knowledge, [(c)] bolstering of testimony, and [(d)] the prosecutor's making factual representations, including false ones, to the jury.

(Doc. 1, pp. 40-41 (internal citations omitted); *see also* Doc. 36-1, pp. 81-82 (same)).[168]

Respondents argue that Taylor's claims regarding the prosecutor's allegedly improper remarks during his closing argument are procedurally defaulted. As this court discussed above in Part XIX(B) of this opinion, these claims have not been procedurally defaulted from federal habeas

---

[168] The underlying substantive claim concerning the State's introduction of the autopsy photographs and Dr. Embry's corresponding testimony—numbers two and three above—is discussed in Part VII *supra*. Further, the underlying substantive claim concerning the prosecutor's elicitation of victim impact evidence from the Moores' son—number four above—is discussed in Part VIII *supra*. And last, but not least, the underlying substantive claim concerning the prosecutor's explanation of reasonable doubt—number five, parts (b) and (c) above—is discussed in Part IX *supra*. Finally, the reader is directed to the court's prior discussion of these claims for a merits analysis, *see* Parts VII, VIII, and IX *supra*, even though the claims will be discussed briefly here in the context of Taylor's ineffective assistance claim.

review. To the extent that Respondents address the merits on this claim, they merely deny that Taylor is entitled to relief on this claim.  (*Cf.* Doc. 13, p. 80 ("All of the averments in Taylor's habeas petition, which are not expressly admitted, are denied."); *see also id.* ("Taylor's petition for writ of habeas corpus should be denied.")).

This court will now address each category of prosecutorial misconduct, and his trial counsel's alleged subsequent failure to object to such misconduct, in turn. The court has numbered and lettered parts of the opinion where it would be helpful to the reader.

(1.)     First, Taylor faults his trial counsel for not objecting to the "prosecutor's manipulating and misstating the facts to argue that the crime was premeditated."  (Doc. 36-1, p. 82 (internal citations to the record omitted)).  This omission was ineffective, Taylor argues, because "[t]here was no evidence that Mr. Taylor went to the Moores' house with the intent to kill them." *Id*.  Moreover, Taylor asserts that his counsel's silence at trial "was particularly damaging when they knew that lack of intent was their only defense." *Id.*

This issue was addressed in Part XV of this opinion, *supra*, in which this court addressed Taylor's claim that the prosecutor's various instances of misconduct denied him a fair trial. There, this court held that the prosecutor's statement that Taylor went to the Moore's house with the intent to kill them constituted a reasonable, and thus permissible, inference based on the evidence. Because the prosecutor's statements were permissible, it was not prejudicial error under *Strickland* for Taylor's counsel to fail to object to them. The circuit court's application of *Strickland* was reasonable. (See Rule 32 C.R., Vol. 38, Tab 90, p. 45) ("Because there was nothing improper about the comment, counsel could not have been ineffective for failing to object to it.).

256

(2.)     Second, Taylor argues that his counsel were ineffective for failing to object to the State's introduction of forty-nine autopsy photos because the photos were admitted into evidence "without the slightest showing that these photos were relevant to a material issue or that their probative value outweighed the extremely prejudicial effect."  (Doc. 36-1, p. 83 (internal citations to the record omitted)).  He contends that "[s]tate courts have been almost universal in their condemnation of admitting photographs of the victim's body after it has been subjected to autopsy procedures as inflammatory, cumulative and irrelevant." *Id.* at 83 n. 23 (citing *Ex parte Perkins*, 808 So. 2d 1143, 1146 (Ala. 2001) (Johnstone, J., concurring) (collecting cases)).

The court addressed this issue in Part VIII of this opinion, *supra*, in which this court addressed Taylor's claim that the trial court's allowance of the photographs and testimony emphasizing their gruesome nature violated Taylor's right to a fair trial. There, this court held that the autopsy photographs were relevant to the issue of Taylor's intent to kill, as they portray the extent of the victims' injuries. This determination is consistent with Eleventh Circuit precedent. *See*, *e.g.*, *United States v. DeParias*, 805 F. 2d 1447, 1453 (11th Cir. 1986) ("Photographs of homicide victims are relevant in showing the identity of the victim, the manner of death, the murder weapon, or any other element of the crime."). Because the photographs were admissible, his counsel did not commit prejudicial error under *Strickland* by failing to object to their admission.

(3.)     Third, Taylor argues that his counsel failed to object to certain aspects of the State's medical examiner's, Dr. Joseph Embry, testimony.   (Doc. 36-1, p. 83).  In particular, Taylor identifies three of Dr. Embry's comments that counsel failed to object to, which he claims the prosecutor initially stated and then "induced Dr. Embry to agree" to. *Id.*  Specifically, Taylor claims his counsel was ineffective for not objecting to Dr. Embry's statements: "[(1)] that some of Mr.

Moore's wounds were received from fighting off his assailant; [(2)] that Mr. Moore was 'a frail, little old man,'; and [(3)] that Mrs. Moore was 'feeble.'" *Id.* (internal citations to the record omitted). As a consequence of his counsel's failure, Taylor contends the prosecution not only used these comments in summation, but also "blatantly embellished Dr. Embry's testimony." *Id.* (internal citations to the record omitted).

This court also addressed this issue in Part VIII of this opinion, *supra*. There, this court held that, after reviewing Dr. Embry's testimony, his testimony merely provided context to the photographs, discussed the relevant aspects of the autopsy procedure, and explained the extent of the Moores' injuries. Therefore, because his testimony was not objectionable, Taylor's counsel did not commit prejudicial error under *Strickland* for failing to object to it.

(4.)    Fourth, Taylor argues that his counsel were ineffective for permitting the state to elicit victim-impact testimony from the Moores' son.   (Doc. 36-1, pp. 83-84 (internal citations to the record omitted)).  He then asserts: "[c]ompetent counsel would have known that such evidence at the guilt phase is improperly prejudicial because it diverts the jury from considering the only issue before it, i.e., whether the defendant committed the crime." *Id.* at 84 (citing *Ex parte Rieber*, 663 So. 2d 999, 1005 (Ala. 1995)).  This claim is also included within both Taylor's Petition and Reply Brief as a separate ground for relief.  (*See* Doc. 1, pp. 14-15; Doc. 36-1, pp. 266-71).

This court addressed this issue in Part VII of this opinion, *supra*, in which the court addressed Taylor's claim that the trial court's allowance of victim-impact evidence in the guilt phase of the trial violated Taylor's right to due process and a fair trial. There, this court held that the three types of victim-impact evidence admitted by the court were not "wholly irrelevant" as

Taylor claims, but that each piece of evidence either had independent relevance, or that its admission was not so objectionable as to "infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181. Therefore, Taylor's trial counsel did not commit prejudicial error under *Strickland* by failing to object to the admission of this evidence.

(5.)     Fifth, Taylor complains of his counsel's handling of what can loosely be described as various evidentiary matters.  (Doc. 36-1, pp. 84-86).  This category can be further divided into four sub-parts.  *See id.* at 81-82, 84-86.

(a.)     In sub-part (a), Taylor contends that his trial counsel was "ineffective for failing to object to the prosecutor's remark that there was evidence that he wasn't allowed to 'go into.'"  (Doc. 36-1, p. 84 (internal citations to the record omitted)).  He asserts that "it is reversible error for a prosecutor to imply that there was evidence he would have introduced but for the evidentiary rules." *Id.* (citing *Ex parte Washington*, 507 So. 2d 1360, 1362 (Ala. 1986)).[169]

The circuit court held that because Taylor failed to produce any evidence on this claim, he failed to affirmatively prove prejudicial error under *Strickland*. (Rule 32 C.R., Vol. 37, Tab 84, p. 49). While *Ex parte Washington* may state the standard for reversible error when a prosecutor implies that the State has additional evidence it is not allowed to present, the standard this court must look to is whether the circuit court's application of *Strickland* was unreasonable. *See*

_____

[169] In a conjunction with sub-part (a), Taylor also contends that his "[c]ounsel were ineffective for failing to object to the prosecutor's fabricated and inflammatory embellishments on the facts of the crime."  (Doc. 36-1, p. 84 (citing *Darden*, 477 U.S. at 190 n. 2)).  This claim is completely novel to Taylor's Reply Brief as it does not appear anywhere in his initial Petition.  (*Compare* Doc. 1, pp. 40-41, *with* Doc. 36-1, p. 84). Therefore, this court will not address this sub-claim, as it is not properly before this court. *See* Rule 2(c), Rules Governing Habeas Corpus Cases Under Section 2254 ("The petitioner must: (1) specify all the grounds for relief available to the petitioner. . ."); *see also Cooper v. Sec'y, Dept. of Corrections*, No. 8:08-CV-5-T-27MAP, 2011 WL 795812, at *7 (M.D. Fla. Mar. 1, 2011) (holding that, under Rule 2(c), a habeas petitioner may not later raise claims not contained in his original petition).

*Harrington*, 131 S. Ct. at 785. Because a petitioner must affirmatively prove both deficient performance and prejudice under *Strickland*, the circuit court was not unreasonable to deny Taylor's claim where he failed to produce any evidence of prejudice.

(b.)     In sub-part (b), Taylor argues that his "[c]ounsel were ineffective for failing to object to the prosecutor's remarks directed towards reducing the State's burden of proof by encouraging the jury to put aside any legal definition of reasonable doubt . . . and substitute their own personal moral code."[170]   (Doc. 36-1, pp. 84-85 (emphasis added) (internal citations to the record omitted)).  He asserts that the Supreme Court, in *Cage v. Louisiana*, 498 U.S. 39, 41 (1990), "specifically condemned" the "use of definitions such as 'to a moral certainty' to suggest to a jury that it could find guilt based on a lower standard than required by the Due Process Clause" of the United States Constitution.  *Id.* at 85.  Taylor concludes by stating that this "is reversible error unless 'there is no reasonable likelihood that the jury would have understood moral certainty to be disassociated from the evidence in the case.'"  *Id.* (quoting *Victor v. Nebraska*, 511 U.S. 1, 16 (1994)).

       To the extent that this particular sub-claim was raised in Taylor's Rule 32 petition, it, too, is without merit. This court addressed this issue in Part IX of this opinion, *supra*. There, this court found that the jury instructions on the burden of proof were constitutionally sufficient, and that Taylor demonstrated no reasonable likelihood that the jurors were confused as to the appropriate standard. Thus, it was not prejudicial error under *Strickland* for Taylor's counsel to fail to object to the prosecutor's statement.

---

[170] For the first time in his Reply Brief, Taylor also argues that "[c]ounsel were ineffective for failing to object to the prosecutor's reversing the burden of proof regarding the weighing of the aggravating and mitigating circumstances."   (Doc. 36-1, p. 86 (citing Ala. Code § 13A-5-46(e)(2))).

(c.)    In sub-part (c), Taylor takes issue with another definition of reasonable doubt stated by the prosecutor.  He argues that "[c]ounsel were ineffective for failing to object to the prosecutor's repeated definition of reasonable doubt as requiring a <u>good</u> reason, which overstated the constitutionally required quantity of doubt by implying that it must be articulable to be reasonable." (Doc. 36-1, p. 85 (emphasis in italics added) (citing *Sullivan v. Louisiana*, 508 U.S. 275, 280-81 (1993))).  In other words and in contrast to sub-part (b), which discusses the prosecution's alleged attempt to lower the State's burden of proof by persuading the jury implement their own personal standard, sub-part (c) focuses on the prosecution's alleged attempt to make it more difficult for Taylor to establish reasonable doubt.

This court addressed this issue in Part IX of this opinion, *supra*. There, this court found that the jury instructions on the burden of proof were constitutionally sufficient, and that no reasonable likelihood surfaced that the jurors were confused as to the appropriate standard. Thus, it was not unreasonable for Taylor's counsel to fail to object to the prosecutor's statement.

The circuit court found that the prosecutor's definition of reasonable doubt was not improper. (Rule 32 C.R., Vol. 37, Tab 84, p. 47). The circuit court explained, "the Court instructed the jury after all the guilt-phase closing arguments that the statements of the attorneys were not evidence and that they 'should disregard any remark, statement, or argument which is not supported by the evidence or by the law as given to you by the Court.'" *Id*. (citing R. 1138). The circuit court then noted that "Taylor failed to present any evidence that the jury did not follow the court's instructions," implying that he failed to demonstrate prejudice as is required under *Strickland*. *Id*. This court finds that the state court's decision was not an unreasonable application of *Strickland*.

261

(d.)     In sub-part (d), Taylor contends that his "[c]ounsel were further ineffective for failing to object to the prosecutor telling the jury to do its duty."   (Doc. 36-1, p. 85).  He argues that such statements are improper, like here, when "the prosecutor clearly implied that the jury's duty can only be to reach a guilty verdict."  *Id.* at 85-86 (internal citations to the record omitted).

The circuit court rejected this sub-claim because Taylor failed to produce any evidence that this argument was a misstatement of the law. "In fact," stated the circuit court, "[t]he Court of Criminal Appeals held that was the jury's duty to convict a defendant of the charge in the indictment if [they] found the defendant guilty beyond a reasonable doubt." (Rule 32 C.R., Vol. 37, Tab 84, p. 49-50). This issue was addressed in Part XV of this opinion, *supra*. There, this court held that Taylor presented no evidence that such a statement by the prosecutor "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Therefore, because Taylor has failed to produce any legal support for his argument that the prosecutor's statement was improper or prejudiced him, he has failed to demonstrate that his counsel committed prejudicial error under *Strickland* for not objecting to it.

(6.)     Sixth, Taylor faults his trial counsel failing to object to multiple allegedly improper acts relating to the prosecution's handling of witnesses.   (Doc. 36-1, p. 86).

(a.)     In sub-part (a), Taylor argues that his "[c]ounsel were ineffective for failing to object to the prosecutor's egregious leading and coaching of witnesses."   (Doc. 36-1, p. 86 (internal citations to the record omitted)).

(b.)     In sub-part (b), Taylor argues that his "[c]ounsel were ineffective for failing to object to the prosecutor[] . . . eliciting testimony regarding facts about which the witness had no personal

262

knowledge."   (Doc. 36-1, p. 86 (internal citations to the record omitted)).

(c.)      In sub-part (c), Taylor argues that his "[c]ounsel were ineffective for failing to object to the prosecutor[] . . . allowing witnesses to bolster one another's testimony."  (Doc. 36-1, p. 86 (internal citations to the record omitted)).   This argument elaborates upon an argument initially raised in Taylor's habeas petition, *i.e.*, "the prosecutor's . . . bolstering of testimony."  (Doc. 1, p. 41 (internal citations to the record omitted)).   In both briefs, Taylor cites the same pages of the trial transcript.[171]

(d.)      In sub-part (d), Taylor argues that his "[c]ounsel were ineffective for failing to object to the prosecutor[] . . . injecting facts and virtually testifying in an effort to establish a chain of custody."  (Doc. 36-1, p. 86 (internal citations to the record omitted)).   Unlike Taylor's minor elaboration in sub-part (c), however, his Reply Brief completely changes the tenor of this argument because his habeas petition merely stated that his "[c]ounsel did not object to . . . the prosecutions making factual representations, including false ones, to the jury."  (Doc. 1, p. 41 (internal citations to the record omitted)).   The pages cited in support of both are the same, save one additional page of the trial transcript cited within Taylor's Reply Brief.[172]

The circuit court considered these four sub-claims together, and held that Taylor had "failed to carry his burden of affirmatively proving that these instances were prejudicial or that, if trial counsel had objected to this testimony, the outcome of his trial would have been different as required by <u>Strickland</u>." (Rule 32 C.R., Vol. 37, Tab 84, p. 45). This court agrees. The only citation

---

[171] In both Taylor's Petition, (*see* Doc. 1, p. 41), and Reply Brief, (*see* Doc. 36-1, pp. 81, 86), he cites the same pages of the trial transcript to support his bolstering claim.  (*See* R. Vol. 8, pp. 910, 1034).

[172] (*Compare* Doc. 1, p. 41, *with* Doc. 36-1, p. 86).  For the additional page from the trial transcript cited within Taylor's Reply Brief, see R. Vol. 8, p. 1034.

to federal authority on this issue in Taylor's Reply Brief is to *Berger*, cited for the proposition that misconduct by the prosecutor, if "pronounced and persistent, with a probable cumulative effect upon the jury," warrants a new trial.  295 U.S. at 89. Taylor also further asserts that defense counsel is obligated to object to every instance of possible prosecutor misconduct, apparently to prevent a harmful cumulative effect. (*See* Doc. 36-1, p. 86-87). Such argument has no basis in federal or state law, and Taylor provides no further legal or factual support for the assertion that his attorney was unreasonable in failing to object to these various instances of prosecutorial misconduct. This court finds the state court was reasonable in denying this claim for ineffective assistance of counsel.

(e.)  In sub-part (e), Taylor for the first time in his Reply Brief argues that his trial "[c]ounsel were ineffective for failing to object to the prosecutor[] . . . repeatedly supplying the testimony and simply having his witnesses affirm his assertions, thereby making him an unsworn witness in violation of Mr. Taylor's Sixth Amendment right to confrontation."   (Doc. 36-1, p. 86 (internal citations to the record omitted)).  After comparing this sub-part with sub-parts (a) through (d) above, it appears that sub-part (e) results from combing sub-parts (a) and (d), both in terms of the substance of those claims as well as the pages of the trial transcript cited in support.[173]  (*See* Doc. 36-1, pp. 81-82, 86).  On the other hand, Taylor's assertion that the prosecutor was essentially "an unsworn witness" that resulted in a violation of his Sixth Amendment right to confrontation is entirely novel to his Reply Brief and was never raised within his habeas petition.  (*See* Doc. 1, pp.

---

[173] Every page of the trial transcript Taylor cites in support of sub-part (e) was also cited for either sub-part(a) or (d), (*see* Doc. 36-1, pp. 81-82, 86), except for one undecipherable reference to pages "862-44" of the trial transcript. On the one hand, Taylor could be citing pages 862-64.  On the other, he could be citing pages 842-44.  Either way, neither were cited previously for sub-parts (a) through (d) in either Taylor's Petition or Reply Brief.  (*Compare* Doc. 1, pp. 40-41, *with* Doc. 36-1, pp. 81-82).  Nor are they cited in any other portion of this sub-claim in general.  (*See* Doc. 1, pp. 40-41; Doc. 36-1, pp. 80-87).

40-41; Doc. 36-1, p. 86). As such, this court will not address this particular sub-claim, as it is not properly before this court. *See* Rule 2(c), Rules Governing Habeas Corpus Cases Under Section 2254 ("The petitioner must: (1) specify all the grounds for relief available to the petitioner. . ."); *see also Cooper v. Sec'y, Dept. of Corrections*, No. 8:08-CV-5-T-27MAP, 2011 WL 795812, at *7 (M.D. Fla. Mar. 1, 2011) (holding that, under Rule 2(c), a habeas petitioner may not later raise claims not contained in his original petition)

<u>c.</u>    Counsel's Inadequacies During the Trial Portion of the Guilt Phase. (Doc. 1, p. 41; Doc. 36-1, pp. 87-88, 92).

This portion of Taylor's ineffective assistance of counsel claim contains three distinct sub-claims: "[c]ounsel [(1)] did not object to excusing prosecution witnesses from the rule on witness sequestration, [(2)] did not cross-examine ten of fifteen witnesses, [(3)] but did elicit that Mr. Taylor was not disturbed by drugs or alcohol, and was not intoxicated at the time of the confession." (Doc. 1, p. 41 (internal citations omitted); *see also* Doc. 36-1, p. 92 (same)).

First, Taylor argues:

> [C]ounsel failed to object to excusing prosecution witnesses from the rule on witness sequestration, enabling Officer Garigues to hear the testimony of most of the other prosecution witnesses at trial before giving his own testimony, thereby permitting him to bolster their testimony rather than give independent evidence, and to conform his testimony to theirs.

(Doc. 36-1, p. 87 (internal citations to the record omitted)).

Second, Taylor asserts that "[c]ounsel failed to cross-examine ten of the fifteen witnesses called by the prosecution to establish Mr. Taylor's guilt of a capital offense." (Doc. 36-1, p. 87 (internal citations to the record omitted)).

Third, and related to the sub-claim (2) above, Taylor claims that "[c]ounsel's cross-

265

examination of the remaining five witnesses," *i.e.*, the witnesses proffered by the prosecution at the guilt phase minus the ten prosecution witnesses Taylor's counsel did not cross-examine, "served only to elicit facts far more helpful to the prosecution than the defense." (Doc. 36-1, p. 87 (citations omitted)). Taylor cites the following for examples of the damaging facts allegedly elicited by his trial counsel from prosecution witnesses during the guilt phase: (i) "Mr. Taylor [was] not disturbed by drugs or alcohol"; (ii) "State witness had ample time to observe;" and (iii) "Mr. Taylor [was] not intoxicated at the time of confession." *Id*. at 87-88 (internal citations to the record omitted).[174]

Taylor offers no legal authority whatsoever in support of these three sub-claims. (See Doc. 36-1, pp. 87-88). The same was apparently true at the Rule 32 proceedings. The circuit court stated:

> Taylor failed to call any of the State's witnesses to testify at his evidentiary hearing or proffer to the Court what questions trial counsel could have asked during cross-examination that would have caused the outcome of his trial to be different. See, McNair v. State, 706 So. 2d 828, 843 (Ala. Crim. App. 1997); see also, Callahan v. State, 767 So. 2d 380, 388 (Ala. Crim. App. 1999). . .
>
> . . .this Court finds that Taylor has failed to meet his burden of affirmatively proving that trial counsel's performance was deficient or that he was prejudiced as required by Strickland.

(Rule 32 C.R., Vol. 37, Tab 84, p. 54). Given the utter lack of legal argument or factual support on this issue, this court finds that the state court's application of *Strickland* was reasonable, and this sub-claim is due to be denied.

---

[174] The three examples cited in Taylor's Reply Brief do not mirror those cited in his Petition. (*Compare* Doc. 36-1, pp. 87-88, *with* Doc. 1, p. 41). In particular, example (i) cites pages of the trial transcript, (*see* Doc. 36-1, p. 88 (citing R. Vol. 7, pp. 821, 840-41)), that are not cited within Taylor's Petition, (*see* Doc. 1, p. 41 (citing, for examples (i)-(iii) above, R. Vols. 7-8, pp. 858-59, 928)). Further, example (ii)—"State witness had ample time to observe"—adds an entirely novel claim that is not included within Taylor's Petition. (*Compare* Doc. 1, p. 41, *with* Doc. 36-1, p. 87).

        <u>d.</u>      <u>Failure to Object to the Trial Court's Charges, *i.e.*, Instructions, to the Jury.  (Doc. 1, pp. 41-42; Doc. 36-1, pp. 88-92).</u>

This portion of Taylor's ineffective assistance claim contains three distinct sub-claims:

> Counsel did not [(1)] object to the court's charge on murder during robbery, which failed to explain that the intent to rob must be formed before the killing, or [(2)] request a charge of no adverse inference from Mr. Taylor's failure to testify [counsel were asked at the hearing and had no strategic explanation for this omission],  and [(3)] did not provide a factual basis or applicable legal authorities to support their argument for a lesser included offense instruction.

(Doc. 1, pp. 41-42 (internal citations omitted) (explanatory brackets in original)).

First, Taylor argues that "[c]ounsel failed to object to the trial court's instruction on murder during robbery, which neglected to explain that the intention to rob must be formed prior to the killing." (Doc. 36-1, pp. 90-91 (internal citations to the record omitted)).  As a result, he argues that "[t]he jury could not be expected to discern the crucial difference between murder in furtherance of a robbery, and theft as an afterthought to the killing, from the unelaborated phrases 'in connection with' or 'during a robbery,' which are equally applicable to both scenarios." *Id.* at 91 (footnote omitted) (citing *Woods v. State*, 789 So. 2d 896, 932 (Ala. Crim. App. 2001)).[175]

The circuit court rejected this ineffective assistance of counsel sub-claim because it found that the court's instruction "was not erroneous," and, therefore, Taylor's counsel could not be faulted for not objecting to it. The circuit court stated:

In part, the court instructed the jury that:

---

[175] In a footnote following this statement, Taylor contends that "[t]he post-conviction hearing court precluded [him] from inquiring about guilt phase ineffective assistance issues, such as this one," *i.e.*, claims such as his "[c]ounsel failed to object to the trial court's instruction on murder during robbery."  (Doc. 36-1, pp. 90-91 & n. 26 (internal citations to the record omitted))

> The fact that someone dies or is killed during the course of the robbery does not automatically prove [the intent to kill]. The intent to kill must be real and specific in order to invoke the Capital statute. To be a Capital offense the Murder o[f] the intentional type must have been committed during the Robbery of the First Degree.
>
> During means in the connection of or in connection with or in the immediate flight from the commission of the Robbery in the First Degree.

(R. 1146) The plain meaning of the Court's instructions indicates that the jury was properly informed about the formation of the intent to rob the victims.

(Rule 32 C.R., Vol. 37, Tab 84, p. 62-63).

In support of his argument, Taylor cites *Woods v. State*, 789 So. 2d 896, 932 (Ala. Crim. App. 2001), as an example of a trial court emphasizing the "distinction" between "murder in furtherance of a robbery and theft as an afterthought to the killing." (Doc. 36-1, p. 91). However, the trial court in *Woods* used the *exact same definition* of the term "during" as did the trial court in Taylor's case. ("During means in the course of, or in connection with, or in immediate flight from the commission of - in this case, it is the commission of robbery in the first degree." *Woods*, 789 So. 2d at 932.)  Taylor offers this court no further legal support for his argument; therefore, this court finds that the circuit court's application of *Strickland* was reasonable.

Second, Taylor asserts that his "[c]ounsel also failed to request the trial court to instruct the jury not to draw any adverse inference from the fact that Mr. Taylor did not testify." (Doc. 36-1, p. 91 (internal citations to the record omitted)).  He claims that "[t]here can be no strategic reason for failing to request that charge, nor did counsel proffer one when asked about this at the post-conviction hearing." *Id.* (citing Rule 32 R. Vol. 24, pp. 378-79, 457). "[C]ombined with counsel's failure to object to the prosecutor's improper references to Mr. Taylor's silence," Taylor argues this

omission "served to deny Mr. Taylor his Fifth Amendment right to remain silent and not testify." *Id.*

Regarding the state collateral court's holding, Taylor asserts that the Alabama Court of Criminal Appeals' holding did not discuss this issue, but that the Rule 32 circuit court, before remand, concluded his trial "counsel's failure to proffer any explanation at the [Rule 32 evidentiary] hearing permits the court to 'assume' that this omission was a 'reasonable professional judgment.'" *Id.* at 91-92 (quoting Rule 32 C.R. Vol. 37, Tab. 84, pp. 63-64). Taylor argues that "[t]his assumption is both unsupported by the record and misapplies the <u>Strickland</u> standard. In the absence of any proffered strategic explanation from trial counsel, the Order's attempt to substitute its own strained rationalizations is a misapplication of the <u>Strickland</u> test." *Id.* at 92 (citing Rule 32 C.R. Vol. 37, Tab. 84, p. 64).

Inasmuch as Taylor claims the Court of Criminal Appeals did not address this issue, he is correct; neither that court's opinion before the Alabama Supreme Court's partial reversal, (*see* Rule 32 C.R. Vol. 37, Tab.85), nor its opinions on return to remand, (*see* Rule 32 C.R. Vol. 37, Tab. 87; Vol. 38, Tabs. 89, 91), addressed this issue. And this omission is true despite the fact that Taylor raised the issue within his appellate brief before the Court of Criminal Appeals. (*See* Rule 32 C.R. Vol. 28, Tab. 63, pp. 91-92).

Thus, the Rule 32 circuit court's order before the Alabama Supreme Court's partial reversal and remand is the last reasoned state court opinion on this subject. (*See* Rule 32 C.R. Vol. 37, Tab. 84, pp. 63-64). There, the Rule 32 circuit court found:

120) In paragraph 67 on page 26 of Taylor's second petition, he alleges that trial counsel was ineffective for failing to request the Court give a "no adverse

269

inference" instruction regarding him not testifying. Taylor also alleges that trial counsel was ineffective for not requesting a jury charge expressly stating that the jury could evaluate the voluntariness and reliability of his statement. At the evidentiary hearing, trial counsel did not say, nor w[ ]ere they asked, why they did not request a "no adverse inference" instruction. Neither were trial counsel asked about why they did not request a jury instruction expressly telling the jury that they could evaluate the voluntariness and reliability of Taylor's statement. Because there was no evidence elicited from trial counsel about why they did not request these charges, the Court will assume that trial counsel's decision was based on reasonable professional judgment. See Chandler v. United States, 218 F.3d at 1314 n. 15. Taylor has failed to carry his burden of affirmatively proving that trial counsel's performance was deficient or that he was prejudiced as required by Strickland. See also, Rule 32.3, ARCrP. Therefore, these allegations are without merit and are denied by the Court.

121) Moreover, the Court finds that trial counsel's failure to request a no adverse inference instruction may have been a strategic choice. The Court of Criminal Appeals has held that:

> "Although defense counsel did not request a final instruction regarding the petitioner's failure to testify, we note that defense counsel may have considered that the giving of a 'no adverse inference' instruction might have drawn undue emphasis on the fact that petitioner did not testify. In any event, this Court will not speculate on what may have been the most advantageous strategy in a particular case. . . ."

Van Evey v. State, 499 N.E.2d 245, 247 (Ind. 1986).

Broughton v. State, 570 So.2d 1265, 1269 (Ala. Crim. App. 1990). Given the overwhelming evidence against Taylor, trial counsel not requesting that the Court give a no adverse inference charge certainly could have been a reasonable strategy.

122) Likewise, not requesting a charge that the jury could evaluate the voluntariness and reliability of Taylor's statement could have been a strategic choice by trial counsel so that the jury would not give undue emphasis to the fact that Taylor did not testify at trial.

(Rule 32 C.R. Vol. 37, Tab. 84, pp. 63-64) (internal citations to the record omitted). The state court opinion speaks for itself, and this court finds that the circuit court's application of *Strickland* was reasonable.

Third, Taylor argues that "[c]ounsel failed to effectively argue that Mr. Taylor was entitled to jury instructions for lesser included charges of non-capital intentional murder and manslaughter

based on lack of intent."[176]   (Doc. 36-1, p. 88 (internal citations to the record omitted)).   Two

purported deficiencies underlie Taylor's argument.   The first is that, "although counsel vehemently

argued to the trial court as to why Higdon's testimony, purportedly establishing intent, should be

disbelieved, counsel failed to impeach or challenge Higdon before the jury." *Id.* The second is that

counsel failed to argue how "it is well-settled State and Federal law that a lesser included charge

*must* be given in a capital case if there is a rational view of the evidence to support it." *Id.* at 88-89

(emphasis in original) (citing *Spaziano v. Florida*, 468 U.S. 447, 455 (1984); *Beck v. Alabama*, 447

U.S. 625 (1980);  *Ex parte McCall*, 594 So. 2d 628, 629 (Ala. 1991)).

"[I]f counsel had known and used the applicable law," Taylor argues, "they would have been

able to rebut the prosecutor's incorrect arguments." *Id.* at 89 (internal citations to the record

omitted).   From Taylor's view of the evidence, "a reasonable doubt as to intent would have

supported a lesser charge of felony murder." *Id.* (citing Ala. Code § 13A-6-2(a)(3)).   And "[a]

reasonable doubt as to both intent and whether the robbery was in furtherance of the killing would

have supported a lesser charge of manslaughter." *Id.* (citing Ala. Code. § 13A-6-3).

Taylor then turns to the state collateral courts' disposition of this claim.   He argues:

> The Court of Criminal Appeals rejected this aspect of the Strickland claim by
> adopting the Circuit Court's previous conclusion that any claim of prejudice under
> Strickland was foreclosed by the appellate court's previous determination, on direct
> appeal, that there was "no rational basis for a verdict convicting the defendant of
> felony murder."

---

[176]   The underlying substantive claim concerning Taylor's due process right to a jury instruction on the lesser included offense of felony murder is discussed in Part VI *supra*, which corresponds to "Ground VI" in Taylor's Petition. (*See* Doc. 1, pp. 13-14; *see also* Doc. 36-1, pp. 137-52).   There, Taylor claims: "The court's refusal to instruct the jury on the lesser included offense of felony murder, which was supported by a reasonable view of the evidence, denied Mr. Taylor due process under the rule stated in *Beck v. Alabama*, 447 U.S. 615 (1980)."   Because the court addresses the merits of this claim in that context, *see* Part VI *supra*, Taylor's related ineffective assistance sub-claim will only receive brief attention here, in Part XIX(B)(4)(d).

*Id.* (quoting *Taylor v. State*, 666 So. 2d 36, 55 (Ala. Crim. App. 1994)).[177]  This characterization of the state collateral courts' rulings is incorrect in nearly every aspect.  To explain, the only portion of this statement that is remotely correct is Taylor's assertion that the Rule 32 circuit court's order—*i.e.*, its order before the Alabama Supreme Court's partial reversal and remand—did rely, at least in part, on the Court of Criminal Appeals's holding on direct appeal that "[t]here [was] no rational basis for a verdict convicting [Taylor] of felony murder."  (Rule 32 C.R. Vol. 37, Tab. 84, p. 55 (alterations in original) (quoting *Taylor v. State*, 666 So. 2d 36, 55 (Ala. Crim. App. 1994))).

But this view fails to take into account two subsequent rulings by the Court of Criminal Appeals.  First, while the Court of Criminal Appeals initially affirmed the Rule 32 circuit court's order—before the Alabama Supreme Court's partial reversal and remand—it did not reference its prior ruling on direct appeal as a reason for doing so.  The court stated, in full:

> Finally, the appellant asserts that his attorneys rendered ineffective assistance . . . because they did not effectively argue for instructions on lesser included offenses.  Although he makes several bare allegations, he has not satisfied his burden of pleading and proof under *Strickland* and Rules 32.3 and 32.6(b), Ala. R. Crim. P., as to these claims.  Accordingly, he is not entitled to relief in this regard.

*Taylor v. State*, 10 So. 3d 1037, 1061 (Ala. Crim. App. 2004).  Second, Taylor fails to state that this claim was one of the twenty ineffective assistance claims specifically identified by the Court of Criminal Appeals after the Alabama Supreme Court partially reversed and remanded its initial ruling.  *See Taylor v. State*, 10 So. 3d 1079, 1082 (Ala. Crim. App. 2006) ("(11) trial counsel

---

[177] Here, Taylor quotes the Alabama Court of Criminal Appeals's opinion on direct appeal.  *Id.* at 89 (quoting *Taylor v. State*, 666 So. 2d 36, 55 (Ala. Crim. App. 1994)).  While this statement is included within the Rule 32 circuit court's final order, (*see* Rule 32 C.R. Vol. 38, Tab. 90, pp. 60-61 (quoting *Taylor v. State*, 666 So.2d 36, 55 (Ala. Crim. App. 1994))), the Court of Criminal Appeals did not adopt it as a reason for denying Taylor's Rule 32 Petition in its final opinion on the issue, (*see* Rule 32 C.R. Vol. 38, Tab. 91, pp. 28-29).  For reasons fully explained below, Taylor's characterization of the state collateral courts' rulings on this issue is patently incorrect.

rendered ineffective assistance because they did not effectively argue for instructions on lesser included offenses").

Subsequently, after remanding Taylor's case to the circuit court on two separate occasions, the Court of Criminal Appeals ultimately held:

> In its order on remand, the circuit court found:
>
> > "In paragraphs 60-61 of his second amended petition, Taylor alleges that trial counsel were ineffective for failing to argue effectively that he was entitled to jury instructions on lesser included offenses. . . .["]
> >
> > "This claim is dismissed because Taylor has failed to meet his burden of pleading with specificity as required under Rule 32.6(b) of the Alabama Rules of Criminal Procedure. Although Taylor makes the conclusory allegation that '[h]ere the evidence could have supported, at the very least, lesser included charges of non-capital reckless or felony murder under Ala. Code § 13A-6-2(2) or (3), respectively, or a charge of manslaughter,' he has not alleged any evidence that would have entitled him to such instructions. In short, Taylor has not pleaded any basis whatsoever for the Court to instruct the jury on lesser included offenses. Instead, he relies entirely on the above bare allegation. See Brown v. State, 903 So.2d 159, 165 (Ala. Crim. App. 2004) (holding that a bare allegation is insufficient to establish entitlement to relief). Because Taylor has failed to satisfy his burden of full factual pleading, this claim is dismissed. Ala. R. Crim. P. 32.6(b)."
>
> (Remand C.R. 208-09.)[178] The record supports the circuit court's findings, and we adopt them as part of this opinion. Because the appellant made only bare assertions, he did not satisfy his burden of pleading that his trial attorneys rendered deficient performance in this regard and that that [sic] allegedly deficient performance prejudiced him. See Rules 32.3 and 32.6(b), Ala. R. Crim. P., and Strickland. Accordingly, even applying the prejudice standard as set forth in Strickland, he was not entitled to an evidentiary hearing on this allegation, and summary dismissal was proper as to this allegation.

---

[178] (See Rule 32 Remand C.R. Vol. 38, Tab. 90, pp. 59-60).

(Rule 32 C.R. Vol. 38, Tab. 91, pp. 28-29).

In sum, the highest state court to address this issue—the Alabama Court of Criminal Appeals on return to remand—did not employ the reason Taylor's Reply Brief claims was the basis for that court's denial of his claim, *i.e.*, "no rational basis for a verdict convicting the defendant of felony murder." (*See* Doc. 36-1, p. 89 (quoting *Taylor v. State*, 666 So. 2d 36, 55 (Ala. Crim. App. 1994))). And even though the Rule 32 circuit court's final order cited the Court of Criminal Appeals's ruling on direct appeal as an alternative ruling, (*see* Rule 32 C.R. Vol. 38, Tab. 90, pp. 60-61 (quoting *Taylor v. State*, 666 So. 2d 36, 55 (Ala. Crim. App. 1994))), the Court of Criminal Appeals final ruling in Taylor's post-conviction proceedings did not adopt this reason as part of its ruling, (*see* Rule 32 C.R. Vol. 38, Tab. 91, pp. 28-29). Therefore, Taylor is simply incorrect to cite this reason as the basis for the state court's denial of his claim.

Nevertheless, Taylor claims evidence supported the lesser charges of felony murder, reckless murder, or manslaughter. (Doc. 36-1, p. 89 (citing Doc. 36-1, pp. 137-52)). He further argues that "counsel could have presented psychological evidence that the *assault* was a temporary loss of control lacking intent" if only counsel had properly litigated the intent elements of robbery and murder at trial. *Id.* at 89-90 (emphasis added). "In any event," Taylor contends, "the court would have *undoubtedly had to* instruct the jury on one or more lesser included offenses, or alternatively, its refusal to do so would have denied petitioner due process." *Id.* at 90 (emphasis added) (citing *Beck v. Alabama*, 447 U.S. 625, 637 (1980)). And due to "[c]ounsel's failure to protect Mr. Taylor's rights," he claims "the only choice before the jury was to convict him of capital murder or acquit him altogether," thereby "subject[ing] him to the unwarranted risk of conviction." *Id.*

274

Finally, Taylor claims that the Rule 32 circuit court "deprived [him] of a full and fair hearing on his ineffective assistance claims regarding the guilt phase," and if he not been precluded from presenting evidence on this claim, "he could have shown that, had counsel pursued the evidence of Mr. Taylor's psychological disturbance at the time of the offense, indicated in the Rogers and Wilson reports, they could have presented a cogent argument that the jury could reasonably find for voluntary manslaughter and theft." *Id.*

This court addressed this issue in Part VI of this opinion, *supra*. There, this court held that the decision of the Court of Criminal Appeals that the trial court properly refused to instruct the jury on felony murder as a lesser included offense constituted a reasonable application of federal law. This court is satisfied that the circuit court's application of *Strickland* on this issue is also reasonable, given the fact that because the instruction was proper, Taylor's counsel cannot be faulted for failing to effectively argue against it. Furthermore, where appropriate, this court finds that the state court's dismissal of Taylor's sub-claims on insufficient pleading grounds was reasonable.

> e.    Counsel's Opening and Closing Arguments.  (Doc. 1, p. 42; Doc. 36-1, pp. 92-93).

In Taylor's habeas petition, he states:

> During opening and closing statements, after dwelling on Mrs. Moore's suffering, Mr. Downs touched on the element on intent by stating: "He left her alive. I don't know why.  I can't explain that.  It may mean something to you"; he then erroneously told the jury that it could find, "No, he did not intend to kill her" by so marking the "verdict forms," even though he was aware that the jury would not be given that option by the court.

(Doc. 1, p. 42 (quoting R. Vol. 7, Tab. 10, pp. 751, 804-05; R. Vol. 9, Tab. 14, p. 1132); *see also*

275

Doc. 36-1, pp. 92-93 (same)).

In his Reply Brief, Taylor expounds upon this claim.  After restating the preceding, Taylor argues:

> Counsel's closing argument was perfunctory and misleading, proposing that the jury could vote to acquit of capital murder and convict of some lesser charge when they knew that no lesser included offense instruction would be given [(R. Vol. 9, Tab. 14, pp. 1131-33)].  Counsel's misleading summation, combined with their failure to ensure that the jury actually had an option to convict Mr. Taylor of a lesser offense, so undermined the adversary process to render the outcome unreliable.  Strickland, 466 U.S. at 696.

(Doc. 36-1, p. 93) (footnote omitted).[179]

The circuit court rejected this ineffective assistance of counsel sub-claim on the merits, and the Criminal Court of Appeals subsequently adopted the court's findings. The circuit court stated:

> The Court was present during trial counsel's closing argument. Trial counsel told the jury that he "[had] tried to be as honest and open with all to you as [they] could in this case." (R. 1131). Trial counsel's argument was not an argument for a lesser charge, but for an acquittal based on Taylor's lack of intent to kill Mr. and Mrs. Moore. If the jury had a reasonable doubt concerning Taylor's intent to kill the Moores, then their only option would have been to find Taylor not guilty of all the charges. Based on the Court's personal knowledge of trial counsel's closing arguments, the evidence presented at trial, the charges given to the jury, and trial counsel's testimony at the evidentiary hearing regarding their strategy, the Court finds that trial counsel's closing argument was reasonable. Taylor has failed to carry his burden of affirmatively proving that trial counsel's performance was deficient or that he was prejudiced as required by Strickland.

---

[179] In a footnote at the end of this paragraph, Taylor argues that the Alabama Court of Criminal Appeals "should not have faulted [him] for failing to present evidence about this aspect of ineffectiveness at the post-conviction hearing because the hearing court precluded him from doing so."  (Doc. 36-1, p. 93 n. 27 (citation omitted)).   For this proposition, Taylor cites "slip op. at 44-45," but these page numbers do not coincide with any opinion as they appear in the record provided to this court. *See id.*  Simply put, it is unclear exactly which Alabama Court of Criminal Appeals's opinion Taylor is referencing, much less the exact portion of that opinion.  After combing through the record, the court believes Taylor is attempting to cite Rule 32 C.R. Vol. 37, Tab. 85, p. 1062.

(Rule 32 C.R., Vol. 37, Tab 84, p. 60). Based on the foregoing analysis and the fact that Taylor has provided this court with no legal authority supporting his argument that his trial counsel committed prejudicial error under *Strickland*, this court finds that the circuit court's application of *Strickland* was reasonable.

> **5.      Penalty Phase.  (Doc. 1, pp. 42-46; Doc. 36-1, pp. 93-98).**

Regarding the penalty phase of the proceedings, Taylor asserts six distinct sub-claims, two with multiple sub-parts.

> > a.      Counsel's Stipulation to the Statutory Aggravating Circumstance
> > that the Crimes were Especially Heinous, Atrocious, or Cruel.  (Doc.
> > 1, pp. 42, 45-46; Doc. 36-1, pp. 96-98).

In Taylor's habeas petition he states: "[a]t the penalty phase, counsel stipulated to the aggravating circumstance that the crimes were especially heinous, atrocious or cruel, which counsel would not have done if they had the mitigation presented at the Rule 32 hearing."  (Doc. 1, p. 42 (internal citations to the record omitted)).  Taylor expounds upon this claim in his Reply Brief.  He argues that his "'consent' was neither knowing nor voluntary where counsel's explanation was utterly misleading.  Moreover the "allocution"[180] was a complete nullity where counsel had already conceded this aggravating factor to the jury."  (Doc. 36-1, p. 97 (internal citations to the record omitted)).  Consequently, Taylor argues that he "was effectively deprived of his right to be sentenced by a jury whose discretion had been properly guided by a clearly defined aggravating factor, when the court charged the jury that 'heinous atrocious or cruel' had been established as a

---

[180] Allocution is defined as "[a] trial judge's formal address to a convicted defendant, asking him or her to speak in mitigation of the sentence to be imposed."  Black's Law Dictionary 83 (8th ed. 2004).

matter of law." *Id.* (citing *Godfrey v. Georgia*, 446 U.S. 420, 429-33 (1980); *Ex parte Kyzer*, 399 So. 2d 330, 334 (Ala. 1981) (internal citations to the record omitted).

In addition, Taylor contends that he was prejudiced by his counsel's allegedly unauthorized concession because it "enabled the prosecutor to argue on summation that Mr. Taylor had admitted to enjoying the Moores' suffering." *Id.* (R. 1351). Taylor further asserts:

> Had counsel properly contested the elements of this aggravating factor, it is probable that the jury would not have found an intention to inflict a higher degree of pain, or enjoyment of suffering beyond a reasonable doubt, because blows to the head are associated with an intention to render the victim unconscious, not to inflict pain. Nor would have the jury have found the offense heinous, atrocious or cruel in comparison to other capital cases, many of which "are carefully planned, or accompanied by torture, rape or kidnapping." <u>Dobbs v. Turpin</u>, 142 F.3d 1383, 1390 (11th Cir. 1998) (citing <u>Jackson v. Herring</u>, 42 F.3d 1350, 1366 (11th Cir. 1995)).

*Id.* at 97-98. Finally, Taylor cites his counsel's testimony at the Rule 32 hearing, where they admitted that, had they "been aware of the substantial psychological mitigation evidence available in this case, they would have presented that evidence to the jury and would not have entered into this 'stipulation.'" *Id.* at 98 (citing R 379-380, 458).

Respondents answer by arguing that "[t]his claim was raised in Taylor's Rule 32 petition and on collateral appeal in the Alabama Court of Criminal Appeals and was denied on the merits." (Doc. 13, p. 75 (citing, respectively, Rule 32 C.R. Vol. 37, Tab. 84, pp. 28-30; *Taylor v. State*, 10 So. 3d 1037, 1062 (Ala. Crim. App. 2004)); *see also* Doc. 14, p. 87 (same)). Further, Respondents also quote the following from the Alabama Court of Criminal Appeals's opinion before remand:

> [The appellant also asserts that his attorneys rendered ineffective assistance in conceding the aggravating circumstance that the murders were especially heinous, atrocious, or cruel. On direct appeal, this court stated:]
>
> > "Defense counsel made this stipulation in [a] strategic effort

278

> 'to prevent the District Attorney from asking any of these witnesses that we're fixing to call in mitigation, from asking them any questions about the crime itself or the events involving the crime or prevent him from in any way showing these photographs or making reference to these photographs, because that now has been proved by stipulation with the defendant.'  R. 1174.  In response to questions by both defense counsel and the trial court, the appellant indicated that he understood the stipulation.  R. 1173-74."

*Taylor*, 666 So. 2d at 67.  As the United States Court of Appeals for the Tenth Circuit stated in *Smith v. Gibson*, 197 F.3d 454, 461 (10th Cir. 1999):

> "Petitioner argues defense counsel . . . conceded that this crime was 'cruel,' thus admitting the 'especially heinous, atrocious or cruel' aggravating circumstance, and that the crime warranted the death penalty. . . .  The uncontroverted evidence, however, including a number of gruesome photographs of the crime scene and the victim's body, established that the victim was brutally murdered. Defense counsel could not have argued otherwise credibly."

Clearly, counsel made a strategic decision to make the stipulation to keep the prosecution from discussing the horrific facts of the murders.  Under the facts of this case, as set forth herein, counsel could not have credibly argued that the murders were not especially heinous, atrocious, or cruel.  Therefore, the appellant has not satisfied his burden of proof under *Strickland* as to this claim.

(Doc. 14, pp. 87-88 (alterations in original) (quoting *Taylor v. State*, 10 So. 3d 1037, 1062 (Ala. Crim. App. 2004)).[181]

As this court held in Part XII of this opinion, *supra*, it is satisfied that Taylor's stipulations to both aggravating factors was made intelligently and voluntarily.  Moreover, as the Court of Criminal Appeals explained, stipulating to the aggravating circumstance was part of a reasonable strategy by Taylor's counsel to "keep the prosecution from discussing the horrific facts of the murders." *Taylor v. State*, 10 So. 3d at 1062.  For Taylor to argue that had his counsel not stipulated

---

[181] The first paragraph of the Alabama Court of Criminal Appeals's opinion before remand reproduced above in brackets does not appear in the Respondents' Brief on the Merits.  (*See* Doc. 14, pp. 87-88 (quoting *Taylor v. State*, 10 So. 3d 1037, 1062 (Ala. Crim. App. 2004)).  For sake of clarity, however, the court thought it best to add this paragraph in addition to the portion of the opinion quoted by the Respondents.

to the aggravating circumstance, the State might not have been able to prove the circumstance is pure speculation, and only pure speculation, and, given the facts of this case, is highly unlikely. Therefore, as the Court of Criminal Appeals reasonably concluded, Taylor has failed to affirmatively demonstrate prejudicial error by his attorney under *Strickland* on this issue.

b.   Counsel's Opening Statement.  (Doc. 1, pp. 42, 45; Doc. 36-1, pp. 93, 96).

In Taylor's habeas petition, he states: "[i]n his opening statement in the penalty phase, counsel did not advance a theory of mitigation and did not provide the jury with assistance in assessing mitigating circumstances."  (Doc. 1, p. 42 (citing R. 1186-90); *see also* Doc. 36-1, p. 93 (same)).

In his Reply Brief, Taylor elaborates upon this claim further by listing three reasons as to why his trial counsel was ineffective.  In addition to restating two reasons from his habeas petition above, *i.e.*, his trial "[c]ounsel offered . . . no theory of mitigation[] and no explanation of mitigating circumstances that would have assisted the jury in rendering an individualized sentencing determination," Taylor adds a third reason: "[c]ounsel offered no advocacy on Mr. Taylor's behalf . . . ."  (Doc. 36-1, p. 96 (citation omitted)).[182]  Simply put, Taylor asserts that his trial "[c]ounsel's opening statement . . . was again an argument for the prosecution and in direct conflict with their client's interests."  *Id.*  In support, Taylor asserts that counsel "t[old] the jury that Mr. Taylor 'agreed' that the crime was especially heinous, atrocious or cruel in comparison with others, thereby relieving the State of its burden of proof."  *Id.* (citing R. Vol. 9, Tab. 19, pp. 1186-97).

---

[182] After listing the three reasons above, Taylor provides the only citation to legal authority in this section, citing *Penry v. Lynaugh*, 492 U.S. 302, 316 (1989). (*See* Doc. 36-1, p. 96). Taylor seemingly cites *Penry* for the proposition that "the Eighth Amendment mandates an individualized assessment of the appropriateness of the death penalty." 492 U.S. at 317.

280

The circuit court rejected this ineffective assistance of counsel sub-claim on the merits, and the Criminal Court of Appeals subsequently adopted the court's findings. The circuit court stated:

> The Court, having been present during Hart's penalty-phase opening statement, finds that it was in keeping with trial counsel's trial strategy. Hart did not dwell on the aggravating circumstances, but instead focused on the importance of the jury's recommendation to the Court and stressed that it was an individual recommendation and that it did not have to be unanimous like the guilt-phase verdict. Reviewing Hart's opening statement in the context of the entire trial, the Court finds that it was reasonable. Taylor has failed to carry his burden of affirmatively proving the trial counsel's performance was deficient or that he was prejudiced as required by *Strickland*.

*Taylor v. State*, 10 So. 3d at 1062 (quoting Rule 32 C.R., Vol. 37, Tab 84, p. 67). This court finds that the state court's reasoning speaks for itself, and that its application of *Strickland* was reasonable.

> c.   Counsel's Preparation of Mitigation Witnesses.  (Doc. 1, pp. 42-43, 46; Doc. 36-1, pp. 93-94).

In Taylor's habeas petition, he states:

> Counsel's mitigation witnesses were not prepared adequately for the penalty phase of trial, and counsel had not explained its purpose to them.[183]  This allowed the prosecutor to undermine their testimony by obtaining their admissions, on cross-examination, that their previous, benign impressions of Mr. Taylor were no longer valid because he had inexplicably changed into someone they did not know,[184] and by essentially eliciting victim-impact testimony from them.[185]

(Doc. 1, pp. 42-43 (internal citations omitted)).  In his Reply Brief, Taylor merely reproduces the

---

[183] Following this averment, Taylor cites: R. 1262, 1270, 1279, 1283; R 241-43, 273, 327-28.

[184] Following this averment, Taylor cites: R. 1194, 1202, 1207, 1214, 1221, 1226, 1230, 1237, 1254, 1256, 1270, 1274.

[185] Following this averment, Taylor cites: R. 1252-53, 1310-15.

preceding paragraph verbatim and does not elaborate further.  (*Compare* Doc. 36-1, pp. 93-94, *with*

Doc. 1, pp. 42-43).

Respondents answer by arguing that "[t]his claim was raised in Taylor's Rule 32 petition

and on collateral appeal in the Alabama Court of Criminal Appeals and was denied on the merits."

(Doc. 13, p. 67 (citing, respectively, Rule 32 C.R. Vol. 37, Tab. 84, pp. 74-75; *Taylor v. State*, 10

So. 3d 1037, 1062-64 (Ala. Crim. App. 2004)); *see also* Doc. 14, p. 82 (same)).   Further,

Respondents also state the following regarding this claim:

> As thoroughly explained in claim (S)(1),[186] Taylor's counsel called eighteen
> witnesses on his behalf.  The Alabama Court of Criminal Appeals held their
> testimony was "strong mitigating evidence."  [*Taylor v. State*, 10, So.3d 1037, 1063
> (Ala. Crim. App. 2004).]

(Doc. 14, pp. 82-83).

Taylor provides no legal authority whatsoever that his trial counsel's handling of the defense

mitigation witnesses fell below the professionally reasonable standard in *Strickland*. *See* 466 U.S.

at 687-88. Taylor also provides no facts underlying his claim that his counsel failed to adequately

prepare the mitigation witnesses. The mere fact that counsel gathered a total of eighteen mitigation

witnesses who all personally knew Taylor and offered testimony that sought to humanize Taylor

suggests that his counsel was, in fact, adequately prepared for this stage in the penalty phase. *See*

*Taylor v. State*, 10 So. 3d at 1063. The circuit court rejected this sub-claim for ineffective assistance

of counsel, stating "Taylor fails to identify any mitigation witness by name or proffer what

---

[186] (*See* Doc. 14, pp. 63-64 (quoting *Taylor v. State*, 10, So. 3d 1037, 1063 (Ala. Crim. App. 2004))). Specifically, "claim (S)(1)" refers to Taylor's claim that his trial counsel was ineffective for failing to investigate and prepare an adequate mitigation defense, (*see* Doc. 1, pp. 29-36), and Respondent's response thereto, (*see* Doc. 14, pp. 63-65).

questions trial counsel could have asked in rehabilitation that would have caused a different result in the penalty-phase of trial." (Rule 32 C.R., Vol. 37, Tab 84, p. 75). Therefore, this court agrees with the state court that Taylor has failed to meet either the performance or prejudice prongs of *Strickland*, and this sub-claim is due to be denied.

> d.   Counsel's Ineffective Argument Regarding Taylor's Right to Present Mercy Pleas.  (Doc. 1, p. 43; Doc. 36-1, p. 94).[187]

In Taylor's habeas petition, he states: "[c]ounsel presented no authority to support Mr. Taylor's right to have witnesses ask the jury to spare his life, and such evidence was precluded." (Doc. 1, p. 43 (citing R. 1255, 1315-17); *see also* Doc. 36-1, p. 94 (same)).  In his Reply Brief, Taylor adds, immediately after the preceding statement, that "counsel could have presented a strong legal argument that such a plea for mercy was constitutionally required."  (Doc. 36-1, p. 94 (citing Doc. 36-1, pp. 152-65) (referencing Point IIC from the second volume of Taylor's Reply Brief, which corresponds with Ground XI in his Petition)).

In other words, Taylor claims the trial court erred "by preclud[ing] the defense from making a plea for mercy."  (Doc. 1, p. 19 ("Ground XI")).  But if that claim fails, Taylor also claims that his trial counsel was ineffective by not presenting "authority to support Mr. Taylor's right to have

---

[187] Taylor makes similar claims in two separate grounds for relief.  First, Taylor lists the underlying substantive claim for this ineffective assistance sub-claim, *i.e.*, "the trial court precluded the defense from making a plea for mercy," as "Ground XI" in his Petition. (*See* Doc. 1, p. 19; Doc. 36-1, pp. 152-65).  Second, Taylor makes a related claim in "Ground XVI" of his Petition, *i.e.*, "The court's jury instructions at the penalty phase of trial violated the Fifth, Sixth, Eighth and Fourteenth Amendments."  (Doc. 1, pp. 26-27).  In that context, he specifically argues that "his rights were violated by the trial court's failure to inform the jurors they could consider mercy."  (Doc. 36-1, p. 231; *see also id.* at 231-36, 239-41).

While the court will briefly address the issue of Taylor's alleged right to present pleas for mercy at the penalty phase here in the context of Taylor's ineffective assistance claim, the merits of the underlying substantive claim is addressed above in Part XI *supra*, and it will not be discussed further.  And to the extent this ineffective assistance sub-claim argues that his counsel failed to request the jury be instructed that it could consider mercy and sympathy, the merits of the underlying substantive claim is addressed above in Part XVI *supra*, and it will likewise not be discussed further.  Otherwise, the novel aspects of this ineffective assistance sub-claim will be addressed here.

witnesses ask the jury to spare his life . . . even though counsel *could have* presented a *strong legal argument* that such a plea for mercy was constitutionally required."  (Doc. 36-1, p. 94 (emphasis added) (citation omitted)).[188]

Respondents answer by contending that "[t]his claim was raised in Taylor's Rule 32 petition and on collateral appeal in the Alabama Court of Criminal Appeals and was denied on the merits." (Doc. 13, p. 69 (citing, respectively, Rule 32 C.R. Vol. 37, Tab. 84, pp. 69-74; *Taylor v. State*, 10 So. 3d 1037, 1064 (Ala. Crim. App. 2004)); *see also* Doc. 14, p. 83 (same)).  Further, Respondents also state:

> Specifically, as noted in the claim above,[[189]] the Alabama Court of Criminal Appeals held that, with respect to the claim that Taylor's counsel were ineffective for not eliciting testimony from witnesses during the penalty phase that the jury should spare his life:
>
>> "It is the holding of this Court that the opinion of the friends or relatives of the defendant that the defendant should not be sentenced to death is not a relevant mitigating circumstance for the jury to consider at the penalty phase of a capital case." *Taylor*, 666 So.2d at 53.  Therefore, the appellant has not satisfied his burden of proof under *Strickland* as to this claim.
>
> [*Taylor v. State*, 10, So. 3d 1037, 1064 (Ala. Crim. App. 2004).].

(Doc. 14, pp. 83-84).

The court notes that Taylor's trial counsel *did try* to elicit mercy pleas from defense mitigation witnesses. For example, when Betty McGriff, Taylor's great aunt, took the stand, the

---

[188] Interestingly, Taylor seemingly admits that capital defendants do not have an absolute right to present mercy pleas in the form of witness(es) asking the jury to spare their life at the penalty phase; instead, he expressly claims that only "*a strong legal argument*" for such a right exists.  (*See* Doc. 36-1, p. 94 (emphasis added)).

[189] Respondents' reference to "the claim above," (Doc. 14, p. 83), refers to Part III(S)(12) of its Answer, (*see* Doc. 14, pp. 82-83), and concerns his counsel's alleged failure to prepare the mitigation witnesses for the penalty phase. This argument is addressed *supra* in Part XIX(B)(5)(c) of this Memorandum Opinion.

following exchange took place:

> Mr. Downs: What – in your own mind or in your own heart, I guess, what are your feelings, being a neighbor of the Moores, now it's your nephew's son who has been convicted of their murder. . .
>
> B. McGriff: We're just hurting both ways. That's all because we love both sides.
>
> Mr. Downs: Mrs. McGriff, are you asking this jury to spare Michael's life?

(R., Vol. 10, p. 1315). The prosecutor then objected, and the trial court sustained the objection. (Doc. 36-1, p. 158). Taylor's argument, therefore, seems to be that his counsel did not try *hard enough* to allow the jury to hear the mitigation witnesses' pleas of mercy. Taylor offers no legal support that such an "error" constitutes professionally unreasonable behavior under the performance prong of *Strickland*, or, that if his attorneys had successfully gotten the jury to hear such statements from witnesses, that the outcome of the proceedings would have been any different. The state court's application of *Strickland*, therefore, was reasonable.

> e.  Counsel's Failure to Object the District Attorney's Misconduct During the Trial Portion of the Penalty Phase.  (Doc. 1, pp. 43-44, 46; Doc. 36-1, pp. 94-95).

This ineffective assistance of counsel sub-claim contains two distinct sub-parts:

[(1)] Counsel did not object to the prosecutor's interjecting, in response to a statement of a witness, that Mr. Taylor had seemed mentally ill before the crime, that "the evidence" and "experts" said that Mr. Taylor had no mental problems, even though there was no such evidence before the jury (R.1285-88).  Mr. Hart testified that the decision not to object was based on counsel's faulty understanding of the psychological reports (R387).  [(2)] Counsel did not object to the prosecutor's eliciting testimony about, and remarking on, Mr. Taylor's post-arrest silence as evidence of lack of remorse (TR1243-44).[190]

---

[190] The underlying substantive claim concerning the prosecutor's comments on Taylor's lack of remorse is discussed in Part XIV *supra*.  Further, Taylor also raises a variant of this claim within the context of his mitigation

(Doc. 1, pp. 43-44; *see also* Doc. 36-1, pp. 94-95 (same)).  In Taylor's Reply Brief, he does not

expound upon this claim further; instead, he merely repeats the same argument from his Petition

verbatim.  (*Compare* Doc. 1, pp. 43-44, *with* Doc. 36-1, pp. 94-95).

   Taylor fails to cite any legal authority in either his Petition or his Reply Brief to support this

claim.  *See id.*  This court has addressed both categories of alleged prosecutorial misconduct

previously in this opinion. *See* Part XIV, *supra* (discussing the prosecutor's comments on Taylor's

silence), and Part XV, s*upra* (discussing the prosecutor's comments on Taylor's lack of mental

illness). This court held that both types of statements by the prosecutor were permissible; therefore,

Taylor's counsel could not have acted unreasonably in failing to object to either incidence, and this

sub-claim for ineffective assistance of counsel is due to be denied.

<u>f.</u>   <u>Counsel's Failure to Object to Multiple Instances of Misconduct by the District Attorney During His Penalty Phase Summation.  (Doc. 1, pp. 44-45, 46; Doc. 36-1, pp. 95-96).</u>

   This portion of Taylor's ineffective assistance claim contains eleven distinct sub-

parts:

> Counsel did not object to misconduct and errors of law and fact in the prosecutor's penalty-phase summation including his: [(1)] stating that the mitigating factors had to outweigh aggravating factors; [(2)] arguing that a life sentence was a reward and that Mr. Taylor had no right to live; [(3)] stating that the sentencing determination was like balancing a scale; [(4)] arguing that Mr. Taylor was 20 years old (he was just 19 at the time of the crime), and his age and lack of criminal record were not mitigating; [(5)] describing the statutory mitigator of no criminal history as

---

defense, ineffective assistance sub-claim.  (*See* Doc. 36-1, pp. 38-39, 49-50).  And it will be discussed briefly within that context.  *See* Part XIX(B)(1)(a)(iii) *supra*.  Finally, and more broadly, this claim is part of Taylor's oft-repeated allegations of prejudice within his ineffective assistance claim.  (*See, e.g.*, Doc. 1, pp. 45-46; Doc. 36-1, pp. 100-01).

"[patting somebody[191]] on the back for not breaking the law"; [(6)] equating mitigation with an appeal to sympathy; [(7)] urging a vote for death based on non-statutory aggravating factors, such as Mr. Taylor's aloof demeanor and the suffering of the victims' and Mr. Taylor's families; [(8)] invoking the Bible as a reason for recommending death; [(9)] making comments unsupported by the evidence, such as that Mr. Taylor had "enjoyed" killing the victims; [(10)] telling the jury to do its job and bring back the only [recommendation[192]] it could; and [(11)] invoking his status as an elected official. . . .

(Doc. 1, p. 44 (internal citations to the record omitted); *see also* Doc. 36-1, p. 95 (same)).

Other than providing the preceding laundry list of sub-claims, Taylor only adds Hart's concession during the Rule 32 evidentiary hearing that there were "specific instances where counsel had no strategy for not objecting and should have." (Doc. 1, p. 45 (citing Rule 32 R. Vol 24, pp. 390-95); *see also* Doc. 36-1, p. 96 (same)). Moreover, Taylor contends how "Hart also explained more generally that it was vital to object to any and all error in a capital case, because of the difficulty of satisfying the plain error standard on appeal." (Doc. 1, p. 45 (citations omitted); *see also* Doc. 36-1, p. 96 (same)).[193] Taylor does not expound upon these individual sub-claims further within his Reply Brief. (*See* Doc. 36-1, p. 95.)

---

[191] In his Petition, Taylor incorrectly quotes the prosecutor as stating "*a pat* on the back for not breaking the law." (Doc. 1, p. 44 (emphasis added) (quoting R. Vol. 10, Tab. 22, pp. 1344-45)). In his Reply Brief, however, Taylor corrects this error and quotes the prosecutor as stating "*patting somebody* on the back for not breaking the law." (Doc. 36-1, p. 95 (emphasis added) (quoting R. Vol. 10, Tab. 22, pp. 1344-45)). The quotation in the text above has been altered to reflect the prosecutor's actual statement.

[192] In his Petition, Taylor states "verdict," (*see* Doc. 1, p. 44), but in his Reply Brief he states "recommendation," (*see* Doc. 36-1, p. 95). Above, the term "recommendation" has been used because it more accurately reflects the prosecutor's actual statement, which is:

> Do what's right. You do the right thing and you go through that balancing test and you ascribe the kind of weight that ought to be given to those aggravating and mitigating circumstances and you *bring back the only recommendation that you can in this case*. Michael Taylor deserves to die.

(R. Vol. 10, Tab. 24, p. 1379 (emphasis added)).

[193] In support of this contention, Taylor cites a number of pages from the Rule 32 hearing transcript. (*See* Doc. 1, p. 45 (citing Vol. 24, pp. 385-86, 389-90, 419-20, 465, 469); *see also* Doc. 36-1, p. 96 (same)).

Respondents answer by contending that "[t]his claim was raised in Taylor's Rule 32 petition and on collateral appeal in the Alabama Court of Criminal Appeals and was denied on the merits." (Doc. 13, p. 71 (citing, respectively, Rule 32 C.R. Vol. 37, Tab. 84, pp. 84-85; *Taylor v. State*, 10 So. 3d 1037, 1065 (Ala. Crim. App. 2004)); *see also* Doc. 14, p. 85 (same)). Specifically, Respondents quote the following from the Alabama Court of Criminal Appeals opinion before remand:

> Additionally, the appellant asserts that his attorneys rendered ineffective assistance because they did not object to the prosecutor's pervasive misconduct during the penalty-phase summation. Although he has made several allegations in this regard, he has not established that counsel's performance was deficient and that he was prejudiced by such deficient performance. Therefore, he has not satisfied his burden of proof under *Strickland* and Rules 32.3 and 32.6(b), Ala. R. Crim. P., as to this claim.

(Doc. 14, p. 85 (quoting *Taylor v. State*, 10 So. 3d 1037, 1065 (Ala. Crim. App. 2004))).

At no time does Taylor cite one legal principle to support any of his preceding eleven sub-claims. (*See* Doc. 1, pp. 44-45; Doc. 36-1, pp. 95-96). Taylor offers no proof that counsel's subsequent failure to object to any of these incidences constituted either professionally unreasonable error or prejudiced the outcome of the proceedings under *Strickland*. The state court's determination, therefore, constituted a reasonable application of *Strickland*, or where appropriate, a reasonable application of Alabama pleading rules.

> **6.    *Judicial Sentencing Hearing.  (Doc. 1, pp. 45; Doc. 36-1, pp. 98-99).***

This portion of Taylor's ineffective assistance of counsel claim contains three distinct sub-claims: "[c]ounsel [(1)] offered no witnesses and [(2)] made no argument at the

sentencing hearing and [(3)] ineffectually noted a psychological diagnosis of anti-personality disorder without any explanation of its significance as a mitigating or aggravating circumstance." (Doc. 1, p. 45 (citing R. 1413-16, 1418)).

In his Reply Brief, Taylor again notes that counsel did not call witnesses or make any argument at judicial sentencing hearing, even though "the trial court gave counsel the opportunity." (Doc. 36-1, p. 98 (citing R. 1413-1419)). Instead of calling witnesses or making argument, Taylor claims, "counsel simply offered Dr. Wilson's psychological report, explaining only that 'it contains a diagnosis . . . of anti-social personality disorder,' asked Mr. Taylor if there was any other evidence they should present[,] and waived any argument." *Id.* at 98-99 (ellipses in original) (citing R. 1415-1418). In essence, Taylor faults his trial counsel for not "provid[ing] the court with any type of contextual information," which thereby rendered "the court unable to recognize that the diagnosis had mitigation value, as Dr. Drob explained at the Rule 32 hearing." *Id.* at 99. He concludes by claiming: "This just serves to illustrate *the dearth of counsel's advocacy*." *Id.* (emphasis added).

Respondents answer by arguing that "[t]his claim was raised in Taylor's Rule 32 petition and on collateral appeal in the Alabama Court of Criminal Appeals and was denied on the merits." (Doc. 13, p. 73 (citing, respectively, Rule 32 C.R. Vol. 37, Tab. 84, pp. 92-93; *Taylor v. State*, 10 So. 3d 1037, 1065 (Ala. Crim. App. 2004)); *see also* Doc. 14, p. 86 (same)). Specifically, Respondents quote the following from the Court of Criminal Appeals's opinion before remand:

> [Finally, the appellant asserts that his attorneys rendered ineffective assistance during the sentencing hearing before the trial court because they did not present mitigation witnesses during this hearing. With regard to this contention, the circuit court made the following findings:]

"Concerning Taylor's allegation that trial counsel was ineffective for failing to present witnesses at his judicial sentencing, the Court of Criminal Appeals has held that:

"'[Section] 13A-5-47, Ala. Code 1975, governs the determination of sentence by the trial court. Section 13A-5-47, Ala. Code 1975, does not provide for the presentation of additional mitigation evidence at sentencing by the trial court. Therefore, trial counsel did not err in failing to do so.'

"*Boyd v. State*, 746 So.2d at 398. Because Alabama law does not provide for the presentation of mitigation witnesses at a judicial sentencing for capital murder, trial counsel cannot be ineffective for failing to do so. . . .

"Regarding Taylor's contention that trial counsel failed to present any argument at his judicial sentencing, the Court finds that Taylor has failed to proffer any facts in his petition or present any evidence at his evidentiary hearing that, if presented by trial counsel, would have caused this Court to sentence him to life without parole instead of death. Taylor has failed to carry his burden of affirmatively proving [that] trial counsel's performance was deficient or that he was prejudiced as required by *Strickland*. *See also*, Rule 32.3, A. R. Cr. P. This claim is without merit and is hereby denied by the Court."

(C.R. 670-71.[194]) The record supports the circuit court's findings, and we adopt them as part of this opinion. Therefore, the appellant is not entitled to relief in this regard.

(Doc. 14, pp. 86-87 (alterations in original) (quoting *Taylor v. State*, 10 So. 3d 1037, 1065 (Ala. Crim. App. 2004))).[195]

The holding of the Court of Appeals, quoted above, speaks for itself. This court finds that the analysis of the circuit court, and its subsequent adoption by the Criminal Court of Appeals,

---

[194] (*See* C.R. Vol. 37, Tab. 84, pp. 92-93).

[195] The first two paragraphs of the Alabama Court of Criminal Appeals's opinion before remand reproduced above in brackets do not appear in the Respondents' Brief on the Merits. (*See* Doc. 14, pp. 86-87 (quoting *Taylor v. State*, 10 So. 3d 1037, 1065 (Ala. Crim. App. 2004))). For sake of clarity, however, the court thought it best to add the two paragraphs preceding the portion of that opinion quoted by the Respondents.

constituted a reasonable application of *Strickland*.

With respect to the third sub-part of this sub-claim, the circuit court was the last court to issue a reasoned decision on this issue. The court stated:

> . . .the Court notes that most of the evidence presented at Taylor's evidentiary hearing concerned why trial counsel was ineffective for not presenting psychological evidence. The Court considers this claim [that is, the claim regarding the psychological diagnosis] to be inconsistent with the evidence and arguments presented at Taylor's evidentiary hearing and it fails to affirmatively prove that trial counsel's performance was deficient or that Taylor was prejudiced as required by <u>Strickland</u>.

(Rule 32 C.R., Vol. 37, Tab 84, p. 94).

To an extent, counsel's handling of psychological evidence has already been previously discussed at length by this court in this opinion. *See* Part XIX(C)(1) of this opinion, *supra*. In addition, Taylor offers no legal support that the Court of Appeals' conclusion that counsel's advocacy at the sentencing hearing was reasonable constituted an unreasonable application of *Strickland* other than merely stating so. This sub-claim is, therefore, due to be denied.

Although Taylor alleges that he was denied effective assistance of counsel in many aspects, this court finds that Taylor has failed to satisfy the requirements of *Strickland* for any ineffective of counsel claim he has argued in this case. Accordingly, Taylor's ineffective assistance of counsel claims are due to be denied.

**XX.   THE ABOVE ERRORS, CONSIDERED CUMULATIVELY, DENIED MR. TAYLOR DUE PROCESS, A FAIR TRIAL, EFFECTIVE ASSISTANCE OF COUNSEL AND A RELIABLE SENTENCING DETERMINATION, IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS.   (DOC. 1, P. 46; DOC. 36-1, PP. 14-19, 52-54, 101-02).**

**A.      Summary of the Parties' Respective Arguments.**

In his habeas petition, Taylor argues that "[t]he above errors, considered cumulatively, denied Mr. Taylor due process, a fair trial, effective assistance of counsel and a reliable sentencing determination, in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments."  (Doc. 1, p. 46).  As support for this claim, Taylor incorporates by reference all of "[t]he facts stated in Grounds I to XIX, ante . . . ."  *Id.*

Respondents argue that "this claim is procedurally defaulted from review because Taylor did not raise it at trial or on direct appeal, under Alabama Rules of Criminal Procedure 32.2(a)(3) and (a)(5)."  (Doc. 14, p. 89).  First, Respondents contend that "Taylor did not raise this claim at trial."  (Doc. 13, p. 77).  Respondents support this argument by stating:

> Taylor's failure to raise this claim at trial was a procedural default under state law, which bars consideration of this claim on federal habeas corpus review.  *See, e.g.*, *Engle v. Issac*, 456 U.S. 107 (1982); *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Baldwin v. Johnson*, 152 F.3d 1304, 1318-1320 (11th Cir. 1998); *Magwood v. Smith*, 791 F.2d 1438, 1444 (11th Cir. 1986).  Alabama law precludes collateral review of issues that could have been but were not raised at trial.  Ala. R. Crim. P. 32.2(a)(3). *See, e.g.*, *Bui v. State*, 616 So. 2d 6, 28 (Ala. Crim. App. 1997); *Daniels v. State*, 650 So. 2d 544, 551 (Ala. Crim. App. 1994).

*Id.* at 77-78 (parallel citations omitted).

Second, Respondents also claim that "Taylor did not raise this claim on direct appeal."  *Id.* at 78.  Respondents support this contention by stating:

[Taylor's] failure to raise this claim on direct appeal was a procedural default under state law, which bars federal habeas corpus review of this claim. *See, e.g.*, *Caniff v. Moore*, 269 F.3d 1245, 1246-47 (11th Cir. 2001); *Baldwin*, 152 F.3d at 1318-1320; *Magwood*, 791 F.2d at 1444; *King v. Strickland*, 714 F.2d 1481, 1491-1492 (11th Cir. 1983) ("The failure to bring up an issue on appeal, no less than at trial, may preclude federal habeas corpus review."). Alabama law precludes collateral review of issues that could have been but were not raised on direct appeal. Ala. R. Crim. P. 32.2(a)(5). *See McGahee v. State*, 885 So. 2d 191, 228 (Ala. Crim. App. 2003); *Tarver v. State*, 761 So. 2d 266, 268 (Ala. Crim. App. 2000).

*Id.* at 78.

And finally, Respondents conclude by arguing:

Taylor raised this claim in his second amended Rule 32 petition. The Rule 32 circuit court found that this claim was procedurally barred from review because Taylor could have but did not raise it at trial or on direct appeal, under Rules 32.2(a)(3) and (5) of the Alabama Rules of Criminal Procedure. [(Rule 32 C.R. Vol. 37, Tab. 84, p. 111).] Taylor's failure to raise that claim at trial or on direct appeal was a procedural default under state law, which bars consideration of this claim on federal habeas corpus review. *See Richardson v. Johnson*, 864 F.2d 1536, 1539 (11th Cir. 1989) ("Claims that are procedurally barred from state coram nobis review are procedurally barred from federal habeas review."); *Lindsey v. Smith*, 820 F.2d 1137, 1143 (11th Cir. 1989).

*Id.* at 78-79.

## B.    The Question of Procedural Default.

This court finds that Ground XX is procedurally defaulted from federal habeas review.

The last state court to issue a reasoned opinion in the present case was the Circuit Court of

Etowah Count, Alabama. (*See* Rule 32 C.R., Vol. 37, Tab 84, p. 111). It held:

This claim is located in Part XXVI in paragraphs 186 on page 62 of Taylor's second amended petition. This claim is precluded from review because it could have been but was not raised at trial and because it could have been but was not raised on appeal. Rules 32.2(a)(3) and (a)(5), ARCrP. Therefore, this claim is summarily dismissed by the Court.

Because this particular claim of Taylor's was not presented to the state court at the time

293

and manner dictated by the state's procedural rules, the procedural default doctrine prevents

Taylor from raising it in federal court so long as the state court's ruling was based on "adequate

and independent state grounds." *Ward*, 592 F.3d at 1156-67. To make that determination, this

court must apply the *Judd* test used by the Eleventh Circuit. First, "the last state court rendering

a judgment in the case must clearly and expressly state that it is relying on state procedural rules

to resolve the federal claim without reaching the merits of that claim." *Judd*, 250 F.3d at 1313.

This part has been satisfied. Second, "the state court's decision must rest entirely on state law

grounds and not be intertwined with an interpretation of federal law." *Ward*, 592 F.3d at 1156-

57 (citing *Judd*, 250 F.3d at 1313).There is no indication that with respect to this particular

claim, the court attempted to reach the merits of this claim, nor does application of this

particular state procedural rule entail a consideration of the merits of the claim. Third, the state

procedural rule must be adequate; that is, "firmly established and regularly followed" and not

applied "in an arbitrary or unprecedented fashion." *Judd*, 250 F.3d at 1313. This part has also

been satisfied. Therefore, this court finds that the ruling of the circuit court was based on

adequate and independent state grounds, and is thus procedurally barred from federal habeas

review.

Alternatively, for the reasons already set out in this opinion, all of the preceding claims

are procedurally defaulted or lack merit.  This claim is due to be dismissed, or, in the alternative,

denied.

## **CONCLUSION**

For all of the reasons set forth in this opinion, Taylor's petition for writ of habeas corpus

is due to be **DISMISSED**, or alternatively **DENIED**.  A separate order in accordance with this

memorandum opinion will be entered.

**DONE** and **ORDERED** this 26th day of September, 2012.

KARON OWEN BOWDRE

UNITED STATES DISTRICT JUDGE

295